# EXHIBIT A

```
 1                IN THE UNITED STATES BANKRUPTCY COURT
 2               IN AND FOR THE DISTRICT OF DELAWARE
 3                              - - -
 4    In re:                       :     Chapter 11
                                   :
 5    GST TELECOM INC., et al.,    :     Case No. 00-1982(GMS)
                                   :
 6              Debtors.           :     (Jointly Administered)
 7                              - - -
 8                       Wilmington, Delaware
                       Thursday, October 7, 2004
 9                           10:00 a.m.
                            In Chambers
10
                                - - -
11
      BEFORE:   HONORABLE GREGORY M. SLEET, U.S.D.C.J.
12
      APPEARANCES:
13
              RICARDO PALACIO, ESQ.
14            Ashby & Geddes, P.A.
                    -and-
15            CHRISTOPHER H. KENT, ESQ., and
              LESLIE S. JOHNSON, ESQ.
16            Kent Custis, LLP
              (Portland, Oregon)
17
                        Counsel for John Warta
18
              CHRISTOPHER WARD, ESQ.
19            The Bayard Firm
                    -and-
20            WILLIAM GIBBONS, ESQ., and
              DANIELLE KEMP, ESQ.
21            Latham & Watkins LLP
              (Chicago, Illinois)
22
                        Counsel for GST
23
                                - - -
24

25
```

EXHIBIT __A__

PAGE ____ OF ____

1      THE COURT: Let's start with introductions.
2  Plaintiff?
3      MS. JOHNSON: Leslie Johnson for claimant John
4  Warta.
5      MR. KENT: Chris Kent for Mr. Warta.
6      MR. PALACIO: Rick Palacio.
7      MS. KEMP: Danielle Kemp for debtors GST
8  Telecom.
9      MR. GIBBONS: Good morning, Your Honor. Bill
10 Gibbons, Latham & Watkins, same firm that Ms. Kemp is with,
11 for GST.
12     MR. WARD: Chris Ward from the Bayard Firm, Your
13 Honor.
14     THE COURT: Long journey.
15     MS. KEMP: Long journey. We are barely awake.
16     MS. JOHNSON: We might have breakfast for lunch.
17     THE COURT: You just might.
18     Well, it appears from the joint status report,
19 which I appreciate you preparing, that discovery, merits fact
20 discovery is about done.
21     MR. KENT: Close, Your Honor.
22     THE COURT: For depositions that need to be done.
23     MR. KENT: None we are aware of.
24     MR. GIBBONS: We have two, which will be very
25 short and supplemental. The need for them arose when we went

EXHIBIT __A__
PAGE ___ OF ___

1  outlined, when would briefing be complete?
2         MS. WALKER: November 11.
3         THE COURT: Why don't you, while we are talking,
4  see if you can get a date for a teleconference. They can
5  build that into the schedule as well.
6         You will have two weeks after the cutoff of
7  discovery. Is the last day of February a weekday?
8         MS. WALKER: It's the 28th, on a Monday.
9         THE COURT: You will have two weeks from that
10 date to file case and issue-dispositive motions, should you
11 deem them appropriate.
12        I have to confess, I don't know as much as I am
13 sure that I will about these claims. I would find it
14 difficult to believe that there wouldn't be material facts in
15 dispute in this matter, that this matter is capable of
16 resolution on summary judgment, just from reading the joint
17 status report. I am not going to preclude you from filing
18 motions for summary judgment. Just don't waste my time.
19        MR. GIBBONS: I hear you, Judge.
20        MR. KENT: I can tell you exactly what we believe
21 is ripe for summary judgment, if you would like to hear that.
22        THE COURT: Briefly.
23        MR. KENT: The Magnacom counterclaim that they
24 have filed in this case was a claim that, in essence, alleges
25 that Mr. Warta, without proper approval or authority, went

EXHIBIT __A__
PAGE ___ OF ___

1  out and spent 14 to 15 million dollars of GST's money to
2  acquire wireless FCC licenses through a subsidiary, or a
3  company that he controlled, for the benefit of GST.
4          There are a lot of problems with that claim.
5  There are about four or five of them that are ripe for
6  summary judgment.  One is, that action was approved by the
7  GST board of directors in 1996, the fact that Mr. Warta had
8  gone and done that, so with full ratification of the board of
9  directors.
10         The second issue is that in August of 1998, after
11 Mr. Warta had been terminated as CEO, GST signed an indemnity
12 agreement with Magnacom that released, specifically released
13 that claim.  So we have a ratification, a release, and then,
14 when Mr. Warta filed his lawsuit for his severance and his
15 wage claim in Washington state court, GST counterclaimed on
16 this whole Magnacom issue in August of 1999.  Our affirmative
17 claim in that state court action was then stayed because of
18 the bankruptcy, and here we are again on that part of the
19 claim.
20         But the counterclaim was not pursued.  Of course,
21 the stay only has limited effect to a bankruptcy debtor.
22 Those claims aren't stayed.  They can go out and continue to
23 litigate.  They did not litigate that claim.  That claim was
24 dismissed in Washington state court, five years, as we sit
25 here today, from the date it had been filed.

EXHIBIT A
PAGE ____ OF ____

1    So they have serious statute of limitations
2    issues on their ability to assert Magnacom as a counterclaim,
3    because of ratification, release, dismissal, statute of
4    limitations. So we believe -- and I agree, I will not waste
5    the Court's time on trying to get you to weigh facts or
6    anything like that -- but we believe those would be ripe for
7    SJ.
8    THE COURT: That teleconference will be on the
9    17th of November at 10:00 o'clock. A little early for the
10   West Coast, but sorry about that.
11   MR. GIBBONS: Your Honor, can I respond briefly?
12   THE COURT: Briefly.
13   MR. GIBBONS: I understand you are not hearing it
14   or deciding it. But Mr. Kent tried to set the stage, and I
15   would like a chance to respond. And I will be brief.
16   The short version is, it didn't really happen,
17   and it's spin by Mr. Kent. The initial 5.4 million dollars
18   transferred to Magnacom by John Warta, Magnacom was a company
19   wholly owned by John Warta. John Warta was the CEO of GST,
20   and he plucked 5.4 million dollars out of GST's money and
21   sent it to Magnacom with no approval by the board.
22   Now, thereafter, it is true that the board did
23   pass upon the transfer of some additional moneys, in effect,
24   because their hands were tied, because Mr. Warta had already
25   sent 5.4 million to his company, ostensibly for some

EXHIBIT A
PAGE ____ OF ____

```
 1   pie-in-the-sky benefit, and the board faced the prospect of
 2   saying, okay, the 5.4 million is gone, or we gamble by
 3   transferring some more money to Magnacom for these licenses
 4   with the hope that we will get some future benefit.
 5              At the very least, there is a fact issue there.
 6              THE COURT:  This is reflected in the minutes of
 7   the board's meetings.
 8              MR. GIBBONS:  Yes.  Both reflected and not
 9   reflected.  It is also reflected in finance committee minutes
10   in August of 1996 that 5.4 million had been transferred
11   already by Mr. Warta with no approval.
12              So at the very least, there is a factual issue.
13              Secondly, with respect to the indemnity issue, I
14   won't bore Your Honor with all the factual ins and outs of
15   the indemnity agreement that Mr. Kent referred to in saying
16   that essentially there was a release of these claims.  I will
17   only say that that indemnity agreement, it is our position,
18   fails for want of consideration.  So that's not applicable.
19              Thirdly, with respect to the State of Washington
20   action, this one is pretty remarkable, Your Honor.  What
21   happened was, when GST went into bankruptcy, those
22   proceedings were stayed in Washington.  We didn't know until
23   a couple of weeks ago, when we got requests to admit from Mr.
24   Warta, that, in fact, something apparently had happened
25   administratively to those claims in the State of Washington
```

EXHIBIT __A__
PAGE ____ OF ____

```
 1   with no notice to us.  We thought our counterclaim against
 2   Mr. Warta was still stayed until we got that request to
 3   admit.
 4            Our counsel in Washington filed the motion, I
 5   believe, yesterday, to reinstate that.  By the way, the
 6   dismissal of that claim was without prejudice.  And the
 7   motion was filed yesterday to reinstate it.  Mr. Kent also
 8   talked about how, you know, we didn't pursue the claims.
 9   They had been stayed.  And I don't believe we are obligated
10   to pursue it when we are in bankruptcy.
11            We raised these claims vis-a-vis Mr. Warta as a
12   counterclaim here only after Mr. Warta filed his amended
13   claim in January of '04, ratcheting up his claim damages from
14   about 2.6 million to about 15 million.  Prior to January of
15   '04 we thought, 2.6-million-dollar claim, it's a large
16   claim, but it's a claim we can deal with within this
17   bankruptcy.  And in that regard, we went to mediation during
18   mid-'03 to try to resolve this issue.
19            When it gets ratcheted up to 15 million, and not
20   only gets ratcheted up to 15 million, Your Honor, but the
21   issues by which they inject into the litigation read in a
22   related way directly on what our counterclaim is, you know,
23   to somehow argue that we can't raise the counterclaim in
24   February of '04 after they essentially changed the playing
25   field that we were playing on one month earlier would be, I
```

EXHIBIT __A__
PAGE ____ OF ____

1   believe, improper and inequitable. I know you are not going
2   to rule for me any more than you are going to rule for Mr.
3   Kent. But I am trying to identify for you that there are a
4   lot of factual issues with respect to that claim.
5              THE COURT: Well, you both have different
6   positions, obviously. Again, I just caution and urge counsel
7   to use the Court's time wisely.
8              The cutoff for filing motions of a dispositive
9   nature will be two weeks after the 28th day. Did I say that
10  already?
11             MS. JOHNSON: Yes.
12             THE COURT: You will brief under the Local Rule
13  here in Delaware, which your local counsel can assist you
14  with. It is essentially a ten-day response, five-day time
15  period to reply, and a 40-page limitation on your openings
16  and your answers.
17             I am going to leave you to work out with a small
18  piece of guidance I will give you the expert report
19  production issues and the cutoff for expert discovery. The
20  date you need to keep in mind is the date the pretrial order
21  is due, which is September 19th of '05. My form of order,
22  which will guide you in the preparation of your proposed
23  pretrial order, requires that all motions in limine, and it's
24  usually, I would expect it might be in a case like this,
25  where the expert witnesses are concerned, that these kinds of

EXHIBIT __A__
PAGE ____ OF ____

```
 1   discussion that are in dispute.
 2            We will resolve the discovery dispute during the
 3   TC.  If we don't, we will engage in a letter-writing process,
 4   a little less expansive in terms of the number of pages than
 5   permitted here on the privilege issue, two pages, two pages,
 6   that kind of thing, unless I determine that I would benefit
 7   from full briefing.  Then I will release you to do that,
 8   engage in full-blown motions practice.  It generally doesn't
 9   happen.
10            So that's the way you raise discovery matters
11   with the Court.  As well as, not just disputes over
12   inadequate responses to interrogatories alleged, but matters
13   related to the schedule and things of that nature.  Don't
14   file motions in this chambers to expand, for instance, the
15   fact discovery deadline.  If you have an interest in
16   addressing my discretion on an issue like that, what you need
17   to do is talk, send over a stipulation, with an explanation
18   as to why you want the relief that you are requesting.
19            Let's say it's an extension of the fact discovery
20   deadline.  I would like a detailed explanation as to why you
21   have not done what you have agreed that you can do today, and
22   otherwise I am going to get you on the phone and we will talk
23   about it.  I really don't like having to do that, to
24   re-circle back, because it takes time.
25            Okay.  Amendment and joinder, I think counsel
```

EXHIBIT ___A___
PAGE ___ OF ___

```
 1   agreed, there is going to be some -- how much time do you
 2   want?
 3              MR. GIBBONS:  We have it ready.  So you can tell
 4   us.
 5              THE COURT:  Do you want to give yourselves 30
 6   days?
 7              MR. KENT:  On the amendment of the pleadings?
 8              MR. GIBBONS:  Right.  Can I explain this?
 9   Because I am not sure they will need any time.
10              THE COURT:  Okay.
11              MR. GIBBONS:  Essentially, all we are doing is
12   withdrawing claims.  Now, when I say claims, we still have
13   four different counts against Mr. Warta, fraud, breach of
14   fiduciary duty, conversion -- and I can't remember what the
15   fourth one was.
16              MS. KEMP:  Breach of contract.
17              MR. GIBBONS:  And breach of contract.  But they
18   were predicated on two major factual scenarios.  We are
19   withdrawing one of those factual scenarios completely, and
20   that relates to what I have discussed earlier, Your Honor,
21   that is, the waiver of the attorney-client privilege.  We
22   decided it was too complicated and too onerous to try to
23   plead that -- to try to prove that claim.  So we defended by
24   waiving the attorney-client privilege and we decided to drop
25   that element of our counterclaim.
```

EXHIBIT __A__

PAGE ____ OF ____

1   So the only thing that will remain in our
2   counterclaim are facts related to the substantive issue that
3   Mr. Kent raised earlier, that is, the issue regarding the
4   transfer of 14.4 million dollars to Magnacom. So our amended
5   claim is essentially a paring down of our claims, and I
6   wouldn't think that anybody would have much objection to
7   that.
8             I should say, there is one other issue. That is,
9   we have also raised the issue of equitable subordination,
10  which I am frank to tell you is a concept that I didn't know
11  very much about, but one of my bankruptcy gurus told me that
12  it is within the discretion of a court sitting in bankruptcy.
13            THE COURT: I have had the good fortune of being
14  reversed on the issue of equitable subordination.
15            MR. GIBBONS: Then you probably know more about
16  it than I do.
17            THE COURT: It doesn't appear so.
18            MR. GIBBONS: As a factual matter you may.
19            Anyway, we raise that issue. But in terms of the
20  facts in dispute, we are taking them out. We are not putting
21  them in, in terms of an amended counterclaim.
22            MR. KENT: If that's what they are going to do, I
23  think that's fine. For the record, if I could get you to say
24  that you are dismissing the Bestel Global related allegations
25  and all those in their entirety, I think is what you are


EXHIBIT ___A___
PAGE _____ OF _____

```
 1  meaning to say -- isn't that correct?
 2          MR. GIBBONS:  The amended counterclaim contains
 3  no allegations with respect to Bestel.  It contains only
 4  allegations, factual allegations related to Magnacom.
 5  Indeed, beyond Bestel, Chris, you had raised --
 6          MR. KENT:  Guam.net.
 7          MR. KENT:  Yes, sir, last week, during Bruce
 8  Becker's deposition.  I hadn't focused on it.  And I told you
 9  I would go back and consider whether that was going to come
10  out of the counterclaim, also.  And it is.
11          MR. KENT:  So we only have Magnacom-related
12  counterclaims.
13          MR. KENT:  Correct.
14          THE COURT:  That much, not exactly that, but in
15  the joint status report, that is their intention, to withdraw
16  the claims related to Bestel, as does Mr. Warta remove the
17  claim for emotional distress.
18          MR. KENT:  Yes, Your Honor.  We are withdrawing
19  that as an element of damage.  The claims remain the same.
20  So we don't need to file anything else.
21          THE COURT:  I don't think this needs to be the
22  subject of a scheduling order.  Let's get it done.
23          MR. KENT:  Do we have leave to file the
24  counterclaim?
25          THE COURT:  Yes.
```

EXHIBIT __A__
PAGE ____ OF ____

```
 1                MR. KENT:  Yes.
 2                MR. PALACIO:  With respect to the amendment of
 3   the pleading, under Rule 15, the complaint has, as far as an
 4   adversary proceeding number, by virtue of the counterclaim
 5   pursuant to Rule 3007 in the Federal Bankruptcy Rules and the
 6   relief GST has requested, this has been converted into a
 7   bankruptcy proceeding.  Without the benefit, I guess with our
 8   electronics proceedings in the Bankruptcy Court, we don't
 9   have the benefit of an automatically created adversary
10   proceeding.
11                THE COURT:  I like to refer to it as a civil
12   action number.
13                MR. PALACIO:  For all intents and purposes, the
14   reference is withdrawn to Your Honor.
15                THE COURT:  So this case needs to be assigned an
16   action number of some sort.
17                MR. PALACIO:  I believe it should.
18                THE COURT:  Ms. Walker, would you see, along with
19   Mr. Palacio and his counterpart, what we can do about
20   arranging this?
21                MR. PALACIO:  Thank you.  If I may, just while I
22   am speaking, just to note something for the record.  I didn't
23   want our acquiecscence to be deemed acceptance.  Mr. Gibbons
24   mentioned something earlier, that for the first time we
25   sought to amend our claims, Warta's claim, to assert, among
```

EXHIBIT  A
PAGE _____ OF _____

1  other things, these ratcheted-up or significant claims, that
2  the basis for that amendment was for the first time asserted
3  in any of these proceedings. Your Honor, we disagree with
4  that, because I think the amendment, the factual predicate
5  that forms the basis for the amendment that Your Honor
6  approved, I want to make clear that the factual predicate was
7  set forth in our original claim. There is nothing new.
8           THE COURT: The record has been straight on that.
9           MR. KENT: I will just rely on the record in that
10 regard, Your Honor.
11          THE COURT: We need to talk about an issue that I
12 think I raised with you ladies and gentlemen earlier. That
13 is, whether there is a right to a jury trial in this case.
14 Still in your joint status report, there doesn't appear to be
15 agreement. The only reference to any authority is, of
16 course, the reference to Rule 38 of the Federal Rules of
17 Civil Procedure. Have you had a chance to further consider
18 this matter, to further research it?
19          MR. KENT: I have considered it. Analytically,
20 this is where I am at on this issue.
21          I concede that we do not have a right to a jury
22 trial for anything up to the filing of the counterclaims.
23 When the counterclaims are filed, and -- well, when we have
24 the filing today, that's why I wanted to see it as soon as
25 possible, that we have the time to file a responsive pleading

EXHIBIT __A__
PAGE ____ OF ____