# EXHIBIT E

THE HONORABLE JEFFREY M. RAMSDELL

**CERTIFICATE OF SERVICE**
I certify under penalty of perjury under the laws of the State of
Washington that on this day I caused to be sent via Federal
Express, Next Day Delivery, a copy of this document to
plaintiff's counsel of record.

Dated: February 23, 1999 at Seattle, Washington.

RECEIVED
10:20 AM
FEB 24 1999
Ted Hymes
MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| JOHN WARTA,<br><br>Plaintiff,<br><br>v.<br><br>GST USA, INC., a Delaware corporation;<br>GST TELECOM, INC., a Delaware<br>corporation and GST<br>TELECOMMUNICATIONS, INC., a<br>Canadian corporation,<br><br>Defendants. | No. 99-2-02287-4SEA<br><br>DEFENDANTS' ANSWER,<br>AFFIRMATIVE DEFENSES AND<br>COUNTERCLAIMS |

GST USA, INC., a Delaware corporation;
GST TELECOM, INC., a Delaware
corporation and GST
TELECOMMUNICATIONS, INC., a
Canadian corporation,

Counterclaim Plaintiffs,

JOHN WARTA and his MARITAL
COMMUNITY, W. GORDON
BLANKSTEIN, STEPHEN IRWIN,
ROBERT H. HANSON, PETER E.
LEGAULT, IAN WATSON, and GLOBAL
LIGHT TELECOMMUNICATIONS, INC.,
a Yukon Territory Corporation,

Counterclaim Defendants.

Defendants GST USA, Inc., GST Telecom, Inc., and GST Telecommunications, Inc.

(collectively, the "GST Companies") for their Answer to the Complaint of Plaintiff John

Page 1 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ___E___
PAGE ___ OF ___

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

1   Warta, admit, deny and allege as follows:

2                                    1.

3        Answering paragraph 1, the GST Companies admit that Warta's action is for a

4   purported breach of an employment contract and related claims.

5                                    2.

6        Answering paragraph 2, the GST Companies admit the allegations of Paragraph 2 of

7   the Complaint.

8                                    3.

9        Answering paragraph 3, the GST Companies admit the allegations of Paragraph 3 of

10  the Complaint.

11                                   4.

12       Answering Paragraph 4, the GST Companies admit that an employment agreement

13  was entered into between GUSA, Telecom and Warta on September 1, 1995, and amended

14  on August 22, 1997.  The GST Companies further admit that the contract provides that "any

15  action, suit or proceeding with respect to the Agreement . . . shall be brought in the courts of

16  the State of Washington located in Seattle, Washington or in the United States District Court

17  for the district in which Seattle is located . . . ."  Except as so admitted, the GST Companies

18  deny each and every remaining allegation contained in Paragraph 4 of the Complaint.

19                                   5.

20       Answering Paragraph 5, the GST Companies admit that Warta controlled a company

21  known as Pacwest Network L.L.C. ("Pacwest"), and that Pacwest was in the

22  telecommunications industry.  Defendants also admit that Greenstar Telecommunications,

23  Inc. ("Greenstar") became GST.  Except as so admitted, the GST Companies are without

24  sufficient information or knowledge to form a belief as to the truth of the allegations

25  contained in Paragraph 5 of the Complaint, and on that basis, deny each and every remaining

26  allegation contained therein.

Page 2 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _____
PAGE _____ OF _____

1     **FOR A NINTH AFFIRMATIVE DEFENSE**, the GST Companies allege as

2 follows:

3                               42.

4                         (Set-Off)

5     Any potentially compensable damages alleged in Warta's complaint are less than

6 Counterclaim Plaintiffs' damages as set forth below and, therefore, would be compensable

7 only as a set-off against Counterclaim Plaintiffs' damages.

8     **FOR A FURTHER ANSWER, AND AS COUNTERCLAIMS**, the GST

9 Companies allege as follows:

10                     **INTRODUCTION**

11                          43.

12     The termination of Warta's employment may only be placed in proper perspective

13 through the facts and circumstances of Warta's actions as a GST fiduciary. Thus, by this

14 Counterclaim, the GST Companies, as Counterclaim Plaintiffs, seek to hold Warta and the

15 other Individual Counterclaim Defendants accountable for gross and flagrant abuses of their

16 corporate offices held with Counterclaim Plaintiffs. Seemingly oblivious to their fiduciary

17 duties as directors and officers, let alone as fiduciaries to a publicly-traded corporation, the

18 Individual Counterclaim Defendants used their positions for self-enrichment through

19 manipulation of inside information and the transfer of GST assets to shell corporations they

20 controlled, in particular, to a company now called Global Light Telecommunications, Inc.

21 ("Global"), a corporation incorporated under the laws of the Yukon Territory in the hope that

22 United States jurisdiction could be evaded.

23                          44.

24     Specifically, this Counterclaim seeks, among other matters, to remedy the fraud of

25 Warta and other individuals using thinly-traded stock of a shell corporation to effect a fraud

26 upon GST, a NASDAQ-traded telecommunications company headquartered in Vancouver,

Page 9 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ____E____
PAGE _____ OF _____

1   Washington.  The Individual Counterclaim Defendants, led by Warta and W. Gordon

2   Blankstein, acquired cheap stock in a Vancouver, British Columbia, Stock Exchange "shell"

3   corporation, "Canadian Programming Concepts, Ltd.", and then used their positions as GST

4   insiders - members of GST's Board of Directors - to transfer an immensely lucrative

5   Mexican business opportunity, the "Bestel Opportunity," to the shell corporation, with no

6   compensation to GST.  The opportunity so transferred has recently been valued in excess of

7   $200 million.  In short order, the Individual Counterclaim Defendants' cheap stock in

8   Canadian Programming Concepts, since renamed GST Global Telecommunications, Inc.,

9   and then Global Light Telecommunications, Inc., quadrupled in value, resulting in the

10  personal enrichment of the Individual Counterclaim Defendants at the expense of GST and

11  its shareholders.

12                                          45.

13      As described herein, the GST Companies seek to hold the Counterclaim Defendants

14  accountable for their fraud and to return all equitable and legal interests in and to the Bestel

15  Opportunity to its rightful owner, GST.  Additionally, the Counterclaim seeks to hold

16  Counterclaim Defendants Warta and Irwin accountable for their reckless breach of duties

17  regarding the "Magnacom" entities, breaches which have cost GST more than $10 million.

18                          **JURISDICTION AND VENUE**

19                                          46.

20      This Court has jurisdiction over all causes of action in this Counterclaim pursuant to

21  RCW §2.08.010 and RCW §4.28.185 because jurisdiction has not been vested exclusively in

22  any other court, and because Counterclaim Plaintiffs are residents of Washington, and submit

23  to the jurisdiction of this court, and many of the events giving rise to this complaint occurred

24  in Washington.

25                                          47.

26      Venue is proper in King County, Washington because it arises as a Counterclaim to

Page 10 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT E

PAGE

1    the lawsuit filed by John Warta in this Court, pursuant to CR 13(h) and CR 19(a).

2    <center>**THE PARTIES**</center>

3    <center>48.</center>

4    Plaintiff and Counterclaim Defendant John Warta ("Warta") is a resident of Clark

5    County, Washington, and is, or was during the course of events described below, President

6    and Chief Executive Officer of GST, Chairman of the GST Board of Directors, a member of

7    the GUSA Board of Directors, a member of the Telecom Board of Directors, a member of

8    the GST Executive Committee, Vice-Chairman of the Global Board of Directors, a director

9    of a Global subsidiary, a Global shareholder, the owner of Guam Net/PCS Plus Pacific, Inc.,

10    and, through Pacwest Network, Inc., the owner of Magnacom Wireless, LLC ("Magnacom").

11    Warta committed all acts alleged herein for his benefit and for the benefit of the marital

12    community of himself and his wife. Said marital community is thus fully liable for all claims

13    alleged against Warta.

14    <center>49.</center>

15    Counterclaim Plaintiff GUSA is a Delaware Corporation with its principal place of

16    business in Vancouver, Washington. GUSA is a wholly-owned subsidiary of GST.

17    <center>50.</center>

18    Counterclaim Plaintiff Telecom is a Delaware Corporation with its principal place of

19    business in Vancouver, Washington. Telecom is a wholly-owned subsidiary of GST.

20    <center>51.</center>

21    Counterclaim Plaintiff GST is a Canadian Corporation with its principal place of

22    business in Vancouver, Washington. GST is a leading facilities-based provider of advanced

23    telecommunications products and services. The common stock of GST is traded on the

24    NASDAQ. The Company currently operates telecommunications networks in 18 cities and

25    has 31 additional networks under development. The Company has built fiber and switching

26    infrastructures in selected cities in the western United States and is pursuing a strategy of

Page 11 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ___E___

PAGE _____ OF _____

1    linking the markets it serves via advanced long haul fiber optic networks. GST's integrated

2    communications product and service offerings include Plain Old Telephone Service (POTS),

3    analog trunk, private line, long distance, data (frame relay and ATM), paging, Centrex, and

4    Custom Local Signaling Services (CLASS) such as call forwarding, caller I.D., voice mail,

5    and automatic call back. GST also offers a full complement of Internet services, including

6    dial-up, dedicated access, Electronic Data Interchange (EDI), and Web services. GST has no

7    business operations in Canada.

8                                              52.

9        Counterclaim Defendant W. Gordon Blankstein ("Blankstein") is a resident of British

10   Columbia, and is or was during the course of events described below, Chairman of the GST

11   Board of Directors, a member of the GST Executive Committee, a member of the GST

12   Finance Committee, a Director of Global, Acting President of Global, Chairman of the

13   Global Board of Directors (current), and a major Global shareholder (current).

14                                             53.

15       Counterclaim Defendant Stephen Irwin ("Irwin") is a resident of New Jersey, and is,

16   or was during the course of events described below, a Vice-President of GST, a Director of

17   GST, Vice-Chairman of the GST Board of Directors, a member of the GUSA Board of

18   Directors, a member of the Telecom Board of Directors, a member of the GST Executive

19   Committee, a member of the GST Finance Committee, Secretary of GST, counsel to GST,

20   Secretary to a Global subsidiary, counsel to Global, a Global shareholder, and an officer of

21   Magnacom Wireless, LLC ("Magnacom"). Irwin is also Of Counsel to the law firm of

22   Olshan Grundman Frome & Rosenzweig LLP, now known as Olshan Grundman Frome

23   Rosenzweig & Wolosky LLP ("Olshan"), in New York, New York.

24                                             54.

25       Counterclaim Defendant Robert H. Hanson ("Hanson") is a resident of Wyoming, and

26   is, or was during the course of events described below, Senior Vice-President of GST, Chief

Page 12 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT __E__

PAGE _____ OF _____

1    Financial Officer of GST, a Director of GST, a member of the GST Finance Committee, a

2    Global shareholder, and a Global consultant.

3                                        55.

4        Earl C. Kamsky ("Kamsky") is now deceased, but was, during the course of events

5    described below, President and Chief Executive Officer of Telecom, a Director of GST,

6    President and Chief Executive Officer of Global, a Director of Global, President and Chief

7    Executive Officer of a Global subsidiary and a Global shareholder.

8                                        56.

9        Counterclaim Defendant Peter E. Legault ("Legault") is a resident of Ontario, Canada

10   and, is or was during the course of events described below, a Director of GST, a Director of

11   Global, and a Global shareholder.  Legault is also a Director and Vice-President of Thomson

12   Kernaghan & Co. Ltd. ("Thomson").

13                                       57.

14       Counterclaim Defendant Ian Watson ("Watson") is a resident of Marin County,

15   California and is, or was during the course of events described below, President and Chief

16   Executive Officer of GST, Chairman of the GST Board of Directors, Vice-President of

17   GUSA, a member of the GST Finance Committee, President and Chief Executive Officer of

18   Global (current), Vice-Chairman of the Global Board of Directors (current), and a Global

19   shareholder (current).  Watson is also the beneficial owner of Tellson Holdings Limited

20   ("Tellson").

21                                       58.

22       Counterclaim Defendant Global Light Telecommunications, Inc. ("Global"), formerly

23   known as "GST Global Telecommunications, Inc.," and before that, "Canadian Programming

24   Concepts, Inc." ("CPC"), is incorporated under the laws of Yukon Territory, Canada with its

25   "executive offices" in Vancouver, British Columbia and its principal operations in Mountain

26   View, California.  Global is a telecommunications company whose common stock is traded

Page 13 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _____ E
PAGE _____ OF _____

1   on the American Stock Exchange and the Vancouver Stock Exchange. Apart from a few

2   employees in its Vancouver, British Columbia office, Global has no business operations in

3   Canada.

4   <div align="center">59.</div>

5   On information and belief, each of the Counterclaim Defendants conspired with,

6   participated with, and acted in concert with, each of the other Counterclaim Defendants in

7   the activities hereinafter alleged, and, at all times herein mentioned, each of such

8   Counterclaim Defendants was the agent of and authorized to act for and was acting for and

9   on behalf of and with the knowledge and consent of each of the other Counterclaim

10  Defendants.

11  <div align="center">60.</div>

12  Dr. Thomas E. Sawyer, Jack Armstrong, and Takashi Yoshida were directors of GST

13  during the relevant period and are not named as defendants herein. These directors are

14  hereinafter collectively referred to as the "Independent Directors." Sawyer has, since the

15  events described herein, become affiliated with Counterclaim Defendant Global.

16  <div align="center">**THE FACTS**</div>

17  <div align="center">61.</div>

18  In early 1996, GST had developed a significant business opportunity in Mexico (the

19  "Bestel Opportunity") whereby it could acquire a 49% interest in one of seven concessions

20  which had been granted by the Mexican telecommunications authority (the "SCT") to a

21  Mexican consortium, Grupo Varo, to construct and operate a public telecommunications

22  network in Mexico. By the fall of 1996, however, the Counterclaim Defendants - the

23  individuals of whom were not only directors and officers of GST, but also significant

24  undisclosed shareholders of Global - had fraudulently transferred the Bestel Opportunity to

25  Global for no consideration. There was not at that time, or ever, any written agreement or

26  even a term sheet between GST and Global stating the terms for transfer of the Bestel

Page 14 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _E_

PAGE _____ OF _____

1   Opportunity.  A May 1998 independent analyst's report has placed the value of the Bestel

2   Opportunity at $460 million.  Thus, GST's 49% interest - wrongly taken by Global - has

3   been independently valued at $225 million.  Upon information and belief, the value of Bestel

4   has increased since the date of the valuation.

**Global**

5

6   62.

7   Global was formerly known as Canadian Programming Concepts Ltd. ("CPC").  CPC

8   was a Yukon Territory corporation incorporated in 1993 as the shell owner of a tiny existing

9   Texas business known as Programming Concepts, Inc.  Before the Counterclaim Defendants

10  caused the Bestel Opportunity to be fraudulently transferred to CPC for no consideration,

11  CPC was a lightly-traded shell corporation listed on the Vancouver Stock Exchange with no

12  material assets.

13  63.

14  From the time of its incorporation, CPC was controlled by Blankstein and his

15  associates.  In or about May of 1995, CPC was listed on the Vancouver Stock Exchange (the

16  "VSE").  Since approximately August of 1998, CPC, now known as Global, has been trading

17  on the American Stock Exchange.

18  64.

19  Blankstein, then Chairman of the GST Board, had been attempting to induce GST to

20  acquire an interest in CPC for some time.  In October of 1995, at a GST Board of Directors

21  meeting in Japan, Blankstein suggested to the GST Board that GST acquire a shell

22  corporation.  In July of 1996, upon Blankstein's urging, and with Warta's support, the Board

23  finally authorized a significant purchase of CPC stock.

24  65.

25  GST purchased 2.1 million shares of CPC stock on June 3, 1996. 1,450,000 of these

26  shares were purchased by GST directly from Blankstein at a cost of $72,500 or 5 cents per

Page 15 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT _____

PAGE _____ OF _____

1  share.

2                                      66.

3      In the same transaction in which GST purchased shares from Blankstein personally,

4  GST also purchased 125,000 CPC shares from Teleport Canada Development Corporation

5  ("Teleport") for $87,500 ( 70 cents per share), 425,000 shares from Quest Capital

6  Corporation for $193,750 (45 cents per share) and 100,000 shares from associates of

7  Blankstein for $50,000 (50 cents per share).  Teleport was a corporation in which Blankstein

8  and his brother Robert Blankstein had a substantial beneficial interest.  The fact that GST

9  was purchasing shares from a company in which its Chairman had a significant financial

10 stake was not disclosed at the time to the Independent Directors.

11                                     67.

12     At the time of GST's acquisition of 2.1 million shares, Global had outstanding shares

13 totaling 3,450,001.  Thus, through its June 3, 1996 purchase of 2.1 million shares GST

14 acquired approximately 60% of Global's outstanding shares.

15                                     68.

16     The GST Board was not informed that GST had purchased CPC shares until a month

17 later.  As recorded in the minutes of a July 2, 1996 telephonic meeting of the GST Board that

18 was chaired by Blankstein and attended by Warta, Irwin, Armstrong, Hanson, Legault,

19 Sawyer and Watson:

20             The Chairman [Blankstein] then discussed proposed
              arrangements pertaining to the acquisition of control of an
21            existing Canadian corporation, Canadian Programming
              Concepts, Inc., whose shares were currently traded on the
22            Vancouver Stock Exchange.  The Company proposed to acquire
              2,100,000 shares...which would result in its ownership of 37.5%
23            of the outstanding capital stock.  It was contemplated that the
              new corporation, with a working name of GST Global
24            Communications...would be used for non-U.S.
              telecommunications projects .... The Board determined that the
25            Company should cause Messrs. Blankstein, Warta, Irwin and
              Legault to be elected initially as directors of GST Global ...
26

Page 16 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
                        BULLIVANT HOUSER BAILEY
                          A Professional Corporation
                        1601 Fifth Avenue, Suite 2400
                           Seattle, WA 98101-1618
                         Telephone (206) 292-8930

1    (Emphasis supplied).  No mention was made at this meeting of the identity of the

2    sellers, Blankstein and Teleport, of the fact that it was not a "proposed" acquisition, but one

3    that had already occurred, or of the fact that, on the day of this acquisition GST had acquired

4    60%, rather than 37.5% of the then outstanding Global shares.

5                                    69.

6    One day after GST's acquisition of Global shares, Blankstein caused Global to

7    announce a private placement of 1.5 million units (the "Units") at $1.50 Canadian per Unit.

8    Each Unit consisted of one share and a one-share-purchase warrant exercisable at $2.00

9    Canadian for one year.  The issuance of the Units resulted in the substantial dilution of

10   GST's interest in Global.

11                                   70.

12   The placees in this private placement included Counterclaim Defendants Warta,

13   Blankstein, Irwin, Hanson and Watson (through Tellson), each of whom received 65,000

14   units.  In addition, Legault purchased 75,000 Units in the name of Thomson Kernaghan, a

15   company in which he held a material interest.  The private placement of the Units closed on

16   or about August 14, 1996.

17                                   71.

18   Between June 3, 1996, when GST first acquired Global shares, and the present,

19   Warta, Blankstein, and the other Individual Counterclaim Defendants, despite being directors

20   or officers of GST, continued to cause Global to issue more shares, thereby substantially

21   diluting GST's interest in Global.  This is illustrated in the following chart:

22

### Dilution Of GST's Interest In Global

| Issue Date | Number of shares Issued by Global | GST's purchases | GST's percentage interest in Global | Global shares Outstanding |
|---|---|---|---|---|
| 7/96 | | 2.1 million | 61% | 3.45 million |

Page 17 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _____ E _____
PAGE _____ OF _____

| Issue Date | Number of shares Issued by Global | GST's purchases | GST's percentage interest in Global | Global shares Outstanding |
|---|---|---|---|---|
| 8/96 | 1.5 million | | 42% | 4.95 million |
| 9/96 | .32 million | | 40% | 5.27 million |
| 11/96 | 3 million | 1.5 million | 46% | 8.27 million |
| 1/97 | 2.75 million | | 33% | 11.02 million |
| 2/97 | 1.12 million | | 30% | 12.14 million |

By December 31, 1997, following various other stock issuances by Global, the 3.6 million Global shares that were owned by GST represented only 20.6% of Global's outstanding shares. This dilution, which occurred through the knowledge and acquiescence of Warta and the other Counterclaim Defendants, placed GST at risk of violating various debt covenants.

### GST Insiders Buy Into Global

72.

On July 3, 1996, the day after the GST Board approved the "proposed" acquisition of Global stock, the Global Board granted 67,000 stock options each to Warta, Irwin, and Blankstein, and 20,000 options to Legault. These stock options were separate and apart from the Units that the Individual Counterclaim Defendants purchased in the Global private placement. As a result, by no later than August 14, 1996 (the date the private placement of 1.5 million Units closed), the Individual Counterclaim Defendants' holdings of Global shares included:

**Irwin**       65,000 common shares @ $1.50[1] per share

65,000 warrants exercisable for one year @ $2.00 per share

67,000 options @ $1.66 per share until June 4, 2001

---

[1]    All dollar amounts in these tables are in Canadian dollars.

Page 18 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _E_
PAGE ___ OF ___

| | | |
|---|---|---|
| 1 | **Warta** | 65,000 common shares @ $1.50 per share |
| 2 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 3 | | 67,000 options @ $1.66 per share until June 4, 2001 |
| 4 | **Legault** | 20,000 options @ $1.66 per share until June 4, 2001 |
| 5 | | 75,000[2] common shares @ 1.50 per share |
| 6 | | 75,000 warrants exercisable for one year @ $2.00 per share |
| 7 | **Watson**[3] | 65,000 common shares @ $1.50 per share |
| 8 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 9 | **Blankstein** | 65,000 common shares @ $1.50 per share |
| 10 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 11 | | 67,000 options @ $1.66 per share until June 4, 2001 |
| 12 | **Hanson** | 65,000 common shares @ $1.50 per share |
| 13 | | 65,000 warrants exercisable for one year @ $2.00 per share |

73.

At the September 16, 1996 GST Board meeting held in Vancouver, Washington, which was attended by Warta, Blankstein, Irwin, Armstrong, Watson, Hanson, Sawyer and Legault, the Independent Directors were informed that Global had issued 67,000 stock options to Warta, Irwin, Blankstein and Legault. This was, at best, a half-truth. The Individual Counterclaim Defendants, for their own profit and for the benefit of Global, did not tell the Independent Directors that each of the Individual Counterclaim Defendants had previously purchased, directly and indirectly, thousands of shares of Global stock. Moreover, although the Board refused, at this meeting, to ratify the issuance of Global options to Warta, Irwin, Blankstein or Legault, these Individual Counterclaim Defendants did

---

[2]    These purchases were made through Thomson Kernaghan.

[3]    These purchases were made though Tellson, a company in which Watson held a material interest.

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _____

PAGE _____ OF _____

1 | not divest themselves of their Global options.

2 | 74.

3 | By March of 1997, the Individual Counterclaim Defendants' holdings of Global

4 | shares or stock options, which holdings were never fully disclosed to the Independent

5 | Directors, included:

| | | |
|---|---|---|
| **Irwin** | 99,896 common shares @ 96 cents per share | |
| | 65,000 common shares @ $1.50 per share | |
| | 65,000 warrants exercisable @ $2.00 per share | |
| | 67,000 options @ $1.66 per share until June 4, 2001 | |
| **Warta** | 65,000 common shares @ $1.50 per share | |
| | 65,000 warrants exercisable @ $2.00 per share | |
| | 67,000 options @ $1.66 per share until June 4, 2001 | |
| **Legault** | 20,000 options @ $1.66 per share until June 4, 2001 | |
| | 75,000[4] common shares @ $1.50 per share | |
| | 75,000 warrants exercisable @ $2.00 per share | |
| **Watson** | 65,000[5] common shares @ $1.50 per share | |
| | 65,000 warrants exercisable @ $2.00 per share | |
| | 74,000 options @ $5.30 per share until Jan. 28, 2002 | |
| **Blankstein** | 65,000 common shares @ $1.50 per share | |
| | 65,000 warrants exercisable @ $2.00 per share | |
| | 67,000 options @ $1.66 per share until June 4, 2001 | |
| | 65,500 options @ $5.30 per share until Jan. 28, 2002 | |
| **Hanson** | 65,000 common shares @ $1.50 per share | |

---

[4]    These are purchases made through Thomson Kernaghan.

[5]    These are purchases made though Tellson.

Page 20 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT E
PAGE ___ OF ___

1    65,000 warrants exercisable for one year @ $2.00 per share

2    **Development of the Bestel Opportunity**

3    75.

4    As noted above, GST had begun developing the Bestel Opportunity in early 1996.

5    Eventually, a letter of intent was negotiated between Grupo Varo, a Mexican company, and

6    GST. Irwin was designated by GST to represent GST's interests in these negotiations. In

7    April 1996, the letter of intent was signed by Grupo Varo and GST to negotiate in good faith

8    and enter into a final agreement pursuant to which the parties would jointly own (through a

9    company called Cableados y Sistemas, S.A. de C.V. ("Cystel"), and subsequently renamed

10   Bestel S.A. de C.V. ("Bestel")) and finance construction and operation of the Network.

11   76.

12   On or about May 21, 1996, the GST Board met with Grupo Varo representatives at a

13   Special Joint Meeting of the Boards of Directors of GST and GUSA in Vancouver,

14   Washington. Each of the individual Defendants attended the meeting. Manuel Vasquez

15   Robles of Grupo Varo provided the Board with a description of the proposed joint venture

16   between GST and Grupo Varo. The joint venture was to design, construct, and operate a fibre

17   optic network consisting of approximately 2,200 kilometers linking Nuevo Laredo, Mexico

18   City, Guadalajara and Manzanillo. Moreover, GST would be able to link this network with

19   its own network in the southern United States.

20   77.

21   On or about May 22, 1996, the GST Board authorized GST to proceed with the joint

22   venture through a wholly-owned subsidiary. GST appointed Warta, Irwin, and Kamsky, as a

23   negotiating team to meet with representatives of Grupo Varo in order to negotiate joint

24   venture agreements for consideration and approval by the Board. Thereafter, Warta, Irwin,

25   and Kamsky traveled to Mexico to conduct due diligence of the Bestel Opportunity on behalf

26   of GST. In total, GST expended approximately $1,000,000 to develop the Bestel

Page 21 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _E_

PAGE ___ OF ___

1  Opportunity.

2                                   78.

3      On August 20, 1996, Bestel and Eficaciones Tlaloc, S.A. de C.V. entered into an

4  agreement pursuant to which Bestel designated GST to act on its behalf for the purpose of

5  administering the contract.  The contract was to build 2255 kilometers of fiber optic line.

6  The contract price was $52,000,000.

7                                   79.

8      On the same date, a subscription agreement was executed between Bestel, a Grupo

9  Varo subsidiary known as Occidental de Telecommunicacion, S.A. de C.V. ("Odetel"), GST

10 Mextel ("Mextel"), GUSA, and the shareholders of Odetel (the "Subscription Agreement").

11 Pursuant to the Subscription Agreement, Mextel subscribed for 49% of the outstanding

12 capital stock of Bestel for the price of $3,920,000.

13                                  80.

14     When Mextel was incorporated by Olshan at GST's instructions in June of 1996, GST

15 contemplated that Mextel would be a wholly owned subsidiary of GUSA and that GST's

16 interest in Bestel would be held through GUSA.  In the Subscription Agreement, Warta, on

17 behalf of GUSA and Kamsky on behalf of Mextel, represented that Mextel was, in fact,

18 wholly owned by GUSA.

19             **The Fraudulent Transfer of the Bestel Opportunity to Global**

20                                  81.

21     Despite the fact that Bestel was an opportunity developed by the GST Companies,

22 that agreements had already been drafted and executed pursuant to which the GST

23 Companies would pursue the Bestel Opportunity, and that the Board of GST had only

24 authorized proceeding with the Bestel Opportunity through a wholly-owned subsidiary,  in or

25 about September 1996, Warta, Irwin, and Blankstein, all of whom were directors of GST at

26 the time, actually worked to convince Grupo Varo not to proceed with a transaction through

Page 22 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT E

PAGE _____ OF _____

1   GUSA, but instead to proceed through Global, which they falsely characterized as another

2   GST subsidiary.

3                                                    82.

4           In particular, in order to induce Grupo Varo to agree to the substitution of Global,

5   Irwin represented that GST owned 80% of the outstanding shares of Global. This statement

6   was false and was either known to be false by Irwin or was made with reckless indifference

7   to the truth. As each of the Individual Counterclaim Defendants knew, no steps had been

8   taken by them to insure that GST had any control over Global.

9                                                    83.

10          In a September 6, 1996 conference call between Kamsky, Irwin, and representatives

11  of Grupo Varo, Irwin told Grupo Varo that restrictions in indentures to which GST was a

12  party did not permit GST to enter into the Bestel Opportunity through a wholly-owned

13  subsidiary without first obtaining the consent of its lenders. This statement was also false,

14  and was either known to be false by Irwin or was made recklessly without any investigation

15  or analysis of the issue. Irwin claimed that it would take at least 45 days to lift these

16  restrictions and urged that the Bestel shares be vended not to a GST subsidiary, but to

17  Global. According to Irwin, the immediate transfer of shares to Global was necessary in

18  order for Global to raise the necessary money to fund the Bestel Opportunity.

19                                                   84.

20          A week later, at the September 16 and 17 GST Board meeting in Vancouver,

21  Washington, Irwin and Blankstein urged the Board to give Global the Bestel Opportunity.

22  The meeting was attended by all of the Individual Counterclaim Defendants. Once again,

23  Irwin falsely claimed that GST's indentures did not permit GST to enter into the Bestel

24  Opportunity through a wholly-owned subsidiary without the prior consent of its lenders. The

25  independent directors were also informed that Grupo Varo was willing to go along with the

26  idea of Global as the direct owner of the Bestel Opportunity and that GST would still

Page 23 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT _____ E

PAGE _____ OF

1    maintain a "direct and indirect interest of 49%" in Bestel.

2                                            85.

3        The Individual Counterclaim Defendants did not disclose the following at the

4    September Board meeting:

5        (a)    that, as of the date of this meeting, separate and apart from the options

6               that Global had issued to Warta, Blankstein, Irwin and Legault, each of

7               the Individual Counterclaim Defendants already held thousands of

8               shares of Global stock and warrants to purchase thousands more;

9        (b)    that, as of this date, there was no written agreement between GST and

10              Global setting out the terms on which it was proposed that Global be

11              substituted for GUSA;

12       (c)    that Grupo Varo had been induced to consent to the substitution of

13              Global by a representation that GST owned 80% of the issued shares of

14              Global;

15       (d)    that GST did not own 80% of Global's shares either at this time or

16              ever;

17       (e)    that the consideration which GST was supposed to receive in exchange

18              for the transfer of the Bestel Opportunity, namely a minimum of 3

19              million Global shares, was not based on any reasoned investigation of

20              the value of the Bestel Opportunity, but on a representation by

21              Blankstein of what he thought regulators might approve;

22       (f)    that GST would not receive any Global shares without VSE approval

23              and that no steps were being taken to protect GST's interest in the

24              Bestel Opportunity in the event that the VSE did not approve the

25              issuance of an appropriate amount of Global shares; and

26       (g)    that no steps had been taken to secure GST's control of Global.

Page 24 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ___E___

PAGE ___ OF ___

86.

The Board then voted on whether "the activities of Global as described at the meeting" should be ratified.  While Warta, Blankstein, Irwin and Legault abstained from voting because of the options that had been issued to them, neither Hanson nor Watson abstained despite the fact that both of them (unbeknownst to the Independent Directors) directly and indirectly, already held substantial amounts of Global stock.

87.

Within days of the September GST Board meeting, Warta, Blankstein, Watson, and Legault were appointed to the Board of Directors of Global and Kamsky was appointed President and Chief Executive Officer of Global.  Irwin became Global's Secretary.

88.

It was not until January 1997 that the GST Board  formally approved the transfer of the Bestel Opportunity to Global.  By that time, however, the Bestel Opportunity had already been transferred to Global - for no consideration whatsoever and with no written documentation.

89.

On October 2, 1996 Blankstein became Chairman of Global.  On October 12, 1996, Mextel entered into an agreement with Bestel and Odetel pursuant to which Mextel was required to pay $13 million for its 49% interest in Bestel.  The Global misappropriation of Bestel was finally sealed at the signing of an agreement with Odetel in Mountain View, California, on January 21, 1997.

90.

Mextel, through GUSA, was to be a wholly owned subsidiary of GST, and was incorporated by Olshan at GST's direction.  Yet, on October 12, 1996, Earl Kamsky executed a subscription offer on behalf of Global to subscribe for 100 shares of Mextel, being all the issued and outstanding shares of Mextel.  On the same date, Warta, Kamsky and

Page 25 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT E
PAGE _____ OF _____

1    Irwin, as directors of Mextel, accepted and approved Global's offer to purchase Mextel's

2    shares. Thus Mextel, which held GST's rights to the Bestel Opportunity, became a wholly-

3    owned subsidiary of Global.

91.

5    On the same date, the Subscription Agreement was amended to replace all references

6    to GUSA with references to Global. No other term of the subscription agreement was

7    amended. The amendment was signed by Kamsky on behalf of Mextel, on behalf of GUSA,

8    and on behalf of Global. An amendment to the construction contract was also signed by

9    Kamsky replacing the reference to GST's subsidiary Telecom with a reference to Mextel.

92.

11    Thus, on October 12, 1996, Warta and Irwin, despite being respectively, the Chief

12    Executive Officer, and the Vice Chairman of GST, together with Kamsky, the President and

13    Chief Executive Officer of Telecom, a GST subsidiary, transferred to Global for no

14    consideration, an opportunity now valued in excess of $200 million dollars. At the same

15    time, Warta and the other Individual Counterclaim Defendants were continuing both to dilute

16    GST's existing interest in Global through the issuance of new shares and to increase the

17    amount of their own holdings.

93.

19    A Special Meeting of the GST Board was held on January 14, 15 and 16, 1997 at the

20    Mauna Launi Hotel on the Island of Hawaii. The Individual Counterclaim Defendants were

21    all present at the meeting, together with Independent Directors Armstrong and Yoshida. A

22    resolution was adopted "with Messrs. Blankstein, Watson and Legault, being directors of

23    GST Global, abstaining," but with Warta, Irwin, Watson and Hanson (all of whom were

24    undisclosed shareholders of Global) voting, as follows:

25          RESOLVED, that the Company [GST] be, and it hereby is,
authorized to enter into an agreement with GST Global pursuant

26    to which the Company shall transfer its business opportunity in

Page 26 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT ___ E

PAGE ____ OF ____

"Bestel" in consideration of the issuance to the Company of a minimum of 3,000,000 shares of GST Global and up to a maximum of 5,000,000 shares of GST Global capital stock, the precise amount of such additional shares to be based upon an evaluation of the business plan of Bestel and approval by the Vancouver Stock Exchange.

As each of the Individual Counterclaim Defendants present at the meeting knew, and failed to disclose, even 5,000,000 shares would have been grossly inadequate consideration for the transfer of the Bestel opportunity to Global. A recent report issued by the investment firm of Paine Webber in connection with a Global debenture offering revealed that Bestel is worth $460 million. GST's 49% interest in that opportunity was thus immensely valuable as of this date. As each of the Individual Counterclaim Defendants also knew and failed to disclose, by this time, Board approval of transferring the Bestel Opportunity to Global was virtually meaningless - the opportunity had already been transferred, without consideration, and without any agreement between GST and Global concerning the transfer.

### Failure to Prepare a Fairness Opinion or Submit the Transaction for VSE Approval

94.

Thereafter, the Counterclaim Defendants continued to conceal their fraud with false statements regarding VSE approval of the transaction between GST and Global. Certain transactions involving the stock of Companies traded on the VSE, such as the exchange of Global stock for GST's interest in the Bestel opportunity, are subject to a VSE approval requirement. The nominal purpose of this requirement is to prevent any party to the transaction (e.g., Global) from self-dealing or exploiting misleading or inaccurate valuation of stock or other business assets or opportunities at the expense of its shareholders or other parties to the transaction. In furtherance of this goal, the VSE may require a fairness opinion prepared by a disinterested investment bank prior to approving a transaction.

95.

As Counterclaim Defendants knew, submission of the Global/GST transaction to the

Page 27 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ___ C

PAGE ___ OF ___

1  VSE would have required evidence that issuance of Global shares would provide GST with a

2  fair value for the Bestel Opportunity.  Valuing the Bestel Opportunity would reveal that even

3  5,000,000 shares of Global was grossly inadequate consideration for the transfer.  Thus, the

4  Counterclaim Defendants had no intention of preparing an objective fairness opinion or

5  submitting proper evidence of the value of the transaction to the VSE for approval.  The

6  Counterclaim Defendants did not disclose their intentions to the Independent Directors.

7  <div align="center">96.</div>

8  On May 9, 1997, the VSE wrote to a Global attorney stating that, subject to receiving

9  further information, it was prepared to accept the acquisition of 49% of Bestel by Global.

10  The VSE also stated that it would require a valuation of the Bestel Opportunity before it

11  would approve the issuance of Global shares to GST.

12  <div align="center">97.</div>

13  On June 2 and June 3, 1997 a GST Board of Directors meeting was held in San

14  Francisco.  In attendance were the Individual Counterclaim Defendants and Independent

15  Directors Sawyer and Armstrong.  At the meeting, Irwin reported that:

16  ...no definitive resolution had been reached with respect to the
   receipt by the Company of 3,000,000 additional shares of capital
17  stock of Global and up to an additional 2,000,000 shares ...in
   consideration of the transfer to Global of the Bestel project to
18  the Company.  Mr. Irwin *reported that application for approval
   of the issuance of shares to the Company had been made* to the
19  Vancouver Stock Exchange by Global for issuance of up to
   3,000,000 shares.  A lengthy discussion ensued with respect to a
20  final resolution of the number of shares to be received by the
   Company.

21

22  (emphasis added).  In fact, no such application — even at "up to 3,000,000 shares" —

23  had been made by Global and none has been made to date.

24  <div align="center">98.</div>

25  At the meeting, the Board resolved to delegate Irwin and Blankstein to pursue the

26  share issuance through the VSE and to support it by a "fairness opinion" to be prepared by

Page 28 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT ___ E___

PAGE ___ ___ OF ___

1  First Marathon Securities.  Warta, Blankstein and Legault abstained from voting on this

2  resolution; the other conflicted directors did not.  Although Blankstein had been designated

3  by the GST Board to act on its behalf, on June 30 Blankstein told First Marathon that the

4  agreement between GST and Global called for the issuance of *no more than* three million

5  shares rather than the three to five million shares specified in the January 1997 GST Board

6  resolution.

7                                                99.

8      It was not until May 13, 1998, in connection with Global's proxy for its annual

9  shareholders meeting, that Global first publicly questioned the existence of *any* obligation to

10  GST, and denied the existence of an agreement.  In particular, Global's Proxy Statement

11  states:

> The Company *is negotiating* an agreement to issue to a
12  shareholder, GST Telecommunications . . . additional common
> shares, in consideration of the 1996 transfer by Telecom to the
13  Company of its previous development work and interests, *if any*,
> in and to the telecommunications project in Mexico being
14  developed by Bestel.  The issuance of any common shares is
15  subject to regulatory approval and approval of the directors.
> The number of shares, *if any*, has not been determined at this
16  time.

17  (Emphasis added.)

18                          **Magnacom and Guam Net**

19                                                100.

20      Magnacom Wireless, LLC ("Magnacom"), a Delaware Limited Liability Company, is

21  owned by John Warta through Pacwest, Inc.  Irwin and Olshan acted as legal counsel to GST

22  in connection with its dealings with Magnacom.  Yet, at the same time Irwin and Olshan

23  were counseling GST in its interactions with Magnacom, they were providing advice to

24  Magnacom on its dealings with GST.  This conflict was never fully disclosed and never

25  waived by GST.  In addition, Irwin is or was at the time of the events described below, and

26

Page 29 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT E

PAGE OF

1 | officer of Magnacom.

2 |                            101.

3 | On information and belief, in or about July 1996, and prior to any Board approval,

4 | Warta, who was then President and CEO of GST, and Irwin, who was GST's Vice Chairman,

5 | caused GST to advance approximately $5.9 million to Magnacom. Magnacom used the $5.9

6 | million advanced to it by GST as a deposit to acquire licenses for C Block Broadband

7 | Personal Communications Services ("Broadband PCS"). Warta, as the owner of Magnacom,

8 | and Irwin, as a legal advisor to Magnacom and an officer of Magnacom, each suffered from

9 | debilitating conflicts of interest that prevented them from protecting GST's interests in its

10 | dealings with Magnacom.

11 |                           102.

12 | Warta and Irwin knowingly permitted and caused further advances by GST to

13 | Magnacom. In January of 1997, Irwin reported to GST that $14.4 million had been advanced

14 | to Magnacom for the PCS licenses. Although the first $5.9 million had been advanced by

15 | GST to Magnacom in July of the previous year, GST still had not been provided even a term

16 | sheet explaining how GST's advances to Magnacom would be repaid if the PCS networks

17 | were never built or if Magnacom forfeited to the FCC either the licenses or the funds

18 | Magnacom had paid the FCC for the licenses. Warta and Irwin did cause GST to enter into a

19 | "Reseller Agreement" with Magnacom, under which GST's cash advances to Magnacom are

20 | characterized as a prepayment for airtime. This agreement was prepared by Irwin with

21 | Warta's approval, and contains no provisions for repayment by Magnacom to GST if

22 | Magnacom forfeits the licenses and funds advanced to the FCC or fails to construct the

23 | networks. The Reseller Agreement was executed on GST's behalf by Irwin -- after GST had

24 | advanced $14.4 million to Magnacom.

25 |                           103.

26 | Magnacom has now filed for bankruptcy. As a direct and proximate result of Irwin

Page 30 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT _____ E

PAGE _____ OF ____

1    and Warta's breach of fiduciary duty, GST has effectively no recourse against Magnacom

2    and has been damaged in an amount not less than $15 million.

3                                104.

4        Warta's fraudulent diversion of GST's resources to Magnacom is similar to his

5    conduct with respect to another Warta company formerly know as Guam Net, Inc. ("Guam

6    Net"), and now known as PCS Plus Pacific, Inc. ("PCS Pacific").   In 1996, Warta negotiated

7    for the puchase of A Block PCS licences from Poka Lambro Telephone Cooperative, Inc. for

8    the market consisting of Guam and the Northern Marianas Islands.  For the benefit of himself

9    and his marital community, Warta caused GST to advance $415,000 to Guam Net -- his own

10    personal company -- without taking adequate -- or any -- steps to recognize or protect GST's

11    interest in the payment for the investment.  As a result, GST has yet to receive any

12    consideration for the investment, even though the licenses were purchased in February, 1997.

13    As with Magnacom, GST has effectively no recourse against PCS Pacific and has been

14    damaged in an amount not less than $415,000.

15

16                       **FIRST COUNTERCLAIM**
                             (Fraud)

17               (Against all Counterclaim Defendants)

18                               105.

19        Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 1 through

20    104 above as if fully set forth herein.

21                               106.

22        Counterclaim Defendants Warta, Blankstein, Legault, Irwin, Hanson, and Watson,

23    have, both individually and on behalf of Global, knowingly made numerous

24    misrepresentations to, and or concealed material facts from, GST, despite their duties to,

25    *inter alia*, disclose their conflicted interests as alleged above and abstain from taking actions

26    to GST's detriment. Global, through the fraudulent actions of its agents on its behalf, is also

Page 31 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT ___ E

PAGE ___ OF ___

1  a party to the fraudulent scheme alleged herein.

2  107.

3  In particular, all of the Counterclaim Defendants failed to disclose, although under a

4  duty to do so, the following material facts:

5  (a)  that at the same time they were discussing and actually voting

6  on the issue of whether to transfer the Bestel Opportunity to

7  Global, each of the Individual Counterclaim Defendants already

8  owned thousands of shares of Global stock and held warrants to

9  purchase thousands more;

10  (b)  that no written agreement between GST and Global was ever

11  executed, or even prepared, setting out the terms on which the

12  Bestel Opportunity would be transferred to Global;

13  (c)  that Grupo Varo had been induced to agree that Global could

14  participate in the Bestel Opportunity by a representation that

15  GST owned 80% of the issued shares of Global;

16  (d)  that GST did not own 80% of Global's shares either at that time

17  or ever;

18  (e)  that the consideration which GST was supposed to receive in

19  exchange for the transfer of the Bestel Opportunity, namely a

20  minimum of 3 million Global shares, was not based on any

21  reasoned investigation of the value of the Bestel Opportunity,

22  but on a representation by Blankstein of what he thought the

23  VSE might approve;

24  (f)  that GST would not receive any Global shares without VSE

25  approval;

26

Page 32 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT E

PAGE ___ OF ___

(g)  that before it would approve the issuance of Global shares, the VSE would require evidence of the value of the Bestel Opportunity, but that no such evidence was prepared;

(h)  that the Counterclaim Defendants had no intention of applying to the VSE for the issuance of three to five million Global shares to GST;

(i)  that no steps were being taken to protect GST's interest in the Bestel Opportunity in the event that the VSE did not approve the issuance of an appropriate amount of Global shares;

(j)  that no steps had been taken to secure GST's control of Global; and

(k)  that the Bestel opportunity had been transferred to Global for no consideration months before GST's Board ever approved the transfer.

108.

In addition, Warta, Blankstein, Irwin, and Global in particular, falsely represented:

(a)  that a wholly owned subsidiary of GST could not own the Bestel Opportunity without the consent of GST's lenders;

(b)  that an application for approval of the issuance of Global shares to GST had been submitted to the VSE for approval;

(c)  that the issuance to GST of 3,000,000 to 5,000,000 shares of Global stock would be fair consideration for the transfer of the Bestel Opportunity;

(d)  that the transaction resulting in the transfer of the Bestel Opportunity to Global was fair and reasonable; and

(e)  that the transaction would be supported by a fairness opinion.

Page 33 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

109.

Counterclaim Plaintiffs reasonably relied to their detriment on Counterclaim Defendants' material misrepresentations and on Counterclaim Defendants' duty to disclose all material facts.

110.

As a direct and proximate result of Counterclaim Defendants' conduct, non-disclosures and affirmative misrepresentations, Counterclaim Plaintiffs have been damaged in an amount exceeding $225 million, but not yet fully determined.

## SECOND COUNTERCLAIM
### (Fraud)
### (Against Warta)

111.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 110 above as if fully set forth herein.

112.

Warta used his position as a director and officer of GST to facilitate his fraudulent scheme to divert GST's resources for his own use and benefit. Warta caused GST to transfer funds to Magnacom for the purchase of PCS licences without board approval, and deliberately failed to protect GST's interests prior to the transfer of such funds. Warta also caused GST to transfer funds to Guam Net under similar circumstances and with a similar deliberate failure to protect GST's interests and to secure adequate protection for GST prior to the transfer of such funds. Indeed, with respect to Guam Net, Warta never did receive even post-hoc board authorization.

113.

But for Warta's abuse of his corporate position, false representations to the GST Board of Directors regarding the advisability of advancing funds to Magnacom, and his

Page 34 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

1  failure to disclose the personal benefit that he sought to derive for himself and his marital

2  community from both the Magnacom and Guam Net transfers, Warta could never have

3  transferred GST funds to these two companies he owned.

4                                  114.

5      As a result of Warta's fraudulent transfer of GST assets to Magnacom and Guam Net,

6  Warta and his marital community have benefitted and GST has been damaged in an amount

7  exceeding $15 million.

8

9  **THIRD COUNTERCLAIM**
   (Breach of Fiduciary Duty of Loyalty and Care)
10  (Against all Individual Counterclaim Defendants)

11                                  115.

12     Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through

13  114 above as if fully set forth herein.

14                                  116.

15     As directors and officers of GST, the Individual Counterclaim Defendants owed a

16  fiduciary duty to GST to act honestly, in good faith, and in a manner reasonably believed to

17  be in the best interests of GST. The Individual Counterclaim Defendants also owed a duty to

18  GST to refrain from using their power as directors and officers of GST for their own personal

19  benefit and to make full and timely disclosure to the Board of GST of all material facts

20  relating to business carried out on behalf of GST.

21                                  117.

22     The Individual Counterclaim Defendants breached their fiduciary duty to GST by

23  failing to disclose, although under a duty to so, numerous material facts as set forth in

24  paragraph 107, above.

25                                  118.

ɔ      The Individual Counterclaim Defendants further breached their fiduciary duties by

Page 35 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

1  their misappropriation of a corporate opportunity, Global Shares, based on the misuse of

2  Counterclaim Plaintiffs' proprietary inside information, for their own personal profit at the

3  expense of GST and its shareholders.

<div align="center">119.</div>

5      The Individual Counterclaim Defendants further breached their fiduciary duties by

6  causing the GST Companies to transfer the Bestel Opportunity to Global without any

7  agreement to compensate GST, without receiving fair value for the transfer, and with the

8  knowledge that Global had not agreed to compensate the GST Companies for the transfer.

<div align="center">120.</div>

10      But for the Individual Counterclaim Defendants' breach of their fiduciary duties and

11  the misuse of their positions as directors and officers of GST, the Individual Counterclaim

12  Defendants would not have been able misappropriate the Bestel Opportunity, or cause the

13  transfer of the Bestel Opportunity.

<div align="center">121.</div>

15      As a result of the Individual Counterclaim Defendants' breach of their fiduciary

16  duties, the Individual Counterclaim Defendants have benefitted and GST has been damaged

17  in an amount exceeding $225 million, the value of the Bestel Opportunity.

<div align="center">

**FOURTH COUNTERCLAIM**
(Breach of Fiduciary Duty of Loyalty and Care)
(Against Warta and Irwin)

122.

</div>

22      Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through

23  121 above as if fully set forth herein.

<div align="center">123.</div>

25      As directors and officers of GST, Warta and Irwin owed a fiduciary duty to GST to

26  act honestly, in good faith, and in a manner reasonably believed to be in the best interests of

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT ___ E ___

PAGE ___ OF ___

1 GST. Counterclaim Defendants also owed a duty to GST to refrain from using their power

2 as directors and officers of GST for their own personal benefit, and to uphold their duty of

3 loyalty to GST by refraining from accepting obligations to other parties that might interfere

4 with their duty to GST.

5 <div align="center">124.</div>

6 Counterclaim Defendants Warta and Irwin breached their fiduciary duty to GST by

7 causing GST to transfer funds to Magnacom for the purchase of PCS licences without board

8 approval and without adequate consideration of GST's best interests, and by failing to secure

9 any protection or recourse for GST prior to the transfer of such funds. Warta further

10 breached his fiduciary duty to GST by causing GST to transfer funds to Guam Net under

11 similar circumstances and with a similar failure to consider GST's best interests and to

12 secure adequate protection for GST prior to the transfer of such funds.

13 <div align="center">125.</div>

14 But for Counterclaim Defendants Warta's and Irwin's breach of their fiduciary duty

15 and the misuse of their positions as directors and officers of GST, GST would not have

16 transferred any funds to Magnacom or Guam Net.

17 <div align="center">126.</div>

18 As a result of Counterclaim Defendants Warta's and Irwin's breach of their fiduciary

19 duty, GST has been damaged in an amount exceeding $15 million.

20

21 <div align="center">**FIFTH COUNTERCLAIM**
(Negligent Misrepresentation)
(Against Global)</div>

22

23 <div align="center">127.</div>

24 Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through

25 104 and 115 through 126 above as if fully set forth herein.

26

Page 37 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

**128.**

Counterclaim Defendant Global, through its agents, made false representations to the GST Board of Directors regarding the transfer of the Bestel Opportunity as alleged above. In making the representations and omissions, and in doing the acts alleged above, Global acted without any reasonable grounds for believing the representations were true, and intended by those representations to induce reliance on the part of the GST Board of Directors. The GST Board of Directors relied upon these false representations in deciding to purchase an interest in Global and in allowing the transfer of the Bestel opportunity to Global. Given the relationship between GST and the Counterclaim Defendants, such reliance was justified. As a result, GST has been damaged in an amount exceeding $225 million, but not yet fully determined.

### SIXTH COUNTERCLAIM
(Unjust Enrichment)
(Against all Counterclaim Defendants)

**129.**

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 128 above as if fully set forth herein.

**130.**

Counterclaim Plaintiffs are informed and believe, and based thereon allege, that by virtue of Counterclaim Defendants' failure to comply with their promises and obligations to Counterclaim Plaintiffs and Counterclaim Defendants' material misrepresentations and failure to disclose material information to Counterclaim Plaintiffs, Counterclaim Defendants have received and will continue to receive substantial interests and revenues which they would not otherwise have received. Counterclaim Plaintiffs estimate the amount of Counterclaim Defendants' collective unjust enrichment to be in excess of $240 million.

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

131.

Counterclaim Defendants have no right to any revenues or interest resulting from their misappropriation of GST's business opportunity, and Counterclaim Defendants have been unjustly enriched through their wrongful conduct.

132.

Counterclaim Plaintiffs are thus entitled to restitution of all legal and equitable rights in the Bestel Opportunity and all profits therefrom.

### SEVENTH COUNTERCLAIM
(Violation of the Washington State Securities Act, RCW §§21.20.010 et seq.)
(Against all Counterclaim Defendants)

133.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 132 above as if fully set forth herein.

134.

This claim is asserted against all Counterclaim Defendants for primary or secondary liability under RCW §21.20.430 for violation of RCW §21.20.010, as each of the Counterclaim Defendants was a seller of the securities at issue, a director, officer or controller of a seller, or a substantial contributive factor in the sales transaction.

135.

As discussed above, each of the Counterclaim Defendants either directly or indirectly represented to GST, or substantially contributed to the representation to GST, that GST would be compensated with three to five million shares of Global stock in consideration for transferring the Bestel Opportunity to Global. Each of the Counterclaim Defendants also either directly or indirectly represented to GST, or substantially contributed to the representation to GST, that such consideration was reasonable and adequate, that the VSE would not allow greater compensation for the transfer, that acceptance of such consideration

Page 39 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

EXHIBIT _____ E

PAGE _____ OF _____

1  was otherwise in GST's best interests, or that Global would transfer to GST three to five

2  million shares of Global stock upon receipt of the Bestel Opportunity.  These representation

3  were accomplished by untrue or misleading statements and omissions.  These untrue or

4  misleading statements and omissions were material, were made in furtherance of a scheme to

5  defraud GST, and did operate as a fraud or deceit upon GST.

6                                          136.

7         Through the conduct alleged herein, Counterclaim Defendants violated RCW §

8  21.20.010, in that they (1) employed a device, scheme or artifice to defraud, (2) made untrue

9  statements of material fact or omitted to state material facts necessary in order to make the

10  statements made, in the light of the circumstances under which they were made, not

11  misleading, and (3) engaged in acts, practices, or a course of business which operated as a

12  fraud or deceit upon GST.

13                                          137.

14        In reliance on Counterclaim Defendants' direct or indirect representations or

15  omissions in violation of RCW §21.20.010, GST approved the transfer of the Bestel

16  Opportunity to Global, resulting in severe economic injury to GST in an amount exceeding

17  $225 million, the value of the Bestel Opportunity.  GST would not have approved the

18  transfer of the Bestel Opportunity to Global if it had known that the Counterclaim

19  Defendants' representations or omissions, or the representations or omissions to which the

20  Counterclaim Defendants substantially contributed, were untrue or misleading.

21                                          138.

22        As a result of Counterclaim Defendants' violation of the Washington State Securities

23  Act and GST's resulting injury, Counterclaim Plaintiffs are entitled to rescission of any

24  agreement or transaction whereby the Bestel Opportunity was transferred to Global, and to

25  the return of the Bestel Opportunity to Counterclaim Plaintiffs.

26

Page 40 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT  E

PAGE ____ OF ____

## EIGHTH COUNTERCLAIM
(Violation of the Washington Consumer Protection Act, RCW §§19.86.010 et seq.)
(Against all Counterclaim Defendants)

139.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 138 above as if fully set forth herein.

140.

Counterclaim Defendants' commercially related fraudulent acts, misrepresentations and omissions as alleged above also constitute unfair and or deceptive acts or practices in violation of RCW §19.86.020. This conduct implicates the public interest in preventing Washington residents from being deceived in business transactions and in preventing such deceptions from occurring in the State of Washington. In addition, Counterclaim Defendants' violation of the Washington State securities laws, as alleged above, in contravention of the public interest, constitutes a per se violation of RCW §19.86.020.

141.

Counterclaim Plaintiffs suffered severe economic injury in an amount exceeding $225 million, the value of the Bestel Opportunity, as a direct result of Counterclaim Defendants' unfair and or deceptive acts or practices. Accordingly, Counterclaim Plaintiffs are entitled to recover their damages, costs of suit, including attorneys' fees, and the maximum additional damages allowed pursuant to RCW §19.86.090.

## NINTH COUNTERCLAIM
(Constructive Trust)
(Against all Counterclaim Defendants)

142.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 141 above as if fully set forth herein.

Page 41 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT ____ E ____
PAGE ____ OF ____

143.

The Bestel Opportunity was wrongfully misappropriated by the Counterclaim Defendants. GST is, therefore, entitled to imposition of a constructive trust over the Bestel Opportunity and all proceeds therefrom.

144.

Counterclaim Plaintiffs are further entitled to imposition of a constructive trust upon all Global stock unlawfully acquired by the Counterclaim Defendants.

## TENTH COUNTERCLAIM
### (Accounting)
### (Against all Counterclaim Defendants)

145.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 144 above as if fully set forth herein.

146.

By reason of the wrongful misappropriation by Global and its agents of the Bestel Opportunity, and the use of that asset, the GST is entitled to a full accounting and payment of all profits of the Counterclaim Defendants' businesses.

147.

Counterclaim Plaintiffs are further entitled to an accounting of all unlawful profits obtained by the Individual Counterclaim Defendants.

WHEREFORE, Counterclaim Plaintiffs seek judgment as follows:

a.      For an award of compensatory damages against Counterclaim Defendants in an amount to be proven at trial;

b.      For an accounting from Counterclaim Defendants of all profits they have made from wrongful exploitation of opportunities belonging to Counterclaim Plaintiffs;

c.      For rescission of any agreement or transaction whereby the Bestel Opportunity

Page 42 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA 98101-1618
Telephone (206) 292-8930

EXHIBIT ___ E
PAGE ___

1  was transferred to Global, and restitution of all legal and equitable interests in the Bestel

2  Opportunity;

3      d       For imposition of a constructive trust on the corporate opportunities which are

4  the property of GST and of all profits unlawfully obtained by the Counterclaim Defendants;

5      e.      For special damages pursuant to RCW § 19.86.090.

6      f.      For Counterclaim Plaintiffs' costs of suit, including reasonable attorneys' fees;

7  and

8      g.      Granting Counterclaim Plaintiffs such other and further relief as the Court may

9  deem just and proper.

DATED this 23rd day of February, 1999.

BULLIVANT HOUSER BAILEY
A Professional Corporation


By_____
     Thomas D. Adams
     WSBA No. 18470
     RICHARD G. MATSON
     WSBA  No. 19641

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
DAVID S. STEUER
JARED L. KOPEL
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Defendants and Counterclaim Plaintiffs,
GST USA, INC., GST TELECOM, INC., and GST
TELECOMMUNICATIONS, INC.

\\SEA1\VOL1\CLIENTS\98\8935\GST\PLDGS\ANSWER AND AFFIRMATIVE DEFENSES.DOC

Page 43 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400
Seattle, WA  98101-1618
Telephone (206) 292-8930

EXHIBIT ___ E
PAGE ___ OF ___