## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) ) | **Chapter 11** |
| **GST TELECOM INC., <u>et al.</u>,** | ) ) ) | **Case No. 00-1982 (GMS)** |
| Debtors. | ) ) ) ) | **Jointly Administered** |
| _____ | ) ) | |
| **GST TELECOM INC., <u>et al.</u>,** | ) ) | |
| **Counterplaintiffs,** | ) ) ) | **Civil Docket No. 04-CV-1380** |
| **v.** | ) ) ) | |
| **JOHN WARTA,** | ) ) ) | |
| **Counterdefendant.** | ) | |

## DEBTORS' RESPONSE MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO JOHN WARTA'S MOTION FOR PARTIAL SUMMARY JUDGMENT <u>REGARDING COUNTS I-IV OF GST'S AMENDED COUNTERCLAIM</u>

Neil B. Glassman (No. 2087)
Steven M. Yoder (No. 3885)
Christopher A. Ward (No. 3877)
Mary E. Augustine (No. 4477)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

April 5, 2005

-and-

David S. Heller, Esq.
William J. Gibbons, Esq,
Josef S. Athanas, Esq.
Michael J. Faris, Esq.
Danielle S. Kemp, Esq.
LATHAM & WATKINS LLP
Suite 5800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700

Attorneys for the Debtors and
Debtors-in-Possession

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING.…………………………......................1

SUMMARY OF ARGUMENT.……………………………………………………...1

STATEMENT OF FACTS.……………………………………………..……………........3

ARGUMENT.………………………………………………………………………10

I.    WARTA'S MOTION FAILS TO ADDRESS, LET ALONE RESOLVE,
      GENUINE ISSUES OF MATERIAL FACT REGARDING WHEN THE
      STATUTE OF LIMITATIONS BEGAN TO RUN ON GST'S
      CLAIMS.……………………………………………………………………10

II.   GST'S AMENDED COUNTERCLAIM IS TIMELY UNDER ANY
      APPLICABLE STATUTE OF LIMITATIONS.…………………………………12

A.    The Counterclaim That GST Filed In the Washington State Action Stopped the
      Running of the Statute of Limitations.………………………………………12

B.    Even If the Washington Counterclaim Had Not Stopped the Running of the
      Statute of Limitations, GST's Amended Counterclaim Relates Back to Before
      the Statute Would Have Run and Is Therefore Timely.…………………………..13

C.    Warta Should Be Estopped From Arguing That GST's Amended Counterclaim
      Is Barred.……………………………………………………………………..16

III.  UNDER DELAWARE LAW THERE IS NO STATUTE OF LIMITATIONS
      IN CASES WHERE A CORPORATE DIRECTOR OR OFFICER
      FRAUDULENTLY DIVERTS CORPORATE FUNDS FOR HIS
      OWN USE................................................................................................................20

CONCLUSION.…………………………………………………………………22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………………………..10

*In re GNK Enters.,* 197 B.R. 444 (Bankr. S.D.N.Y. 1996)…………………………..12, 13

*Motley v. New Jersey State Police,* 196 F.3d 160, 163 (3d Cir. 1999)…………………..17

### FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 56(c) ................................................................10

Federal Rule of Civil Procedure 15(c) ................................................................15

### FEDERAL STATUTES

11 U.S.C. § 108...............................................................................................13, 14

28 U.S.C. § 1452...................................................................................................18

### FEDERAL RULES OF BANKRUPTCY PROCEDURE

Federal Rule of Bankruptcy Procedure 7001 ......................................................10

### STATE CASES

*Acierno v. Goldstein,* No. 20056, 2004 WL 1488673 at *3
(Del. Ch. June 25, 2004) ......................................................................11

*Bovay v. H.M. Byllesby & Co.,* 38 A.2d 808 (Del. 1944)..........................................20, 21

*Brown v. Dolese*, 154 A.2d 233 (Del. Ch. 1959) ................................................21

*Kaufman v. Albin,* 447 A.2d 761, 764 (Del. Ch. 1982) ......................................11

GST Telecom Inc. and the other debtors and debtors-in-possession in the above-captioned cases (collectively, "GST"), by their attorneys, hereby respond to John Warta's ("Warta") Motion for Partial Summary Judgment Regarding Counts I-IV of GST's Amended Counterclaim (the "Motion").

## NATURE AND STAGE OF PROCEEDINGS

The instant adversary proceeding arose out of GST's voluntary petition for relief under chapter 11 of the Bankruptcy Code, filed on May 17, 2000. This proceeding concerns the disputed claim of GST's former President and Chief Executive Officer, John Warta, the last party with a disputed claim against the GST estate remaining to be resolved. Pursuant to this Court's December 9, 2004 Stipulated Case Management Order, fact discovery closed on February 28, 2005,[1] and the case is set for trial beginning November 7, 2005. The Motion seeks summary judgment against GST on four of GST's affirmative counterclaims against Warta, but does not challenge GST's claim of equitable subordination.

## SUMMARY OF ARGUMENT

Warta's motion for summary judgment is a blatant attempt to achieve a strategic advantage from the fact that Warta sandbagged GST, its creditors and this Court with respect to the claims that he intends to assert at trial in this matter. Warta seeks an order that will *not* eliminate any factual issues from trial of this matter, and will *not* eliminate any of GST's affirmative claims against Warta. Instead, Warta asks this Court

---

[1] There remains one additional fact witness deposition to be taken. As a result of a change of counsel by Warta in late January, 2005 and scheduling difficulties that change created – all of which have been fully discussed in briefing on Warta's Motion for Protective Order and GST's Motion for Fees and Costs, currently pending before the Court – the final scheduled fact witness deposition could not be completed prior to the close of discovery. The parties have, by agreement, scheduled that deposition to take place on April 5, 2005.

to require GST – at a time when all claims against GST have been resolved except this one, and most of the assets of the company have already been distributed to creditors – to try the same case against Warta *twice* in two different forums in order for GST to obtain any affirmative relief for the creditors who were damaged by Warta's fraud, conversion, breach of contract and breach of fiduciary duties.

Warta asks this Court to find GST's claims in this action barred by the statute of limitations even though he admits that those claims were – by anyone's calculation – timely filed and remain pending in Washington State. His request should be denied for the following reasons: (1) Warta is incorrect regarding the time by which the statute of limitations began to run. At a minimum, there remain genuine issues of material fact regarding the running of the statute that must be resolved at trial. (2) GST's claims are not time-barred because the filing of GST's Counterclaim in the Washington State Action stopped the running of the statute of limitations. The only case cited by Warta does not change this fact. (3) Because GST's Magnacom claims were still timely when GST filed its bankruptcy proceeding, its Amended Counterclaim in this action relates back to its original objection to Warta's claim and is timely. (4) Even if GST's claims had expired before the filing of the bankruptcy petition – which they had not – Warta should be estopped from asserting the statute of limitations. (5) Finally, under longstanding Delaware law, an officer or director such as Warta who commits fraud and deceit against his corporation for personal benefit cannot hide behind the statute of limitations.

## STATEMENT OF FACTS

### GST Investigates Director Misconduct. [2]

Warta was the Chief Executive Officer of GST beginning in March of 1994 until June 15, 1998. Exs. 1 & 2.[3] In addition, Warta also served as a member of the board of directors of several GST companies, the last from which he resigned on September 15, 1998. Exs. 2 & 3. For nearly a year prior to Warta's resignation, GST had been investigating improprieties by certain current and former officers and directors of the company. On October 20, 1998, the investigators reported their findings to the GST board that improprieties had been committed in two areas. Ex. 4.

The first area of misconduct involved transactions in which, it was determined, certain GST directors had wrongfully caused a GST corporate opportunity involving a Mexican telecommunications company, Bestel S.A. de C.V. (the "Bestel Opportunity") to be taken by a company in which those GST directors had personal interests.[4] During the course of this investigation, GST reached the conclusion that Warta was involved in the misappropriation of the Bestel Opportunity along with other current and former directors. Ex. 4.

---

[2]   Warta baldly asserts that no events occurred after January 1997 with respect to the Magnacom transactions that are the subject of GST's counterclaims, and therefore concludes that the statute of limitations ran before GST's bankruptcy filing. GST has no choice but to rebut this unsupported assertion with an accurate recitation of the relevant facts.

[3]   All references to Exhibits refer to those exhibits attached to the Declaration of Danielle S. Kemp submitted herewith.

[4]   The Bestel Opportunity arose around the beginning of 1996, when Grupo Varo, a Mexican investment group, through Occidental de Telecomunicacion, S.A. de C.V. and its wholly-owned subsidiary, Bestel S.A. de C.V. ("Bestel"), was granted, by the Mexican telecommunication authority, one of seven concessions to build a network consisting of three high-density polyethylene conduits in which fiber optic cable would be installed, linking 28 Mexican cities. Grupo Varo was interested in identifying another company or companies to invest in Bestel, including subscribing for 49% of the shares of Bestel. Through the Bestel Opportunity, the chosen company would acquire, either directly or indirectly, a 49% interest in the network and participate in the revenues from the business. Ex. 4.

**The Magnacom Transactions.**

The second area of misconduct involved transactions in which Warta had improperly caused approximately $14 million of GST funds to be funneled into a company that was wholly owned by him. In October of 1995, Warta created Magnacom Wireless, LLC ("Magnacom") in order to hold and exploit C-Block and F-Block Broadband Personal Communications Services licenses ("PCS Licenses"). Magnacom was wholly owned, directly or indirectly, by Warta. Ex. 5. In or about July of 1996, without informing or obtaining approval from GST's board of directors, Warta caused GST to advance approximately $5.4 million to Magnacom as a down payment on a number of PCS Licenses. Ex. 6. That same month, Magnacom was the winning bidder of five C-Block PCS Licenses. Later that year, Warta caused GST to advance another $5.5 million to Magnacom.[5] Ex. 6. A special meeting of the GST board was held on January 14-16, 1997, at which time the board authorized another $3.38 million to be advanced to Magnacom. Ex. 8. In July of 1997, Magnacom was the winning bidder on thirteen additional F-Block PCS Licenses. Ex. 9.

Had Magnacom developed the necessary infrastructure, which would have cost hundreds of millions of dollars, ownership of the PCS Licenses could have enabled Magnacom to provide cellular service to customers in the areas covered by those licenses. Ex. 5. When GST was given the opportunity to approve advances to Magnacom *after* the

---

[5]  According to the testimony of a former member of GST's board, once Warta had secretly caused GST to advance the initial $5.4 million to Magnacom with no reasonable possibility of it being returned, GST's board was faced with the dilemma of either losing the $5.4 million or hoping that the further advance of $9 million would preserve the possibility of receiving some value for the monies already advanced. Ex. 7 at page 74 lines 14 - 25.

initial $5.4 million advance had virtually tied its hands, it was on the understanding that

Magnacom would find independent financing for the construction of the network.  Ex. 7.

Warta, with others, attempted to conceal GSTs substantial financial risk by

making it appear that GST would have a mechanism to obtain some value for its money,

when no such mechanism likely existed.  Initially, the alleged mechanism was portrayed

as a business arrangement between Magnacom and GST whereby GST would receive an

unidentified benefit from the operation of the PCS Licenses.  Ex. 6.  Thereafter, Warta

devised a "Reseller Agreement" that purported to give GST airtime on Magnacom's

nonexistent PCS network.  Ex. 10.  In addition, Magnacom's Operating Agreement

provided for GST to have an "option" to take control of Magnacom for a payment of

$1.00.  Ex. 5.  At the same time that Warta was telling the GST board that the Reseller

Agreement would provide GST with low cost airtime and the Operating Agreement

would give GST effective control over the PCS Licenses purchased with GST's funds,

Warta was aware that both the nonexistent airtime and the option were illusory, because

(1) Magnacom did not have an operational PCS network and (2) GST, a Canadian

corporation, was barred from exercising the option by FCC regulations prohibiting

foreign entities from controlling more than 25 percent of any entity holding C- or F-

Block licenses.[6]  Nonetheless, in January, 1998 Warta began the process of transferring

some of the licenses that had been purchased with GST funds to a new entity, wholly

owned by Warta, called PCS Plus, Inc. ("PCS Plus").  In connection with that transfer,

Warta represented to the FCC **under penalty of perjury** that PCS Plus was not **directly or**

---

[6] Even under the Reseller Agreement, had GST been able to exercise its option to take control of
Magnacom without violating FCC regulations, which it couldn't, GST could not actually exercise
that option until an agreement had been reached between GST and Warta's company regarding
services and facilities.  That agreement was not completed until March 27, 1998.  Ex. 11.

*indirectly* controlled by a corporation which was more than 25% foreign, thus testifying that it was not controlled by GST, a Canadian corporation. Ex. 12.

Under Warta's direction, Magnacom was unable to find additional funding to build the PCS network and ultimately became unable to make required ongoing payments on the PCS Licenses and its payroll. On June 2-3, 1998, the GST board was asked and agreed to fund an additional $200,000 to Magnacom to give the company time to conclude a deal for financing from Qualcomm, Inc. ("Qualcomm"). Ex. 13.

Shortly thereafter, Warta resigned as president of GST. By August of 1998, Warta became an obstacle to any deal between GST and Qualcomm whereby GST could obtain the return of its investment in Magnacom, even though he remained the sole owner of Magnacom. Ex. 14. In order to convince Warta to cooperate, GST agreed to enter into an Indemnity Agreement executed in September of 1998, under which GST would indemnify Warta for certain expenses on the condition that Warta execute an agreement whereby Qualcomm would purchase the assets of Magnacom and GST thereby would obtain the return of a significant portion of the money Warta had transferred to Magnacom.[7] Ex. 15. Nonetheless, after Warta failed to fully cooperate with the negotiations, the Qualcomm transaction fell through. Ex. 16. On October 9, 1998, Warta then contacted principals at Qualcomm in an attempt to negotiate a sale of Magnacom assets that would not involve GST, but by then Qualcomm had lost interest in the deal. Ex. 17. By October of 1998 Magnacom was out of money and unable to pay back any of GST's money that Warta had caused to be diverted to Magnacom.

---

[7] This is the same Indemnity Agreement that forms the basis of some of Warta's claims in this bankruptcy.

582742v1
CH\752314.5

6

Magnacom filed for bankruptcy on October 28, 1998 and GST lost all $14.4 million that Warta caused to be transferred to Magnacom.  Ex. 18.

### Pre-Petition Litigation.

By August of 1998, GST's attorneys had tentatively concluded that Warta had breached his duties to the company in connection with the Magnacom transactions. Ex. 19.  In October of 1998, GST's attorneys advised the company to bring legal action against those directors – including Warta – implicated in the Bestel wrongdoing.  Ex. 4. On October 20, 1998, GST sued Warta, among others, in California for their misappropriation of the Bestel Opportunity.  Ex. 20.  A few months later, on January 25, 1999, Warta sued GST in the Superior Court for King County, Washington (the "Washington State Action"), alleging breach of his employment contract and breach of his Indemnity Agreement with GST.  Ex. 21.  On February 23, 1999, GST answered and counterclaimed in the Washington State Action alleging, among other things, misappropriation of funds in connection with the Magnacom transactions.[8]  Ex. 22.

### Warta's Original Claims and GST's Original Objection.

When GST filed its petition for relief under Chapter 11 of the Bankruptcy Code on May 17, 2000, Warta's claim in the Washington State Action was stayed and no further action was taken in that matter.[9]  Ex. 24.  Warta could have sought relief from the automatic stay and allowed both his claim and GST's claim to be prosecuted together in

---

[8]    Significant legal maneuvering continued, with actions being filed in British Columbia, Canada by both sides, and the California action ultimately being dismissed on forum non conveniens grounds. Ultimately, GST settled the British Columbia actions with most of the defendants, not including Warta, and received some $30 million in that settlement.  Ex. 23.

[9]    In August of 2004, GST was alerted to the fact that GST's counterclaims in the Washington State Action had been administratively dismissed without prejudice and without notice to GST.  *See* Kemp Decl. Ex. 25.  Upon learning of this error, GST filed a Motion for Reinstatement of Action in the Washington Court, which was granted on October 15, 2004.  Exs. 26 & 27.

Washington.  He did not.  Instead, Warta waited until two days before the claims bar

date, and on January 29, 2001 filed his initial Proofs of Claim Nos. 764, 765 and 766 (the

"Original Claims") against GST.  Ex. 28.  The Original Claims alleged breaches of

Warta's Employment Agreement with GST and breaches of Indemnity Agreements

between GST and Warta:  the very same claims Warta had asserted in the Washington

State Action.  Indeed, Warta's Original Claims attached the Complaint from the

Washington State Action as an exhibit.

On December 7, 2001, GST filed timely objections to Warta's Original

Claims.  Among other things, just as Warta's Original Claims attached Warta's

Complaint in the Washington State Action, GST's objections attached and incorporated

by reference GST's Answer and Counterclaim in that action.  Ex. 29.  GST did not at that

time file an adversary complaint against Warta in connection with its Counterclaim in the

Washington State Action, but GST reserved the right to do so in the future.  In addition,

GST repeatedly sought and received extensions of the time by which GST could seek

removal of actions like the Washington State Action.  Ex. 30.

The parties litigated Warta's claim as a breach of contract and indemnity

claim for approximately a year and a half.  Meanwhile, GST's plan of liquidation was

confirmed on April 16, 2002, by which the amounts and priorities of virtually all claims

were settled.  Bankr. D.I. 2246.  Distributions to creditors began in June of 2002.  On

June 11, 2002, GST's final requested extension of time to remove actions expired and

GST elected not to extend it again, because by then all claims and reserves had been set

and the bankruptcy appeared to be winding down.

### Warta's Amended Claims and GST's Counterclaims.

Having sandbagged long enough, on June 12, 2003, Warta for the first time informed GST that he intended to file an amended claim that would require GST to litigate the merits of the Bestel and Magnacom cases that were the subject of GST's Counterclaim in the Washington State Action. Three months later – and nearly three years after the claims bar date had expired – Warta filed a motion for leave to amend his claims to include an entirely new claim seeking an additional $13 million in damages for "Detrimental Reliance/Bad Faith." Warta argued to this Court that he should be allowed to file his new claims because "they arise from the same transactions and occurrences giving rise to the original Claims." Ex. 31 at ¶ 19. This Court granted Warta leave to file his new claims, and Warta did so on January 13, 2004 (the "Amended Claims"). Ex. 32.

Among Warta's new claims was an allegation that GST acted in bad faith when it brought the California and British Columbia actions against Warta, and when it asserted a counterclaim against Warta in the Washington State Action. Warta claimed that such litigation was meritless and was brought in a bad faith attempt to injure Warta. In essence, Warta sought to relitigate all these actions in order to demonstrate they supposedly lacked merit and were brought in bad faith. Ex. 32. Faced with these new claims, which would require addressing the merits of GST's previously-asserted actions relating to the Bestel Opportunity and the Magnacom transactions, on February 12, 2004 GST timely filed objections to Warta's Amended Claims and asserted counterclaims for fraud, conversion, breach of fiduciary duty and breach of employment agreement arising

out of the Bestel Opportunity and the Magnacom transaction that were the subject of

Warta's claims.[10]  Ex. 33.

       Warta now argues that GST is barred by the statute of limitations from

bringing these claims even though they stem from the very same facts and circumstances

at the center of Warta's own claims, which he failed to file until nearly four years after

this bankruptcy proceeding began and almost exactly five years after those very same

claims were first raised in the Washington State Action, where they are still pending.

## ARGUMENT

       Summary judgment should be granted only when the evidence

demonstrates that there is no genuine issue as to any material fact, and the moving party

is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  Summary judgment is not warranted here.

## I.   WARTA'S MOTION FAILS TO ADDRESS, LET ALONE RESOLVE, GENUINE ISSUES OF MATERIAL FACT REGARDING WHEN THE STATUTE OF LIMITATIONS BEGAN TO RUN ON GST'S CLAIMS

       Warta's entire motion rests on the proposition that there are no "relevant

facts, relating to Magnacom that occurred after January 1997."  Warta Brief at 5.  Based

on this, Warta concludes that the applicable statute of limitations began to run in January

of 1997 and had run by January of 2000.  Since that is prior even to the filing of GST's

bankruptcy, Warta reasons that GST's Amended Counterclaim is untimely.  As the facts

set forth in detail above attest, Warta's major premise is simply false.

---

[10]    The filing of that counterclaim initiated the opening of this adversary proceeding, pursuant to Federal Rules of Bankruptcy Procedure Rule 7001.  On October 7, 2004, GST filed an amended counterclaim (the "Amended Counterclaim") withdrawing claims relating to the Bestel Opportunity, but continuing to assert counterclaims with respect to the Magnacom transactions. Ex. 34.

There is no need to repeat all the post-1997 events described in detail above that give rise to GST's Amended Counterclaim. A few examples will suffice to show that Warta's conduct that led to GST's loss of some $14.4 million most certainly did not end in January 1997, as Warta states. For example, as late as June of 1998, two weeks before his resignation, Warta asked for and received Board approval for GST to give still more money to Magnacom, indicating that the money was needed to keep Magnacom afloat while GST and Warta attempted to sell assets of Magnacom to Qualcomm so GST could recoup its investment. Over the ensuing months, Warta used his hold over Magnacom and threats not to participate in any sale as leverage to extract from GST the very Indemnification Agreement that he asserts in his claims in this Court. Still later, after he had effectively quashed the deal that GST had been negotiating with Qualcomm, Warta contacted Qualcomm on his own in an attempt to sell the Magnacom assets without GST's involvement. Not until the end of October 1998, when Magnacom filed for bankruptcy, did it finally become clear that GST would not be paid back any of the money that Warta had diverted to Magnacom.

The statute of limitations in Delaware begins to run when the cause of action accrues. Where, as here, the alleged conduct constitutes a series of continuing wrongs, the statute of limitations does not begin to run until the last of the series of wrongs. *See, e.g., Acierno v. Goldstein,* No. 20056, 2004 WL 1488673 at *3 (Del. Ch. June 25, 2004); *Kaufman v. Albin,* 447 A.2d 761, 764 (Del. Ch. 1982). Warta's continuing wrongs continued well into October of 1998, when he thwarted GST's attempt to retrieve the money it had put in Warta's companies, and Warta attempted to reap the

benefit himself with a sale not involving GST. That means the statute of limitations did

not expire before October 2001, long after the GST bankruptcy was filed.[11]

In any event, it is clear that Warta's Motion does nothing more than raise a

number of genuine issues of fact regarding when the statute of limitations began to run.

For that reason alone, Warta's Motion must be denied.

## II.    GST'S AMENDED COUNTERCLAIM IS TIMELY UNDER ANY APPLICABLE STATUTE OF LIMITATIONS

### A.    The Counterclaim That GST Filed In the Washington State Action Stopped the Running of the Statute of Limitations

Regardless of what date the Court may ultimately determine to be the

beginning of the statute of limitations period, GST's Amended Counterclaim is timely

because it does nothing more than restate claims already asserted that remain pending in

the Washington State Action.[12]  Warta contends that the filing in Washington State did

not stop the running of the statute of limitations with respect to a refiling of those claims

in this Court. That is incorrect.

The only case Warta cites for the proposition that the statute of limitations

may continue to run even after an action has been filed is *In re GNK Enters.,* 197 B.R.

444 (Bankr. S.D.N.Y. 1996). That case is, however, inapplicable. In that case, not only

had the same claims been filed previously in three different courts, in two of the three the

courts had ***dismissed those claims with prejudice***. As the *GNK* court noted:

> The claims for affirmative relief raised by the Debtor in its first
> through tenth claims for relief have already been determined

---

[11]    As discussed below, GST's Amended Counterclaim would then relate back and therefore be timely. *See* disc. at 13-16 *infra.*

[12]    Warta has not challenged the timeliness of GST's counterclaim in the Washington State Action, which was initially filed on February 23, 1999. Even on Warta's theory that the limitations period began in January 1997, that counterclaim was timely filed.

> adversely to AGC, the Debtor's assignor and to the Debtor itself.
> Thus, the Debtor cannot now relitigate those issues in the form of a
> claim for affirmative relief or as an objection to a proof of claim
> filed in the bankruptcy case.

*Id.* at 450.  No such consideration is present in our case, where GST's claims have never

been adjudicated on the merits.

When GST filed timely counterclaims in the Washington State Action, the

statute of limitations was satisfied.  Its re-filing of that claim in this bankruptcy

proceeding was not barred by the statute of limitations.

**B.      Even If the Washington Counterclaim Had Not Stopped the Running
of the Statute of Limitations, GST's Amended Counterclaim Relates
Back to Before the Statute Would Have Run and Is Therefore Timely**

Even if GST could not rely solely on its counterclaim in Washington State

to satisfy the statute of limitations, its Amended Counterclaim in the instant action is

timely under principles of relation-back.

As discussed above, the applicable statute of limitations on GST's claims

relating to Magnacom did not begin to run prior to October of 1998.  Thus, the statute of

limitations did not expire until at least October of 2001.  Accordingly, when GST filed its

bankruptcy petition on May 17, 2000, GST's claims against Warta relating to Magnacom

were not yet time-barred.  Under Section 108(a) of the Bankruptcy Code, GST had until

the ***later*** of the date on which the statute of limitations would otherwise run or the date

two years after the entry of an order of relief to preserve its right to assert claims related

to Magnacom.  *See* 11 U.S.C. § 108(a).  Section 108 provides in relevant part:

> (a)  If applicable nonbankruptcy law…fixes a period within which
> a debtor may commence an action, and such period has not expired
> before the date of the filing of the petition, the trustee may
> commence such action only before the ***later*** of—

(1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2)  *two years after the order for relief.*

11 U.S.C. § 108 (emphasis added).

The order for relief was entered in GST's bankruptcy case on May 17, 2000.  Thus, under Section 108(a) the statute of limitations did not expire until May 17, 2002, well after GST timely opposed Warta's Original Claims on December 7, 2001. Warta's Original Claims had attached his Complaint in the Washington State Action. Likewise, GST's Objection attached its Counterclaim filed in the Washington State Action.  That Counterclaim included the same allegations relating to Magnacom that are at issue in GST's Amended Counterclaim in this adversary proceeding.  No adversary proceeding was begun, because GST did not at that time assert the facts set forth in its Objection and the attached Counterclaim as a basis for affirmative relief, although it reserved the right to do so.

In GST's view, there was no need to do so until after Warta filed his Amended Claim on January 13, 2004.  At that time, Warta added an entirely new and novel claim based upon the allegation that GST's prior litigation against Warta, including the Bestel litigation and the Magnacom Counterclaim in Washington, was an intentional, bad faith effort to injure Warta.  This Amended Claim, it appeared, would result in this Court being asked to address the merits of the Bestel and Magnacom claims.  If Warta was going to ask this Court to award some $13 million in damages because GST's litigation was brought in bad faith, GST was going to have to assert its good faith and address the merits of its case *and* risk significant liability if it did not.

In connection with Warta's motion for leave to amend to add his new Bad Faith claim, Warta argued that the amendment was governed by Rule 15(c), Fed. R. Civ. P., which allows for amendments that arise out of the same conduct, transaction or occurrence set forth in the original pleading.  Under Rule 15(c), such amendments, when allowed, will relate back to the date of filing of the original pleading for statute of limitations purposes.  In arguing thus, Warta was implicitly acknowledging that GST's Amended Counterclaim, which does nothing more than re-state the claims that were attached to and incorporated by reference in GST's original Objection, also satisfied Rule 15's requirements for relation back.  GST's Objection sought to have Warta's Original Claims expunged for the following reasons, among others:

> In Claim No. 764 Claimant seeks to be compensated for Debtors' alleged breach of his employment agreement (the "Employment Agreement"), attached as <u>Exhibit A</u>, for wrongful termination in June of 1998.  The Debtors contend in their answer and counterclaim to <u>Warta v. GST USA, Inc. et al.</u>, No. 99-2-02287-4SEA, County of King, Superior Court of the State of Washington *(the "Counterclaim", attached hereto as <u>Exhibit B</u> and incorporated herein by reference),* that the Claimant was not terminated by the Debtors, but resigned voluntarily…

> In the alternative, if the Court finds that the Claimant did not voluntarily resign, Claim No. 764 should be disallowed in full and expunged because the Claimant was terminated for Cause, as defined in the Employment Agreement.  The Employment Agreement expressly permits the Debtors to terminate the Claimant for Cause.  Paragraph 16, in pertinent part, provides: "For purposes of this Agreement, the following shall constitute Cause… (iii) theft, embezzlement, fraud, misappropriation of funds, other acts of dishonesty or the violation of any law or ethical rule relating to [the Claimant's] employment." *The Counterclaim alleges, among other things, that the Claimant committed fraud by diverting the Debtors' resources for his own benefit and made false representations regarding the advisability of advancing funds to a company he owned.*

Ex. 29 at ¶¶ 10-11 (emphasis added). Thus the Counterclaim's allegations with respect to the Magnacom transactions formed a part of the basis for GST's objection to Warta's claims.

Accordingly, if Warta's Amended Claims for alleged bad faith arising out of GST's Bestel and Magnacom litigation satisfied Rule 15(c)'s requirement that they arise out of the same facts and circumstances set forth in Warta's Original Claims, then GST's Amended Counterclaim seeking damages resulting from the very same transactions that were the basis of GST's original Objection must satisfy Rule 15(c) as well.[13] GST's Amended Counterclaims are, therefore, timely and Warta's motion for summary judgment must be denied.

### C.    Warta Should Be Estopped From Arguing That GST's Amended Counterclaim Is Barred

The fundamental irony behind Warta's current contention is that GST's Amended Counterclaims are responsive to claims that Warta himself initiated almost 4 years after this bankruptcy proceeding began. Indeed, GST's claims are nothing more than the logical flip-side of Warta's claims. Warta seeks an adjudication that GST had no good faith basis to bring its Bestel and Magnacom litigation against him. Since the merits of the litigation are going to be addressed in any event, GST seeks an adjudication that GST's Magnacom claims have merit and that Warta should be held liable for his conduct. Allowing Warta to assert that the statute of limitations bars GST's claims against him while simultaneously allowing Warta to assert his claims against GST would

---

[13]    Warta should not be allowed to have his cake and eat it too. If the Court determines that GST's Amended Counterclaims do not relate back to the original Objection under Rule 15(c), then by definition Warta's Amended Claims do not either. If GST's Amended Counterclaims are dismissed as untimely, then the Court should dismiss Warta's Amended Claims as well.

be inequitable and would reward Warta for having sandbagged GST. This Court should find that Warta is estopped from asserting that GST's claims are barred.

Under principles of judicial estoppel, this Court may prevent a party from taking different positions on an issue at different times in order to gain an advantage.

> Judicial estoppel may be invoked by a court at its discretion to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions.

*Motley v. New Jersey State Police,* 196 F.3d 160, 163 (3d Cir. 1999). Warta's argument that his Amended Claims relate back under Rule 15(c) because they arise out of the same facts and circumstances as those in the Original Claims, while GST's Amended Counterclaim does not relate back, has Warta taking the types of inconsistent positions that judicial estoppel is designed to prevent.

Warta should similarly be estopped from asserting that GST's claims are barred by the statute of limitations because it is Warta's own conduct in these proceedings that have resulted in GST's claims being filed when they were. There is no question that GST could bring its claims against Warta in its currently-pending action in Washington State. But there is also no question that requiring GST to pursue claims in Washington State that will already be part of the trial of this matter would be extremely burdensome on the GST estate at a time when the estate has nearly wound up all remaining claims and has made substantial distributions to creditors. Finally, there is no question that all factual issues underlying GST's claims against Warta will be tried in this forum, because Warta acknowledges that there is no basis for contending that GST's equitable subordination claim is time-barred. Nonetheless, what Warta asks this court to

do is to require GST to have two trials instead of one. The Court need not, and should not, allow such an absurd result.

In addition to being costly to the estate, it would again be rewarding Warta for his studied disregard for orderly procedure in this bankruptcy case. When GST filed its bankruptcy proceeding, Warta had a choice. Warta could have sought relief from the stay to pursue his claims, along with GST's claims, together in the Washington State Action. He did not. Instead, he waited until two days before the claims bar date and filed a claim that did not allege "bad faith" or anything else other than breach of his employment contract and indemnity agreements.

At that point, GST had a choice as well. GST could have filed a counterclaim in this Court or, even if Warta is correct – which he is not – that the statute of limitations had run prior to the bankruptcy filing, GST could have removed the Washington State Action pursuant to 28 U.S.C. § 1452. GST had an obligation at that point, however, to act in the best interests of all creditors, and to evaluate its actions with an eye towards preserving estate assets. Because even a valid claim may be difficult and expensive to win, it was GST's obligation to use its business judgment to determine whether to pursue its Magnacom claims against Warta. Given the nature of Warta's claims, GST declined to remove the Washington State Action.[14]

---

[14]    Warta attempts to suggest that certain comments by GST counsel at the October 7 status
conference indicate that GST's decision not to assert its Magnacom counterclaim earlier was
purely monetary. Warta quotes Mr. Gibbons out of context as saying the reason for the Amended
Counterclaim was because Warta had "ratcheted up" his claim from $2.6 million to some $15.6
million. In fact, however, Mr. Gibbons continued:

> not only gets ratcheted up to 15 million, Your Honor, but the issues by
> which they inject into the litigation read in a related way directly on
> what our counterclaim is, you know, to somehow argue that we can't
> raise the counterclaim in February of '04 after they essentially

GST did, however, seek and obtain an order extending the period in which GST could elect to remove actions such as the Washington Sate Action.  In fact, GST extended that date five times, including its final motion requesting an extension until June 11, 2002.  Only *after* Warta had litigated his claim in this Court for approximately a year and a half without raising the Magnacom or Bestel issues, and *after* the Court had approved GST's plan of liquidation, and *after* distributions under that plan had begun, did GST elect not to continue seeking extensions of the time to remove actions such as the Washington State Action.  Then, only *after* GST allowed the final extension to expire did Warta surprise GST, the remaining creditors and this Court by moving to amend his claims to raise GST's Bestel and Magnacom litigation.  So only *after* Warta believed GST could no longer remove the Washington State Action and thereby assert its claims against him in this forum, did Warta raise his newly-minted bad faith claim.

Warta should not be rewarded for such calculated delay tactics.  Even if this Court determines that the statute of limitations had somehow run prior to the filing of GST's bankruptcy – which it had not – in spite of GST's timely filing of the Washington Counterclaim, the Court should exercise its discretion to insure that Warta does not profit at the expense of other creditors by sandbagging.

---

changed the playing field that we were playing on one month earlier would be, I believe, improper and inequitable.

Ex. 35 October 7, 2004 Trans. at 28-29.

### III.  UNDER DELAWARE LAW THERE IS NO STATUTE OF LIMITATIONS IN CASES WHERE A CORPORATE DIRECTOR OR OFFICER FRAUDULENTLY DIVERTS CORPORATE FUNDS FOR HIS OWN USE

Finally, Warta has ignored long-standing Delaware law that prevents officers and directors in Warta's shoes from taking unfair advantage of the statute of limitations to bar otherwise meritorious claims.  The gravaman of GST's counterclaim against Warta is that he fraudulently engaged in self-dealing transactions by causing GST, without the prior knowledge of other members of the board of directors, to transfer funds to Magnacom, a company wholly owned by Warta.  This was done for the personal benefit of Warta and constituted egregious self-dealing by Warta in violation of his fiduciary obligations to GST.  The funds were used to enable Warta's company Magnacom to purchase PCS Licenses in FCC auctions, resulting in direct personal benefit to Warta.

Warta contends that the three-year Delaware statute of limitations for claims for fraud applies.  Delaware courts, however, have established an exception for cases such as this:  where, as here, a corporate officer or director fraudulently diverts corporate funds for his or her own use in self-dealing transactions, resulting in personal benefit to him or her, Delaware courts will not allow that officer or director the benefit of the statute of limitations.

In *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808 (Del. 1944), for example, officers and directors of a bridge building company fraudulently diverted money to another company, which was controlled by most of the same officers and directors.  *Id.* at 810-12.  The bridge building company was rendered bankrupt and the trustee brought an action claiming fraud and unfair dealing.  *Id.* at 814.  In addressing the argument that the claims were barred by the statute of limitations, the Court ruled that the statute of

limitations defense was not available under the circumstances. *Id.* at 821.    As Judge

Bowen, in a concurring opinion, summarized the principle:

> Sound public policy requires the acts of corporate officers and directors in dealing with the corporation to be viewed with a reasonable strictness. Where suit is brought in equity to compel them to account for loss or damage resulting to the corporation through passive neglect of duty, without more, the argument that they ought not to be deprived of the benefit of the statute of limitations is not without weight; but ***where they are required to answer for wrongful acts of commission by which they have enriched themselves to the injury of the corporation, a court of conscience will not regard such acts as mere torts, but as serious breaches of trust and will point the moral and make clear the principle that corporate officers and directors, … will … [be] without the protection of the statute of limitations, especially where insolvency of the corporation is the result of their wrongdoing.***

*Id.* at 820 (emphasis added).  The same result obtained in *Brown v. Dolese*, 154 A.2d 233

(Del. Ch. 1959), a similar case involving allegations that the president and director of one

company made fraudulent transfers to another company wholly owned by him.  In ruling

that that suit was not barred by the statute of limitations even though the transfers took

place some 10 years before the action was filed, the Court citing *Bovay* said the officer

owed a "heavy fiduciary duty" to the stockholders and declined to dismiss:

> statutes of limitations or laches should not at this juncture be applied to bar recovery as Roger [the officer] may in fact have been guilty of fraudulent breaches of trust resulting in his self-enrichment at the expense of the corporation.

*Id.* at 239-40.

Like in *Bovay* and *Brown*, Warta's deliberate self-dealing by fraudulently

diverting money from GST to a company that he wholly owned, is exactly the type of

egregious conduct that courts in Delaware have found does not deserve the benefit of the

statue of limitations.

## CONCLUSION

For the reasons set forth above, this Court should (a) deny Warta's Motion for Partial Summary Judgment because the Counterclaims are not barred by the Delaware Statute of Limitations and (b) grant such other relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
     April 5, 2005

                            THE BAYARD FIRM

                            Neil B. Glassman (No. 2087)
                            Steven M. Yoder (No. 3885)
                            Christopher A. Ward (No. 3877)
                            Mary E. Augustine (No. 4477)
                            222 Delaware Avenue, Suite 900
                            P.O. Box 25130
                            Wilmington, Delaware  19899
                            (302) 655-5000

                            -and-

                            David S. Heller
                            William J. Gibbons
                            Josef S. Athanas
                            Michael J. Faris
                            Danielle S. Kemp
                            LATHAM & WATKINS LLP
                            Suite 5800 Sears Tower
                            233 South Wacker Drive
                            Chicago, Illinois  60606
                            (312) 876-7700

                            Attorneys for the Debtors and
                            Debtors-in-Possession