# EXHIBIT 4

MINUTES OF A SPECIAL MEETING
OF THE BOARD OF DIRECTORS OF
GST TELECOMMUNICATIONS, INC.

A Special Meeting of the Board of Directors (the "Board") of GST Telecommunications, Inc., was held on October 20, 1998, at the San Francisco Hilton Union Square, commencing at 8:30 a.m.

The following Board members were present and in attendance:

> Jack Armstrong
> Joseph Basile
> Robert Ferchat
> Joseph Fogg
> Stephen Irwin
> Peter Legault
> Roy Megarry
> Mitsuhiro Naoe

The following persons were invited to and did attend part of the Meeting:

> Jim Avery
> Winton Derby
> John Goodrich, General Counsel
> Meredith Jackson
> Jeffrey Mayhook, Secretary
> Tim McCafferty
> Larry Portnoy
> David Steuer
> Dan Trampush, Chief Financial Officer



Mr. Ferchat served as Chairman of the Meeting, and Mr. Mayhook as Secretary.

The Board reviewed the draft minutes of the October 1, 1998, Special Meeting of the Board, copies of which were previously disseminated. Following discussion, upon motion duly made and seconded, the Board unanimously adopted the following resolution:

RESOLVED that the Minutes of the Special Meeting of the Board of Directors

1

CONFIDENTIAL

EXHIBIT
Ferchat **23**
5/13/03 PA

G 1303

held on October 1, 1998, with such amendments as noted by the Secretary are hereby approved.

Mr. Ferchat introduced the Litigation Committee Report, and noted that Mr. Armstrong had resigned from the Litigation Committee prior to its meeting on October 7, 1998.

Mr. Irwin commented that, in his view, the full Board should discuss and review litigation matters. Mr. Goodrich opined that the Company must be able to defend the process by which it initiates litigation, including conferring with counsel and discussing strategy and tactics, making it necessary to preclude debate with parties who may have an interest adverse to the Company. The Board considered a draft resolution respecting the Litigation Committee's authority.

Mr. Irwin asserted that any recommendation to proceed against directors amounted to a new issue, and that he did not have sufficient time to review the proposed draft resolution.

The Chairman declared a half-hour recess to give the Directors time to review the draft resolution.

The meeting reconvened 40 minutes later, but Messrs. Irwin and Legault did not return to the meeting. Brief discussion was held concerning revisions to the draft resolution relating to the Litigation Committee.

Messrs. Basile and Trampush were asked to leave the meeting, whereupon Mr. Ferchat introduced the subject of confirming Mr. Basile as Chief Executive Officer. After reviewing the search process relating to potential candidates, Mr. Ferchat recommended Mr. Basile's confirmation as the Company's Chief Executive Officer. Upon motion duly made and seconded, the Board unanimously adopted the following resolution:

2

CONFIDENTIAL

G 1304

RESOLVED that, subject to the terms and conditions of his amended employment agreement, Mr. Basile shall be and is hereby appointed to serve as Chief Executive Officer to the Company.

Messrs. Basile and Trampush then rejoined the meeting.

The Board considered indemnification agreements for Board members. Mr. Ferchat observed that certain Board members had such agreements, and that others did not. Both United States and Canadian counsel recommended that all Board members have such agreements. Upon motion duly made and seconded, the Board unanimously adopted the following resolution:

RESOLVED that the General Counsel is directed to prepare a form of indemnification agreement whereby, subject to certain statutory and insurance limitations, the Company agrees to indemnify its Directors against claims and actions; further, the Company's President is hereby authorized to execute such indemnification agreements on the Company's behalf.

Mr. Trampush then delivered a brief status report relating to certain divestment activities.

Messrs. Legault and Irwin returned to the meeting.

Ms. Jackson then reviewed the operation of certain indenture covenants restricting foreign investment and asset transfers. Following discussion, the Board decided to retain Morgan Stanley to advise the Company respecting potential covenant issues. Mr. Trampush left the meeting to arrange a conference call with Morgan Stanley representatives.

The Board then reviewed the draft resolution relating to the Litigation Committee. Mr. McCafferty read the draft and amendments which had been suggested and circulated to the Board. Mr. Irwin stated that he and Mr. Legault would abstain from voting on the resolution. Mr. Legault noted his concurrence with Mr. Irwin's position, and affirmed that he was against delegating his responsibilities to the Litigation Committee. Mr. Irwin stated that he and Mr. Legault had a prepared written statement which he directed be appended to the minutes of the

3

CONFIDENTIAL

C 1305

meeting. On motion duly made and seconded, with Messrs. Basile, Ferchat, Fogg, Megarry, and Naoe voting in favour of the resolution, and Messrs. Armstrong, Irwin, and Legault abstaining from the vote, the Board adopted the following resolution:

WHEREAS, by virtue of a series of resolutions, the Board of Directors of the Company authorized certain directors (a committee which has become known as the "Litigation Committee") to conduct a review and engage Canadian and US counsel to give advice in respect of certain transactions involving the Company and GST Global Telecommunications, Inc. ("GST Global") so as to allow the Litigation Committee to make recommendations to the board;

WHEREAS, the Litigation Committee, following extensive investigation and with the advice of counsel, has determined that the Company should commence legal proceedings with respect to matters involving the transfer of the Bestel S.A. de C.V. opportunity to Global, and may make further determinations with respect to the purchase of securities of Global by certain of directors and officers of the Company and other matters ancillary or related to either of the foregoing (collectively or separately such possible actions will be referred to as the "Global Litigation"). Furthermore, legal proceedings may be initiated in connection with the resignation or severance arrangements involving Mr. John Warta, or the transactions relating to Magnacom LLC, PCS Plus Inc. and other matters ancillary or related thereto (the "Warta Matters"); and

WHEREAS, the Board of Directors wishes to formally delegate to the Litigation Committee all matters in connection with the Global Litigation and the Warta Matters and to formalize the mandate, powers and responsibilities of the Litigation Committee.

NOW, THEREFORE, IT IS HEREBY RESOLVED THAT:

(1) The establishment of an independent committee to be known as the Litigation Committee (the "Litigation Committee") to deal with matters in respect of the Global Litigation and the Warta Matters, the members of which are Messrs. Fogg, Megarry and Ferchat, be and the same is hereby authorized, approved, ratified and confirmed.

(2) The Litigation Committee be and is hereby authorized for and on behalf of the Company to take all such actions and do such things as they, in their absolute discretion, may consider necessary or advisable in connection with the initiation, prosecution, settlement or discontinuance of any action, suit, complaint or proceeding relating to the Global Litigation or the Warta Matters, subject to and in accordance with these resolutions, without further approval of the Board of Directors.

(3) Without limiting the generality of the foregoing, the Litigation Committee

4

CONFIDENTIAL

C 1306

shall have the power and authority to:

(a) conduct or authorize any investigations which may form the basis for any claim which may be made in connection with the Global Litigation or the Warta Matters and to develop strategies to pursue those claims;

(b) without prior or further authorization, to initiate, prosecute, appeal, negotiate, resolve, settle, compromise, arbitrate, grant indemnity and otherwise pursue, control and exercise authority over the management and conduct of any investigation, action, suit, complaint or proceeding forming part of or in connection with the Global Litigation or the Warta Matters;

(c) authorize the expenditure and payment by the Company all expenses determined by the Litigation Committee to be reasonably necessary to pursue the Global Litigation or the Warta Matters, including, without limitation, all legal and other professional fees and costs incurred in connection with the investigation, initiation and prosecution of the Global Litigation or the Warta Matters;

(d) retain any agents, experts, consultants, advisors or counsel, and to have the authority on behalf of the Company to consult with and instruct such experts, consultants, advisors or counsel in connection with the Global Litigation or the Warta Matters and to cause the same to be reasonably compensated by the Company for services rendered;

(e) enter into, for and on behalf of the Company, such contracts, agreements, commitments and other arrangements and to authorize and approve such documents and agreements as may be necessary for the proper performance by the Litigation Committee of its responsibilities, including, without limitation, agreements for the engagement of professional advisors to the Litigation Committee;

(f) file or cause to be filed such pleadings, complaints, affidavits and other court documents, and to participate in, initiate or request such motions, adjournments, settlement or other conferences, hearings or discussions on behalf of the Company which the Litigation Committee may, in their absolute discretion, consider necessary or appropriate to carry out its responsibilities;

(g) direct management of and the professional advisors to the Company to provide such assistance, information, advice or recommendations as the Litigation Committee may consider necessary or advisable for the proper performance by the Litigation Committee of its responsibilities;

5

CONFIDENTIAL

C 1307

(h)    issue for and on behalf of the Company press releases or other public disclosure, at such times and containing such information as the Litigation Committee considers necessary or advisable in connection with the Global Litigation or the Warta Matters; and

(i)    with respect to any non-cash proceeds realized in any judgment or settlement of the Global Litigation or the Warta Matters, to sell, convey, transfer, assign, pledge, encumber, liquidate or otherwise deal with such non-cash proceeds or any part thereof or any interest therein, upon such terms and for such consideration as the Litigation Committee in their sole and absolute discretion deem desirable.

(4)  This Board directs that all directors, officers, employees, and advisers of the Company and its subsidiaries fully cooperate with the Litigation Committee with respect to the duties and responsibilities of the Litigation Committee and provide the Litigation Committee with access to such books, records, offices and other facilities as the Litigation Committee shall reasonably require for the purpose of performing its duties and exercising their powers.

(5)  In carrying out its responsibilities the Litigation Committee shall from time to time advise and consult with the Board of Directors of the Company and its management and professional advisors regarding the status of the Global Litigation or the Warta Matters, provided that nothing herein shall be construed so as to otherwise limit the control by the Litigation Committee over the Global Litigation or the Warta Matters.

(6)  The Board of Directors and the Litigation Committee hereby adopt and approve the code of conduct set out in Schedule "A" attached hereto for the Litigation Committee in respect of its conduct, review and deliberations.  The Litigation Committee shall be entitled to establish such further and other procedures for the purpose of performing its duties and exercising its powers and with respect to its deliberations, as it considers necessary or advisable, including, without limitation, a determination as to when its responsibilities have been performed and are complete.

(7)  Each member of the Litigation Committee shall be entitled to receive reasonable fees for his or her service thereon as determined by the Board of Directors of the Company from time to time and shall be indemnified to the full extent provided by law for all costs, charges or expenses reasonably incurred by them in the performance of their duties.

(8)  These resolutions will be deemed retroactive and any act performed by any director who is or has been a member of the Litigation Committee prior to the passage of these resolutions is hereby authorized, confirmed, ratified and approved.

6

CONFIDENTIAL

0 1308

The Chairman then declared a recess at 11:30 a.m.

The meeting reconvened at 12:05 p.m. with Mr. Avery of Morgan Stanley participating by telephone.

Following the conference call with Mr. Avery, the meeting minutes of the June 15, 1998, Special Board Meeting were then circulated for review and approval. Upon motion duly made and seconded, the Board unanimously adopted the following resolution:

> RESOLVED that the Minutes of the Special Meeting of the Board of Directors held on June 15, 1998 are hereby approved.

The President made an extensive general business report to the Board, addressing, among other things, facilities, operations, and the Company's actions with respect to a potential acquisition.

Mr. Goodrich presented an option status report, which indicated that, owing to certain deficiencies in the Company's proxy statements during the last annual shareholders meeting, the Company's option plans failed to address the requirements of the Toronto Stock Exchange.

Mr. Trampush led a review and discussion of the Company's financial performance for the quarter ending September 30, 1998, as well as discussed financial projections for Q1/99.

Mr. Armstrong then introduced the report of the Finance Committee, which had convened on October 7, 1998, to consider, among other things, several alternative cash flow forecasts. Mr. Armstrong also explained the terms of an offer to provide the Company with $100 million in financing for hardware purchases, as well as discussed certain financial issues concerning warrants held by the Company.

The next item on the agenda related to certain refinancing proposals from Morgan

7

CONFIDENTIAL

0 1309

Stanley Dean Witter and Bear Stearns.  Following brief discussion, it was determined that management would review the proposals and make a recommendation to the Board.

The final agenda matter relating to the proposed engagement of Mr. Irwin and his law firm on behalf of Mr. Warta, the Company's former Chief Executive Officer, was withdrawn by Mr. Irwin.

Upon motion duly made and seconded, the meeting was adjourned at approximately 2:30 p.m.


_____          _____
Robert Ferchat, Chairman                  Jeffrey Mayhook, Secretary

CONFIDENTIAL

G 1310

SCHEDULE "A"

Code of Conduct
for the Litigation Committee of the
Directors of GST Telecommunications, Inc.

1.    Appointment of the Litigation Committee.

By resolution of the Board of Directors of GST Telecommunications, Inc. (the "Corporation") dated October 20, 1998, the appointment of a Litigation Committee (the "Litigation Committee" or the "Committee") of the Board of Directors was authorized, approved, ratified and confirmed. Subject to section 115 of the *Canada Business Corporations Act*, the Litigation Committee was authorized under that resolution to, among other things:

    (a)    initiate, prosecute, appeal, negotiate, resolve, settle, compromise, arbitrate or otherwise pursue the Global Litigation and the Warta Matters (as defined in the above-referenced resolutions); and

    (b)    to oversee for the Corporation any matters related to the Global Litigation and the Warta Matters and the recovery, disposition or other handling of any proceeds of the Global Litigation and the Warta Matters and any expenses thereof.

2.    Power and Authority of the Litigation Committee

2.1    The resolution of the Board of Directors referred to in item (1) above establishes and confirms the general authority of the Litigation Committee. However, this authority should not be construed so as to grant to the Committee the power or authority to manage or supervise the management of the affairs and business of the Corporation generally or in relation to any specific transaction other than the Global Litigation and the Warta Matters.

2.2    The Board of Directors may, at any time, and from time to time, by subsequent resolution, expand, alter or abridge the power or authority of the Litigation Committee or terminate the appointment and authority of the Litigation Committee, for any reason it considers advisable.

3.    Membership of the Litigation Committee

3.1    Pursuant to section 115 of the *Canada Business Corporations Act*, a majority of the members of the Committee shall be resident Canadians.

3.2    The Board of Directors has appointed the members of the Litigation Committee. The Board continues to have the power to appoint, at any time and from time to time, additional

9

0 1311

members, or to remove any person from membership on the Committee.

3.3     Any member of the Committee may, at any time, withdraw from membership on the Committee by notice to the Chair of the Committee.

## 4.     Chair, Secretary and Records

4.1     The Litigation Committee should select one of its members as Chair. The Chair shall act as the Chair of any meeting of the Litigation Committee. Should the Chair not attend a given meeting, the members then in attendance should designate another person amongst them to act as Chair of that meeting.

4.2     The members of the Litigation Committee should designate a Secretary to record the proceedings at any of its formal meetings. The Secretary need not be a member of the Litigation Committee.

4.3     Any decisions or recommendations of the Litigation Committee should be decided by a majority vote of the Committee members, where each member in attendance is entitled to one vote. In the event of an equality of votes, the Chair shall not have a casting vote, but rather the Litigation Committee shall report the voting deadlock to the Board of Directors as part of its recommendations.

4.4     Any member of the Litigation Committee that, in his opinion or that of any other member of the Committee, has an actual or perceived conflict of interest in respect of any matter to be considered by the Litigation Committee should abstain from voting thereon, and, may be required, at the request of the other members of the Litigation Committee, to remove himself from the discussions relating to that proposed transaction or matter. The members of the Litigation Committee may consult with their legal counsel as to whether any actual or perceived conflict is of a degree to justify non-participation.

## 5.     Deliberations of the Litigation Committee

5.1     The Litigation Committee should conduct its deliberations in such a manner as to ensure that a reasoned decision is reached on an informed basis and, where required, with such advice as the members of the Committee consider appropriate.

5.2     Notwithstanding the suggested procedures herein, the members of the Litigation Committee should meet together at such times and in such places, as frequently as is considered appropriate and adjourn and otherwise regulate their deliberations and proceedings as they see fit.

5.3     Any notice calling a meeting of the Litigation Committee may be oral and given by telephone or in writing delivered personally or by means of electronic communication. Written notices specifying the time, place and nature of the business to be considered at any

10

CONFIDENTIAL

0 1312

meeting are useful as a foundation of the record of the Committee, but not mandatory. The notice should include, if possible, a suggested agenda for the meeting and enclose copies of any documents, reports or other information to be dealt with. A notice of meeting may include an invitation to any other person, including legal, financial or other advisors, to attend the meeting either generally or for a specific purpose.

5.4       Adequate time should be given between the calling and the convening of any meeting of members of the Litigation Committee to allow the members of the Litigation Committee to adequately assess, review and evaluate the business to be conducted and any information provided.

## 6.      Legal, Financial and Other Advisors

6.1       The Litigation Committee shall be assisted by the Corporation's legal counsel, but may, if it sees fit, engage other legal counsel and the services of any financial or other advisor to assist it in discharging its duties. Any such firm or person retained by the Committee may be any of the firms or persons which presently or in the past have represented the Corporation or may be any other person or firm sufficiently qualified to advise the Litigation Committee with respect to the matters to be addressed.

6.2       The decision as to persons or firms to be retained by the Litigation Committee as its legal, financial or other advisors shall be determined solely by the members of the Litigation Committee, in their absolute discretion. The Corporation shall have no authority to terminate, or to restrict or otherwise interfere in any decision made by the Litigation Committee to retain any particular legal, financial or other advisor or the scope of services to be provided by any such firm.

6.3       The Corporation shall be responsible for the payment of the reasonable fees and disbursements of any person or firm retained by the Litigation Committee.

## 7.      Access to Information

7.1       The Corporation and its officers, employees and advisors shall cooperate fully and provide to the members of the Litigation Committee and their authorized legal, financial and other advisors full and free access to any information required by any member of the Litigation Committee or their legal or other advisors.

7.2       The deliberations of the Litigation Committee and any reports, documents or briefs prepared by its legal or other advisers shall remain privileged and confidential among the members of the Litigation Committee and their advisers and unless otherwise determined by the Litigation Committee, shall not be available to nor need to be disclosed to the Board of Directors.

11

CONFIDENTIAL

0 1313

8.    <u>Minutes and Reports of the Litigation Committee</u>

8.1       The Secretary of any formal meeting of the members of the Litigation Committee shall prepare minutes of every such meeting. Drafts of the minutes should be provided by the Secretary to each member of the Litigation Committee who attended that meeting for their review and comment. A final version of the minutes of any meeting should then be prepared and approved by the members of the Litigation Committee who attended that meeting.

8.2       The Secretary of the Litigation Committee shall ensure that the minutes of the meeting are maintained in an orderly and complete fashion. The Secretary, on the advice of the members of the Litigation Committee, shall take whatever steps are considered necessary to ensure that the minutes remain confidential, unless that confidentiality is waived or the Committee is otherwise compelled by law to produce the minutes.

8.3       Unless otherwise waived by resolution of the Litigation Committee, communications between the Litigation Committee and its counsel shall be subject to solicitor-client privilege.

9.    <u>Reports of the Litigation Committee to the Board of Directors</u>

9.1       The Litigation Committee shall provide to each of the members of the Board of Directors of the Corporation and, where appropriate, to any legal financial or other advisor who assisted the Litigation Committee in the course of its review and deliberations such reports, in oral or written form, as it sees fit, with respect to the matters dealt with in that report.

CONFIDENTIAL

G 1314

TO:   Chairman
     Board of Directors
     GST Telecommunications, Inc. ("GST")

SUBJECT:  Resolutions regarding Litigation Committee's recommendations relating to possible
     claims against the undersigned in connection with his shareholdings in GST Global
     Telecommunications Inc. ("Global")

1.  I have been advised by my counsel to declare an interest in any resolutions relating to possible claims against me and to refrain from voting thereon.

2.  I have also been advised by my counsel that I should register my position, interest and opposition to any such claims.

3.  As the board knows, as previously disclosed and as reflected in GST's demand letter dated August 10, 1998, delivered to my counsel by GST's lawyers, I hold shares in Global. The demand reflected in GST's letter, the allegations implicit therein and any proposal to pursue it other than by my exoneration, threaten my reputation, rights, liabilities and personal assets.

4.  I believe that a claim is without merit against me; will prejudice GST and its claims for compensation against Global; and will expose GST to claims by shareholders and others including me and will needlessly put in issue GST's assets, disclosures and dealings with its shareholders, lenders, the market and Global.

5.  Further, to proceed against me without providing me with a proper opportunity to review with my counsel, and respond to, the facts and law relied on by GST in response to the information provided to GST on my behalf is a breach of the directors' duties.

6.  The failure to proceed fairly, to quickly complete the investigation, to exonerate me and to unqualifiedly withdraw the demand made of me and the allegations implicit therein exposes GST and the directors to possible claims by me.

7.  Further, the failure to pursue the proposal for mediation unnecessarily exposes GST to unnecessary risk of claims, expenses losses and damage to the reputations of everyone involved including GST.

8.  Finally, should GST commence claims against me I will defend them and I reserve my rights to pursue relief against GST.

9.  Reference is made to my counsels' letter to GST's counsel dated October 19, 1998

10.  For these reasons I hereby record my dissent from the proposed resolution to continue claims against me and others who were directors of GST in 1996.

11.  Please record my disclosure of interest and dissent in the minutes.


Dated October 20, 1998      _____

0 1315

CONFIDENTIAL