# EXHIBIT 5

# LIMITED LIABILITY COMPANY OPERATING AGREEMENT

OF

MAGNACOM WIRELESS, LLC




105127 5





TABLE OF CONTENTS

ARTICLE I
DEFINITIONS

1.1 Act . . . . . 1
1.2 Additional Contribution . . . . . 1
1.3 Agreement . . . . . 1
1.4 Assignee . . . . . 1
1.5 Bankrupt Person . . . . . 1
1.6 Business Day . . . . . 1
1.7 Capital Account . . . . . 1
1.8 Capital Contribution . . . . . 1
1.9 Company . . . . . 1
1.10 Disposition (Dispose) . . . . . 1
1.11 Distribution . . . . . 2
1.12 Effective Date . . . . . 2
1.13 Event of Default. . . . . . 2
1.14 FCC. . . . . . 2
1.15 Fiscal Year . . . . . 2
1.16 Initial Capital Contribution . . . . . 2
1.17 Initial Membership Interest . . . . . 2
1.18 Initial Sharing Ratio . . . . . 2
1.19 Licenses. . . . . . 2
1.20 Management Right . . . . . 2
1.21 Managing Member . . . . . 2
1.22 Member . . . . . 2
1.23 Membership Interest . . . . . 2
1.24 Net Cash Flow . . . . . 2
1.25 Organization . . . . . 3
1.26 Person . . . . . 3
1.27 Principal Office . . . . . 3
1.28 Proceeding . . . . . 3
1.29 Property . . . . . 3
1.30 Prospective New Member . . . . . 3
1.31 Schedule A . . . . . 3
1.32 Schedule B . . . . . 3
1.33 Securities Act. . . . . . 3
1.34 Sharing Ratio . . . . . 3
1.35 Substitute Member . . . . . 4
1.36 Tax Characterization and Additional Tax Terms . . . . . 4

ARTICLE II
FORMATION

2.1 Organization . . . . . 6
2.2 Agreement . . . . . 6
2.3 Name . . . . . 6
2.4 Term . . . . . 6
2.5 Registered Agent and Office . . . . . 6
2.6 Principal Office . . . . . 6



ATER 003933
CONFIDENTIAL

ARTICLE III
PURPOSE; NATURE OF BUSINESS

ARTICLE IV
ACCOUNTING AND RECORDS

4.1 Records to be Maintained . . . 7
4.2 Reports to Members . . . 7
4.3 Tax Returns and Reports . . . 7

ARTICLE V
NAMES AND ADDRESSES OF MEMBERS

ARTICLE VI
RIGHTS AND DUTIES OF MEMBERS

6.1 Management Rights . . . 8
6.2 Good Standing of Licenses . . . 8
6.3 Liability of Members . . . 8
6.4 Indemnification . . . 9
6.5 Representations and Warranties . . . 9
6.6 Conflicts of Interest . . . 9

ARTICLE VII
MANAGING MEMBER

7.1 Managing Member . . . 9
7.2 Term of Office as Managing Member . . . 10
7.3 Authority of Managing Member to Bind the Company . . . 10
7.4 Actions of the Managing Member . . . 11
7.5 Compensation of Managing Member . . . 11
7.6 Managing Member's Standard of Care . . . 11
7.7 Resignation; Removal of Managing Member . . . 12

ARTICLE VIII
CONTRIBUTIONS AND CAPITAL ACCOUNTS

8.1 Initial Contributions . . . 12
8.2 Additional Contributions . . . 12
8.3 Capital Account . . . 12
8.4 No Obligation to Restore Deficit Balance . . . 14
8.5 Withdrawal; Successors . . . 14
8.6 Interest . . . 14
8.7 Investment of Capital Contributions . . . 14
8.8 No Personal Liability . . . 14

ARTICLE IX
ALLOCATIONS AND DISTRIBUTIONS

9.1 Profits and Losses . . . 14
9.2 Profits . . . 14
9.5 Curative Allocations . . . 18
9.6 Other Allocation Rules . . . 18
9.7 Minimum 1% Interest of Managing Member . . . 19
9.8 Distribution of Net Cash Flow . . . 20

ARTICLE X
TAXES

10.1 Tax Matters Partner . . . 20
10.2 Mandatory Section 754 Election . . . 21



ATER 003934
CONFIDENTIAL

ARTICLE XI
TRANSFER OF MEMBERSHIP INTEREST

11.1 Compliance with Securities Laws . . . . . . . . . . . 21
11.2 Transfer of Economic Interest . . . . . . . . . . . 21
11.3 Transfer of Membership Interest and Admission of Substitute Member . . . . . . . . . . . . . . . . . . . 22
11.4 Status of Transferee . . . . . . . . . . . . . . . . 22
11.5 Dispositions not in Compliance with this Article Void . . . . . . . . . . . . . . . . . . . . . . . . 23
11.6 Options Granted to Prospective New Members. . . . . 23

ARTICLE XII
DEATH, DISSOLUTION, BANKRUPTCY OR INCOMPETENCY OF A MEMBER

ARTICLE XIII
EVENT OF DEFAULT; DISSOLUTION AND WINDING UP

13.1 Event of Default; Dissolution . . . . . . . . . . . 24
13.2 Effect of Dissolution . . . . . . . . . . . . . . . 24
13.3 Distribution of Assets on Dissolution . . . . . . . 24
13.4 Winding Up and Filing Certificate of Cancellation . 25

ARTICLE XIV
MISCELLANEOUS

14.1 Notices . . . . . . . . . . . . . . . . . . . . . . 26
14.2 Regulations . . . . . . . . . . . . . . . . . . . . 26
14.3 Headings . . . . . . . . . . . . . . . . . . . . . 26
14.4 Entire Agreement . . . . . . . . . . . . . . . . . 26
14.5 Binding Agreement . . . . . . . . . . . . . . . . . 26
14.6 Saving Clause . . . . . . . . . . . . . . . . . . . 26
14.7 Counterparts . . . . . . . . . . . . . . . . . . . 26
14.8 Governing Law . . . . . . . . . . . . . . . . . . . 26
14.9 No Partnership Intended for Nontax Purposes . . . . 27
14.10 No Rights of Creditors and Third Parties under Agreement . . . . . . . . . . . . . . . . . . . . . . 27
14.11 General Interpretive Principles . . . . . . . . 27



ATER 003935
CONFIDENTIAL

This Limited Liability Company Operating Agreement of Magnacom Wireless, LLC, a limited liability company organized pursuant to the Act (as hereinafter defined), is entered into and shall be effective as of the Effective Date (as hereinafter defined), by and among the Company (as hereinafter defined) and the Persons executing this Agreement.

ARTICLE I
**DEFINITIONS**

For purposes of this Agreement (as hereinafter defined) unless the context clearly indicates otherwise, the following terms shall have the following meanings:

1.1 **Act.** The Delaware Limited Liability Company Act and all amendments thereto.

1.2 **Additional Contribution.** An additional Capital Contribution payable by the Members to the Company pursuant to Section 8.2 hereof.

1.3 **Agreement.** This Limited Liability Company Operating Agreement including all amendments adopted in accordance with the provisions hereof and of the Act.

1.4 **Assignee.** A transferee of a Membership Interest who has not been admitted as a Substitute Member.

1.5 **Bankrupt Person.** A Person who (i) has become the subject of an Order for Relief under the United States Bankruptcy Code by voluntary or involuntary petition or (ii) has initiated, either in an original Proceeding or by way of answer in any state insolvency or receivership Proceeding, an action for liquidation, arrangement, composition, readjustment, dissolution, or similar relief.

1.6 **Business Day.** Any day other than Saturday, Sunday or any legal holiday observed in the State of Delaware.

1.7 **Capital Account.** The account maintained for a Member or Assignee determined in accordance with Article VIII hereof.

1.8 **Capital Contribution.** Any contribution of Property or services made by or on behalf of a Member or Assignee.

1.9 **Company.** The limited liability company named at the beginning of this Agreement, Magnacom Wireless, LLC, which was formed under the laws of Delaware, and any successor limited liability company.

1.10 **Disposition (Dispose).** Any sale, assignment, exchange, mortgage, pledge, grant, hypothecation, or other transfer, absolute or as security or encumbrance (including dispositions by operation of law).



ATER 003936
CONFIDENTIAL

1.11 **Distribution.** A transfer of Property to a Member on account of a Membership Interest as described in Article IX hereof.

1.12 **Effective Date.** October 1, 1995.

1.13 **Event of Default.** Any of the events described in Section 13.1 hereof.

1.14 **FCC.** The U.S. Federal Communications Commission.

1.15 **Fiscal Year.** January 1 to December 31.

1.16 **Initial Capital Contribution.** The Capital Contribution agreed to be made by the Members as described in Section 8.1 hereof.

1.17 **Initial Membership Interest.** The Initial Membership Interest of each Member set forth on Schedule A.

1.18 **Initial Sharing Ratio.** The Initial Sharing Ratio of each Member described on Schedule B.

1.19 **Licenses.** The C-Block PCS licenses for the locales described on Appendix II attached hereto, which is hereby incorporated by reference, and such other locations and licenses (including without limitation in the D, E or F block) which the Company may bid for or acquire licenses from time to time.

1.20 **Management Right.** The right of a Member to participate in the management of the Company, to vote on any matter, and to grant or to withhold consent or approval of actions of the Company.

1.21 **Managing Member.** A Member selected to manage the affairs of the Company under Article VII and Section 11.6(d).

1.22 **Member.** A Person executing the Agreement as a Member, and a Substitute Member.

1.23 **Membership Interest.** The rights of a Member to Distributions (liquidating or otherwise) and allocations of the profits, losses, gains, deductions, and credits of the Company, and, to the extent permitted by this Agreement, to possess and exercise Management Rights.

1.24 **Net Cash Flow.** With respect to any fiscal period of the Company, all revenues of the Company during that period decreased by (i) cash expenditures for operating expenses, (ii) capital expenditures to the extent not made from reserves, (iii) reserves for contingencies and working capital, established in such amounts as the Managing Member may determine, (iv) repayment of principal on any financing and (v) taxes.



ATER 003937
CONFIDENTIAL

1.25 **Organization.** A Person other than a natural person including, without limitation, corporations (both non-profit and other corporations), partnerships (both limited and general), joint ventures, limited liability companies, business trusts and unincorporated associations, but the term does not include joint tenancies and tenancies by the entirety.

1.26 **Person.** An individual, trust, estate or any Organization permitted to be a member of a limited liability company under the laws of the State of Delaware.

1.27 **Principal Office.** The Principal Office of the Company set forth in Section 2.6 hereof.

1.28 **Proceeding.** Any administrative, judicial or other adversary proceeding including, without limitation, litigation, arbitration, administrative adjudication, mediation and appeal or review of any of the foregoing.

1.29 **Property.** Any property, real or personal, tangible or intangible including, without limitation, the Licenses, money, and any legal or equitable interest in such property, but excluding services and promises to perform services in the future.

1.30 **Prospective New Member.** The Organization designated as the "Prospective New Member" in Schedule A, including any successor thereto (whether by merger, sale of assets, acquisition of stock or otherwise), or any corporate designee of such Organization, provided it is a direct or indirect subsidiary thereof.

1.31 **Schedule A.** Schedule A to this Agreement setting forth (i) the name, address, Initial Capital Contribution and Initial Membership Interest of each Member (ii) the designation of the Tax Matters Partner, which Schedule A is incorporated herein by reference, and (iii) the name of the Prospective New Member.

1.32 **Schedule B.** Schedule B to this Agreement setting forth the Initial Sharing Ratio of each Member, which Schedule B is incorporated herein by reference.

1.33 **Securities Act.** The Securities Act of 1933, as amended from time to time.

1.34 **Sharing Ratio.** With respect to any Member, as of any date, the Initial Sharing Ratio or such other ratio as shall be agreed by all Members from time to time. The Initial Sharing Ratio of each Member is described on Schedule B, and Schedule B shall be amended as necessary to conform to any changes thereof agreed to by all of the Members. In the event all or any portion of a Membership Interest is transferred in accordance with the terms of this Agreement, the transferee

shall succeed to the Membership Interest and Sharing Ratio of the transferor to the extent it relates to the transferred Membership Interest.

1.35 **Substitute Member.** An Assignee who has been admitted to all of the rights of membership pursuant to Section 11.3 hereof.

1.36 **Tax Characterization and Additional Tax Terms.** It is intended that the Company be characterized and treated as a partnership for, and solely for, federal, state and local income tax purposes. For such purpose, (i) the Company shall be subject to all of the provisions of Subchapter K of Chapter 1 of Subtitle A of the Code, (ii) all references to a "Partner," to "Partners" and to the "Partnership" in this Agreement (including the provisions of Article IX hereof) and in the provisions of the Code and Tax Regulations cited in this Agreement shall be deemed to refer to a Member, the Members and the Company, respectively. In addition, the following terms shall have the following meanings:

(a) Adjusted Capital Account Deficit shall mean, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(i) Credit to such Capital Account the minimum gain chargeback that such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Tax Regulations; and

(ii) Debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), and 1.704-1(b)(2)(ii)(d)(6) of the Tax Regulations.

The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Tax Regulations and shall be interpreted consistently therewith.

(b) Code shall mean the Internal Revenue Code of 1986, as amended from time to time.

(c) Nonrecourse Deductions has the meaning set forth in Section 1.704-2(b)(1) of the Tax Regulations.

(d) Nonrecourse Liability has the meaning set forth in Section 1.704-2(b)(3) of the Tax Regulations.

(e) Partner Nonrecourse Debt has the meaning set forth in Section 1.704-2(b)(4) of the Tax Regulations.



ATER 003939
CONFIDENTIAL

(f) <u>Partner Nonrecourse Debt Minimum Gain</u> means an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Section 1.704-2(i)(3) of the Tax Regulations.

(g) <u>Partner Nonrecourse Deductions</u> has the meaning set forth in Sections 1.704-2(i)(1) and 1.704-2(i)(2) of the Tax Regulations.

(h) <u>Partnership Minimum Gain</u> has the meaning set forth in Sections 1.704-2(b)(2) and 1.704-2(d) of the Tax Regulations.

(i) <u>Profits and Losses</u> shall mean, for each Fiscal Year, an amount equal to the Company's taxable income or loss for such Fiscal Year, determined in accordance with Section 703(a) of the Code (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments:

(i) Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this Section 1.37(i) shall be added to such taxable income or loss;

(ii) Any expenditures of the Company described in Section 705(a)(2)(B) of the Code or treated as Section 705(a)(2)(B) of the Code expenditures pursuant to Section 1.704-1(b)(2)(iv)(i) of the Tax Regulations, and not otherwise taken into account in computing Profits or Losses pursuant to this Section 1.37(i), shall be subtracted from such taxable income or loss;

(iii) Notwithstanding any other provisions of this definition, any items which are specially allocated pursuant to Section 9.4 hereof or Section 9.5 hereof shall not be taken into account in computing Profits or Losses.

The amounts of the items of Partnership income, gain, loss, or deduction available to be specially allocated pursuant to Section 9.4 hereof or Section 9.5 hereof shall be determined by applying rules analogous to those set forth in clauses (i) through (iii) above.

(j) <u>Tax Regulations</u> shall mean the federal income tax regulations promulgated by the United States Treasury Department under the Code as such Tax Regulations may be amended from time to time. All references herein to a specific section of the Tax Regulations shall be deemed also to refer to any corresponding provision of succeeding Tax Regulations.

ARTICLE II
**FORMATION**

2.1 **Organization.** The Members hereby organize the Company as a Delaware limited liability company pursuant to the provisions of the Act.

2.2 **Agreement.** For and in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Members executing this Agreement hereby agree to the terms and conditions of the Agreement, as it may from time to time be amended. It is the express intention of the Members that the Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of the Agreement expressly incorporates federal income tax rules by reference to sections of the Code or Tax Regulations or is expressly prohibited or ineffective under the Act, the Agreement shall govern, even when inconsistent with, or different than, the provisions of the Act or any other law or rule. To the extent any provision of the Agreement is prohibited or ineffective under the Act, the Agreement shall be deemed to be amended to the least extent necessary in order to make the Agreement effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to make any provision of the Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

2.3 **Name.** The name of the Company is Magnacom Wireless, LLC, and all business of the Company shall be conducted under that name or, if an assumed or fictitious name certificate is properly filed, under any other name selected by the Managing Member.

2.4 **Term.** The Company shall be dissolved and its affairs wound up in accordance with the Act and the Agreement 20 years from the Effective Date, unless the term shall be extended by amendment to the Agreement, or unless the Company shall be sooner dissolved and its affairs wound up in accordance with the Act or the Agreement.

2.5 **Registered Agent and Office.** The name and address of the registered agent for the service of process shall be The Prentice-Hall Corporation System, Inc., 1013 Centre Road, Wilmington, Delaware 19805. The Managing Member may, from time to time, change the registered agent or office through appropriate filings with the Department of State of the State of Delaware. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Managing Member shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be.

2.6 **Principal Office.** The Principal Office of the Company shall be located at 1701 Broadway, Suite 307, Vancouver, Washington 98663.

ARTICLE III
**PURPOSE; NATURE OF BUSINESS**

The business purpose of the Company is to engage in any and all business activities permitted under the laws of the State of Delaware in respect of the ownership, utilization and commercial exploitation of the Licenses. The Company shall have the authority to do all things necessary or convenient to accomplish its purpose and operate its business as described in this Article III.

ARTICLE IV
**ACCOUNTING AND RECORDS**

4.1 **Records to be Maintained.** The Company shall maintain the following records at the Principal Office:

(a) a current list of the full name set forth in alphabetical order and last known mailing address of each Member and the Managing Member, together with the information set forth on Schedule A and Schedule B;

(b) a copy of the Company's certificate of formation and all amendments thereto, together with executed copies of any powers of attorney pursuant to which such certificate or any such amendment thereto has been executed;

(c) a copy of the Company's federal, state and local income or information tax returns and reports for the three most recent Fiscal Years;

(d) a copy of this Agreement including all amendments thereto; and

(e) the Company's books and records including, without limitation, financial statements of the Company, which shall be open to inspection by the Members or their agents at reasonable times.

4.2 **Reports to Members.** The Managing Member shall provide reports, including a balance sheet, statement of profit and loss and changes in Members' capital accounts, and a statement of cash flows, at least annually to each of the Members at such time and in such manner as the Managing Member may determine.

4.3 **Tax Returns and Reports.** The Managing Member, at the Company's expense, shall prepare and timely file income tax returns of the Company in all jurisdictions where such filings are required, and shall prepare and deliver to each Member, within 90 days after the expiration of each Fiscal Year, and at the Company's



ATER 003942
CONFIDENTIAL

expense, all information returns and reports required by the Code and Tax Regulations and Company information necessary for the preparation of the Members' federal income tax returns.

ARTICLE V
**NAMES AND ADDRESSES OF MEMBERS**

The names and addresses of each of the Members are as stated on Schedule A.

ARTICLE VI
**RIGHTS AND DUTIES OF MEMBERS**

6.1 **Management Rights.** No Member other than the Managing Member shall have authority to bind the Company, except that the following actions shall require the prior written consent or approval of the Members holding at least 95% of the Membership Interests:

(a) any amendment to this Agreement;

(b) the sale, transfer, conveyance, lease, assignment, exchange or disposition of Company Property having a fair market value at the time of such transaction in excess of $5,000,000;

(c) the merger or consolidation of the Company with any other Person or any other fundamental change in structure of the Company;

(d) the issuance of new, or reclassification of existing, Membership Interests, irrespective of whether an Additional Contribution is made therefor pursuant to Section 8.2 hereof;

(e) the borrowing, lending, guaranteeing or investing of funds in excess of $5,000,000 or the pledging, mortgaging or otherwise encumbering of any Company Property;

(f) the admission of a new Member or transfer of Membership Interests pursuant to Section 11.3 hereof;

(g) the determination of compensation to be paid to members of the senior management of the Company including, without limitation, the Managing Member;

(h) the approval of, or commitment to make, capital expenditures in excess of $5,000,000; and

(i) the approval of, or establishment of reserves in excess of $5,000,000, whether upon dissolution or otherwise.

6.2 **Good Standing of Licenses.** Throughout the term of this Agreement, the Company and each of the Members shall do or cause to

be done all things necessary to preserve, keep in good standing and full force and effect the Licenses.

6.3 **Liability of Members.** No Member shall be liable as such for the liabilities of the Company.

6.4 **Indemnification.** A Member shall indemnify and hold harmless the Company for any costs or damages incurred by the Company as a result of any unauthorized action by such Member.

6.5 **Representations and Warranties.** Each Member, and in the case of a trust or other entity, each Person executing the Agreement on behalf of the entity, hereby represents and warrants to the Company and each other Member that: (a) if that Member is an entity, it has power to enter into the Agreement and to perform its obligations hereunder and that each Person executing the Agreement on behalf of the entity has the power to do so; and (b) the Member is acquiring its interest in the Company for the Member's own account as an investment and without an intent to distribute the interest. The Members acknowledge that their interests in the Company have not been registered under the Securities Act or any state securities laws, and may not be resold or transferred without appropriate registration or the availability of an exemption from such requirements.

6.6 **Conflicts of Interest.**

(a) A Member, including the Managing Member, shall be entitled to enter into transactions that may be considered to be competitive with the Company, it being expressly understood that Members may enter into transactions that are similar to the transactions into which the Company may enter. Notwithstanding the foregoing, Members shall account to the Company and hold as trustee for it any Property, profit or benefit derived by the Member, without the prior written consent or approval of all of the other Members, in the conduct and winding up of the business of the Company or from a use or appropriation by the Member of Company Property including, without limitation, information developed exclusively for the Company and opportunities expressly offered to the Company.

(b) A Member, including the Managing Member, does not violate a duty or obligation to the Company merely because the Member's conduct furthers the Member's own interest. A Member may lend money to and transact other business with the Company. The rights and obligations of a Member who lends money to or transacts business with the Company are the same as those of a Person who is not a Member, subject to other applicable law. No transaction with the Company shall be voidable solely because a Member has a direct or indirect interest in the transaction if the transaction is fair and reasonable to the Company.



ATER 003944
CONFIDENTIAL

ARTICLE VII
**MANAGING MEMBER**

7.1 **Managing Member**. Except as otherwise provided in this Agreement, the management of the Company and all decisions concerning the business affairs of the Company shall be made by Mr. John Warta, the Managing Member.

7.2 **Term of Office as Managing Member**. The Managing Member shall serve until the removal of such Managing Member pursuant to Section 7.7 hereof.

7.3 **Authority of Managing Member to Bind the Company**. Only the Managing Member and authorized agents of the Company shall have the authority to bind the Company. Subject to Section 6.1 hereof, the Managing Member has the power, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company (as described in Article III hereof) including, without limitation:

(a) the institution, prosecution and defense of any Proceeding in the Company's name;

(b) the purchase, receipt, lease or other acquisition, ownership, holding, improvement, use and other dealing with Property (including the Licenses), wherever located;

(c) the sale, conveyance, mortgage, pledge, lease, exchange, and other disposition of Property subject, in the case of the Licenses, to applicable FCC regulations regarding prior approval of a transfer of control by the FCC;

(d) the entering into of contracts and guaranties, incurring of liabilities, borrowing of money, issuance of notes, bonds, and other obligations, and the securing of any of its obligations by mortgage or pledge of any of its Property or income subject, in the case of the Licenses, to applicable FCC regulations;

(e) the lending of money, investment and reinvestment of the Company's funds, and receipt and holding of Property as security for repayment;

(f) the conduct of the Company's business, the establishment of Company offices, and the exercise of the powers of the Company;

(g) the hiring and appointment of employees and agents of the Company, the defining of their duties and the establishment of their compensation, and the dealing with tradespeople, accountants and attorneys, on such terms as the Managing Member shall determine;

(h) the payment of pensions and establishment of pension plans, pension trusts, profit sharing plans, and benefit and