# EXHIBIT 7

1
2            IN THE UNITED SATES BANKRUPTCY COURT
             FOR THE DISTRICT OF DELAWARE
3
4    In re:                    )    Chapter 11
                               )
5    GST TELECOM INC., et al   )
                               )    Case No. 00-1982 (GMS)
6            Debtors           )
                               )    Jointly Administered
7    --------------------------)
                               )
8                              )
     GST TELECOM, INC., et al, )
9                              )
             Counterplaintiffs )
10                             )
     V.                        )
11                             )
     JOHN WARTA,               )
12                             )
             Counterdefendant. )
13
14
15
16            Deposition of PETER LEGAULT, called for
17   examination pursuant to the Federal Rules of
18   Bankruptcy Procedure, taken before me, the
19   undersigned, Connie A. Holton, Chartered Shorthand
20   Reporter and Commissioner of Oaths within and for the
21   Province of Ontario, taken at the offices of TORONTO
22   COURT REPORTERS, 65 Queen Street West, Suite 1410,
23   Toronto, Ontario, Canada, on the 23rd day of
24   September, 2004.
25

eb48293e-a2cc-4262-b169-833b6fc06990

P. Legault

**Page 74**

1 discussion at that time related to Magnacom and GST?
2     A. I don't, no.
3     Q. Let me direct your attention to the
4 page marked 12801. There's a section in which "The
5 Audit Committee would like to make the following
6 recommendations to the board of GST." Number 2 is
7 that "The board receive a memorandum from management
8 detailing the relationship of Magnacom and GST." Do
9 you recall whether or not the board ever received
10 such a memorandum?
11     A. I don't recall. I think there was a
12 lot of discussion about it, but whether we got a
13 memorandum or not I'm not sure.
14     Q. All right. After the 5.4 million
15 was advanced to Magnacom without board approval, do
16 you recall whether or not the board felt to a certain
17 degree that its hands were tied with respect to
18 advancing additional monies up to what was ultimately
19 14.4 million?
20     A. I think it's sort of like being a
21 bit pregnant at that point, because you're either in
22 or you're out of it. We would have lost the 5.4
23 million had we not sort of continued to make the next
24 payment, and as part of the long term strategy that
25 fit into what the board had agreed to.

**Page 75**

1     Are we finished with this document?
2     Q. We are. Thank you.
3     Mr. Kent asked you some questions
4 about the events surrounding John Warta's departure
5 from GST, and particularly with respect to a couple
6 of board meetings on June 2nd and 3rd in Vancouver
7 and then June 15th in New York. I would like to
8 generally talk to you about that a bit.
9     At any point in time around those
10 meetings, or prior to those meetings, were you privy
11 to any analysis by McCarthy, Tetrault, the Canadian
12 law firm, as to any concerns about the activities of
13 John Warta or any other board member?
14     A. I wasn't privy to anything that they
15 did, no.
16     Q. You testified that at the June 2nd
17 and June 3rd board meeting on the second day there
18 was discussion about the strategic direction of the
19 company, and that John Warta was essentially a
20 minority of one with his position that expansion
21 ought to continue aggressively, correct?
22     A. I'm not sure I would categorize him
23 as a minority of one on it, but he was in the
24 minority put it that way.
25     Q. After that board meeting was over,

**Page 76**

1 but before the June 15th board meeting in New York,
2 did you have discussions with any other board members
3 about GST activities?
4     A. I probably did, yes.
5     Q. Do you recall any specifically?
6     A. I think I spoke to Roy Megarry about
7 it, about how their flight had gone back, there was
8 obviously discussions going on coming back from that
9 meeting that I missed because I didn't take the same
10 flight that they did. I would only talk to Roy about
11 that. Fogg was not one of my favorite people.
12     Q. But you got along reasonably well
13 with Roy Megarry?
14     A. I brought Roy on the board, so yes.
15     Q. Do you recall any of the substance
16 of the discussion with Roy Megarry?
17     A. No, I don't.
18     Q. Would it be fair to say your general
19 impressions between those board meetings --
20     A. He was pretty negative on John.
21     Q. He, Roy?
22     A. Yes, Roy was.
23     Q. And where were you at that stage on
24 John?
25     A. Probably neutral. Yes. I mean,

**Page 77**

1 after John walked out of the room I went to talk to
2 him and told him he made a big mistake in doing that.
3     Q. You told John that?
4     A. Oh, yeah, for sure. And he had made
5 a big mistake.
6     Q. Did you have any concerns at that
7 point in time as to whether or not John Warta had
8 breached his fiduciary duty to the company?
9     A. No.
10     Q. At this point you were neutral as to
11 whether or not he should continue, but that was
12 simply a prospective business decision --
13     A. Right.
14     Q. -- vis-a-vis GST, correct?
15     A. That's right.
16     Q. Now, if a determination had been
17 made that John had breached his fiduciary duty to the
18 company, you understand that that might affect the
19 company's obligations to John under his employment
20 contractor or under any indemnity agreement?
21     MR. KENT: Objection. Argumentative.
22 Legal conclusion.
23 BY MR. GIBBONS:
24     Q. I'm just asking for your
25 understanding, Mr. Legault.