# EXHIBIT 8

MINUTES OF
A SPECIAL MEETING OF
THE BOARD OF DIRECTORS OF
GST TELECOMMUNICATIONS, INC.

A Special Meeting of the Board of Directors (the "Board") of GST Telecommunications, Inc. (the "Company") was held on January 14, 15 and 16, 1997 at the Mauna Launi Hotel, Island of Hawaii. The following persons were present:

>    Gordon Blankstein
>    John Warta
>    Stephen Irwin
>    Ian Watson
>    Jack Armstrong
>    Peter Legault
>    Robert Hanson
>    Takashi Yoshida

The absence of Dr. Thomas Sawyer was noted. Clifford V. Sander, Treasurer of the Company and Chief Financial Officer of GST Telecom Inc. ("GST Telecom"), Earl Kamsky, President of GST Telecom, Robert Olson, General Manager of GST Telecom, Ben Peek, President of GST Internet Inc. ("GST Internet"), and Ed Swofford, a director of GST Telecom Hawaii, Inc., were invited to and did attend parts of the meeting. In addition, Diane Walker, a prospective candidate for director of the Company was invited to and did attend parts of the Meeting.

The Meeting was called pursuant to a notice previously disseminated to the members of the Board.

The Meeting was called to order at 8:00 a.m.

The first order of business was a discussion of the status of the public sale by NACT Telecommunications, Inc. ("NACT") of shares of its capital stock pursuant to an underwriting being

127142.

managed by Hambrecht & Quist ("H&Q") and Montgomery Securities. Mr. Irwin advised the Board with respect to the status of such financing. He pointed out that NACT had filed a registration statement and that the registration statement had been reviewed by the Securities and Exchange Commission, which has submitted a letter of comment. The Company is in the midst of preparing a response to the letter of comment. He also indicated that the underwriters have indicated an interest in possibly postponing the financing for several weeks pending a review of the current status of the accounts receivable at NACT. It was the consensus of the Board that action with respect to the proposed financing be tabled until later in this meeting by which time Mr. Irwin and other members of the Board will confer with representatives of the underwriters and the management of NACT to obtain an update on the status of this issue.

The next order of business was a presentation by Mr. Peek in respect of the status of matters at GST Internet, which appear to be progressing satisfactorily. Mr. Peek informed the Board that the anticipated revenue projection of GST Internet for the year ending September 30, 1997 was $13,000,000 and a loss of $3,000,000. Mr. Peek noted that GST Internet is expected to become profitable during the quarter ending September 30, 1997. Mr. Peek was complimented by the members of the Board on his presentation and the progress made at GST Internet.

Bob Olson next presented a report with respect to the Company's activities in the exchange and switching areas. Mr.

127142.                                  -2-

GST-WARTA0012803

Olson reported that the Company had recently engaged two new persons in the strategic information and analysis group. With their addition, Mr. Olson felt confident that the Company was able to further develop and refine the internal systems necessary to meet the Company's requirements in connection with its activities as an integrated telecommunications firm.

Next, Mr. Olson reported on the status of GST Tucson Lightwave. He reported that the Company had lost its case against the City of Tucson and that internal deliberations were taking place with respect to an appeal to the Court of Appeals or the commencement of an action at the FCC level. It was the consensus of the Board that Mr. Mayhook, internal counsel at GST in charge of this matter, provide a report to the Board with respect to the status of this litigation.

Mr. Irwin next advised the Board that the Company had concluded the acquisition from ICG of the outstanding interest owned by it in Phoenix Fiber Access, Inc. ("Phoenix Fiber"), resulting in the ownership by the Company of 100% of the Phoenix Fiber subsidiary.

Mr. Olson provided the Board with switch delivery dates and anticipated operational dates. He further discussed the Company's switching program.

Mr. Warta next reported to the Board with respect to the Company's obligations to purchase minutes from long distance carriers. He indicated that the Company was in good standing in respect of its agreements with AT&T and MCI.

GST-WARTA0012804

At that point in time, Mr. Blankstein asked all non-members of the Board to depart the Meeting and the Meeting continued with the Board members.

Mr. Warta reported on discussions that had taken place with respect to candidates for position of Chief Financial Officer of the Company. He indicated that Mr. Dan Trampush, currently Partner and previously national director of the telecommunications group of Ernst & Young Consulting, had come to Hawaii to confer with the members of the Board. A lengthy discussion ensued with respect to Mr. Trampush's credentials. A similar discussion took place with regard to other candidates. It was the consensus of the Board that Messrs. Warta and Irwin further confer with Mr. Trampush during the next several days in order to determine the financial requirements contemplated by Mr. Trampush and that any proposal contain the following general guidelines:

- Base salary not to exceed $240,000
- Options in the range of 100,000 plus performance options based upon meeting criteria developed by the parties.

Messrs. Warta and Irwin confirmed that they would negotiate the terms of a proposal with Mr. Trampush and report to the Board.

The Meeting was adjourned for one hour.

Upon resumption of the Meeting, Mr. Irwin reported on his discussions with management of NACT and representatives of H&Q concerning the proposed financing by NACT. Mr. Irwin advised that the H&Q managers had agreed to print red herrings and commence

127142.    -4-

GST-WARTA0012805

the marketing program for the offering. It was the consensus of the Board that the offering continue as contemplated and previously authorized.

Mr. Irwin next reported on discussions with Mr. Trampush. Mr. Irwin indicated that it appeared that the Company and Mr. Trampush were in agreement with the guidelines previously outlined by the Board. Mr. Irwin further reported that subsequent to the meetings of the Board, a term sheet would be prepared and circulated to the Compensation Committee of the Board after which, if satisfactory, an agreement would follow containing such terms with a view toward the Company engaging Mr. Trampush.

The next order of business was a presentation by Mr. Sander of the revenue forecasts of the Company on a consolidated basis for the year ending September 30, 1997. A lengthy discussion ensued. The Board acknowledged receipt of the subject revenue forecasts.

The next discussion was with respect to financial matters. It was the consensus of the Board that at the next meeting of the Finance Committee of the Board, the Committee consider changing the fiscal year of the Company from September 30 to year end. Mr. Watson, Chairman of the Finance Committee, acknowledged the request of the Board and indicated that the Finance Committee would consider this issue at its next meeting.

Mr. Kamsky entered the Meeting and led a report with respect to the current status of matters at GST Telecom on an operational

GST-WARTA0012806

basis. He indicated that he believed GST Telecom was at a point of transition from being a competitive access provider to being an integrated telecommunications company with extensive switching and other enhanced activities. In that regard, he was optimistic of the future and was very pleased to note that Mr. Olson was replacing him as president of GST Telecom in charge of such activities. It was noted that Mr. Kamsky was joining GST Global Telecommunications Inc. ("GST Global") as its Chief Executive Officer. Mr. Kamsky indicated that he would continue to make himself available to Mr. Olson and others within GST Telecom.

The next order of business was a review led by Mr. Kamsky of the revenues, projected and actual, of the Company's telecom operating subsidiaries on a company-by-company basis.

Next Mr. Sander led a discussion in which a cash flow analysis prepared by Mr. Sander was distributed to the members of the Board. Mr. Sander pointed out that the Company currently had cash reserves of approximately $13,000,000 and he advised the Board that the Company had a monthly overhead burden prior to capital expenditure of approximately $5,000,000.

Mr. Blankstein reported that the Company would be discussing its fund raising activities later in the Meeting.

Mr. Irwin was next requested to report to the Board with respect to the transactions between the Company and Magnacom LLC ("Magnacom"). Mr. Irwin reported that he has been advised that the Company has a financial exposure of approximately $14,400,000 in the aggregate, regarding Magnacom, in the form of payments by

GST-WARTA0012807

the Company to the Federal Communications Commission (the "FCC") with respect to the purchase of A, C and F Block, PCS licenses. He noted that the Company is finalizing a minute purchase with Magnacom pursuant to which the Company will purchase minutes of capacity from Magnacom in consideration of the amounts remitted. Further, in consideration of a construction and management agreement, the Company will obtain an option to acquire up to 99% (subject to regulatory approval) of the membership interest of Magnacom, at the cost thereof to Mr. Warta, who is the controlling member of Magnacom. It was pointed out that under current FCC regulations, as a foreign corporation the Company is not permitted to own more than 25% of the outstanding capital stock of a company that holds PCS licenses. Mr. Armstrong requested that a term sheet be prepared by Mr. Irwin's office setting forth the salient provisions of the minute agreement and that the same be disseminated to the Finance Committee of the Board. Mr. Irwin indicated that the same would be delivered as principal terms become more definitive.

After a lengthy discussion upon motion made by Mr. Watson and seconded by Mr. Hanson, the following resolutions were adopted unanimously, with the exception of Mr. Warta, who abstained:

> RESOLVED, that the Board of Directors does hereby authorize the remittance of $410,000 by the Company to Magnacom, or its affiliate, such funds to be utilized by it to acquire from Poka Lambro certain A Block, PCS licenses for Guam/Saipan; and it is further
>
> RESOLVED, that the Board of Directors hereby ratifies the remittance by the Company to the FCC on Magnacom's

127142.    -7-

GST-WARTA0012808

behalf, of approximately $2,970,000 with respect to the issuance by the FCC to Magnacom of certain licenses under the F Block auctions, so that as a result of the foregoing ratification and prior authorizations of the Board, that the Board does hereby ratify an aggregate financial exposure of approximately $14,400,000 in such transactions; and it is further

RESOLVED, that the Company authorize the execution and delivery of an agreement between the Company and Magnacom, pursuant to which, among other things, the Company will purchase minute capacity from the PCS network to be owned by Magnacom and that the price for such minutes be on a most favored nations basis not to exceed $0.05 per minute; and that a construction and management agreement between the Company and Magnacom include an option to acquire (subject to regulatory approval) up to 99% of the membership interests of Magnacom at the cost thereof of the present members; and it is further

RESOLVED, that the Company make no remittance, or loans, investments, guarantees, extensions of credit or otherwise assume financial risk in excess of $14,400,000 in respect of Magnacom or its affiliate; and it is further

RESOLVED, that the foregoing resolutions have been approved with the understanding that Magnacom intends to obtain financing independent of the Company within a proposed 90 day target period, during which time Magnacom intends to enter into such agreements with independent investors, joint venturers or enter other transactions pursuant to which it shall finance its activities independent of the Company; and it is further

RESOLVED, that the Board does hereby acknowledge that John Warta, President of the Company, is the controlling member of Magnacom and that the transactions authorized with respect to Magnacom are hereby deemed to be in the best interests of the Company in that the transactions with Magnacom are anticipated to provide the Company access to the wireless network of Magnacom at favored rates; that the Company will have an option to acquire Magnacom, subject to regulatory approval, and that the Company, as a result of such transaction, will be in a posture of offering wireless telecommunications services to its customers on a competitive basis.

It was noted by Mr. Watson, and it was the consensus of the Board, that in the future there not be expenditures of $3,000,000

127142.                                    -8-

GST-WARTA0012809

or more without specific prior approval from the Executive and/or Finance Committees of the Board.

The next order of business was a discussion led by Mr. Blankstein. He indicated that in connection with various of the financial matters of the Company, that he believed it to be in the Company's best interest to list securities for trading on the Toronto Stock Exchange. A discussion ensued, after which, and upon motion made by Mr. Watson and seconded by Mr. Legault, the following resolutions were adopted unanimously:

> RESOLVED, that the Company be, and it hereby is, authorized to make application to the Toronto Stock Exchange for the listing of its Common Shares; and it is further
>
> RESOLVED, that the officers of the Company are hereby authorized to execute and deliver such documents as may be necessary and appropriate in order to implement the foregoing.

A lengthy discussion ensued with respect to the Company's proposals for financing. Messrs. Blankstein and Irwin recited the Company's extensive discussions with Princes Gate and representatives of First Marathon Securities ("First Marathon"). A lengthy discussion ensued in which the proposal of Princes Gate was further discussed. In addition, Mr. Blankstein pointed out that it appeared that the Company had an opportunity to pursue an alternative for equity financing via Thompson Kernaghan (a company of which Mr. Legault is a principal) and First Marathon. It was reported that discussions had been held with Mr. Wilson, an officer of First Marathon, who indicated an interest in being engaged by the Company to seek such financing. It was the consensus of the Board that the Company pursue the options

127142.                              -9-

GST-WARTA0012810

available to it with respect to equity financing, including the proposals of First Marathon and Thompson Kernaghan, and that the Company confer with Princes Gate with respect to a proposal submitted by it. It was pointed out that representatives of Princes Gate had come to Hawaii to confer with various members of management and that Princes Gate had confirmed an interest to reach a mutually acceptable proposal. It was the further consensus of the Board that in tandem with, and upon conclusion of an equity financing, that the Company proceed with its discussions with Morgan Stanley with a $200,000,000 secured high yield financing. It was the further consensus of the Board that after accomplishment of these financing, the Board review the status of the Company at such time in order to determine its available options.

The Meeting was adjourned at 2:30 p.m.

The Meeting was reconvened at 8:00 a.m. on January 15, 1997 with all directors present except Dr. Sawyer.

The first order of business was a report by Mr. Legault of the meeting of the Audit Committee of the Board. The report of the Audit Committee was ordered annexed to these minutes.

Upon motion made by Mr. Irwin and seconded by Mr. Blankstein, the following resolution was adopted unanimously:

> RESOLVED, that the report of the Audit Committee dated December 1996, a copy of which is annexed to these minutes, be, and it hereby is ratified and approved.

127142.

-10-

GST-WARTA0012811

The next order of business was a lengthy discussion led by Mr. Sander of the Consolidated Financial Statements for the year ended September 30, 1996. Thereafter, upon motion made by Mr. Legault and seconded by Mr. Irwin, the following resolution was adopted unanimously:

> RESOLVED, that the Consolidated Financial Statements for the Company for the year ended September 30, 1996 in form presented to the Meeting, be and they hereby are, ratified and approved.

The next order of business was a discussion led by Mr. Blankstein with respect to approval of prior minutes of meetings of the Board and various of its committees, including minutes of the Meeting of the Board held on September 16 and 17, 1996. Mr. Armstrong noted corrections on page 20 with respect to certain to GST Global matters.

Upon motion made by Mr. Watson and seconded by Mr. Hanson, the following resolution were adopted unanimously:

> RESOLVED, that, subject to the modification of the minutes in response to Mr. Armstrong's comment, the minutes of the Special Meeting of the Board held on September 16 and 17, 1996 as presented to the Board be, and they hereby are, ratified and approved.

Next, upon motion made by Mr. Watson and seconded by Mr. Hanson, the following resolutions were adopted unanimously:

> RESOLVED, that the minutes of a Special Meeting of the Board of Directors held on November 25, 1996 be, and they hereby are, ratified and approved; and it is further
>
> RESOLVED, that the minutes of the meeting of the Executive Committee of the Board held on December 9, 1996 be, and they hereby are, ratified and approved; and it is further

127142.

-11-

RESOLVED, that the minutes of the meeting of the Executive Committee of the Board held on December 12, 1996 be, and they hereby are, ratified and approved.

The Board next discussed increasing the number of shares available under the Company's 1996 Stock Option Plan (the "1996 Plan").

Upon motion made by Mr. Armstrong and seconded by Mr. Blankstein, it was

RESOLVED, that the 1996 Plan be amended to increase the number Company's Common Shares, without par value (the "Common Shares") that may be issued under such plan from 400,000 to 700,000 Common Shares, subject to approval by the Company's shareholders; and it is further

RESOLVED, that the Company reserve, and that there hereby are reserved, for issuance and delivery upon exercise of options to be granted pursuant to the 1996 Plan, an additional 300,000 authorized and unissued Common Shares, or such different number of authorized and unissued Common Shares as may from time to time be issuable upon exercise of options pursuant to adjustment of the number of shares so issuable as provided in the 1996 Plan, and that the Secretary of the Company be, and he hereby is, authorized to adjust the number of shares so reserved from time to time upon adjustment in the number of shares issuable upon exercise of options provided in the 1996 Plan; and it is further

RESOLVED, that the President and the Treasurer or the Secretary of the Company be, and each of them hereby is, authorized, in the name and on behalf of the Company to sign or cause to be signed with their facsimile signatures under the Company's seal, which may be in facsimile, and to deliver or cause to be delivered, certificates representing 300,000 Common Shares issuable upon exercise of options pursuant to the 1996 Plan or such different number of shares of Common Stock as may from time to time be issuable upon exercise of options pursuant to the 1996 Plan or such different number of Common Shares as may from time to time be issuable upon exercise of options pursuant to adjustment of the number of shares issuable as provided in the 1996 Plan; and it is further

127142.

GST-WARTA0012813

RESOLVED, that the Board does hereby authorize and approve the preparation and filing with the Securities and Exchange Commission (the "Commission") of a Registration Statement on Form S-8 (the "Registration Statement") under the Securities Act of 1933, as amended (the "Act"), relating to the additional 300,000 Common Shares to be issued upon exercise of options to be granted under the 1996 Plan (or such different number of shares as may be issuable pursuant to the anti-dilution provisions of the 1996 Plan); and it is further

RESOLVED, that the officers and directors of the Company be, and they hereby are, and each of them hereby is, authorized, empowered and directed to execute and file the Registration Statement, a reoffer and resale Prospectus relating to the sale of Common Shares underlying such options by certain affiliates of the Company and such other and further amendments and exhibits thereto as they, upon advice of counsel, may deem necessary and appropriate in order that the Registration Statement may become and remain effective; and it is further

RESOLVED, that the officers and directors of the Company be, and they hereby are, and each of them hereby is, authorized, empowered and directed to execute and file such post-effective amendments and appendices to the Registration Statement after the same shall have become effective, as they, upon advice of counsel, may deem necessary and appropriate in order to update and keep current the information contained in the Registration Statement, so that the Registration Statement shall remain effective; and it is further

RESOLVED, that John Warta be, and he hereby is, appointed the agent for service of any summons, process or other notice or communication by or from the Commission in connection with the Registration Statement; and it is further

RESOLVED, that application be made to the American Stock Exchange, Inc. for the additional listing of such 300,000 Common Shares, and the Secretary of the Company be, and he hereby is authorized and directed to sign said application and any listing agreements or documents required by said Exchange in connection therewith and to make such changes in any of same as may be necessary to conform with the requirements for listing, and to appear (if requested) before officials of said Exchange; and it is further

GST-WARTA0012814