RESOLVED, that the appropriate officers of the Company be, and each of them hereby is, authorized and directed to execute, deliver and file any and all such other and further certificates, instruments and documents, including without limitation those required under the securities or "blue sky" laws of any other jurisdiction, the American Stock Exchange and to pay such fees and expenses, and to do and perform such other and further acts and things, in the name and on behalf of the Company as, in their discretion, shall be necessary, proper or advisable to register the offer and sale of such Common Shares under such laws and generally to fully carry out the intent and accomplish the purposes of the foregoing resolutions.

The next order of business was a discussion of the Annual Meeting of Shareholders.

Upon motion made by Mr. Watson and seconded by Mr. Legault, the following resolutions were adopted unanimously:

RESOLVED, that March 4, 1997 (or such other date fixed by the Chairman of the Board, the Vice Chairman of the Board or President of the Company) at 11:00 a.m. in Vancouver, British Columbia Canada, be set as the date, time and place for the Annual Meeting of Shareholders; and it is further

RESOLVED, that the close of business on January 24, 1997 be, and it hereby is, fixed as the record date by which persons shall be entitled to receive notice of and vote at the Annual Meeting; and it is further

RESOLVED, that the Board propose to the Shareholders that the 1996 Plan be amended to increase the number of shares which may be issuable under such plan from 400,000 shares to 700,000 shares; and it is further

RESOLVED, that counsel to the Company prepare requisite proxy material to be utilized in connection with the Annual Meeting of Shareholders and that drafts of the same be provided to the directors.

The next order of business was a review of the Company's Annual Report on Form 10-K submitted to the Securities and Exchange Commission. After full discussion and upon motion made

127142.                                -14-

GST-WARTA0012815

by Mr. Hanson and seconded by Mr. Warta, the following resolution was adopted unanimously:

> RESOLVED, that the Annual Report on Form 10-K for the year ended September 30, 1996 be, and it hereby is, ratified and approved.

Mr. Irwin next reported with respect to the obligations of the Company's officers, directors and principal shareholders to refrain from engaging in transactions involving the purchase and sale or sale and purchase of the Company's securities within a six-month period. Further, Mr. Irwin suggested that the Company confirm its policy with respect to establishing a trading window during which time officers and directors of the Company may purchase and sell or sell and purchase securities, but that persons intending to effect such transactions confer first with Mr. Irwin or Mr. Hanson to insure compliance with Section 16(b) (the "short swing profit rule") of the Securities Exchange Act of 1934, as amended in order to avoid inadvertent violations. Mr. Armstrong asked Mr. Irwin to have his firm prepare a memorandum to the Board setting forth the proposal with respect to a "trading window."

Upon motion made by Mr. Armstrong and seconded by Mr. Irwin, the following resolutions was adopted unanimously:

> RESOLVED, that the Company hereby confirms its policy with respect to the purchase and sale of securities by its officers and directors; such policy being that no such sales be conducted prior to advance written notification of the same to Mr. Irwin and Mr. Hanson.

Mr. Irwin also disseminated to members of the Board a memorandum prepared by his office, outlining the obligations of

GST-WARTA0012816

the officers and directors of the Company with respect to insider trading rules and compliance with short swing profit regulations.

The next discussion related to GST Global. Mr. Blankstein provided the members of the Board with an update on the status of GST Global, a company in which the Company has an investment. Discussion was had of the agreement between the Company and GST Global, pursuant to which the Company has referred and has agreed to transfer to GST Global, the business opportunity developed by the Company in connection with an investment in Bestel, the owner of a Mexican concession to provide local telecommunications services in Mexico. A lengthy discussion ensued, after which, upon motion made by Mr. Yoshida and seconded by Mr. Armstrong, the following resolution was adopted unanimously with Messrs. Blankstein, Watson and Legault, being directors of GST Global, abstaining:

> RESOLVED, that the Company be, and it hereby is, authorized to enter into an agreement with GST Global pursuant to which the Company shall transfer its business opportunity in "Bestel" in consideration of the issuance to the Company of a minimum of 3,000,000 shares of GST Global and up to a maximum of 5,000,000 shares of GST Global capital stock, the precise amount of such additional shares to be based upon an evaluation of the business plan of Bestel and approval by the Vancouver Stock Exchange.

The Meeting was adjourned at 2:00 p.m.


The Meeting was reconvened at 8:00 a.m. on Thursday, January, 16, 1997 with invited guests.

The first order of business was an extensive presentation by Paul Barnes, the Chief Information Officer of the Company, with

127142.   -16-

respect to the information systems of the Company, after which Mr. Barnes was congratulated.

The next order of business was a discussion led by Mr. Hanson of discussions in respect of the potential acquisition of the business of Action Telecom Inc. ("Action"). Mr. Hanson reported that in his preliminary discussions, it had been revealed that Action, which is a competitive local exchange company in Abilene, Texas also engaged in the sale of equipment, was generating an approximate 35% gross profit on monthly sales of approximately $600,000. Subject to due diligence, Mr. Hanson was seeking the approval of the Board of Directors to issue a letter of intent to acquire Action. The proposal was that the purchase price not exceed $7,500,000 less all long term debt and short term debt in excess of $260,000. A lengthy discussion ensued with respect to the potential acquisition. It was pointed out by Mr. Hanson that this acquisition was completely self-sustaining in that its cash flow was positive and that it did not require additional investment.

After the discussion, upon motion made by Mr. Blankstein and seconded by Mr. Watson, the following resolution was unanimously adopted:

> RESOLVED, that the Company be, and it hereby is, authorized to execute a letter of intent in standard form with respect to the acquisition of Action Telecom Inc. and that the Chairman of the Board, the Vice Chairman of the Board, the President and the Treasurer of the Company are each hereby authorized to execute and deliver such documents as may be necessary to implement the same.

GST-WARTA0012818

Mr. Hanson then introduced a potential acquisition of a company involved in the calling card business. After discussion, it was determined that the Company not proceed with this proposed activity.

The next order of business was a discussion led by Mr. Peek of the potential acquisition by GST Internet of an internet service provider located in Hawaii. The company is currently generating approximately $60,000 per month with expectations that sales will increase to approximately $80,000 per month for the month of January 1997. The proposed purchase price for the approximate 2,000 subscribers was $4,000,000, payable in common shares of the Company. After a thorough discussion, it was the consensus of the Board that Mr. Peek continue discussions with respect to this proposal and report to the Executive Committee of the Board as events evolve.

The next order of business was an extensive presentation by Mr. Warta with respect to the Company's strategy. Mr. Warta reported that the Company had largely set its footprint with respect to its activities and that it was his view that the Company focus its activities during the next year on its principal markets, the States of California and Hawaii. He pointed out that approximately 85% of the budgeted capital expenditure program is directed at the development of those two principal markets. He further advised that, in his view, fiscal 1997 is a time to solidify the Company's position in these principal markets; to maintain its activities in existing markets

GST-WARTA0012819

as necessary; and to review expenditures and activities outside the current base on a careful basis. A lengthy discussion ensued with respect to Mr. Warta's strategy for the coming year after which it was the consensus of the Board that the Company adopt Mr. Warta's strategy and focus its activities on its principal markets in the States of California and Hawaii, at the same time maintaining its activities in the States of New Mexico, Arizona, Oregon and Washington.

Next Mr. Warta reported to the Board of his discussions with respect to a proposed transaction with MCI. Discussions contemplate an agreement whereby MCI will obligate itself to provide minimum traffic amounts to certain of the Company's operating subsidiaries at pricing structures to be agreed upon. Further, MCI has raised the question of being able to acquire a warrant to purchase 1% to 2% of the outstanding capital stock of the Company exercisable at current market value prices and to acquire a second warrant to purchase up to a maximum of 10% of the Company's outstanding capital stock, including shares issuable upon the previous warrant. A lengthy discussion ensued in which it was the consensus of the Board that these discussions continue, but that Mr. Warta negotiate provisions for standstill arrangements and bring-along rights for any securities owned by MCI. Mr. Warta agreed to report to the Board on the development of these discussions.

Mr. Warta next reported on discussions taking place with AT&T with respect to the appointment of the Company as a

GST-WARTA0012820

"franchisee" of AT&T in designated areas. The concept of the subject arrangement would contemplate the dedication of all traffic in the subject area to the relevant GST operating subsidiary. It was the consensus of the Board that these discussions continue.

The next order of business was a discussion of the addition of new persons to the Board of Directors of the Company. Mr. Irwin pointed out that Canadian regulations require that one-third of the directors of the Company be resident Canadians and that currently the nine member Board is in compliance with that requirement, in that Messrs. Blankstein, Legault and Armstrong are resident Canadians. A discussion took place with respect to Diane Walker, who had audited certain proceedings of these meetings and had met with various directors. Ms. Walker, who joined the Meeting, indicated that she was initially with Ford Motor Company; later in the Financial Services Division of Manufacturers Hanover Bank; later as manager of the Venture Capital Division of Pacific Telephone; and that she formerly served as a Director on Tucson Gas and Electric Utility Company and the Arizona Public Service Commission. Ms. Walker was asked to leave the meeting and her credentials were discussed in detail. The consensus of the Board was that she would be a valuable addition to the Board. Mr. Irwin indicated that discussions were taking place with other potential candidates, including Mr. Semmoto, a founder of KDD, a major Japanese telecommunications company, whose resume had been disseminated to

127142.                              -20-

GST-WARTA0012821

members of the Board; Victor Pelson, a former director of AT&T and other persons. It was the consensus of the Board that the Executive Committee report to the Board with respect to a definitive list of candidates to be added to the Board, keeping in mind the regulatory restrictions imposed upon the Company.

The next order of business was the budget for the Company for the year ending September 30, 1997. Extensive discussion took place. It was noted that various of the assumptions set forth in the budget presented to the Board had been modified and consequently the budget required revision.

Upon motion made by Mr. Hanson and seconded by Mr. Blankstein, the following resolution was unanimously approved:

> RESOLVED, that the budget of the Company for the year ending September 30, 1997 be approved on a month to month basis until the next meeting of the Board of Directors of the Company, to be held in March, but prior to the Annual Meeting of Shareholders at which time a revised budget shall be considered.

It was requested that the revised budget be provided to the Board members in advance of the meeting so that the Board members might review it appropriately.

The next order of business was a discussion with respect to the approval of a development fund to be used by the Company for various development projects including HI AM.

Upon motion made by Mr. Armstrong and seconded by Mr. Watson, the following resolution was adopted unanimously:

> RESOLVED, that the Company hereby approve the expenditure of $450,000 during the fiscal year ending September 30, 1997 to be used to fund development projects of the Company; the expenditure and deployment of such funds

127142.

-21-

GST-WARTA0012822

be subject to completion of the equity funding discussed at the meeting.

Mr. Irwin advised the meeting that the rules promulgated by the Securities Exchange Commission with respect to certain favored treatment of stock options and stock option plans pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended, required certain technical amendments to the Company's existing stock option plans and stock options.

Consistent with such changes amendments to such plans have been prepared by counsel and were ordered annexed to these minutes.

Upon motion made by Mr. Hanson and seconded by Mr. Irwin, the following resolutions were unanimously adopted:

>   RESOLVED, that the amendments to conform the Company's 1995 Stock Option Plan, 1996 Stock Option Plan, Senior Executive Officer Stock Option Plan and Senior Operating Officer Stock Option Plan, attached hereto as Exhibits A, B, C and D, respectively, to the requirements of Section 16 of the Securities Exchange Act of 1934, as amended, be, and they hereby are, in all respects authorized and approved; and it is further
>
>   RESOLVED, that all options to purchase Common Shares of the Company heretofore granted, as listed on Exhibit E hereto, be, and they hereby are, ratified, confirmed and approved in all respects.

Upon motion made by Mr. Blankstein and seconded by Mr. Warta, the Meeting was adjourned at 2:30 p.m.

_____  _____
Gordon Blankstein, Chairman   Stephen Irwin, Secretary



127142.

-22-

GST-WARTA0012823