# EXHIBIT 10

GST-6221

## RESELLER AGREEMENT

THIS RESELLER AGREEMENT (the "Agreement") is made as of this 30th day of October, 1996, by and between MAGNACOM WIRELESS, L.L.C., a Delaware limited liability company with its principal offices at 1701 Broadway, Suite 348, Vancouver, Washington 98663 (hereinafter referred to as the "Company"), and GST Telecom Inc., a Delaware corporation with its principal offices at 4317 N.E. Thurston Way, Vancouver, Washington 98662 (hereinafter referred to as the "Reseller").

## RECITALS:

WHEREAS, the Company (either directly or through its subsidiaries or affiliates) is licensed by the Federal Communications Commission (the "FCC") to own, develop and operate various systems to provide personal communication services ("PCS") within the "Territories" (as hereinafter defined); and

WHEREAS, the Reseller desires to market and sell access to and usage of the Company's PCS system within the Territories;

NOW, THEREFORE, in consideration of the premises, the mutual agreements and understandings herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

111764.3

# ARTICLE I

## Definitions

The following terms when used herein shall have the following meanings:

1.1 <u>Default</u>. The term "Default" is defined to be either party's:

(i) Insolvency or the initiation of bankruptcy or receivership proceedings, by or against a party, execution of an assignment for the benefit of creditors or any other transfer or assignment of a similar nature or otherwise seeking relief under any applicable bankruptcy, reorganization, moratorium or similar debtor relief laws (it being understood that the execution of any third-party financing agreement[s] shall not constitute a Default hereunder); or

(ii) Failure to make any payment when due, or a material breach of any of the other terms or conditions hereof.

1.2 <u>End User</u>. The term "End User" shall mean the customers purchasing "Services" (as hereinafter defined) from the Reseller.

1.3 <u>Facilities</u>. The term "Facilities" shall mean the telecommunications switching equipment, cell site transceiver equipment and other equipment to be constructed by the Company in order to make available the Services within the Territories. At

the sole option of the Company, such Facilities may be expanded, modified or replaced during the term hereof. The Company shall use its good faith efforts to cause any such modifications or replacements to be accomplished without unreasonable interference to the Services. The Company shall own, and finance construction of, the Facilities.

1.4 <u>Number</u>. The term "Number" shall mean a ten (10) digit telephone number assigned to provide access to the Services.

1.5 <u>Recurring Charges</u>. The term "Recurring Charges" means all charges and fees from the Services, except those charges that are directly attributable to usage of, as opposed to access to, the Services.

1.6 <u>Services</u>. The term "Services" shall mean the services set forth on Schedule 2 attached hereto and incorporated herein by reference to be provided within the Territories. Upon the mutual agreement of the Company and the Reseller, such Schedule 2 may be amended from time to time.

1.7 <u>Territories</u>. The term "Territories" shall mean the geographical areas to be served by the "Facilities" as designated on Schedule 1 and incorporated herein by reference, as amended from time to time. At the sole option of the Company, the Territories may be expanded from time to time to cover a greater area through the addition to or modification of the Facilities, but the Company shall be under no obligation to so expand the Territories.

GST-WARTA0013186

ARTICLE II

Non-Exclusive Relationship

2.1 On a non-exclusive basis, (including within the Territories), and upon the terms and conditions herein set forth, the Reseller may purchase Service from the Company for use or resale.

2.2 On an exclusive basis within the Territories and any other geographical region in which the Company may offer PCS service, and upon terms and conditions to be agreed upon which are at least as favorable as to those offered to others, the Company shall utilize Reseller's facilities to provide enhanced telecommunications services to all of its resellers and their end users, including for example local switching, access to long distance, private lines and voice mail; provided, however, that Reseller is capable of offering such enhanced telecommunications services and, provided further, that the end user customer does not object to these services being provided by the Reseller.

ARTICLE III

Term of Agreement

Subject to the provisions of Article XIV hereof, the term of this Agreement shall commence on the date hereof and, unless sooner terminated in accordance with Article XIV hereof, continue for a period of twelve years (the "Initial Term"); and, unless either party hereto shall have given the other party written notice of its intention to terminate the Agreement upon expiration of the Initial Term at least 180 days prior to such expiration, the term shall be

GST-WARTA0013187

automatically extended for an additional one year period (a "Renewal Term"). Thereafter, absent a delivery of 90 days prior written notice of either party's intention to terminate the Agreement upon expiration of the then current Renewal Term, the term of the Agreement shall automatically be extended for an additional and successive Renewal Term.

## ARTICLE IV
### Access to Numbers; Connections

4.1 Numbers shall be provided to the Reseller only in blocks consisting of fifty (50) Numbers each for the first fifty (50) Numbers. Thereafter, at the Reseller's option, numbers may be provided to the Reseller in blocks consisting of ten (10) Numbers each. The Reseller may, from time to time, and according to procedures established by the Company, order blocks of ten Numbers by providing written notice of the number of blocks of Numbers the Reseller desires and the effective date desired for such assignment. Subject to the availability of Numbers and the capacity of the Facilities, the Company shall honor orders from the Reseller and all other resellers (including affiliates of the Company) in the order in which orders for additional Numbers are received; provided, however, in no event shall the Company be obligated to assign one or more blocks of Numbers to any reseller until at least fifty percent (50%) of the Numbers in the block (or blocks, if more than one block were assigned simultaneously) most recently assigned have been purchased by and assigned to End Users.

111764.3                               -5-

4.2  Subject to the restrictions of Section 4.1, a given block of Numbers requested by the Reseller will be made available to the Reseller by the Company within two working days of the receipt by the Company of an order from the Reseller requesting said block of Numbers.

4.3  Each Number included within each block of Numbers represents a unit of access to the System. The Numbers shall be assigned by the Company and neither the Reseller nor any End User shall acquire any proprietary interest in any specific Number assigned for its use. Neither the Reseller nor any End User has any property right in the Numbers assigned and none is or can be acquired by usage or otherwise. The parties understand and agree that the Company reserves the right to assign, designate, or change such Numbers when reasonably necessary to the conduct of its business. The Company shall make a good faith effort to provide thirty (30) days' notice of the assignment, designation, or change of any such Number, provided, however, such notice period shall not apply to a disconnection of Services in accordance with Section 5.5.

4.4  The Reseller acknowledges that upon the disconnection of any End User for any reason, the disconnected End User's Access Number shall not be reassigned to a new End User for a minimum period of ninety (90) days. The Company will allow the reassignment of a previously disconnected Reseller Access Number at the conclusion of said minimum period, unless good cause exists and

GST-WARTA0013189

the parties mutually agree, based on normal industry practices, to delay further such reassignment.

## ARTICLE V

### Prices; Terms of Payment

5.1  In consideration for the Services provided herein, the Reseller shall pay to the Company the lump sum payments in the amounts and at the times set forth on Schedule 2A hereto, as pre-payment for the Services (the "Prepayment Reserve"). No additional lump sum pre-payments shall be made by Reseller. As actual charges for the Services are incurred such actual charges will be credited against the Prepayment Reserve.

5.2  For the purpose of charging for the Services, a billing cycle begins at the beginning of the eleventh (11th) calendar day of each calendar month, and ends at the end of the tenth (10th) calendar day of the subsequent calendar month. For each block of Numbers, Recurring Charges for Services (as established under Section 1.5) for periods that are less than entire billing cycles shall be the Recurring Charges for such block of Numbers during the billing cycle, prorated according to the number of days the Services are available with respect to such block of Numbers during the billing cycle. In the event of any termination of this Agreement, the Reseller will continue to be responsible for all charges associated with Numbers provided to the Reseller, even if such charges are incurred or billed after termination of this Agreement.

GST-WARTA0013190

5.3  Except where the Reseller has provided evidence to the Company, satisfactory to the Company in its sole discretion, that the Reseller has collected and paid, or will collect and pay, any and all duties, levies, taxes or withholdings due with respect to the Services, including, without limitation, sales tax, use tax, property tax and ad valorem tax, excepting only taxes on the income of the Company, the Company may collect from the Reseller, in addition to any charges, an amount equal to any such duty, levy, tax or withholding.

5.4  Charges under Section 5.1 shall commence with respect to each block of Numbers assigned to the Reseller at the time the Company gives the Reseller notice that the Numbers in such block are available for use or resale. Such charges shall continue until the date such block is canceled or otherwise disconnected in accordance with the provisions of this Agreement.

5.5  The billing cycle for charges for Services hereunder shall be monthly. The Company may, in its sole discretion and upon ninety (90) days' prior written notice, adopt a semi-monthly billing cycle. The Reseller shall be invoiced on a periodic basis and agrees to pay for all charges pursuant hereto and for Services hereunder, including, but not limited to, charges for toll calls, directory listing, custom calling charges, network service, PCS network usage, directory assistance, roamer service charges and 900 service. Payment for such invoices shall be (i) credited against the Prepayment Reserve, until it is exhausted, and then (ii) shall be due and payable in United States Dollars within twenty (20) days

GST-WARTA0013191

after the date of the Reseller's receipt of each such invoice. If any charges reflected on an invoice are disputed by the Reseller, the Reseller shall promptly notify the Company in writing of the subject amounts and the basis for the dispute. Any amount (other than disputed amounts) which is not paid in full by the due date thereof shall be subject to a late payment charge equal to the maximum rate permitted by applicable law from the due date thereof until the date of payment. Any amounts required to be paid hereunder will be deemed paid when received, subject to collection of proceeds if payment is other than in cash, at the location designated by the Company from time to time. In addition, and without limiting any other remedies which may be available to the Company, if payment is not made in full (other than disputed amounts) by the Reseller by the due date thereof and the Reseller has not cured such default within ten (10) days after receiving written notice thereof from the Company, the Company shall have the right, but not the obligation, to (i) disconnect from the Services all blocks of Numbers to which such delinquent payment relates and a standard service charge will be made by the Company if such blocks of Numbers are reconnected and (ii) immediately draw down on any deposit or letter of credit provided by the Reseller in accordance with Section 5.6 to the extent of such payment due. Nothing contained in this Section 5.5 shall be construed as in any way limiting the rights of the Company under Article XIV of this Agreement to declare the Reseller in default upon the occurrence of

111764.3

-9-

a Default, including but not limited to the failure to make a payment when due.

5.6 In addition to the charges set forth above, once the Prepayment Reserve has been exhausted the Reseller shall be required to pay to the Company a security deposit in the amount of Two Hundred Dollars ($200.00) against billing for each Number, which deposit may be in the form of a letter of credit.

5.7 A magnetic tape, at specifications determined by the Company, will be provided monthly to the Reseller. The tape identifies detailed usage for each access number. The Reseller shall notify the Company of the location to which the magnetic tape is to be delivered. The Reseller shall pay the Company a One Hundred Dollar ($ 100.00) fee for any such tape not returned to the Company within thirty (30) days of receipt by the Reseller. If the Company adopts a semi-monthly billing cycle as provided in Section 5.5 hereof, then the Company shall, if requested by the Reseller, provide the magnetic tape semi-monthly.

5.8 (a) To the extent that the agreed upon charges for services set forth on Schedule 2 hereto (as amended from time to time by agreement of the Reseller and the Company) for Services and arrangements furnished to the Reseller pursuant to this Agreement are not subject to any federal, state, or local regulation or tariff, such charges may be (i) increased by the Company upon written notice to the Reseller at least ninety (90) days in advance of the effective date of such increase and (ii) decreased by the Company immediately upon written notice to the Reseller.

111764.3                              -10-

Notwithstanding the foregoing, during the Initial Term, the charge to Reseller shall be not more than $.05 per minute of PCS telephone service; provided, however, that at no time can the Company assess charges to Reseller which are less favorable, both for individual services and in the aggregate, than the charges assessed or established for any other reseller or significant direct customer of the Company; and provided, further, that at no time shall the foregoing proviso be interpreted to cause the Company to set charges for any of the Services at a level which is below its cost.

(b)   Nothing in this Agreement shall be deemed (i) to require or preclude the use of tariff equivalent or tariff related charges, or (ii) to provide or imply that such charges are or are not appropriate in the provision of Services provided hereunder (except for the last sentence of Section 5.8(a)).

5.9  In the event an End User's PCS phone is lost, stolen, or otherwise absent from the End User's possession or control, the Reseller shall nevertheless be liable for all charges attributable to the Access Number assigned to such PCS telephone until the loss, theft or absence is reported to the Company.

ARTICLE VI

Specification of Services

The Company agrees that the Facilities to provide the Services will be operational and the Services will be available no later than the date which is the later of (i) the third anniversary of the date hereof and (ii) the date by which the FCC requires that the Facilities be operational or the Company will provide the

GST-WARTA0013194

Reseller services through a third party on terms no less favorable than contained herein. Failure to make such Services available by such date, which failure remains uncured following thirty (30) days' written notice by Reseller of such failure, shall be a material breach of this Agreement. Services will be delivered in accordance with specifications set forth on Schedule 2 hereto, which Schedule may be modified or amended by the Company without notice, provided that, except for changes or modifications resulting from emergencies or force majeure conditions, such change or modification does not substantially degrade the functioning or performance of the Services.

## ARTICLE VII

### Reseller's Obligations

7.1  The Reseller is solely responsible for all charges under Article V above (including, but not limited to, all End User toll calls, directory listings, custom calling charges, network service, PCS network usage, roamer service charges, directory assistance, and 900 service) with respect to any Number assigned to such Reseller hereunder until twenty-four (24) hours after receipt by the Company in a form reasonably prescribed by the Company of notice from the Reseller to disconnect any such Number.

7.2  The Company may require the Reseller to provide, maintain and use a terminal compatible with the systems of the Company to transmit notices to the Company for number status changes. The Reseller shall pay all local telecommunications charges within the Territories which are associated with the aforesaid notices and

GST-WARTA0013195

will furnish operators proficient in operating any such terminal in conjunction with any Company computer system.

7.3 As between the Company and the Reseller, the Reseller is responsible for insuring that any equipment utilized by its End Users in connection with the Services and each End User's use thereof shall at all times meet industry standards for compatibility, the requirements of the FCC and other applicable regulatory authorities and the technical requirements and standards reasonably set forth by the Company from time to time hereunder.

7.4 The Reseller shall provide an adequate staff to receive and investigate any complaints from its End Users relating to the Services, and will report any trouble with the Services to the Company only upon reasonable verification that such trouble is due to reasons other than the misuse or malfunctioning of the End User's equipment or the failure of such equipment to meet the technical standards for compatibility with the Services. The Reseller, at its own cost and expense, shall maintain adequate staff and equipment to test End User's equipment or to make arrangements with a qualified service facility to verify the cause of any complaints received by the Reseller with respect to the Services. In the event the cause of any trouble reported to the Company by the Reseller is investigated by the Company and ultimately determined to be due to misuse, malfunctioning or technical incompatibility of the End User's equipment, the Reseller shall reimburse the Company for all out-of-pocket expenses actually incurred by the Company in performing such investigation.

111764.3

-13-

7.5 The Reseller, at its own costs and expense, shall maintain an adequate staff to market the Services and to support and train its End Users with respect to the Services.

7.6 The Reseller shall be solely responsible for all risks and expenses incurred in connection with its actions in the sale and service of the Services or any other acts required of the Reseller pursuant to this Agreement. The Reseller shall act in all respects on its own account and shall be solely responsible for any credit verification, deposits, billing, collection, consolidation, rebilling, customer billing complaints, toll calls, bad debts and fraudulent use by any End User of any Number assigned to the Reseller.

7.7 The Reseller shall, prior to the commencement of marketing Services, provide its form of End User contract, if any, to the Company for its review. The Company's review shall be limited to ascertaining whether the proprietary and legal interests of the Company are adequately protected in such contract, as well as determining if mandatory language such as that provided below has been included. The Reseller may delete proprietary information not relating to the Company's interests from such contract prior to submitting it for review. The Reseller agrees that any End User Contract shall contain the following language:

"[END USER] shall acquire no proprietary interest in numbers assigned by [the RESELLER] for its use.

The liability of [the RESELLER] and/or any supplier of services to [the RESELLER] for actual proven damages for any