# EXHIBIT 13

MINUTES OF
A SPECIAL MEETING OF
THE BOARD OF DIRECTORS OF
GST TELECOMMUNICATIONS, INC.

A Special Meeting of the Board of Directors (the "Board") of GST Telecommunications, Inc. (the "Company") was held on June 2 and 3, 1998 at The Heathman Lodge located in Vancouver, Washington.

The following persons were present:

    Jack Armstrong
    Joseph Basile
    Robert Ferchat
    Joseph Fogg
    Stephen Irwin
    Peter Legault
    Roy Megarry
    Mitsuhiro Naoe
    John Warta

The following persons were invited to and did attend parts the Meeting:

    Daniel Trampush, Chief Financial Officer
    Clifford V. Sander, Treasurer
    Kevin Wright, Chief Technology Officer
    David Hollingsworth, Vice President Finance
    Linda Hoyt, Manager of Human Resources
    Dan Moffat, Vice President Marketing
    David Powers, Representative of Princess Gate

The Meeting was called to order at 8:30 a.m. pursuant to notice previously disseminated to the members of the Board, a copy of which was ordered annexed to these Minutes.

Mr. Warta served as Chairman of the Meeting and Mr. Irwin acted as Secretary.

The first order of business was a review of the minutes of a Special Meeting of the Board held on March 31, 1998. Upon motion made by Peter Legault and seconded by Roy Megarry, the following resolution was adopted unanimously:

    RESOLVED, that the minutes of a Special Meeting of the Board of Directors of the Company held on March 31, 1998 are hereby ratified and approved in the form presented to the Meeting.

199488.



PLAINTIFF'S
EXHIBIT
21
5/13/04  BB

The next order of business was a review of minutes of a meeting of the Pricing Committee of the Board held on April 29, 1998. Upon motion made by Robert Ferchat and seconded by Jack Armstrong, the following resolution was adopted unanimously:

> RESOLVED, that the minutes of a meeting of the Pricing Committee of the Board of Directors of the Company held on April 29, 1998 are approved in the form presented to the Meeting and the actions taken by the Pricing Committee at such meeting are hereby ratified.

The next item of business was a report by Mr. Irwin of pending transactions in which the Company is currently in discussion and which are restricted or materially incumbered as a result of existing indenture restrictions. It was noted that if these transactions are to be pursued, the options available to the Company would be to seek consent of the bondholders to waivers of relevant provisions of the indentures or to seek a reorganization of the indentures through a refinancing of the subject indebtedness.

It was the consensus of the Board that Mr. Irwin and Mr. Trampush discuss with the Company's investment bankers, the issues described above and that such bankers provide a proposal to the Company in respect of a methodology of accomplishing the Company's goals of facilitating its ability to enter into transactions which are restricted by restrictions contained in the Company's indentures.

The next order of business was a discussion of financial matters involving the Company led by Mr. Trampush. A discussion was had with respect to the quarter period ended March 31, 1998, in which the Company's balance sheet and results of operations were discussed. Mr. Trampush advised that the Company is currently on track both for the quarter and for the year ended, in respect of the capital expenditure plan previously approved by the Board; and that, based upon current information, the Company could become EBIDTA positive during the first half of calendar year 1999, without impact of further of acquisitions. Discussion

was also had with respect to the financial results of the month of April 1998.

The next order of business was a discussion led Linda Hoyt by the Company's Manager of Human Resources. Ms. Hoyt indicated that a meeting of the Compensation Committee was held prior to the Board Meeting in which it was determined that the Company provide in its' stock option plans for accelerated vesting of options in the event of a hostile takeover of the Company, or in the event a takeover is friendly but that the subject employee's employment is terminated without cause. In other cases, no acceleration of vesting of options will occur. Ms. Hoyt also reported that the Committee agreed to characterize stock options as non-incentive stock options.

Mr. Irwin advised that the regulations of the listing of the Company's securities on the Toronto Stock Exchange may require approval of disinterested shareholders in respect of options previously granted to management.

It was the consensus of the Board that the recommendation of the Compensation Committee with respect to the vesting of the Company's stock options and the treatment of the Company's stock options as described above, be ratified and it was the further consensus of the Board that the Company seek such shareholder approval for existing stock options as may be required pursuant to requirements of the Toronto Stock Exchange.

It was further pointed out that the Company's Portland counsel would be directed to prepare documentation with respect to the Company's Senior Executive Compensation Plan, which had been approved at a previous meeting of the Board.

The next order of business was a report by Dan Moffat, the Company's Vice President in charge of Marketing. Mr. Moffat described the Company's activities, ongoing and contemplated, in respect of its data services and further explained the Company's marketing strategies on a broad basis.

The next order of business was a discussion of a proposed acquisition by the Company of CRL Network Services, Inc. ("CRL"),

which is a Tier I internet provider. Mr. Basile described the pending discussions.

After such discussion, it was the consensus of the Board that the Company proceed with the execution of a letter of intent to acquire CRL and proceed with the due diligence review with respect thereto.

Next, discussions were had with respect to a proposed transaction to acquire GeoNet Communications, Inc. Mr. Basile made a presentation in respect of this proposed transaction, after which, it was the consensus of the Board that the Company proceed with due diligence related to possible acquisition of that firm.

It was the further consensus of the Board that any final decision regarding acquisitions be postponed until the Board concluded its discussions regarding corporate strategy at the sessions to take place later in the Meeting.

The next order of business was consideration by the Board of the adoption of a shareholder rights plan. Mr. Irwin set forth certain guidelines in respect of options available to the Company, after which, it was the consensus of the Board that the Company request its relevant counsel to prepare a memorandum to the Board setting forth alternatives available to the Company in respect of shareholder rights plans.

At approximately 12:30 p.m., a strategic planning session commenced. This strategic planning session was led by Russell Marriot of Marriot Consulting, which had been engaged by the Company to review the Company's strategic plans and to present to the Board its observations and to also lead a discussion with respect thereto. A lengthy discussion ensued.

The Meeting was adjourned at 5:30 p.m.

The Meeting was reconvened at 7:30 a.m. on June 3, 1998 and was limited to Board members.

The first order of business was a report of the Litigation Committee presented by Mr. Fogg. Mr. Fogg reported that members of the Committee had met with the Committee's special counsel on

Monday prior to the meeting and that consideration of actions in respect of the Company's ongoing dispute with GST Global Telecommunications, Inc. ("GST Global) were proceeding. Mr. Fogg further indicated that a meeting with the representatives of GST Global was anticipated by the end of June to pursue a settlement of the outstanding disputes. Upon further discussion, upon motion made by Mr. Fogg and seconded by Mr. Megarry, the following resolution was unanimously adopted:

> RESOLVED, that the GST Telecommunications, Inc. Litigation Committee shall be comprised of Jack Armstrong, Robert Ferchat, Joseph Fogg and Roy Megarry. The Committee will continue to have oversight responsibility for certain legal matters, including: (i) GST Global Telecommunications, Inc. and (ii) the Martin Litigation. The law firms which are representing the Company in connection with these matters, McCarthy & Tetrualt and Ater Wynne, will, with respect to such matters and others which may arise, report to the Committee.

The Board was advised that an annual meeting of shareholders of GST Global was to be held in June 1998. Upon recommendation of the Litigation Committee, it was the consensus of the Board that the Company send a member of its Canadian legal counsel to represent the Board and cast the Company's votes at the annual meeting of GST Global shareholders.

Upon motion made by Mr. Irwin and seconded by Mr. Legault, the following resolutions were adopted unanimously:

> RESOLVED, that Jack Armstrong or failing him Winton Derby or failing him Tim McCafferty or failing him Ariel DeJong be and each are hereby authorized and appointed pursuant to Section 10 of the Articles of GST Global Telecommunications Inc. (the "Corporation") and the Business Corporations Act (Yukon Territory) to act as a representative of the Corporate Shareholder at the annual general meeting of the Corporation to be held on June 17, 1998 or any adjournments thereof and as such are entitled to exercise in respect of and at such meeting the same owners on behalf of the Corporate Shareholder as the Corporate Shareholder could exercise if it were an individual shareholder of the Corporation personally present at any such meeting.

199488.                                -5-

>    RESOLVED, that the authorization (the "Authorization") attached to these resolutions be and is hereby approved and that the Secretary, President or any director of the Corporate Shareholder be and is hereby authorized and instructed to execute and deliver the Authorization for and on behalf of the Corporate Shareholder.
>
>    RESOLVED, that the President, Secretary or any director of the Corporate Shareholder be and each are hereby authorized and directed for and on behalf of and in the name of the Corporate Shareholder, to certify or execute and deliver, whether under the seal of the Corporate Shareholder or otherwise, all such proxies, statements, forms, instruments, certificates and other documents and to do all such acts and things as are necessary or desirable for the purpose of giving effect to these resolutions or as may be required to carry out the full intent and meaning hereof.

In respect of such meeting, it was the further consensus of the Board that the Company abstain in respect of the election of directors, vote against the grant of additional stock options, for the appointment of directors and for the change of name of GST Global.

The next order of business was a discussion with respect to the expansion of the Finance Committee. Upon motion made by Mr. Irwin and seconded by Mr. Fogg, the following resolution was adopted unanimously:

>    RESOLVED, that Robert Ferchat shall be and hereby is appointed to serve on the Finance Committee of the Board of Directors.

The next order of business was a discussion led by Mr. Irwin of outstanding issues between the Company and PCS Plus. A lengthy report was presented as to the current status of matters in which Mr. Irwin advised the Board that negotiations were ongoing between PCS Plus and Qualcomm Corporation, pursuant to which Qualcomm is anticipated to invest in PCS Plus approximately $20,000,000 and to provide financing to PCS Plus in the amount of approximately $280,000,000; that discussions were further ongoing in respect of capitalizing the interests of the Company in PCS Plus in a manner consistent with the requirements of the Federal Communications Commission ("FCC"); and in respect of the

requirements for preferred entrepreneurial FCC financing which has been made available to PCS Plus. It was again noted that Mr. Warta and his wholly owned corporation PacWest Network, Inc. were the shareholders of PCS Plus. It was also pointed out that the Company had purchased $14,400,000 of minutes from PCS Plus pursuant to prior authorizations of the Board, and that pursuant to prior authorizations of the Board, Messrs. Warta and Irwin served Chairman and Vice Chairman of the PCS Plus respectively. The point was also made that, in view of the delays related to the closing of the Qualcomm transaction and the Board's previous requirement that no officers or directors make further investments in PCS Plus (it being understood that Messrs. Warta and Sander had previously loaned approximately $425,000 to PCS Plus) that PCS Plus was in need of additional financing in order to continue activities to the point of concluding the Qualcomm transaction, if in fact, that transaction were to close. A lengthy discussion took place, after which, upon motion made by Mr. Legault and seconded by Mr. Armstrong, the following resolutions were adopted (Messrs. Warta and Irwin abstained as a result of their serving as Chairman and Vice Chairman of PCS Plus and Mr. Warta being the beneficial owner of 100% of the outstanding capital stock of PCS Plus):

> RESOLVED, that the Company shall be and it hereby is duly authorized to purchase an additional $200,000 of minutes from PCS Plus on the same terms and conditions that it has previously purchased minutes from PCS Plus and that agents of the Company are hereby authorized to execute and deliver any and all documents necessary to implement the foregoing; and it is further

> RESOLVED, that, based upon the facts and circumstances surrounding this transaction, this transaction is deemed to be fair and to the best interests of the Company, notwithstanding the beneficial ownership by Mr. Warta of 100% of the outstanding capital stock of PCS Plus.

The next order of business was a discussion lead by Mr. Irwin of pending discussions with Koch Ventures, Inc. ("Koch") regarding a transaction between the Company and Koch whereby the

telephony rights of way owned and controlled by Koch would be combined with the telecommunications expertise of the Company. A lengthy discussion ensued after which, it was the consensus of the Board that the Company first conclude its strategy planning session before considering action in respect of the Koch transaction.

The next order of business was the continuation of the strategy session commenced the previous day and led by Mr. Marriot. At that point, Messrs. Kevin Wright, David Hollingsworth, Cliff Sander and Dan Trampush joined the Meeting.

At approximately 12:00 noon, as a result of personal family matters, Mr. Irwin departed the Meeting.

The balance of the Meeting was devoted to completing the strategy discussion led by Russ Marriott. It became clear that a substantial majority of the Director's favored concentrating the focus and energy of management on the core business. In this context, new business initiatives, especially those not related to the core CLEC business, would bear a very high threshold of justification. Once the core business had proven itself and become cash flow positive, new initiatives, including any previously deferred, could be reexamined.

The Chairman expresses his disagreement with this conclusion,. However, the conclusion of the Board was unchanged.

Upon motion duly made and seconded, the meeting was adjourned.