# EXHIBIT 19

ATERWYNNE LLP

# MEMORANDUM

## CONFIDENTIAL--SUBJECT TO ATTORNEY CLIENT PRIVILEGE

TO: Robert Ferchat, Chairman of GST

FROM: Dan Skerritt

DATE: August 20, 1998

RE: PCS Plus Transaction



---

This memorandum responds to your request for advice regarding approaches GST should consider in responding to the potential collapse of the Qualcomm/Spinco purchase of the assets of Magnacom-PCS Plus.

Magnacom has obtained approval from the FCC to reorganize itself into PCS Plus. My understanding from Bob Olson of Magnacom is that this has not been implemented and that the assets of Magnacom (its FCC licenses) still belong to it. Magnacom is a Limited Liability Company (LLC) owned 1% by John Warta individually and 99% by Pacwest Network, Inc. ("PNI"). John Warta owns 100% of PNI.

Magnacom's Limited Liability Operating Agreement gives GST the option to acquire 99% of Magnacom, subject to FCC approval and regulations. When the option was granted, the FCC regulations presented a substantial obstacle to the exercise of that option. Most significantly, the law limited foreign ownership of licenses. In November of 1997, the FCC liberalized foreign entry into the telecommunications marketplace for companies organized by a World Trade Organization country, at least with regard to *indirect* ownership interests. Now, a domestic nominee of GST's should be able to acquire up to 100% ownership of the licenses, but an approval process by the FCC is still required.

### Warta's Position and Demands

Given the existence of GST's option to acquire Magnacom, the pivotal issue is to decipher what exactly John Warta's interest was and is in Magnacom. It is

-1-

DHS\dhs9898.doc

AW-100413

ATERWYNNE LLP

becoming increasingly clear to me that John Warta is trying to define his relationship with Magnacom-PCS Plus in a manner that is at odds with the records with which I am familiar. At bottom, John is now saying that he was never a "true" owner of Magnacom. Rather, he suggests that he was always a mere "front" for GST, an approach used to give GST the benefit of license ownership without running afoul of the FCC restrictions on foreign ownership. Yet, the records indicate that Magnacom operated under John Warta's direction, and that he was structuring the company so that (1) it would be financed independently of GST, and (2) he would end up with substantial equity in the company in his own right. John's lawyers now say it was only made to look this way for the FCC, but that Magnacom was always an asset held for the benefit of GST only. Based on their interpretation, Warta and his lawyers now argue that it is unfair for him to be asked by Qualcomm to sign a form of non-competition agreement (which Qualcomm labels as a "non-circumvention" agreement). He also insists that it is only fair that he receive reimbursement for some $424,000 of his own money he has put into Magnacom, since it was all done solely for GST's benefit, not his own.

The most recent set of demands from Mr. Warta's lawyer as the condition for his cooperation in closing the Qualcomm transaction (including his signing of the non-circumvention agreement) are as follows:

1. GST to acknowledge that Warta was always acting only in a representative capacity for GST with regard to Magnacom.

2. GST to assume responsibility for the Qualcomm transaction and pay all Magnacom creditors.

3. Warta to receive full indemnification regarding Magnacom & PCS Plus.

4. Warta to be repaid the $424,000 he loaned to Magnacom, or, at Warta's option, he have until September 28, 1998, to retain ownership of the Hawaiian and Guam licenses rather than take the money.

5. GST pay Warta's attorneys' fees for time spent on Qualcomm.

## BACKGROUND

Warta's demands make no sense unless one accepts completely his interpretation that his relationship with Magnacom was as a front for GST with no personal benefit to be expected. The existing record does not support his approach.

-2-    AW-100414    DHS\dhs9898.doc

ATERWYNNE LLP

To assist your analysis, excerpts of relevant GST Board minutes are attached which provide some of the history of the relationship between GST and Magnacom. The directors who were involved from the outset of Magnacom's existence include Steve Irwin, Jack Armstrong and Peter Legault. Joe Fogg was present during some of the later meetings as the relationship between GST, Magnacom and Qualcomm evolved.

Excerpts of Minutes Concerning Magnacom

| Ex. A: | August 1, 1996 | Finance Committee Minutes |
| Ex. B: | Sept. 16-17, 1996 | GST Board Minutes |
| Ex. C: | Jan. 14-16, 1997 | GST Board Minutes |
| Ex. D: | July 15-16, 1997 | GST Board Minutes |
| Ex. E: | Sept. 9-10, 1997 | GST Board Minutes |
| Ex. F: | Dec. 16-17, 1997 | GST Board Minutes |

The minutes of the Finance Committee reveal that in August of 1996, John Warta disclosed that Magnacom had been successful in a bid for PCS licenses. The Committee agreed, subject to compliance with GST's debt covenants, to advance $5.4 million to Magnacom for license payments. The justification recited in the minutes for GST's expenditure was the benefit GST would receive from an operating agreement under which GST would service Magnacom's business. The minutes also refer to an option GST would obtain to purchase 99% of Magnacom, *subject to compliance with FCC and other regulations* (Ex. A). As noted above, at the time this option was granted, the proviso that it was "subject to" FCC approval was significant. At that time, the FCC still had restrictions against foreign ownership. This cast some doubt on just how effective the option was, and left open the potential that Warta would retain a substantial on-going interest in Magnacom. In addition, Magnacom had acquired its licenses under set asides for small businesses and entrepreneurs (which entitled Magnacom to favorable FCC financing). The practical value of the option to acquire Magnacom was thus limited, as GST would have a difficult time stepping into Magnacom's shoes without losing the eligibility for favorable FCC financing.

In the minutes of the Sept. 1997, Board meeting (Ex. B), Magnacom is described as a "company privately owned by John Warta..." The FCC restrictions on foreign ownership are described as limiting GST to a 24.9% ownership interest.

ATERWYNNE LLP

However, GST concluded that it was in the interest of GST to continue supporting Magnacom because of business synergies. The funding to Magnacom was in the form of the purchase of prepaid minutes in order to avoid violation of debt covenants. The conflict created by Warta's ownership in Magnacom while coincidentally serving as an officer and director of GST was acknowledged and approved by the board. The money for Magnacom was increased to $10,800,000.

In January of 1997, the Board was informed that the financial exposure to Magnacom was up to $14.4 million (Ex. C). This meeting is significant, because it shows that Magnacom was evolving into a company that was going to obtain its own financing from a source other than GST. The minutes include a resolution recording the board's understanding that Magnacom was going to obtain independent financing. The Board again recognized John Warta's position as the person with controlling ownership interest in Magnacom.

At the July 15, 1997, meeting, Warta reported that Magnacom was in discussions with a major equipment supplier that would provide financing to Magnacom (Ex. D). The company is not identified by name, but the reference was to Qualcomm.

By the time of the Sept. 9, 1997, meeting (Ex. E), Qualcomm was identified as the party to provide financing. Warta also reported that Magnacom (PCS+) was in the process of preparing a private placement to raise between $3 million and $5 million. At this point, the operating assumption was that GST would end up exercising an option to acquire 24% of Magnacom. Mr. Warta (through PNI) was to retain a substantial interest in the company.

By the December 1997, meeting (Ex. F), the transaction with Qualcomm had taken shape. GST was to obtain a 25% ownership interest in Magnacom, and give a warrant to Qualcomm. Qualcomm was to provide both vendor and equity financing to Magnacom. At this meeting, the GST Board directed that no GST senior management, officer or director should participate in the private placement of PCS+. Warta is relying upon this resolution to bolster his current position that he was a mere front for GST and not a "real" owner of Magnacom/PCS Plus.

### Recommended Response to Warta Demands

My analysis is driven by the written record. John Warta and his lawyers claim that things aren't what they seem, contending the GST-Magnacom relationship was only made to appear independent because of FCC restrictions. Given the enrichment Warta would have gotten under the deal that was initially negotiated with

ATERWYNNE LLP

Qualcomm, this is difficult to accept. Nonetheless, it is important that we verify with the board members who were at the meetings whether they understood that John had an interest in GST beyond that of a stand-in for GST.

John Warta's most recent demands present several problems, particularly given the time limitations in completing an agreement with Qualcomm. John asks for indemnity, but it seems clear that he did not keep the GST board properly apprised of Magnacom's or PCS Plus' activities. A step into this unknown could trigger significant risks. As one example, there appear to be substantial liabilities to Magnacom employees. If GST took over the transaction and Magnacom failed to close with Qualcomm, other contingent liabilities could surface. Qualcomm can cut off most of these liabilities by structuring the transaction as an asset purchase. GST would have no such protection if it were to agree to Warta's demands. John Warta and Bob Olsen have been the people in charge of Magnacom. John Warta, Steve Irwin and the top managers (Olson, Ford and Cerveny) were designated as the directors of PCS Plus according to Bob Olsen. The directors of a company that is insolvent or which is nearly so, have a duty to act in the interest of creditors. GST should be cautious about allowing Warta to shift that risk (which he now has) to GST.

Warta is concerned about recouping his money. He is in a better position than anyone else to obtain an accommodation from the constituents within Magnacom's creditor group which could free up some money for him. For example, there are huge bills owed to Olshon and Swidler with whom he has worked very closely. Certain employees that John and Bob Olsen brought into the company are claiming entitlement to large liquidated damage claims under "change of control" provisions in their employment contracts. He also may have some ability to negotiate with them to lower their payments (and thus increase the funds available for Warta).

## CONCLUSION

In the event that it is necessary for GST to make any more concessions to get the deal closed with Qualcomm, I recommend that GST consider working with some of the other interested parties in finding some more money for Warta, rather than agreeing to his demands for indemnity and assumption of Magnacom's liabilities.

John Warta is trying to force GST into a position where it will take over his and Magnacom's liabilities. He may assume that GST would do this rather than risk losing its entire investment. However, as the managing director of the Magnacom LLC and as the owner and director of PCS Plus, Warta will have substantial personal exposure for all of Magnacom's debts if he allows Magnacom to fail. His exposure will exist as a result of claims on behalf of vendors and former

employees, as well as from GST. I have already discussed with Warta's attorneys the exposure that he has. Assuming that GST does not agree to Warta's demands, he should be put on notice that claims will be made against him personally for GST's losses if he places his own personal interest ahead of the creditors whose interest he has a duty to protect.