# EXHIBIT 20

DAVID S. STEUER, State Bar No. 127059
JARED L. KOPEL, State Bar No. 126817
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-9300
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

Attorneys for Plaintiffs
GST TELECOMMUNICATIONS, INC. and
GST TELECOM, INC.

(ENDORSED)
FILED
OCT 20 1998
STEPHEN V. LOVE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY_____DEPUTY

SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| GST TELECOMMUNICATIONS, INC., a Canadian Corporation, and GST TELECOM, INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GST GLOBAL TELECOMMUNICATIONS, INC., a Yukon Territory Corporation, W. GORDON BLANKSTEIN, STEPHEN IRWIN, JOHN WARTA, ROBERT H. HANSON, PETER E. LEGAULT, and IAN WATSON,<br><br>Defendants. | CASE NO.: CV777478<br><br>**COMPLAINT** |

GST Telecommunications, Inc., and GST Telecom, Inc., by their undersigned attorneys, allege for their complaint upon knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters, as follows:

GST-WARTA 65878

I.

## INTRODUCTION

1. This case seeks to remedy the fraud of individuals using thinly traded stock of a shell corporation to effect a fraud upon plaintiff GST Telecommunications, Inc. a NASDAQ-traded telecommunications company headquartered in Vancouver, Washington. In particular, the individual Defendants, led by "Howe Street Promoter" W. Gordon Blankstein, acquired cheap stock in a Vancouver British Columbia Stock Exchange "shell" corporation, "Canadian Programming Concepts, Inc.", and then used their positions as GST insiders -- members of GST's Board of Directors -- to transfer an immensely lucrative Mexican business opportunity, the "Bestel Opportunity" to the shell corporation, with no compensation to GST. The opportunity so transferred has recently been valued in excess of $200 million. In short order, the individual Defendants' cheap stock in Canadian Programming Concepts, now renamed "GST Global Telecommunications, Inc." quadrupled in value, resulting in the personal enrichment of the individual Defendants at the expense of GST and its shareholders.

2. By this lawsuit, GST seeks to hold Defendants accountable for their fraud and to return all equitable and legal interests in and to the Bestel Opportunity to its rightful owner, GST.

II.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over all causes of action in this Complaint pursuant to the California Constitution Article VI, Section 10, and California Code of Civil Procedure Section 410.10 because no cause of action contained herein is given by statute to other trial courts and the amount in controversy exceeds $25,000.

4. Pursuant to California Code of Civil Procedure Sections 395(a) and 395.5, venue is proper in Santa Clara County because acts giving rise to the complaint occurred in Santa Clara County and because, as described below, defendant Global's principal operations in the United States are located here.

///

GST-WARTA 65879

## III.

## THE PARTIES

5. Plaintiff GST Telecommunications Inc., is a Canadian Corporation with its principal place of business in Vancouver, Washington. GST is a leading facilities-based provider of advanced telecommunications products and services. The common stock of GST is traded on the NASDAQ. The Company currently operates networks in 18 cities and has 31 additional networks under development. The Company has built fiber and switching infrastructures in selected cities in the western United States and is pursuing a strategy of linking the markets it serves via advanced long haul fiber optic networks. GST's integrated communications product and service offerings include Plain Old Telephone Service (POTS), analog trunk, private line, long distance, data (frame relay and ATM), paging, Centrex, and Custom Local Signaling Services (CLASS) such as call forwarding, caller I.D., voice mail, and automatic call back. GST also offers a full complement of Internet services, including dial-up, dedicated access, Electronic Data Interchange (EDI), and Web services. GST has no business operations in Canada.

6. Plaintiff GST Telecom Inc. is a Delaware Corporation with its principal place of business in Vancouver, Washington. GST Telecom is a wholly owned subsidiary of GST Telecommunications Inc. Telecom has no business operations in Canada. Hereinafter, GST Telecom and GST Telecommunications Inc. are referred to collectively as "GST".

7. Defendant GST Global Telecommunications, Inc. ("Global"), formerly known as "Canadian Programming Concepts, Inc.," ("CPC") is incorporated under the laws of Yukon Territory, Canada with its executive offices in Vancouver, British Columbia and its principal operations in Mountain View, California. Global is a telecommunications company whose common stock is traded on the American Stock Exchange and the Vancouver Stock Exchange. Global's principal operations in the United States are conducted through its Vitacom subsidiary in Mountain View. Apart from a few employees in its Vancouver, British Columbia office, Global has no business operations in Canada.

8. Defendant W. Gordon Blankstein ("Blankstein") is a resident of British Columbia, and is or was during the course of events described below, Chairman of the GST Board of

-3-

1  Directors, a member of the GST Executive Committee, a member of the GST Finance
2  Committee, a Director of Global, Acting President of Global, Chairman of the Global Board of
3  Directors (current), and a major Global shareholder (current).

4      9. Defendant Stephen Irwin ("Irwin") is a resident of New Jersey, and is, or was
5  during the course of events described below, a Vice-President of GST, a Director of GST, Vice-
6  Chairman of the GST Board of Directors, a member of the GST Executive Committee, a member
7  of the GST Finance Committee, Secretary of GST, counsel to GST, Secretary to a Global
8  subsidiary, counsel to Global and a Global shareholder. Irwin is also Of Counsel to the law firm
9  of Olshan Grundman Frome & Rosenweig ("Olshan") in New York, New York.

10      10. Defendant John Warta ("Warta") is a resident of Hawaii and is, or was during the
11  course of events described below, President and Chief Executive Officer of GST, Chairman of
12  the GST Board of Directors, a member of the GST Executive Committee, Vice-Chairman of the
13  Global Board of Directors, a director of a Global subsidiary, and a Global shareholder.

14      11. Defendant Robert H. Hanson ("Hanson") is a resident of Wyoming, and is, or was
15  during the course of events described below, Senior Vice-President of GST, Chief Financial
16  Officer of GST, a Director of GST, a member of the GST Finance Committee, and a Global
17  shareholder.

18      12. Earl C. Kamsky ("Kamsky") is now deceased, but was, during the course of events
19  described below, President and Chief Executive Officer of GST Telecom, a Director of GST,
20  President and Chief Executive Officer of Global, a Director of Global, President and Chief
21  Executive Officer of a Global subsidiary and a Global shareholder.

22      13. Defendant Peter E. Legault ("Legault") is a resident of Ontario, Canada and, is or
23  was during the course of events described below, a Director of GST, a Director of Global, and a
24  Global shareholder. Legault is also a Director and Vice-President of Thomson Kernaghan & Co.
25  Ltd. ("Thomson").

26      14. Defendant Ian Watson ("Watson") is a resident of Marin County, California and is,
27  or was during the course of events described below, President and Chief Executive Officer of
28  GST, Chairman of the GST Board of Directors, Vice-President of GST USA, Inc., a member of

-4-

GST-WARTA 65881

the GST Finance Committee, President and Chief Executive Officer of Global (current), Vice-Chairman of the Global Board of Directors (current), and a Global shareholder (current). Watson is also the beneficial owner of Tellson Holdings Limited ("Tellson").

15. On information and belief, each of the Defendants conspired with, participated with and acted in concert with each of the other Defendants in the activities hereinafter alleged, and, at all times herein mentioned, each of such Defendants was the agent of and authorized to act for and was acting for and on behalf of and with the knowledge and consent of each of the other Defendants.

16. Dr. Thomas E. Sawyer, Jack Armstong, and Takashi Yoshida were directors of GST during the relevant period and are not named as defendants herein. These directors are hereinafter collectively referred to as the "Independent Directors."

## IV.

## THE FACTS

17. In early 1996, GST had developed a significant business opportunity in Mexico (the "Bestel Opportunity") whereby it could acquire a 49% interest in one of seven concessions which had been granted by the Mexican telecommunications authority (the SCT) to a Mexican consortium, Grupo Varo, to construct and operate a public telecommunications network in Mexico. By the fall of 1996, however, the Defendants -- who were not only directors and officers of GST, but also significant undisclosed shareholders of Global -- had fraudulently transferred the Bestel Opportunity to Global for no consideration. There was not at this time, nor ever, any written agreement or even a term sheet between GST and Global stating the terms for transfer of the Bestel Opportunity. A recent independent analyst's report placed the value of the Bestel Opportunity at $460 million. GST's 49% interest -- wrongly taken by Global -- has thus now been independently valued at $225 million.

18. The transfer of the Bestel Opportunity to Global was part of a pattern of conduct on the part of defendant Blankstein of abusing the corporate form for personal profit. Blankstein would acquire control of a shell corporation listed on the Vancouver or Alberta Stock Exchange,

GST-WARTA 65882

and announce the private placement of further cheap stock. The stock would then be purchased by Blankstein and his associates so that they would be in a position to profit when the shell took on a real project. The project, more often than not, came from Blankstein's diverting to the shell a corporate opportunity that belonged to another company of which he was a director. The company surrendering the asset would receive no, or slight compensation. Meanwhile, the price of shares in the transferee would rise sharply to the profit of Blankstein and his associates. Global fit this pattern precisely.

**Global**

19. Global was formerly known as Canadian Programming Concepts Ltd. ("CPC"). CPC was a Yukon Territory corporation incorporated in 1993. Before Defendants caused the Bestel Opportunity to be fraudulently transferred to CPC for no consideration, CPC was a lightly traded shell corporation listed on the Vancouver Stock Exchange with no material assets.

20. From the time of its incorporation, CPC was controlled by Blankstein and his associates. In or about May of 1995, CPC was listed on the Vancouver Stock Exchange (the "VSE"). Since approximately August of this year, CPC, now known as Global, has been trading on the American Stock Exchange.

21. Blankstein, then Chairman of the GST Board, had been attempting to induce GST to acquire an interest in CPC for some time. In October of 1995, at a GST Board of Directors meeting in Japan, Blankstein suggested to the GST Board that GST acquire a shell corporation. In July of 1996, upon Blankstein's urging, the Board finally authorized a significant purchase of CPC stock.

22. GST purchased 2.1 million shares of CPC stock on June 3, 1996. 1,450,000 of these shares were purchased by GST directly from Blankstein at a cost of $72,500 or 5 cents per share.

23. In the same transaction in which GST purchased shares from Blankstein personally, GST also purchased 125,000 CPC shares from Teleport Canada Development Corporation ("Teleport") for $87,500 ( 70 cents per share), 425,000 shares from Quest Capital Corporation for $193,750 (45 cents per share) and 100,000 shares from associates of Blankstein

-6-

1  for $50,000 (50 cents per share). Teleport was a corporation in which Blankstein and his brother
2  Robert Blankstein had a substantial beneficial interest. The fact that GST was purchasing shares
3  from a company in which its Chairman had a significant financial stake was not disclosed at the
4  time to the Independent Directors.

5       24.    At the time of GST's acquisition of 2.1 million shares, Global had outstanding
6  shares totaling 3,450,001. Thus, through its June 3, 1996 purchase of 2.1 million shares GST
7  acquired approximately 60% of Global's outstanding shares.

8       25.    The GST Board was not informed that GST had purchased CPC shares until a
9  month later. As recorded in the minutes of a July 2, 1996 telephonic meeting of the GST Board
10 that was chaired by Blankstein and attended by Warta, Irwin, Armstrong, Hanson, Legault,
11 Sawyer and Watson:

> The Chairman [Blankstein] then discussed *proposed* arrangements pertaining to the acquisition of control of an existing Canadian corporation, Canadian Programming Concepts, Inc., whose shares were currently traded on the Vancouver Stock Exchange. The Company *proposed* to acquire 2,100,000 shares...which *would* result in its ownership of *37.5%* of the outstanding capital stock. It was contemplated that the new corporation, with a working name of GST Global Communications...would be used for non-U.S. telecommunications projects .... The Board determined that the Company should cause Messrs. Blankstein, Warta, Irwin and Legault to be elected initially as directors of GST Global ...

18 (emphasis supplied). No mention was made at this meeting of the identity of the sellers,
19 Blankstein and Teleport, of the fact that it was not a "proposed" acquisition, but one that had
20 already occurred, or of the fact that, on the day of this acquisition GST had acquired 60%, rather
21 than 37.5% of the then outstanding Global shares.

22       26.    One day after GST's acquisition of Global shares, Blankstein caused Global to
23 announce a private placement of 1.5 million units (the "Units") at $1.50 Canadian per Unit. Each
24 Unit consisted of one share and one share purchase warrant exercisable at $2.00 Canadian for one
25 year. The issuance of the Units resulted in the substantial dilution of GST's interest in Global.

26       27.    The placees in this private placement included defendants Blankstein, Warta,
27 Irwin, Hanson and Watson (through Tellson), each of whom received 65,000 units. In addition,
28

GST-WARTA 65884

Legault purchased 75,000 Units in the name of Thomson Kernaghan, a company in which he held a material interest. The private placement of the Units closed on or about August 14, 1996.

28.  Between June 3, 1996, when GST first acquired Global shares, and the present, Blankstein, and later the other Defendants, despite being directors or officers of GST, continued to cause Global to issue more shares, thereby substantially diluting GST's interest in Global. This is illustrated in the following chart:

### DILUTION OF GST'S INTEREST IN GLOBAL

| Issue Date | Number of shares Issued by Global | GST's purchases | GST's percentage interest in Global | Global shares Outstanding |
|---|---|---|---|---|
| 7/96 |  | 2.1 million | 61% | 3.45 million |
| 8/96 | 1.5 million |  | 42% | 4.95 million |
| 9/96 | .32 million |  | 40% | 5.27 million |
| 11/96 | 3 million | 1.5 million | 46% | 8.27 million |
| 1/97 | 2.75 million |  | 33% | 11.02 million |
| 2/97 | 1.12 million |  | 30% | 12.14 million |

By December 31, 1997, following various other stock issuances by Global, the 3.6 million Global shares that were owned by GST represented only 20.6% of Global's outstanding shares.

### GST Insiders Buy Into Global

29.  In order to insure the complicity of the other Defendants in his scheme to enrich Global and himself at the expense of GST, Blankstein purchased the silence of each of the other Defendants with cheap shares of Global stock.

30.  Thus, on July 3, 1996, the day after the GST Board approved the "proposed" acquisition of Global stock, the *Global* Board granted 67,000 stock options each to Warta, Irwin, and Blankstein, and 20,000 options to Legault. These stock options were separate and apart from the Units that the Defendants purchased in the Global private placement. As a result, by no later than August 14, 1996 (the date the private placement of 1.5 million Units closed), the Defendants' holdings of Global shares included:

///

///

GST-WARTA 65885

| | | |
|---|---|---|
| 1 | Irwin | 65,000 common shares @ $1.50[1] per share |
| 2 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 3 | | 67,000 options @ $1.66 per share until June 4, 2001 |
| 4 | Warta | 65,000 common shares @ $1.50 per share |
| 5 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 6 | | 67,000 options @ $1.66 per share until June 4, 2001 |
| 7 | Legault | 20,000 options @ $1.66 per share until June 4, 2001 |
| 8 | | 75,000[2] common shares @ 1.50 per share |
| 9 | | 75,000 warrants exercisable for one year @ $2.00 per share |
| 10 | Watson[3] | 65,000 common shares @ $1.50 per share |
| 11 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 12 | Blankstein | 65,000 common shares @ $1.50 per share |
| 13 | | 65,000 warrants exercisable for one year @ $2.00 per share |
| 14 | | 67,000 options @ $1.66 per share until June 4, 2001 |
| 15 | Hanson | 65,000 common shares @ $1.50 per share |
| 16 | | 65,000 warrants exercisable for one year @ $2.00 per share |

31. At the September 16, 1996 GST Board meeting held in Vancouver, Washington, which was attended by Blankstein, Irwin, Warta, Armstrong, Watson, Hanson, Sawyer and Legault, the Independent Directors were informed that Global had issued 67,000 stock options to Warta, Irwin, Blankstein and Legault. This was, at best, a half-truth. The Defendants did not tell the Independent Directors that each of the Defendants had previously purchased, directly and indirectly, thousands of shares of Global stock. Moreover, although the Board refused, at this meeting, to ratify the issuance of Global options to Warta, Irwin, Blankstein or Legault, these Defendants did not divest themselves of their Global options.

---

[1] All dollar amounts in these tables are in Canadian dollars.

[2] These purchases were made through Thomson Kernaghan.

[3] These purchases were made though Tellson, a company in which Watson held a material interest.

GST-WARTA 65886

32. By March of 1997, the Defendants' holdings of Global shares or stock options, which holdings were never fully disclosed to the Independent Directors, included:

| | |
|---|---|
| Irwin | 99,896 common shares @ 96 cents per share |
| | 65,000 common shares @ $1.50 per share |
| | 65,000 warrants exercisable @ $2.00 per share |
| | 67,000 options @ $1.66 per share until June 4, 2001 |
| Warta | 65,000 common shares @ $1.50 per share |
| | 65,000 warrants exercisable @ $2.00 per share |
| | 67,000 options @ $1.66 per share until June 4, 2001 |
| Legault | 20,000 options @ $1.66 per share until June 4, 2001 |
| | 75,000[4] common shares @ $1.50 per share |
| | 75,000 warrants exercisable @ $2.00 per share |
| Watson | 65,000[5] common shares @ $1.50 per share |
| | 65,000 warrants exercisable @ $2.00 per share |
| | 74,000 options @ $5.30 per share until Jan. 28, 2002 |
| Blankstein | 65,000 common shares @ $1.50 per share |
| | 65,000 warrants exercisable @ $2.00 per share |
| | 67,000 options @ $1.66 per share until June 4, 2001 |
| | 65,500 options @ $5.30 per share until Jan. 28, 2002 |
| Hanson | 65,000 common shares @ $1.50 per share |
| | 65,000 warrants exercisable for one year @ $2.00 per share |

### Development of the Bestel Opportunity

33. As noted above, GST had begun developing the Bestel Opportunity in early 1996. Eventually, a letter of intent was negotiated between Grupo Varo, a Mexican company, and GST. Irwin was designated by GST to represent GST's interests in these negotiations. Negotiations of the letter of intent occurred at meetings held, among other places, in Los Angeles. In April 1996,

---

[4] These are purchases made through Thomson Kernaghan.

[5] These are purchases made though Tellson.