1  VSE would have required evidence that issuance of Global shares would provide GST with a
2  fair value for the Bestel Opportunity. Valuing the Bestel Opportunity would reveal that even
3  5,000,000 shares of Global was grossly inadequate consideration for the transfer. Thus, the
4  Counterclaim Defendants had no intention of preparing an objective fairness opinion or
5  submitting proper evidence of the value of the transaction to the VSE for approval. The
6  Counterclaim Defendants did not disclose their intentions to the Independent Directors.

                                              96.

8  On May 9, 1997, the VSE wrote to a Global attorney stating that, subject to receiving
9  further information, it was prepared to accept the acquisition of 49% of Bestel by Global.
10 The VSE also stated that it would require a valuation of the Bestel Opportunity before it
11 would approve the issuance of Global shares to GST.

                                              97.

13 On June 2 and June 3, 1997 a GST Board of Directors meeting was held in San
14 Francisco. In attendance were the Individual Counterclaim Defendants and Independent
15 Directors Sawyer and Armstrong. At the meeting, Irwin reported that:

> ...no definitive resolution had been reached with respect to the receipt by the Company of 3,000,000 additional shares of capital stock of Global and up to an additional 2,000,000 shares ...in consideration of the transfer to Global of the Bestel project to the Company. Mr. Irwin *reported that application for approval of the issuance of shares to the Company had been made* to the Vancouver Stock Exchange by Global for issuance of up to 3,000,000 shares. A lengthy discussion ensued with respect to a final resolution of the number of shares to be received by the Company.

(emphasis added). In fact, no such application — even at "up to 3,000,000 shares" — had been made by Global and none has been made to date.

                                              98.

At the meeting, the Board resolved to delegate Irwin and Blankstein to pursue the share issuance through the VSE and to support it by a "fairness opinion" to be prepared by

1  officer of Magnacom.

2  101.

3  On information and belief, in or about July 1996, and prior to any Board approval, Warta, who was then President and CEO of GST, and Irwin, who was GST's Vice Chairman, caused GST to advance approximately $5.9 million to Magnacom. Magnacom used the $5.9 million advanced to it by GST as a deposit to acquire licenses for C Block Broadband Personal Communications Services ("Broadband PCS"). Warta, as the owner of Magnacom, and Irwin, as a legal advisor to Magnacom and an officer of Magnacom, each suffered from debilitating conflicts of interest that prevented them from protecting GST's interests in its dealings with Magnacom.

102.

Warta and Irwin knowingly permitted and caused further advances by GST to Magnacom. In January of 1997, Irwin reported to GST that $14.4 million had been advanced to Magnacom for the PCS licenses. Although the first $5.9 million had been advanced by GST to Magnacom in July of the previous year, GST still had not been provided even a term sheet explaining how GST's advances to Magnacom would be repaid if the PCS networks were never built or if Magnacom forfeited to the FCC either the licenses or the funds Magnacom had paid the FCC for the licenses. Warta and Irwin did cause GST to enter into a "Reseller Agreement" with Magnacom, under which GST's cash advances to Magnacom are characterized as a prepayment for airtime. This agreement was prepared by Irwin with Warta's approval, and contains no provisions for repayment by Magnacom to GST if Magnacom forfeits the licenses and funds advanced to the FCC or fails to construct the networks. The Reseller Agreement was executed on GST's behalf by Irwin -- <u>after</u> GST had advanced $14.4 million to Magnacom.

103.

Magnacom has now filed for bankruptcy. As a direct and proximate result of Irwin

1  First Marathon Securities. Warta, Blankstein and Legault abstained from voting on this
2  resolution; the other conflicted directors did not. Although Blankstein had been designated
3  by the GST Board to act on its behalf, on June 30 Blankstein told First Marathon that the
4  agreement between GST and Global called for the issuance of *no more than* three million
5  shares rather than the three to five million shares specified in the January 1997 GST Board
6  resolution.

99.

It was not until May 13, 1998, in connection with Global's proxy for its annual shareholders meeting, that Global first publicly questioned the existence of *any* obligation to GST, and denied the existence of an agreement. In particular, Global's Proxy Statement states:

> The Company *is negotiating* an agreement to issue to a shareholder, GST Telecommunications ... additional common shares, in consideration of the 1996 transfer by Telecom to the Company of its previous development work and interests, *if any*, in and to the telecommunications project in Mexico being developed by Bestel. The issuance of any common shares is subject to regulatory approval and approval of the directors. The number of shares, *if any*, has not been determined at this time.

(Emphasis added.)

**Magnacom and Guam Net**

100.

Magnacom Wireless, LLC ("Magnacom"), a Delaware Limited Liability Company, is owned by John Warta through Pacwest, Inc. Irwin and Olshan acted as legal counsel to GST in connection with its dealings with Magnacom. Yet, at the same time Irwin and Olshan were counseling GST in its interactions with Magnacom, they were providing advice to Magnacom on its dealings with GST. This conflict was never fully disclosed and never waived by GST. In addition, Irwin is or was at the time of the events described below, and

Page 29 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

1. and Warta's breach of fiduciary duty, GST has effectively no recourse against Magnacom
2. and has been damaged in an amount not less than $15 million.

104.

Warta's fraudulent diversion of GST's resources to Magnacom is similar to his conduct with respect to another Warta company formerly know as Guam Net, Inc. ("Guam Net"), and now known as PCS Plus Pacific, Inc. ("PCS Pacific"). In 1996, Warta negotiated for the puchase of A Block PCS licences from Poka Lambro Telephone Cooperative, Inc. for the market consisting of Guam and the Northern Marianas Islands. For the benefit of himself and his marital community, Warta caused GST to advance $415,000 to Guam Net -- his own personal company -- without taking adequate -- or any -- steps to recognize or protect GST's interest in the payment for the investment. As a result, GST has yet to receive any consideration for the investment, even though the licenses were purchased in February, 1997. As with Magnacom, GST has effectively no recourse against PCS Pacific and has been damaged in an amount not less than $415,000.

**FIRST COUNTERCLAIM**
(Fraud)
(Against all Counterclaim Defendants)

105.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 1 through 104 above as if fully set forth herein.

106.

Counterclaim Defendants Warta, Blankstein, Legault, Irwin, Hanson, and Watson, have, both individually and on behalf of Global, knowingly made numerous misrepresentations to, and or concealed material facts from, GST, despite their duties to, *inter alia*, disclose their conflicted interests as alleged above and abstain from taking actions to GST's detriment. Global, through the fraudulent actions of its agents on its behalf, is also

1  a party to the fraudulent scheme alleged herein.

2                                    107.

3  In particular, all of the Counterclaim Defendants failed to disclose, although under a
4  duty to do so, the following material facts:

    (a)    that at the same time they were discussing and actually voting on the issue of whether to transfer the Bestel Opportunity to Global, each of the Individual Counterclaim Defendants already owned thousands of shares of Global stock and held warrants to purchase thousands more;

    (b)    that no written agreement between GST and Global was ever executed, or even prepared, setting out the terms on which the Bestel Opportunity would be transferred to Global;

    (c)    that Grupo Varo had been induced to agree that Global could participate in the Bestel Opportunity by a representation that GST owned 80% of the issued shares of Global;

    (d)    that GST did not own 80% of Global's shares either at that time or ever;

    (e)    that the consideration which GST was supposed to receive in exchange for the transfer of the Bestel Opportunity, namely a minimum of 3 million Global shares, was not based on any reasoned investigation of the value of the Bestel Opportunity, but on a representation by Blankstein of what he thought the VSE might approve;

    (f)    that GST would not receive any Global shares without VSE approval;

Page 32 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

(g) that before it would approve the issuance of Global shares, the VSE would require evidence of the value of the Bestel Opportunity, but that no such evidence was prepared;

(h) that the Counterclaim Defendants had no intention of applying to the VSE for the issuance of three to five million Global shares to GST;

(i) that no steps were being taken to protect GST's interest in the Bestel Opportunity in the event that the VSE did not approve the issuance of an appropriate amount of Global shares;

(j) that no steps had been taken to secure GST's control of Global; and

(k) that the Bestel opportunity had been transferred to Global for no consideration months before GST's Board ever approved the transfer.

108.

In addition, Warta, Blankstein, Irwin, and Global in particular, falsely represented:

(a) that a wholly owned subsidiary of GST could not own the Bestel Opportunity without the consent of GST's lenders;

(b) that an application for approval of the issuance of Global shares to GST had been submitted to the VSE for approval;

(c) that the issuance to GST of 3,000,000 to 5,000,000 shares of Global stock would be fair consideration for the transfer of the Bestel Opportunity;

(d) that the transaction resulting in the transfer of the Bestel Opportunity to Global was fair and reasonable; and

(e) that the transaction would be supported by a fairness opinion.

109.

Counterclaim Plaintiffs reasonably relied to their detriment on Counterclaim Defendants' material misrepresentations and on Counterclaim Defendants' duty to disclose all material facts.

110.

As a direct and proximate result of Counterclaim Defendants' conduct, non-disclosures and affirmative misrepresentations, Counterclaim Plaintiffs have been damaged in an amount exceeding $225 million, but not yet fully determined.

**SECOND COUNTERCLAIM**
(Fraud)
(Against Warta)

111.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 110 above as if fully set forth herein.

112.

Warta used his position as a director and officer of GST to facilitate his fraudulent scheme to divert GST's resources for his own use and benefit. Warta caused GST to transfer funds to Magnacom for the purchase of PCS licences without board approval, and deliberately failed to protect GST's interests prior to the transfer of such funds. Warta also caused GST to transfer funds to Guam Net under similar circumstances and with a similar deliberate failure to protect GST's interests and to secure adequate protection for GST prior to the transfer of such funds. Indeed, with respect to Guam Net, Warta never did receive even post-hoc board authorization.

113.

But for Warta's abuse of his corporate position, false representations to the GST Board of Directors regarding the advisability of advancing funds to Magnacom, and his

failure to disclose the personal benefit that he sought to derive for himself and his marital community from both the Magnacom and Guam Net transfers, Warta could never have transferred GST funds to these two companies he owned.

114.

As a result of Warta's fraudulent transfer of GST assets to Magnacom and Guam Net, Warta and his marital community have benefitted and GST has been damaged in an amount exceeding $15 million.

**THIRD COUNTERCLAIM**
(Breach of Fiduciary Duty of Loyalty and Care)
(Against all Individual Counterclaim Defendants)

115.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 114 above as if fully set forth herein.

116.

As directors and officers of GST, the Individual Counterclaim Defendants owed a fiduciary duty to GST to act honestly, in good faith, and in a manner reasonably believed to be in the best interests of GST. The Individual Counterclaim Defendants also owed a duty to GST to refrain from using their power as directors and officers of GST for their own personal benefit and to make full and timely disclosure to the Board of GST of all material facts relating to business carried out on behalf of GST.

117.

The Individual Counterclaim Defendants breached their fiduciary duty to GST by failing to disclose, although under a duty to so, numerous material facts as set forth in paragraph 107, above.

118.

The Individual Counterclaim Defendants further breached their fiduciary duties by

1  their misappropriation of a corporate opportunity, Global Shares, based on the misuse of
2  Counterclaim Plaintiffs' proprietary inside information, for their own personal profit at the
3  expense of GST and its shareholders.

4                                    119.

5  The Individual Counterclaim Defendants further breached their fiduciary duties by
6  causing the GST Companies to transfer the Bestel Opportunity to Global without any
7  agreement to compensate GST, without receiving fair value for the transfer, and with the
8  knowledge that Global had not agreed to compensate the GST Companies for the transfer.

9                                    120.

10 But for the Individual Counterclaim Defendants' breach of their fiduciary duties and
11 the misuse of their positions as directors and officers of GST, the Individual Counterclaim
12 Defendants would not have been able misappropriate the Bestel Opportunity, or cause the
13 transfer of the Bestel Opportunity.

14                                    121.

15 As a result of the Individual Counterclaim Defendants' breach of their fiduciary
16 duties, the Individual Counterclaim Defendants have benefitted and GST has been damaged
17 in an amount exceeding $225 million, the value of the Bestel Opportunity.

**FOURTH COUNTERCLAIM**
(Breach of Fiduciary Duty of Loyalty and Care)
(Against Warta and Irwin)

                                    122.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through
121 above as if fully set forth herein.

                                    123.

As directors and officers of GST, Warta and Irwin owed a fiduciary duty to GST to
act honestly, in good faith, and in a manner reasonably believed to be in the best interests of

1  GST. Counterclaim Defendants also owed a duty to GST to refrain from using their power
2  as directors and officers of GST for their own personal benefit, and to uphold their duty of
3  loyalty to GST by refraining from accepting obligations to other parties that might interfere
4  with their duty to GST.

124.

6  Counterclaim Defendants Warta and Irwin breached their fiduciary duty to GST by
7  causing GST to transfer funds to Magnacom for the purchase of PCS licences without board
8  approval and without adequate consideration of GST's best interests, and by failing to secure
9  any protection or recourse for GST prior to the transfer of such funds. Warta further
10 breached his fiduciary duty to GST by causing GST to transfer funds to Guam Net under
11 similar circumstances and with a similar failure to consider GST's best interests and to
12 secure adequate protection for GST prior to the transfer of such funds.

125.

14 But for Counterclaim Defendants Warta's and Irwin's breach of their fiduciary duty
15 and the misuse of their positions as directors and officers of GST, GST would not have
16 transferred any funds to Magnacom or Guam Net.

126.

18 As a result of Counterclaim Defendants Warta's and Irwin's breach of their fiduciary
19 duty, GST has been damaged in an amount exceeding $15 million.

**FIFTH COUNTERCLAIM**
(Negligent Misrepresentation)
(Against Global)

127.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through
104 and 115 through 126 above as if fully set forth herein.

Page 37 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400

128.

Counterclaim Defendant Global, through its agents, made false representations to the GST Board of Directors regarding the transfer of the Bestel Opportunity as alleged above. In making the representations and omissions, and in doing the acts alleged above, Global acted without any reasonable grounds for believing the representations were true, and intended by those representations to induce reliance on the part of the GST Board of Directors. The GST Board of Directors relied upon these false representations in deciding to purchase an interest in Global and in allowing the transfer of the Bestel opportunity to Global. Given the relationship between GST and the Counterclaim Defendants, such reliance was justified. As a result, GST has been damaged in an amount exceeding $225 million, but not yet fully determined.

### SIXTH COUNTERCLAIM
(Unjust Enrichment)
(Against all Counterclaim Defendants)

129.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 128 above as if fully set forth herein.

130.

Counterclaim Plaintiffs are informed and believe, and based thereon allege, that by virtue of Counterclaim Defendants' failure to comply with their promises and obligations to Counterclaim Plaintiffs and Counterclaim Defendants' material misrepresentations and failure to disclose material information to Counterclaim Plaintiffs, Counterclaim Defendants have received and will continue to receive substantial interests and revenues which they would not otherwise have received. Counterclaim Plaintiffs estimate the amount of Counterclaim Defendants' collective unjust enrichment to be in excess of $240 million.

131.

Counterclaim Defendants have no right to any revenues or interest resulting from their misappropriation of GST's business opportunity, and Counterclaim Defendants have been unjustly enriched through their wrongful conduct.

132.

Counterclaim Plaintiffs are thus entitled to restitution of all legal and equitable rights in the Bestel Opportunity and all profits therefrom.

**SEVENTH COUNTERCLAIM**
(Violation of the Washington State Securities Act, RCW §§21.20.010 et seq.)
(Against all Counterclaim Defendants)

133.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 132 above as if fully set forth herein.

134.

This claim is asserted against all Counterclaim Defendants for primary or secondary liability under RCW §21.20.430 for violation of RCW §21.20.010, as each of the Counterclaim Defendants was a seller of the securities at issue, a director, officer or controller of a seller, or a substantial contributive factor in the sales transaction.

135.

As discussed above, each of the Counterclaim Defendants either directly or indirectly represented to GST, or substantially contributed to the representation to GST, that GST would be compensated with three to five million shares of Global stock in consideration for transferring the Bestel Opportunity to Global. Each of the Counterclaim Defendants also either directly or indirectly represented to GST, or substantially contributed to the representation to GST, that such consideration was reasonable and adequate, that the VSE would not allow greater compensation for the transfer, that acceptance of such consideration

was otherwise in GST's best interests, or that Global would transfer to GST three to five million shares of Global stock upon receipt of the Bestel Opportunity. These representations were accomplished by untrue or misleading statements and omissions. These untrue or misleading statements and omissions were material, were made in furtherance of a scheme to defraud GST, and did operate as a fraud or deceit upon GST.

136.

Through the conduct alleged herein, Counterclaim Defendants violated RCW § 21.20.010, in that they (1) employed a device, scheme or artifice to defraud, (2) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (3) engaged in acts, practices, or a course of business which operated as a fraud or deceit upon GST.

137.

In reliance on Counterclaim Defendants' direct or indirect representations or omissions in violation of RCW §21.20.010, GST approved the transfer of the Bestel Opportunity to Global, resulting in severe economic injury to GST in an amount exceeding $225 million, the value of the Bestel Opportunity. GST would not have approved the transfer of the Bestel Opportunity to Global if it had known that the Counterclaim Defendants' representations or omissions, or the representations or omissions to which the Counterclaim Defendants substantially contributed, were untrue or misleading.

138.

As a result of Counterclaim Defendants' violation of the Washington State Securities Act and GST's resulting injury, Counterclaim Plaintiffs are entitled to rescission of any agreement or transaction whereby the Bestel Opportunity was transferred to Global, and to the return of the Bestel Opportunity to Counterclaim Plaintiffs.

## EIGHTH COUNTERCLAIM
(Violation of the Washington Consumer Protection Act, RCW §§19.86.010 et seq.)
(Against all Counterclaim Defendants)

139.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 138 above as if fully set forth herein.

140.

Counterclaim Defendants' commercially related fraudulent acts, misrepresentations and omissions as alleged above also constitute unfair and or deceptive acts or practices in violation of RCW §19.86.020. This conduct implicates the public interest in preventing Washington residents from being deceived in business transactions and in preventing such deceptions from occurring in the State of Washington. In addition, Counterclaim Defendants' violation of the Washington State securities laws, as alleged above, in contravention of the public interest, constitutes a per se violation of RCW §19.86.020.

141.

Counterclaim Plaintiffs suffered severe economic injury in an amount exceeding $225 million, the value of the Bestel Opportunity, as a direct result of Counterclaim Defendants' unfair and or deceptive acts or practices. Accordingly, Counterclaim Plaintiffs are entitled to recover their damages, costs of suit, including attorneys' fees, and the maximum additional damages allowed pursuant to RCW §19.86.090.

## NINTH COUNTERCLAIM
(Constructive Trust)
(Against all Counterclaim Defendants)

142.

Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 61 through 141 above as if fully set forth herein.

1  was transferred to Global, and restitution of all legal and equitable interests in the Bestel
2  Opportunity;
3       d   For imposition of a constructive trust on the corporate opportunities which are
4  the property of GST and of all profits unlawfully obtained by the Counterclaim Defendants;
5       e.  For special damages pursuant to RCW § 19.86.090.
6       f.  For Counterclaim Plaintiffs' costs of suit, including reasonable attorneys' fees;
7  and
8       g.  Granting Counterclaim Plaintiffs such other and further relief as the Court may
9  deem just and proper.

DATED this 23rd day of February, 1999.

BULLIVANT HOUSER BAILEY
A Professional Corporation

By_____
Thomas D. Adams
WSBA No. 18470
RICHARD G. MATSON
WSBA No. 19641

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
DAVID S. STEUER
JARED L. KOPEL
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants and Counterclaim Plaintiffs, GST USA, INC., GST TELECOM, INC., and GST TELECOMMUNICATIONS, INC.

\\SEA1\VOL1\CLIENTS\98\8935\GST\PLDGS\ANSWER AND AFFIRMATIVE DEFENSES.DOC

Page 43 - DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
BULLIVANT HOUSER BAILEY
A Professional Corporation