# EXHIBIT 31

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | **Chapter 11** |
| In re: | ) | |
| | ) | |
| **GST TELECOM INC., et al.,** | ) | **Case No. 00-1982 (GMS)** |
| | ) | |
| Debtors. | ) | **Hearing Date: Sept. 24, 2003 at 2:00pm** |
| | ) | **Obj. Deadline: Sept. 22, 2003 at 12:00 pm** |
| | ) | **Related Docket No. 1942** |

### NOTICE OF MOTION OF JOHN WARTA
### FOR LEAVE TO FILE AMENDED PROOFS OF CLAIM

TO:        Debtors Counsel                              Bankruptcy 2002 Service[1]

PLEASE TAKE NOTICE that on September 9, 2003, John Warta ("Warta") filed the **Motion of John Warta for Leave to File Amended Proofs of Claim** (the "Motion"). By the Motion, Warta seeks leave of this Court to amend his previously filed proofs of claim, which claims arise out of certain employment and indemnity agreements.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be in writing, in conformity with the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Delaware, filed with the United States Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, and served upon the undersigned counsel, on or before **September 22, 2003 at 12:00 p.m. prevailing Eastern Time.** Only properly and timely filed objections will be considered.

PLEASE TAKE NOTICE THAT A HEARING TO CONSIDER THE APPLICATION WILL BE HELD ON **SEPTEMBER 24, 2003 AT 2:00 P.M. PREVAILING EASTERN TIME**, BEFORE THE HONORABLE GREGORY M. SLEET, UNITED STATES DISTRICT JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 844 N. KING STREET, 4th FLOOR, WILMINGTON, DELAWARE 19801.

---

[1] Due to its voluminous nature, copies of the Motion of John Warta for Leave to File Amended Proofs of Claim (the "Motion") have not been served upon parties identified on the 2002 service list. However, copies of the Motion will be made available to interested parties upon reasonable and timely request.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: September 9, 2003

ASHBY & GEDDES, P.A.

Philip Trainer, Jr. (I.D. #2788)
Ricardo Palacio (I.D. #3765)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
(302) 654-1888

-and-

Christopher H. Kent
Leslie S. Johnson
KENT CUSTIS, LLP
1500 S.W. Taylor Street
Portland, Oregon 97205
(503) 220-0717

*Attorneys for John Warta*

1322005v1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GST TELECOM INC., et al., | ) | Case No. 00-1982 (GMS) |
|  | ) | Hearing Date: Sept. 24, 2003 at 2:00pm |
| Debtors. | ) | Obj. Deadline: Sept. 22, 2003 at 12:00 pm |
|  | ) | Related Pleading: D.I. 1942 |

### MOTION OF JOHN WARTA FOR LEAVE TO
### FILE AMENDED PROOFS OF CLAIM

John Warta ("Warta"), by and through his undersigned counsel, hereby moves

this Court, under and pursuant to Fed. R. Civ. P. 15, made applicable to this matter

pursuant to Fed. R. Bankr. P. 7015, for the entry of an Order granting leave to file

amended proofs of claim. In support thereof, Warta respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      By this motion, Warta seeks leave of this Court to amend his previously

filed proofs of claim, which claims arise out of certain employment and indemnity

agreements. Specifically, Warta seeks to particularize and update the nature and amount,

respectively, of the claims asserted by him in these cases. Moreover, Warta, based on

facts well known to the Debtors and made part of the original claim(s), seeks to amend

his claims to reflect a theory of recovery premised upon the bad faith conduct of the

Debtors.

2.      The Debtors cannot claim surprise or prejudice from these proposed

amendments as the facts which underlie such amendments arise from the very set of facts

and circumstances supporting Warta's original claims. Nor can the Debtors be heard to

argue that the Warta's motion to amend is the product of undue delay. The parties have litigated this matter for almost 2 years and, in connection therewith, have made various attempts to mediate the matter and reach a consensual resolution. Only recently have the parties engaged in deposition discovery and it is from those depositions that Warta – for the first time – learned of additional, specific facts which support his claim amendments.

### FACTUAL/PROCEDURAL BACKGROUND[1]

3.      Founded in 1994, Debtors were formed to develop, construct and operate telecommunications networks in the western United States. Prior to selling substantially all of their assets to Time Warner Telecom Inc. ("TWTC"), Debtors had more than 1,000 employees and approximately 38,000 customers in 49 cities and eight states.

4.      Warta was chairman of the Board and chief executive officer of Debtors from 1994 until June, 1998. Warta was the principal architect of Debtors' growth, but was separated from the companies by GST's Board at a critical time. Pending transactions fell through that could have allowed GST to reach the economies of scale necessary to achieve profitability. The remaining Board and the replacement chief executive officer, however, were not up to the tasks presented by GST's then-existing financial condition.

5.      Debtors' revenues grew from $18,681,000 in fiscal 1995 to $321,922,000 in fiscal 1999. But the scale of their debt service affected their liquidity. On May 17, 2000 (nearly two years after Warta's ouster), the Debtors commenced reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[1] The procedural background is largely taken from recent motions by the Debtors for the approval of settlements with other claimants, and the Debtors' Motion for an Order Extending Discovery Deadline as to Warta's Claims specifically.

6.    The above-captioned cases were instituted to enable the Debtors to maximize the value of their assets. This was largely accomplished with the sale of substantially all of the Debtors' assets to TWTC in January, 2001.

7.    On or about January 30, 2001, John Warta filed Proofs of Claim Nos. 764, 765 and 766 (the "Claims") against Debtors GST Telecom, Inc., GST Telecommunications, inc., and GST USA, Inc., respectively. (*see*, D.I. 1942) Warta's claims are based on an express employment agreement and an indemnity agreement, as well as Debtors' statutory and common law duties to their former chairman, and were originally asserted in the amounts of $1,904,639, $725,059, and $1,904,639, respectively.

8.    On December 7, 2001, the Debtors filed Objections to the Claims. Ultimately, No. 766 was disallowed as duplicative, but Nos. 764 and 765 remain pending.

9.    The parties have exchanged or identified several thousand pages of discovery. Document discovery is essentially complete. The parties only recently conducted the first two depositions regarding the Claims. Those depositions were of two former members of the Debtors' Board of Directors. Debtors have not yet deposed claimant Warta in this action. The proposed amendments would not affect document discovery, but would affect the scope of future depositions.

10.    Following the depositions of the directors in May, 2003, at Debtors' request, the parties put off discovery to engage in mediation. Upon failure of the mediation, Warta gave notice of his intention to seek amendment of his Claims to update and clarify his damages claims and to assert an additional theory of recovery based on the Debtors' failure to honor the parties' contracts.

3

11.   By mutual agreement, discovery has remained suspended pending the presentation and resolution of Warta's Motion to Amend. Debtors recently filed a Motion Extending the Discovery Deadline as to these Claims. That motion was granted, and the discovery deadline was extended to November 30, 2003.

## ARGUMENT

### I.   Leave to Amend a Claim Shall be Freely Given.

12.   Under Bankruptcy Rule 7015, Rule 15 of the Federal Rules of Civil Procedure applies to amendments of proofs of claims. *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3rd Cir. 1998) (allowing amendment after bar date when debtors had notice of substance of new claim). Under Federal Rule 15, as with pleadings generally, leave to amend a proof of claim "shall be freely given when justice so requires." Fed.R.Civ.P. 15.

13.   The decision to grant leave to amend is left to the Court's discretion, but absent contrary equitable considerations or prejudice to the opposing party, amendments are to be freely permitted. *Trans World Airlines*, 145 F.3d at 141; *In re Metro Transportation*, 117 B.R. 143, 147 (Bankr. E.D.Pa. 1990). "The passage of time, without more, does not require that a motion to amend a [claim] be denied." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3rd Cir. 1984) (holding it was abuse of discretion to deny leave to amend in absence of showing of bad faith, undue delay or prejudice). To the contrary, amendments are readily permissible to cure defects in a claim already filed, to describe a claim with greater particularity, or to plead a new theory of recovery on the same facts as the original claim. *Hatzel & Buehler, Inc. v. Station Plaza Assoc., L.P.*, 150 B.R. 560, 562 (Bankr. Del. 1990) (allowing amendment of three-year-old claim in the absence of prejudice to opposing party). It would be an abuse of the court's discretion to deny leave

4

to amend unless the non-moving party could show bad faith, undue delay or prejudice. *Adams*, 739 F.2d at 868.

14.     Debtors cannot make such a showing here. Under this standard, claimant Warta is entitled to leave to make the amendments proposed by this motion.

## II.    Amendments Particularizing the Original Claims Should be Allowed as a Matter of Course.

15.     Warta's original Claims described the facts and circumstances surrounding Debtors' failure to honor their statutory, common law and contractual duties to pay compensation owed under his Employment Agreement and to pay indemnity damages owed under his Indemnity Agreement. The original Claims included an approximate calculation of damages in the amount they had accumulated as of the time of filing

16.     The changes to the original claims are indicated by heavy lines. Since the filing of claimant Warta's original claims, all of the related legal actions to which he was a party have been resolved *without a single adjudicative finding of fault against Warta*. Warta's indemnity damages in the form of defense costs increased substantially over that time, as Debtors have continued to refuse to honor their indemnity obligations. Moreover, the employment compensation and indemnity damages have continued to accumulate interest.

17.     The amendments to the original prose merely particularize the original language and update the damages figures. As such, those amendments should be allowed as a matter of course. A copy of Warta's proposed amendment(s) (and the bases thereof) to the original Claims is attached hereto as Exhibit A.

5

III.    **Warta's Bad Faith Claim is Based on the Same Set of Facts as the Original Claims and Should be Allowed.**

18.    The Amended Proofs of Claim reflect the addition of a new theory of recovery applicable to the same breaches of contract on which the original claims were based. The additions assert that Debtors' failure to honor their contractual duties were so unreasonable as to amount to bad faith, entitling claimant Warta to tort damages in addition to the breach of contract damages previously sought in this action.

19.    The additional assertions of bad faith or reliance damages may reflect new theories of recovery for additional damages, but they arise from the same transactions and occurrences giving rise to the original Claims – that is, Debtors' abject failure to honor the parties' agreements.

20.    The subject contracts variously provide that Washington law or Delaware law will apply to the contract claims. Both Washington and Delaware recognize bad faith breaches of contract as giving rise to special damages when the contracting parties had a special relationship, such as in the employment context. *See Ariba, Inc. v. Electronic Data Systems Corp.*, 2003 WL 943249 (Del.Super. 2003) (Delaware court denying motion to dismiss claim for bad faith breach of marketing and distribution agreement); *International Fidelity Ins. Co. v. Delmarva Systems Corp.*, 2001 WL 541469 (Del.Super. 2001) (Delaware court extending bad faith claim to surety contract and allowing claim for tort damages) (true and correct copies of the foregoing opinions are attached hereto as Exhibits B and C, respectively); *Price v. State*, 57 P.3d 639 (Wash.App. 2002) (interpreting Washington precedent to support bad faith claim and tort damages in light of special relationship between parties); *Anderson v. State Farm Ins.*

6

*Co.*, 2 P.3d 1029 (Wash.App. 2000) (because bad faith is a tort, a plaintiff may seek emotional distress damages in addition to economic damages).

21.     This is such a case. Debtors had pre-existing, special duties to Warta, defined by statute, common law and contract. Among them, Debtors' duty to indemnify Warta when he faced liability for conduct within the course and scope of his employment was akin to an insurance obligation. In that context, causes of action for bad faith denial of claims is widely-recognized. In this case, Debtors similarly unreasonably failed to perform their contractual duties, causing Warta to suffer damages beyond those reasonably expected to flow from the breach of his contracts.

## IV.     There is No Prejudice to Debtors.

22.     The mere passage of time from the filing of Warta's original Claims is not a bar to these amendments; this Court may only deny leave to amend upon a showing of undue delay or prejudice to the Debtors. No such showing can be made here.

23.     Warta's proposed amendments follow closely on the first depositions taken in this action. The scope and timing of these amendments - particularly in light of the state of discovery based on the actions of both sides - do not prejudice Debtors in this action.

24.     While document discovery is essentially complete, it was very broad in scope. Both sides produced or identified substantial volumes of documents, many of which had been shared or exchanged by these parties in other related litigation. Moreover, as debtors-in-possession, Debtors now have and have always had possession and control over *all* the business records of GST and its subsidiaries. And because of the

7

various related cases, Debtors have had the benefit of multiple law firms' managing and analysis of these records.

25.    With respect to witness testimony, both sides have accumulated prior deposition testimony of many likely witnesses in this action, the transcripts of which were included in the parties' document production and identification. Both sides identified prospective trial witnesses in timely Initial Disclosures under Fed.R.Civ.P. 26, but depositions specific to this action were not initiated until this spring. Following the depositions by Warta's counsel of two former directors of GST in May, 2003, further depositions were put off at Debtors' request to accommodate mediation. Hence, the utility of the two depositions already taken is not affected by the proposed amendments; the number and scope of future depositions *by both sides* will be.

26.    In sum, the proposed amendments particularize the original claims and add a new theory of recovery based on the same set of facts as the original claims. There is no basis for barring the proposed amendments under the standards set forth above. There is no prejudice to Debtors. Warta is entitled to the amendments he seeks.

8

WHEREFORE, John Warta respectfully requests that the Court grant Mr. Warta leave to amend his proofs of claim as set forth above, and grant such other and further relief as the Court deems just and proper.

ASHBY & GEDDES

Philip Trainer, Jr. (I.D. #2788)
Ricardo Palacio (I.D. #3765)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899-1150
(302) 654-1888

-and-

Christopher H. Kent
Leslie S. Johnson
KENT CUSTIS, LLP
1500 S.W. Taylor Street
Portland, Oregon 97205
(503) 220-0717

*Attorneys for John Warta*

Dated: September 9, 2003

131984.1

9

**<u>Exhibit A</u>**

*In re GST Telecom, Inc.*, No. 00-1982 (Bankr. D. Del.)
*In re GST Telecommunications, Inc.*, No. 00-1983 (Bankr. D. Del.)
*In re GST USA, Inc.*, No. 00-1984 (Bankr. D. Del.)

## ATTACHMENT TO AMENDED PROOFS OF CLAIM OF JOHN WARTA

Claimant John Warta was a member of the Board of Directors of GST Telecommunications, Inc. ("GST") from June 1994 through September 15, 1998, and an officer and employee of GST and certain of its subsidiaries from June, 1994 through June 15, 1998. As such, Warta is the beneficiary of various charter and bylaw provisions relating to the indemnification of directors, officers and employees of GST and its subsidiaries, as construed under Canadian and U.S. law. Warta is also a party to indemnification agreements with GST dated April, 1996, and August, 1998, and an Amended and Restated Employment Agreement dated September 1, 1995, between Warta and GST subsidiaries GST USA, Inc. and GST Telecom, Inc. At all times that he was associated with GST and/or its subsidiaries, Warta acted honestly and in good faith with a view to the best interests of GST and its subsidiaries. His claims against the Estate arise out of GST's failure to perform on its express and implied contractual and common law duties to him.

## CLAIMS AGAINST GST ESTATE FOR EMPLOYMENT AGREEMENT

Warta claims damages against the GST Estate for breach of his employment contract as stated in the complaint he originally filed in the Superior Court of Washington for King County (a copy of which is attached as Exhibit 1 to this attachment). The claims arise under Warta's Amended and Restated Employment Agreement of September 1, 1995, as amended August 22, 1997 (and attached as Ex. 1) and are asserted under express contract and implied duty theories.

As stated in the Complaint, GST discharged Warta in June, 1998, as a part of a scheme and plan to effect a change in control, as defined in Section 18(ii) of the Employment Agreement, without having to pay Warta the liquidated damages provided for in Section 18(i). In carrying out this scheme, GST breached its duty of good faith and fair dealing in that, acting through its remaining directors and officers, it intentionally and wrongfully sought to subvert the express purpose of Section 18 of the Agreement.

GST failed to pay Warta the compensation owed him at the time of the conclusion of his employ by the end of the established pay period in violation of RCW § 49.48.010, and willfully withheld such payment, depriving Warta of compensation by paying him less than they are obligated to pay in violation of RCW § 49.52.050(2). Pursuant to the terms of RCW § 49.52.070, Warta is entitled to recover double damages, together with, and pursuant to RCW § 49.48.030, his reasonable attorneys' fees.

As of August 1, 2003, the total amount of the claim is $2,078,100, including prejudgment interest and attorney fees.

Page 1 of 4 – ATTACHMENT TO AMENDED PROOFS OF CLAIM OF WARTA
(9/9/2003 – 14728.doc)

### CLAIMS AGAINST GST FOR INDEMNITY

Warta also claims a right of indemnity from GST (including the subsidiaries) under Canadian law, U.S. law, the bylaws of the GST corporations, and express contracts: an Indemnity Agreement dated April, 1996 and a second Indemnity Agreement dated August, 1998 (both of which are attached as Exhibits 2 and 3).

By reason of his being an officer and director of GST and its affiliates, Warta has also incurred expenses prior to and after May 17, 2000, in connection with litigation in Oregon (captioned *Ford v. GST*), Hawaii (*Lewis/Martin v. GST*, Circuit Court of the First Circuit, Civil No. 97-2807-07) and New York (*GST v. Irwin*, U.S. District Court for Southern District of New York, Case No. 98CIV. 8865 (lap)). Warta's fees and costs associated with that litigation have amounted to $298,032 in *Ford*, $2,860 in *Lewis/Martin*, and $24,849 in *Irwin*.

Warta claims an additional right to indemnity from GST and its subsidiaries for actions they initiated. By reason of his being a director, officer and/or employee of GST and/or certain of its subsidiaries, Warta was made a party to improper litigation in California and British Columbia in which GST and GST Telecom asserted unfounded claims against Warta. Warta's motion to dismiss or stay the California action on the ground that California was an improper forum was granted, and the order staying the action was sustained on appeal. Warta incurred fees and costs of $186,997 in that action, plus approximately $73,600 in the action initiated in the Supreme Court of British Columbia.

Through August 1, 2003, legal costs and expenses incurred by Warta defending unfounded claims asserted against him total approximately $586,300. These items Warta has incurred as "Damages," as that term is defined in Section 2 of the 1998 Indemnity Agreement.

Warta has performed all conditions precedent to the payment of Damages, and remains prepared to perform his obligations under the Indemnity Agreement.

Because the 1998 Indemnity Agreement contains an attorney fee provision at paragraph 9, Warta is entitled to his reasonable attorney fees and costs for pursuing this claim.

### CLAIMS AGAINST GST FOR DETRIMENTAL RELIANCE/BAD FAITH

In the weeks immediately following the termination of plaintiff's employment with GST, the parties worked on a calculation of the amounts owed to plaintiff by GST under the Employment Agreement. GST admitted its liability for the items sought herein under the Employment Agreement, but the calculation of the actual amounts owed was the subject of negotiation. Plaintiff acted in reliance on GST's representations of an intention to honor the Agreement by resigning from the Board, to his detriment. GST's

intention was recently confirmed by the deposition testimony of Warta's successor as chairman of the Board of GST, Robert Ferchat.

In the meantime, GST developed a strategy for avoiding its obligations under the Employment Agreement and the Indemnity Agreements that called for filing a lawsuit against plaintiff alleging that he breached his duties to his employer.

GST's strategy of litigation against plaintiff made GST itself a target of litigation by shareholder groups who simply reiterated the allegations of GST's pleading against plaintiff. Many of these lawsuits named Warta as an individual defendant, causing him to incur legal fees in defense that should have been paid by GST pursuant to its indemnity obligations under the parties' contracts and under GST's corporate bylaws and applicable U.S. and Canadian law. Despite demands, GST refused to honor its duties in these cases to indemnify plaintiff.

GST willfully and intentionally initiated litigation against Warta without an objectively reasonable basis for its claims, and used litigation as a strategy to deflect its own legal responsibility for GST's declining performance following Warta's departure as well as to avoid its contractual and legal duties to Warta as imposed by the Employment Agreement and Indemnity Agreement.

Not one of the cases in which plaintiff was named as an individual defendant resulted in an adjudicative finding that plaintiff had breached his duty to GST in any way.

One of the lawsuits targeting plaintiff was *Ford v. GST*, filed in the State of Oregon, Multnomah County Circuit Court as Case No. 9902-01746, in February, 1999. Ford named GST and plaintiff Warta as defendants. GST failed and refused to honor its indemnity obligations, without an objectively reasonable basis for doing so, and failed to provide Warta with the costs of defense. Further, in abrogation of its duties to Warta, GST secretly settled with the plaintiff Ford without obtaining a full and final release of Ford's claims against Warta.

GST's litigation strategy, refusal to honor its defense or indemnity obligation by advancing legal fees and/or making timely reimbursements to plaintiff, and secret settlement with GST, all were carried out in breach of its duties under its Employment Agreement, the subsequent consulting agreement, the 1998 Indemnity Agreement, the corporations' bylaws and applicable Canadian and Delaware law on corporate duties to directors.

As a result of GST's conduct in breach of its duties, plaintiff has incurred damages of at least $15.6 million, in the form of lost employment compensation and benefits of $1.87 million, attorney fees for pursuing his employment compensation claims and defending specious claims against him (as described above) of approximately $787,350, loss of business reputation damages of approximately $12 million, and emotional distress damages of $1 million. Some or all of these amounts have been

increased by prejudgment interest since the termination of Warta's employment and departure from GST's Board in 1998.

Warta files this proof of claim without prejudice to his rights (i) to increase the amount claimed to the extent he incurs further costs and expenses for which he is entitled to indemnification, (ii) to assert a claim for his legal costs and expenses as a rejection claim under 11 U.S.C. § 365 or (iii) to seek satisfaction of the Debtors' indemnification obligation to him as an administrative expense, in whole or in part.

# EXHIBIT B

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.


Superior Court of Delaware.

ARIBA, INC., A Delaware Corporation, Plaintiff,
v.
ELECTRONIC DATA SYSTEMS
CORPORATION, A Delaware Corporation,
Defendant.

**No. Civ.A. 02C-06-083JRJ.**

Submitted Oct. 25, 2002.
Decided March 7, 2003.


Upon Plaintiff's Motion to Dismiss Counts III--VI
of Defendant's Counterclaim--Granted in Part,
Denied in Part.

Joel F. Friedlander, Bouchard, Margules &
Friedlander, Wilmington, Delaware, for Plaintiff.

Bruce E. Jameson, Gary F. Traynor, and Allyson
A. McKenzie, Prickett, Jones & Elliott,
Wilmington, Delaware, for Defendant.


OPINION

JURDEN, J.

*1 Before the Court is plaintiff Ariba, Inc.'s
("Ariba") Motion to Dismiss Counts III through VI
of defendant Electronic Data Systems Corp.'s
("EDS") Counterclaim. For the reasons stated
herein, Ariba's Motion to Dismiss is GRANTED
with respect to Count IV and DENIED with respect
to Counts III and V and VI.


I. FACTUAL/PROCEDURAL BACKGROUND
[FN1]

> FN1. The facts cited herein are drawn from
> the Complaint filed by Ariba on June 11,
> 2002 and the Answer and Counterclaim of

EDS filed on Sept. 6, 2002. *See* Pl.'s
Compl.; Def.'s Answer & Countercl.

The plaintiff, Ariba, is a Delaware corporation with
its principle place of business in Sunnyvale,
California. Ariba is a vendor of software and
services designed to aid the procurement processes
for large buying organizations. Most of Ariba's
revenue is derived from software licenses and
computer-related services. The defendant, EDS, is a
Delaware corporation with its principle place of
business in Plano, Texas. EDS is a provider of data
processing and computer services.

On December 21, 2002, Ariba and EDS executed a
marketing and distribution agreement (the "Alliance
Agreement"). [FN2] "The Alliance Agreement
[replaced] an earlier agreement between Ariba and
EDS CoNext, Inc. ("CoNext"), at the time a wholly
owned subsidiary of EDS." [FN3] As part of the
Alliance Agreement, "[t]he sum of $15,000,000
paid pursuant to the [CoNext and Ariba Agreement
was to] be credited towards the fees due and
payable under [the Alliance Agreement] as per
Schedule 6.3." [FN4] In addition to the Alliance
Agreement, the parties executed a Software License
and Network Services Agreement (the "License
Agreement"), [FN5] which is incorporated by
reference in the Alliance Agreement.


> FN2. Pl.'s Compl. Ex. A.


> FN3. Def.'s Answer & Countercl. ¶ 27.


> FN4. Pl.'s Compl. Ex. A at 2.


> FN5. *Id.* Ex. B.


Pursuant to the Alliance Agreement, Ariba was to
"license the Technology and provide the Ariba
Network to EDS such that EDS [could] make it
available to EDS consortia participants ... in
accordance with the terms of [the] Alliance
Agreement and the License Agreement." [FN6]
Both parties were to "engage in joint marketing
activities and ... devote resources to the
management of the Alliance;" and "make payments

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 2

to each other in accordance with the Alliance and License Agreements." [FN7] EDS was to "market and/or sub-license those certain Ariba products and services to prospective non-Participant clients...." [FN8]

> FN6. *Id.* Ex. A at 1.

> FN7. *Id.* Ex. A at 1-2.

> FN8. *Id.* Ex. A at 1.

On June 11, 2002, Ariba filed a Complaint asserting that Ariba "has performed all of its obligations under the Alliance Agreement and/or is excused from performing said obligations based on EDS's failure of performance and/or material breach of the Alliance Agreement." [FN9] In support of its argument, Ariba relies on Articles 6.1 and 6.3 of the Alliance Agreement and Article 2.4A of the License Agreement. Article 6.1 ("Fees") provides:

> FN9. Pl.'s Compl. ¶ 10.

EDS shall pay Ariba for the License, access, use and support of the Technology and Ariba Network, and right to grant Sublicenses and provide Outsourcing Services to Sublicensees as described herein and in the Software License and Network Services Agreement. [FN10]

> FN10. *Id.* ¶ 5, Ex. A at 4.

Article 6.3 ("Participant and Sublicense Fees") provides:

EDS shall make payments to Ariba as described in Schedule 6.3 (the *"Fees"* ). Pursuant to such Alliance activities, Ariba hereby grants EDS the right to grant Sublicenses to (a) Participants (the "Participant License"), and (b) to Sublicensees as provided in the License Agreement. In the event a current Ariba customer becomes a Participant, fees generated from such a Participant shall be considered eligible for the payment of Fees hereunder and shared in accordance with this Agreement. [FN11]

> FN11. *Id.* ¶ 6, Ex. A at 5.

*2 Article 2.4A of the License Agreement provides:

EDS may only sublicense the Programs pursuant to a written Sublicense Agreement as provided under Section 2.4B below to Sublicensees, during the Term, and solely for such Sublicensee's own internal use. The terms pertaining to payment of fees in connection with Sublicense Agreements to Participants shall be in accordance with Schedule 6.3 of the Alliance Agreement. In the event that a Participant wishes to continue its use of the Programs following expiration of its participation in a Consortium, Ariba agrees to negotiate in good faith the terms and conditions (including payment of fees) to be applicable to such continue use. [FN12]

> FN12. Pl.'s Compl. ¶ 7, Ex. B at 5. Fees are defined in Schedule 6 .3 of the License Agreement as "all payments, including but not limited to Sublicense fees, Spend Management fees and Maintenance fees ..." *Id.* ¶ 8, Ex. B (Schedule 6.3(1)).

Ariba argues that EDS materially breached the provisions of the Alliance Agreement and the License Agreement by, among other things, (a) failing to pay the $10 million it was obligated to pay Ariba under Schedule 6.3A on December 31, 2001, [FN13] and (b) failing to pay fees for professional services, training, materials, and expenses pursuant to the terms of the Alliance Agreement totaling $109, 119.25. [FN14]

> FN13. *Id.* ¶ 8, 11,Ex. B (Schedule 6.3A).

> FN14. *Id.* ¶ 9, 11.

On September 6, 2002, EDS filed an Answer and Counterclaim setting forth five affirmative defenses and six counterclaims. [FN15] EDS claims that "[it] did not pay the $10 million specified to be paid as of December 31, 2001 because of Ariba's failure to meet its obligations under the Alliance Agreement and EDS' [November 9, 2001] termination of the Alliance Agreement." [FN16] EDS affirmatively defends that Ariba is barred from the relief sought

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works