Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 3

on the following grounds: (1) "[Ariba] has failed to state a claim upon which relief can be granted;" [FN17] (2) "[Ariba's] conduct constitutes bad faith;" [FN18] (3) "[Ariba's] actions constitute fraud;" [FN19] (4) "the doctrine of estoppel" applies; [FN20] and (5) Ariba's "breach of contract and failure of consideration." [FN21]

> FN15. *See* Def.'s Answer & Countercl.

> FN16. *Id.* ¶ 8.

> FN17. Def.'s Answer & Countercl. ¶ 13.

> FN18. *Id.* ¶ 14.

> FN19. *Id.* ¶ 15.

> FN20. *Id.* ¶ 16.

> FN21. *Id.* ¶ 17.

## II. STANDARD

For the purpose of deciding a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), all well-pleaded facts in the complaint must be accepted as true. [FN22] The test for sufficiency of a complaint challenged by a motion to dismiss is "whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint." [FN23] An alternative to dismissing a complaint, or any part thereof, is to require a party to file a more definite statement under Superior Court Civil Rule 12(e), and thus the Court evaluates the complaint to see if "it appear[s] to be so vague or ambiguous as to make it unreasonable to require the defendant to frame a responsive pleading ." [FN24] If the complaint is found to be vague or ambiguous, the plaintiff will be required to correct any defects with a more definite statement. [FN25]

> FN22. *Crowhorn v. Nationwide Mut. Ins.,*

2001 WL 695542, at *2 (Del.Super.) (citing *Spence v. Funk,* 369 A.2d 967, 968 (Del.1978)).

> FN23. *Id.*

> FN24. *Id.*

> FN25. *Id.*

Where a complaint alleges fraud, the Rules of this Court call for a higher pleading standard, requiring the circumstances constituting the fraud to "be pled with particularity." [FN26] The particularity requirement for fraud is met where the complaint specifies "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." [FN27]

> FN26. Del.Super. Ct. Civ. R. 9(b); *Browne v. Robb,* 583 A.2d 949, 955-56 (Del.1990) (citing *Nutt v. A.C. & S., Inc.,* 466 A.2d 18, 23 (Del.Super.1983), *aff'd sub nom., Mergenthaler v. Asbestos Corp. of America,* 480 A.2d 647 (Del.1984)).

> FN27. *Nutt,* 466 A.2d at 23.

## III. DISCUSSION

*3 EDS asserts six counterclaims: (1) declaratory judgment that the Alliance Agreement is terminated; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with contractual relationship; (5) fraud; and (6) bad faith. [FN28]

> FN28. *See* Def.'s Answer & Countercl.

EDS alleges that "[a]fter execution of the Alliance Agreement, receipt of the EDS $10,000,000 license pre-payment and recovery of the Ariba warrants, Ariba began a campaign to undermine and destroy

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 4

the Alliance" and failed to honor contractual obligations. [FN29] EDS further asserts that "Ariba did little or nothing to support the sale of licenses or services pursuant to the Alliance." [FN30] According to EDS, "[c]ontrary to its promises and obligations under the Alliance Agreement, Ariba failed to provide the technical and marketing personnel to support sales efforts under the Alliance as provided for in Article 4.5 of the Alliance Agreement." [FN31] EDS maintains that "Ariba failed to provide the promised, technical, marketing and management support because it did not want Alliance sales to undercut or compete with its sales through other sales channels." [FN32]

> FN29. *Id.* ¶ 33.

> FN30. *Id.*

> FN31. Def.'s Answer & Countercl. ¶ 35.

> FN32. *Id.* ¶ 35.

EDS asserts that during the first half of 2001, EDS "offered to assist Ariba in marketing its products and services to The Home Depot, Inc. ("Home Depot"), provided any such sales would be credited to EDS under the Alliance Agreement." [FN33] Furthermore, EDS asserts that although "Ariba acknowledge[d] that the Home Depot opportunity would be an attractive one for the Alliance," "[a]fter participating in the joint proposal, Ariba decided that it would deal directly with Home Depot for itself and in competition with the Alliance." [FN34] EDS alleges "Ariba offered these licenses and services to Home Depot on terms more favorable than those it had agreed to provide to the Alliance." [FN35]

> FN33. *Id.* ¶ 39.

> FN34. *Id.* ¶ 41.

> FN35. *Id.* ¶ 43.

On or about July 3, 2001, EDS sent a notice of default to Ariba asserting that "Ariba had materially defaulted on its obligations under the Alliance Agreement by (1) failing to provide the requisite technical and business support mandated by the Alliance Agreement and (2) acting in bad faith by working to undermine the purpose and intent of the Alliance Agreement." [FN36] According to EDS, after Ariba received the July notice of default, "Ariba removed the Ariba Alliance COO and failed to appoint a replacement," in violation of the "Alliance management obligations pursuant to Article 3.3 of the Alliance Agreement." [FN37] Moreover, EDS alleges that in a conference call held during the last two days of July, 2001, "Ariba notified EDS that it would not honor its Alliance Agreement obligations to provide dedicated technical, business and management staffing to support the Alliance," but that it would "work with EDS to resolve the conflict ... regarding the Home Depot opportunity." [FN38] EDS maintains that it "supported the Home Depot initiative only to learn ... that Ariba had sold licenses directly to Home Depot and refused to credit the Alliance...." [FN39] EDS further alleges that "Ariba contacted the Sara Lee Corporation ("Sara Lee"), a current Alliance customer, and persuaded Sara Lee to terminate its Ariba sub-license with EDS and subsequently acquire a license directly from Ariba." [FN40]

> FN36. Def.'s Answer & Countercl. ¶ 45.

> FN37. *Id.* ¶ 46-47.

> FN38. *Id.* ¶ 49-51.

> FN39. *Id.* ¶ 52.

> FN40. Def.'s Answer & Countercl. ¶ 55.

*4 On November 9, 2001, EDS formally notified Ariba of its termination of the Alliance Agreement pursuant to Article 7.2, alleging that Ariba had committed numerous defaults of the Alliance Agreement. [FN41] Since that time, EDS maintains "Ariba has asserted to certain customers who purchased licenses to Ariba products from EDS

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 5

pursuant to the Alliance, that such licenses are invalid because of the termination and that new licenses must be purchased directly from Ariba." [FN42] EDS argues that this representation is false and is contrary to sections 4.2B and 2.1 of the License Agreement. [FN43]

FN41. *Id.* ¶ 58.

FN42. *Id.* ¶ 59.

FN43. *Id.* ¶ 60.

In its Motion to Dismiss, Ariba attacks four of the six counterclaims alleged by EDS: Count III--Breach of Covenant of Good Faith and Fair Dealing; Count IV--Tortuous Interference with Contract; Count V--Fraud and Count IV--Bad Faith.

**A. COUNT III--Breach of Covenant of Good Faith and Fair Dealing.**

EDS alleges that Ariba breached an implied covenant of good faith and fair dealing "by failing to support the activities of the Alliance and working actively to undermine sales by the Alliance;" by "Ariba's blatant and admitted disregard for its duties to support the Alliance after expressly agreeing to the terms of the Alliance Agreement;" and by engaging in "direct competition with the Alliance in the form of usurping opportunities at Home Depot and Sara Lee." [FN44] According to Ariba, because Section 4.1 of the Alliance Agreement expressly states that "[t]he Alliance is intended to be and shall remain a *non-exclusive arrangement* by and between the parties hereto," the implied duty to perform in good faith does not come into play. [FN45] Ariba argues that the implied covenant only arises "where it is *clear* from what the parties expressly agreed that they would have proscribed the challenged conduct as a breach of [their agreement] had they thought to negotiate with respect to the matter." [FN46] Ariba further argues out that "[t]he covenant of good faith and fair dealing is not implicated when a party breaches an express contractual duty." [FN47]

FN44. Def.'s Answer & Countercl. ¶

72-74.

FN45. Pl.'s Mot. Dismiss Counts III-VI Def.'s Countercl. at 1 [hereinafter Pl.'s Mot. Dismiss].

FN46. *Id.* (quoting *Corporate Prop. Assocs. 6 v. Hallwood Group, Inc.,* 792 A.2d 993, 1002-03 (Del.Ch.2002)) (emphasis in original).

FN47. *Id.* at 2 n. 3 (citing *Corporate Prop. Assocs. 6,* 792 A.2d at 1002).

EDS argues that Ariba's interpretation of the non-exclusivity language in Section 4.1 is erroneous. [FN48] Moreover, because the parties disagree about the interpretation of Section 4.1, EDS asserts that "[f]or the purposes of this motion, EDS is entitled to an inference that its interpretation better comports with the remaining contents of the document." [FN49] According to EDS, Ariba's interpretation of the non-exclusivity provisions would render the contract illusory. EDS points out that it paid $25 million and devoted substantial resources to the development of Alliance business and that it would not have done so if, under the agreement, Ariba was permitted to compete with the Alliance by offering its product to potential Alliance customers at prices lower than those available to the Alliance and was permitted to solicit existing Alliance customers. According to EDS "[i]f Ariba could directly undercut the Alliance, EDS received nothing for its $25 million." [FN50] Alternatively, EDS argues that the "non-exclusivity" provisions relied upon by Ariba are sufficiently ambiguous and should be submitted for interpretation by a jury. [FN51]

FN48. *See* Def.'s Resp. to Pl.'s Mot. Dismiss at 1 [hereinafter Def.'s Resp.].

FN49. Def.'s Resp. at 1 (citing *Bond Purchase, L.L.C. v. Patriot Tax Credit Prop. L.P.,* 746 A.2d 842, 855 (Del.Ch.1999).).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

FN50. *Id.*

FN51. *Id.* at 2.

*5 The Court does not agree with Ariba's argument that Section 4.1 of the Alliance Agreement encompasses the competition and conduct alleged by EDS in paragraphs 38-44, 52, 55, 67, 68, 78, 86 and 87. While Ariba argues that the parties' "express agreement" anticipated and envisioned the conduct at issue here, the Court is not satisfied that the non-exclusivity privilege relied upon by Ariba allows the competition alleged by EDS. Additionally, the Court is not satisfied that EDS would not have insisted upon proscribing such conduct if the particular type of conduct alleged by EDS in its counterclaim had been addressed during negotiations of the Alliance Agreement. As EDS correctly points out, it is reasonably conceivable a jury could conclude that Ariba's interpretation of the non-exclusivity provisions renders the contract illusory. Finally, the Court agrees with EDS that the non-exclusivity provisions relied upon by Ariba, when viewed in the context of the entire agreement, are sufficiently ambiguous such that interpretation of the provision is an appropriate matter for a jury to determine. [FN52] Consequently, Ariba's motion to dismiss Count III of the counterclaim is DENIED.

FN52. *See Smith v. Berwin Builders, Inc.,* 287 A.2d 693, 695 (Del.Super.1972).

B.   COUNT   IV--Tortious   Interference   with Contract.

EDS alleges that Ariba tortiously interfered with the contractual relationship between EDS and Sara Lee by "encourag[ing] and facilitat[ing] Sara Lee's decision to terminate the EDS sub-license ... that existed between EDS and Sara Lee." [FN53] Furthermore, EDS alleges that "[a]s a result of [Ariba's] tortious conduct, Ariba has caused damage to EDS by depriving EDS of the benefits that it would have received from the continuation of its relationship with Sara Lee." [FN54] Ariba argues that Count IV "fails to state a claim for tortuous interference because EDS has not alleged an essential element of such a cause of action--breach." [FN55] In response, EDS argues that it does not

need to allege an "actual breach" to state a claim for tortuous interference with contract. [FN56] The Court disagrees.

FN53. Def.'s Answer & Countercl. ¶ 78.

FN54. *Id.* ¶ 80.

FN55. Pl.'s Mot. Dismiss at 2.

FN56. Def.'s Resp. at 2.

According to Delaware law, to succeed under this theory, there must be an actual breach of a valid and enforceable contract. [FN57] EDS does not allege in Count IV that Ariba caused Sara Lee to breach the EDS sub-license. And, in fact, Sara Lee did not breach the contract, it terminated it. Accepting as true, EDS' allegation that Ariba "tortiously and wrongfully encouraged and facilitated Sara Lee's decision to *terminate* the EDS sub-license...." [FN58] Under Delaware law this set of circumstances does not entitle EDS to recover under this theory. The fact is that Sara Lee did not breach the EDS sub-license. Consequently, Ariba's Motion to Dismiss Count IV of the Counterclaim is GRANTED.

FN57. *See Hursey Porter & Assocs. v. Bounds,* 1994 WL 762670, at * 13 (Del.Super.). To establish a cause of action for tortious interference with contractual relations, a plaintiff must establish the following: (1) a contract; (2) of which the defendant was aware; (3) an intentional act by the defendant that is a significant factor in bringing about the breach of said contract; (4) the act without justification; and (5) that act causes injury or results in injury. *See Irwin & Leighton, Inc. v. W.M. Anderson Co.,* 532 A.2d 983, 992 (Del.Ch.1987).

FN58. Def.'s Answer & Countercl. ¶ 78. (Emphasis added.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Page 7

C. COUNT V--Fraud

Ariba contends that the Court should dismiss Count V because EDS has failed to allege a false "collateral or extraneous" promise. [FN59] In making this argument, Ariba urges the Court to apply New York law. [FN60] In response, EDS argues that Delaware law and not New York law applies, and points out that under Delaware law the elements of fraud do not include a false "collateral or extraneous" promise. [FN61] EDS also argues that, contrary to the representations of Ariba, the "collateral promise" doctrine is not settled New York law. Finally, EDS argues that even under the "collateral promise" theory, EDS has alleged fraud.

FN59. Pl.'s Mot. Dismiss at 3.

FN60. *Id.*

FN61. Def.'s Resp. at 2-3.

*6 The Court need not reach EDS' second or third argument because it finds that Delaware law applies and under Delaware law there is no requirement that the false promise be "collateral or extraneous." The elements of fraud are well settled in Delaware. In *Stephenson v. Capano Dev., Inc.* [FN62] the Delaware Supreme Court set forth the elements of fraud:

FN62. 462 A.2d 1069, 1074 (Del.1983).

(1) a false representation, usually one of fact made by the defendant;
(2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
(3) an intent to induce the plaintiff to act or to refrain from acting;
(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
(5) damage to the plaintiff as a result of such reliance. [FN63]

FN63. *Id.* (citing *Nye Odorless Incinerator Corp. v. Felton,* 162 A. 504, 510-11

(Del.Super.1931). *See also Browne,* 583 A.2d at 955.

The Court will analyze the allegations pled by EDS in Count V under *Stephenson.*

1. A False Representation, Usually One of Fact, Made by the Defendant.

EDS claims that the representations set forth in the Alliance Agreement, terms agreed to by Ariba, were representations of fact made by Ariba that it would devote resources to the Alliance and cooperate and facilitate the activities of the Alliance. [FN64] In its counterclaim, EDS alleges that Ariba lured EDS to sign the Alliance Agreement under false pretenses in order to recover, at no cost, certain Ariba warrants (representing an excess of 20% of the outstanding stock of the company) and to obtain the $20 million in prepaid license fees from EDS. [FN65] EDS maintains that at the time that Ariba and EDS executed the Alliance Agreement, Ariba had "no intent to honor any of its promises under the Alliance Agreement." [FN66] EDS specifically alleges "Ariba did not intend to engage in joint sales and marketing with EDS as part of the Alliance envisioned by the Alliance Agreement." [FN67] EDS further alleges that "Ariba did not intend to credit any sales made with the assistance of EDS to the EDS pre-paid license account nor did it intend to honor its commitment in any other manner." Accepting as true all of the well-pled allegations, as this Court is bound to do when analyzing a motion to dismiss under Superior Court 12(b)(6), the Court finds that it is conceivable that a reasonable fact finder could conclude that Ariba made false representations.

FN64. Def.'s Answer & Countercl. ¶ 82.

FN65. *Id.* ¶ 83.

FN66. *Id.* ¶ 84.

FN67. *Id.*

2. The Defendant's Knowledge or Belief that the Representation was False or Made with Reckless

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

Indifference to the Truth.

The allegations in the counterclaim assert that Ariba's alleged wrongful conduct began soon after the Alliance Agreement was executed. The Court finds that it is conceivable that a reasonable fact finder could conclude that at the time Ariba executed the Alliance Agreement it knew or believed that it would not meet the obligations imposed upon it by that agreement.

3. Intent to Induce the Plaintiff to Act or to Refrain From Action.

EDS specifically alleges that Ariba, by negotiating and executing the Alliance Agreement with EDS, intended to induce EDS to provide Ariba with confidential information about EDS' client consortia and leads for potential sales of Ariba products. [FN68] EDS further alleges that "Ariba induced EDS under false pretenses to enter into the Alliance Agreement so that Ariba could recover at no cost the Ariba warrants...." [FN69] Moreover, EDS alleges that Ariba misrepresented to EDS that it would credit the Home Depot sale to the Alliance and in reliance on this misrepresentation, EDS expended time, effort and resources assisting Ariba in marketing its products to Home Depot. EDS claims that its effort ultimately facilitated Ariba's sale of software to Home Depot but Ariba failed to credit the Home Depot sale to the Alliance. [FN70] In short, EDS argues that Ariba induced EDS to enter into the Alliance Agreement so that Ariba could obtain the "information and connections provided by EDS as part of the Alliance venture to sell products and services directly to customers and in competition with EDS and the Alliance." [FN71] The Court finds that it is conceivable that a reasonable fact finder could conclude that Ariba intended to induce EDS to take the action noted above.

FN68. Def.'s Answer & Countercl. ¶ 68.

FN69. *Id.* ¶ 83.

FN70. *Id.* ¶ 87.

FN71. *Id.* ¶ 86.

4. The Plaintiff's Action or Inaction Taken in Justifiable Reliance Upon the Representation.

*7 The Court finds that EDS alleges insufficient detail the action and inaction it took in justifiable reliance upon the representations and alleged misrepresentations of Ariba in paragraphs 82, 87, 90 and 92. [FN72]

FN72. *See* Def.'s Answer & Countercl.

5. Damage to the Plaintiff as a Result of Such Reliance.

EDS alleges the damages it purportedly sustained as a result of the alleged wrongful conduct of Ariba in paragraphs 67, 68, 83, 86, 87, and alleges those damages in specific dollar amounts in subparagraph (c) of its request for relief. [FN73]

FN73. *Id.*

It is not necessary that EDS set forth in its counterclaim all evidence of fraud at this stage of the proceedings, "but it is essential that the precise theory of fraud with supporting specifics appear in the complaint." [FN74] As noted by this Court in *Crowhorn,* [FN75] "[t]he difficulty faced by the Court is in balancing the requirement of ultimate facts with the particularity of circumstances required in 9(b)." After careful review of the complaint, the Court finds that the complaint meets the technical elements of a fraud claim and will not be dismissed; however, the remaining issue is whether a more definite statement is required under Super Court Civil Rule 12(e). The Court concludes that the fraud count is not pled with sufficient particularity to put Ariba on notice of the claims to be adjudicated. [FN76] The complaint does not have to be detailed to the extent of discovery, but the identity of persons involved in the alleged fraudulent conduct set forth in paragraphs 83-87 and the time and place of the representations set forth in those paragraphs should be plead with more particularity so as to enable Ariba to frame a responsive pleading. [FN77] Because EDS' complaint meets the technical elements of fraud under *Stephenson,* Count V will not be dismissed; however, the Court will require a more definite

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

statement pursuant to Rule 12(e).

> FN74. *See Nutt,* 466 A.2d at 23. *See also
> J.E. Rhoads & Sons, Inc. v. Ammeraal,
> Inc.,* 1988 WL 32012, at *12 (Del.Super.).

> FN75. 2001 WL 695542, at *6.

> FN76. *See Nutt,* 466 A.2d at 23.

> FN77. *Id.*

D. COUNT VI--Bad Faith.

Ariba contends that the Court should dismiss Count
VI setting forth a claim of "bad faith" because
"Delaware Courts do not recognize a separate claim
for Bad Faith." [FN78] According to Ariba, "bad
faith" is the "name sometimes given to a claim for
breach of the implied covenant of good faith and
fair dealing when the parties have a special
relationship, such as in the insurance and
employment context." [FN79] Ariba argues that
because EDS has already asserted a claim for
breach of the implied covenant of good faith and
fair dealing in Count III of its counterclaim, Count
VI should be dismissed, because it is duplicative,
and defective for the same reasons Count III is
defective. [FN80] Ariba maintains that it is unclear
from Count VI whether EDS intends the "bad faith"
claim to sound in contract or tort. [FN81] Ariba
argues that in order for EDS to plead a separate
claim in tort for "bad faith" there must exist a
fiduciary duty or other special relationship between
the parties. [FN82] EDS argues that Delaware
Courts have recognized bad faith claims in the
absence of fiduciary relationships. [FN83] EDS
disagrees, noting that "[b]ecause bad faith can give
rise to different remedies than simple breach of
contract, such as an award of attorneys fees, it is
appropriately treated as a separate count." [FN84]

> FN78. Pl.'s Mot. Dismiss at 4.

> FN79. *See id.*

> FN80. Pl.'s Mot. Dismiss at 4.

> FN81. Pl.'s Supplemental Br. Bad Faith at
> 1.

> FN82. As a result of the prior decision by
> the Court of Chancery in this case, it is
> undisputed that EDS is precluded from
> arguing that Ariba owed it fiduciary duties.
> *See* Pl.'s Mot. Dismiss Ex. 8.

> FN83. Def.'s Supplemental Mem. Opp'n
> Pl.'s Mot. Dismiss at 2.

> FN84. Def.'s Resp. at 4.

*8 "Historically, damages for breach of contract
have been limited to the non-breaching party's
expectation interest, and, punitive damages are
generally not recoverable for breach of contract
unless the conduct also independently amounts to a
tort." [FN85] Despite this general prohibition, the
Delaware Supreme Court has allowed punitive
damages for bad faith breach of an insurance
contract. [FN86] Thus, a claim of "bad faith" may
sound in contract or in tort. Although the Court is
unable to discern from EDS' Counterclaim whether
Count VI is intended to sound in contract or tort,
the Court will not dismiss Count VI at this stage of
the proceedings. "Bad faith is normally a question
of fact which generally cannot be resolved on the
pleadings or without first granting an adequate
opportunity for discovery." [FN87] Consequently,
Ariba's Motion to Dismiss Count VI of the
Counterclaim is DENIED.

> FN85. *International Fid. Ins. Co. v.
> Delmarva Sys. Corp.,* 2001 WL 541469, at
> *2 (Del.Super.) (citing *E.I. DuPont de
> Nemours and Co. v. Pressman,* 679 A.2d
> 436, 445 (Del.1996)).

> FN86. *Id.*

> FN87. *Everest Properties II, L.L.C. v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Slip Copy
(Cite as: 2003 WL 943249 (Del.Super.))

> *American Tax Credit Properties II, L.P.,*
> 2000 WL 145757, at *6 (Del.Super.)
> (citing *Desert Equities Inc. v. Morgan
> Stanley Leveraged Equity Fund II, L .P.,*
> 624 A.2d 1199, 1208-09 (Del.1993)).

## V. CONCLUSION

For the foregoing reasons, Ariba's Motion to
Dismiss is GRANTED with respect to Counts IV
and VI, and DENIED with respect to Counts III and
Count V.

IT IS SO ORDERED.

2003 WL 943249 (Del.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT C