# EXHIBIT 32

B10 (Official Form 10)(Rev. 1/98)

| UNITED STATES BANKRUPTCY COURT<br>District of DELAWARE | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**GST Telecom, Inc.** | Case Number<br>**00-01982 (GMS)** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>John Warta<br><br>Name and Address Where Notices Should be Sent<br>John Warta<br>c/o Leslie S. Johnson, Esq.<br>Kent Custis LLP<br>1500 SW Taylor Street<br>Portland, OR 97205<br><br>Telephone No.     (503) 220-0717 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☒ Check box if the address differs from the address on the envelope sent to you by the court. | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|---|

| Account or other number by which creditor identifies debtor:<br>N/A | Check here if this claim | ☐ replaces<br>☒ amends a previously filed claim, dated: 1/30/01 |
|---|---|---|

| 1.   BASIS FOR CLAIM | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☒ Services performed | ☐ Wages, salaries, and compensation (Fill out below) |
| ☐ Money loaned | Your social security No. _____ |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ |
| ☒ Other *(See attached) | (date)          (date) |

| 2.   Date Debt Incurred: (MMDDYY)<br>Various – See attached | 3.   If Court Judgment, Date Obtained: |
|---|---|

**4.    Total Amount of Claim at Time Case Filed:**            $15,600,000.00

5.    If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6.   SECURED CLAIM | 7.   UNSECURED PRIORITY CLAIM |
|---|---|
| ☐ Check this box if you claim is secured by collateral (including a right of setoff)<br><br>Brief Description of Collateral:<br>☐ Real Estate    ☐ Motor Vehicle<br>☐ Other<br><br>Value of Collateral:<br><br>Amount of arrearage and other charges at time case filed included in secured claim above, if any: $ | ☐ Check this box if you have an unsecured priority claim.<br>Amount entitled to priority $<br>☐ Wages, salaries, or commissions (up to $4300), *earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a)(3)<br>☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(4)<br>☐ Up to $1,900* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse or child – 11 U.S.C. § 507(a)(7)<br>☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(8)<br>☐ Other – Specify applicable paragraph of 11 U.S.C. s 507(a)<br><br>*    Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to case commenced on or after the date of adjustment |

| 8.   Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>9.   Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien. DO NOT SENT ORIGINAL DOCUMENTS. If the documents are voluminous, attach a summary. (See attached).<br>10.   Date-Stamped Copy: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IF FOR COURT USE ONLY |
|---|---|

| Date<br><br>1/2/04 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney if any).<br><br>Leslie S. Johnson, Esq.<br>Attorney for John Warta | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
137373.1

*In re GST Telecom, Inc.*, No. 00-1982 (Bankr. D. Del.)
*In re GST Telecommunications, Inc.*, No. 00-1983 (Bankr. D. Del.)
*In re GST USA, Inc.*, No. 00-1984 (Bankr. D. Del.)

## ATTACHMENT TO AMENDED PROOFS OF CLAIM OF JOHN WARTA

Claimant John Warta was a member of the Board of Directors of GST Telecommunications, Inc. ("GST") from June 1994 through September 15, 1998, and an officer and employee of GST and certain of its subsidiaries from June, 1994 through June 15, 1998. As such, Warta is the beneficiary of various charter and bylaw provisions relating to the indemnification of directors, officers and employees of GST and its subsidiaries, as construed under Canadian and U.S. law. Warta is also a party to indemnification agreements with GST dated April, 1996, and August, 1998, and an Amended and Restated Employment Agreement dated September 1, 1995, between Warta and GST subsidiaries GST USA, Inc. and GST Telecom, Inc. At all times that he was associated with GST and/or its subsidiaries, Warta acted honestly and in good faith with a view to the best interests of GST and its subsidiaries. His claims against the Estate arise out of GST's failure to perform on its express and implied contractual and common law duties to him.

## CLAIMS AGAINST GST ESTATE FOR EMPLOYMENT AGREEMENT

Warta claims damages against the GST Estate for breach of his employment contract as stated in the complaint he originally filed in the Superior Court of Washington for King County (a copy of which is attached as Exhibit 1 to this attachment). The claims arise under Warta's Amended and Restated Employment Agreement of September 1, 1995, as amended August 22, 1997 (and attached as Ex. 1) and are asserted under express contract and implied duty theories.

As stated in the Complaint, GST discharged Warta in June, 1998, as a part of a scheme and plan to effect a change in control, as defined in Section 18(ii) of the Employment Agreement, without having to pay Warta the liquidated damages provided for in Section 18(i). In carrying out this scheme, GST breached its duty of good faith and fair dealing in that, acting through its remaining directors and officers, it intentionally and wrongfully sought to subvert the express purpose of Section 18 of the Agreement.

GST failed to pay Warta the compensation owed him at the time of the conclusion of his employ by the end of the established pay period in violation of RCW § 49.48.010, and willfully withheld such payment, depriving Warta of compensation by paying him less than they are obligated to pay in violation of RCW § 49.52.050(2). Pursuant to the terms of RCW § 49.52.070, Warta is entitled to recover double damages, together with, and pursuant to RCW § 49.48.030, his reasonable attorneys' fees.

As of August 1, 2003, the total amount of the claim is $2,078,100, including prejudgment interest and attorney fees.

Page 1 of 4 – ATTACHMENT TO AMENDED PROOFS OF CLAIM OF WARTA
(9/9/2003 – 14728.doc)

## CLAIMS AGAINST GST FOR INDEMNITY

Warta also claims a right of indemnity from GST (including the subsidiaries) under Canadian law, U.S. law, the bylaws of the GST corporations, and express contracts: an Indemnity Agreement dated April, 1996 and a second Indemnity Agreement dated August, 1998 (both of which are attached as Exhibits 2 and 3).

By reason of his being an officer and director of GST and its affiliates, Warta has also incurred expenses prior to and after May 17, 2000, in connection with litigation in Oregon (captioned *Ford v. GST*), Hawaii (*Lewis/Martin v. GST*, Circuit Court of the First Circuit, Civil No. 97-2807-07) and New York (*GST v. Irwin*, U.S. District Court for Southern District of New York, Case No. 98CIV. 8865 (lap)). Warta's fees and costs associated with that litigation have amounted to $298,032 in *Ford*, $2,860 in *Lewis/Martin*, and $24,849 in *Irwin*.

Warta claims an additional right to indemnity from GST and its subsidiaries for actions they initiated. By reason of his being a director, officer and/or employee of GST and/or certain of its subsidiaries, Warta was made a party to improper litigation in California and British Columbia in which GST and GST Telecom asserted unfounded claims against Warta. Warta's motion to dismiss or stay the California action on the ground that California was an improper forum was granted, and the order staying the action was sustained on appeal. Warta incurred fees and costs of $186,997 in that action, plus approximately $73,600 in the action initiated in the Supreme Court of British Columbia.

Through August 1, 2003, legal costs and expenses incurred by Warta defending unfounded claims asserted against him total approximately $586,300. These items Warta has incurred as "Damages," as that term is defined in Section 2 of the 1998 Indemnity Agreement.

Warta has performed all conditions precedent to the payment of Damages, and remains prepared to perform his obligations under the Indemnity Agreement.

Because the 1998 Indemnity Agreement contains an attorney fee provision at paragraph 9, Warta is entitled to his reasonable attorney fees and costs for pursuing this claim.

## CLAIMS AGAINST GST FOR DETRIMENTAL RELIANCE/BAD FAITH

In the weeks immediately following the termination of plaintiff's employment with GST, the parties worked on a calculation of the amounts owed to plaintiff by GST under the Employment Agreement. GST admitted its liability for the items sought herein under the Employment Agreement, but the calculation of the actual amounts owed was the subject of negotiation. Plaintiff acted in reliance on GST's representations of an intention to honor the Agreement by resigning from the Board, to his detriment. GST's

intention was recently confirmed by the deposition testimony of Warta's successor as chairman of the Board of GST, Robert Ferchat.

In the meantime, GST developed a strategy for avoiding its obligations under the Employment Agreement and the Indemnity Agreements that called for filing a lawsuit against plaintiff alleging that he breached his duties to his employer.

GST's strategy of litigation against plaintiff made GST itself a target of litigation by shareholder groups who simply reiterated the allegations of GST's pleading against plaintiff. Many of these lawsuits named Warta as an individual defendant, causing him to incur legal fees in defense that should have been paid by GST pursuant to its indemnity obligations under the parties' contracts and under GST's corporate bylaws and applicable U.S. and Canadian law. Despite demands, GST refused to honor its duties in these cases to indemnify plaintiff.

GST willfully and intentionally initiated litigation against Warta without an objectively reasonable basis for its claims, and used litigation as a strategy to deflect its own legal responsibility for GST's declining performance following Warta's departure as well as to avoid its contractual and legal duties to Warta as imposed by the Employment Agreement and Indemnity Agreement.

Not one of the cases in which plaintiff was named as an individual defendant resulted in an adjudicative finding that plaintiff had breached his duty to GST in any way.

One of the lawsuits targeting plaintiff was *Ford v. GST*, filed in the State of Oregon, Multnomah County Circuit Court as Case No. 9902-01746, in February, 1999. Ford named GST and plaintiff Warta as defendants. GST failed and refused to honor its indemnity obligations, without an objectively reasonable basis for doing so, and failed to provide Warta with the costs of defense. Further, in abrogation of its duties to Warta, GST secretly settled with the plaintiff Ford without obtaining a full and final release of Ford's claims against Warta.

GST's litigation strategy, refusal to honor its defense or indemnity obligation by advancing legal fees and/or making timely reimbursements to plaintiff, and secret settlement with GST, all were carried out in breach of its duties under its Employment Agreement, the subsequent consulting agreement, the 1998 Indemnity Agreement, the corporations' bylaws and applicable Canadian and Delaware law on corporate duties to directors.

As a result of GST's conduct in breach of its duties, plaintiff has incurred damages of at least $15.6 million, in the form of lost employment compensation and benefits of $1.87 million, attorney fees for pursuing his employment compensation claims and defending specious claims against him (as described above) of approximately $787,350, loss of business reputation damages of approximately $12 million, and emotional distress damages of $1 million. Some or all of these amounts have been

increased by prejudgment interest since the termination of Warta's employment and departure from GST's Board in 1998.

Warta files this proof of claim without prejudice to his rights (i) to increase the amount claimed to the extent he incurs further costs and expenses for which he is entitled to indemnification, (ii) to assert a claim for his legal costs and expenses as a rejection claim under 11 U.S.C. § 365 or (iii) to seek satisfaction of the Debtors' indemnification obligation to him as an administrative expense, in whole or in part.

# EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RECEIVED
In King County Superior Court ____
JAN 25 1999
Cashier Section
Superior Court Clerk

IN THE SUPERIOR COURT OF WASHINGTON

FOR KING COUNTY

JOHN WARTA,                                )
                                           )
                          Plaintiff,       )    Case No. _____
                                           )
        v.                                 )
                                           )
GST USA, Inc., a Delaware corporation;     )    COMPLAINT
GST TELECOM, INC., a Delaware              )    (Breach of Employment Agreement,
corporation; and GST                       )    Breach of Covenant of Good Faith
TELECOMMUNICATIONS, INC., a                )    and Fair Dealing, Violation of Wage
Canadian corporation.                      )    Statutes and Indemnity)
                                           )
                          Defendants.      )

Plaintiff alleges:

### Parties, Jurisdiction and Venue

1.

This is an action for breach of an employment contract and related claims.

2.

Plaintiff ("Warta") is a resident of Clark County, Washington, and was formerly the Chief Executive Officer and a Director of defendants GST USA, Inc., ("GUSA") and GST Telecom, Inc., ("Telecom").

3.

GUSA and Telecom are Delaware corporations and their principle places of business are in Vancouver, Washington. GUSA and Telecom are wholly owned subsidiaries of defendant GST Telecommunications, Inc., ("GST"), a Canadian corporation that is publicly owned.

Page    1 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

EXHIBIT 1

1                                          4.

2          This case arises out of an employment contract by and between plaintiff, GUSA and

3    Telecom, dated September 1, 1995, (attached as Exhibit A) as amended on August 22, 1997

4    (Exhibit B). (Collectively referred to as the "Agreement.") The contract provides that "any

5    action, suit or proceeding with respect to this Agreement and the respective rights, remedies,

6    duties and liabilities of the parties hereunder shall be brought in the courts of the State of

7    Washington located in Seattle, Washington or in the United States District Court for the

8    district in which Seattle is located . . ." Accordingly, jurisdiction and venue are proper in

9    King County.

10                              **Factual Background**

11                                          5.

12         In 1994, Warta controlled an Oregon limited liability company known as Pacwest

13   Network L.L.C. (Pacwest). Pacwest was in the telecommunications business in the

14   continental United States and Hawaii. Warta and Pacwest were approached by a Canadian

15   company, Greenstar Telecommunications, Inc., ("Greenstar") with a proposal to merger the

16   operations of some of Pacwest's business into the operations Telecom, a subsidiary of

17   Greenstar. Greenstar later became GST.

18                                          6.

19         On June 21, 1994, Greenstar, Warta, Pacwest and others entered into a Shareholder

20   Agreement by which Greenstar and Pacwest became the holders of all of the issued and

21   outstanding shares of Telecom. As a part of the negotiations of the Shareholder Agreement,

22   the parties agreed that Warta would become employed by Telecom as its chief executive

23   officer and president. In addition, the parties to the Shareholder Agreement also agreed that

24   Warta would be responsible for the day-to-day management and operations of all Telecom

25   subsidiaries.

26   ///

Page    2 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

7.

1

2   The Shareholder Agreement also provided that Pacwest and Warta were permitted to

3   continue to perform their obligations under disclosed pre-existing contracts with others, and,

4   in particular, were permitted to continue their consulting relationship known as Tomen and,

5   in the event Tomen provided debt or equity financing to Telecom or its affiliates, would be

6   entitled to compensation equal to one percent of the amount of the financing.

7                                             8.

8   On March 1, 1994, Warta entered into an employment agreement with Telecom. On

9   September 1, 1995, this employment agreement was restated and amended to include GUSA

10  (Exhibit A). Further amendments (Exhibit B) were signed on August 22, 1997. The term of

11  the Agreement, as amended and restated, was to and including the 28th day of February,

12  1999. Under its terms, the Agreement may only be terminated by Telecom or GUSA for

13  cause under the provisions of Section 16. Warta's compensation was subsequently raised to

14  $315,000 per annum. Warta is also entitled to a bonus of $55,000 for 1998.

15                                            9.

16  From the period of June, 1994, through June 15, 1998, Warta presided as chief

17  executive officer of Telecom and its subsidiaries and affiliates, including GUSA, and was

18  also a member of the board of directors of these companies. In addition, Warta was

19  appointed as CEO and served as a director of GST. During that time, the GST companies

20  grew and developed their business from total revenues for fiscal year ending September 1995

21  of $6 million to total revenue for fiscal year ending 1997 of $119 million. Revenues for the

22  first six months of 1998 were $70 million. In the same period, GST assets grew from $27

23  million to $948 million.

24  ///

25  ///

26  ///

Page    3 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1

FIRST CLAIM

2

(Breach of Employment Agreement)

3

10.

4      During the twelve month period preceding June 15, 1998, and the twelve month

5    period preceding termination of the Contract, there was a change of control of Telecom as

6    defined in Section 18(ii) of the Agreement.

7

11.

8      On June 15, 1998, following a change in control, the Telecom and GUSA boards of

9    directors discharged Warta as chief executive officer without cause and in breach of the

10    Contract. Following a change in control, Warta resigned as a member of the GST board of

11    directors on September 15, 1998.

12

12.

13      Following his discharge, Warta and GST entered into a consulting agreement

14    whereby GST agreed to continue for an indefinite period to pay Warta a fee equal to the

15    compensation provided for under the Agreement, without prejudice to the position of Warta

16    or Telecom and GUSA in this litigation.

17

13.

18      Following defendants' discharge of Warta, they have failed to pay Warta or provide

19    him with the benefits set for in the Agreement, including the value of 19 weeks in vacation

20    time accumulated at the time of Warta's discharge.

21

14.

22      As a result of the change in control alleged above, defendants' discharge of Warta,

23    defendants' failure to pay Warta's benefits, and Warta's departure from the GST board of

24    directors, defendants are obligated pursuant to Section 18 of the Agreement to pay Warta

25    2.99 times the "base amount" of his compensation, or $941,850.

26    ///

Page    4 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1                                        15.

2          Despite repeated demands, defendants have not paid Warta his compensation under

3     the Agreement or the consulting arrangement, his accumulated vacation pay, his bonus, nor

4     have they paid Warta the $941,850 liquidated damages provided for in Section 18 of the

5     Agreement, and therefore have breached the Agreement.

6                                        16.

7          Defendants breach of the Agreement has directly and proximately caused Warta

8     damages in the amount of $941,850, together with the amount of Warta's base compensation

9     at the rate of $315,000 per annum for the period of June 11, 1998, through February 28,

10    1999, and the value of the benefits defendants have failed to provide, and his $55,000 bonus,

11    less amounts paid under the terms of the consulting arrangement alleged in paragraph 12.

12                                       17.

13         Warta is entitled to recover prejudgment interest on his damages alleged above from

14    June 20, 1998, to the date the defendants pay their obligation to Warta.

15                                       18.

16         Pursuant to Section 27 of the Contract, Warta is entitled to recover his reasonable

17    attorneys' fees.

18                              SECOND CLAIM

19                (Breach of Duty of Good Faith and Fair Dealing)

20                                       19.

21         Plaintiff realleges paragraphs 1 through 18 above.

22                                       20.

23         Defendants discharged Warta in June, 1998, as a part of a scheme and plan to effect a

24    change in control, as defined in Section 18(ii) of the Agreement, without having to pay Warta

25    the liquidated damages provided for in Section 18(i). In carrying out this scheme, defendants

26

Page    5 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

1   breached their duty of good faith and fair dealing in that they intentionally and wrongfully

2   sought to subvert the express purpose of Section 18 of the Agreement.

3                                           21.

4          As a result of their breach of their duty of good faith and fair dealing, defendants are

5   liable to Warta in the amount of $941,850.

6                                           22.

7          Warta is entitled to recover his reasonable attorneys' fees.

8                                    THIRD CLAIM

9          (Wage Claim – Violation of RCW §§ 49.48.010 and 49.52.050(2))

10                                          23.

11         Warta realleges paragraphs 1 - 18 above.

12                                          24.

13         At the time they discharged Warta, Telecom and GUSA owed Warta accumulated

14  vacation time of 240 hours at his current annual rate of pay of $315,000.  At the time they

15  discharged Warta, defendants also owed him a bonus of $55,000, and $941,850 in liquidated

16  damages for change of control as alleged above.  Defendants continue to withhold payment

17  of Warta's wages.

18                                          25.

19         Defendants failed to pay Warta the value of the accrued vacation time at the end of

20  the established pay period in violation of RCW § 49.48.010.  Defendants have willfully

21  withheld payment of compensation depriving Warta of compensation by paying him less than

22  they are obligated to pay in violation of RCW § 49.52.050(2).

23                                          26.

24         Pursuant to the terms of RCW § 49.52.070, Warta is entitled to recover double

25  damages, together with, and pursuant to RCW § 49.48.030, his reasonable attorneys' fees.

26  ///

Page    6 -   COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1

FOURTH CLAIM

2

(Indemnity - GST)

3

27.

4

Warta realleges paragraphs 1 - 18.

5

28.

6

In August, 1998, Warta and GST entered into an Indemnity Agreement, a copy of

7

which is attached as Exhibit C.

8

29.

9

Following the formation of the Indemnity Agreement, Warta incurred damages as that

10

term is defined in Section 2 of the Indemnity Agreement in amounts that currently exceed

11

$385,000 ("Damages").  Warta continues to incur such Damages.

12

30.

13

Warta has performed all conditions precedent to the payment of Damages, and

14

remains prepared to perform his obligations under the Indemnity Agreement.

15

31.

16

GST is liable to Warta for the damages set forth above and any other damages he

17

incurs up to the date of trial of this matter.

18

32.

19

Warta is entitled to recover his reasonable attorneys' fees.

20

WHEREFORE, Plaintiff is entitled to judgment against defendants as follows:

21

1.      Against Telecom and GUSA in the amounts set forth above, together with

22

additional damages to be proved at trial,

23

2.      Against GST in the amount of $385,000, together with additional damages to

24

be proved at trial,

25

///

26

///

Page    7 -    COMPLAINT

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1    3.    Against all defendants for prejudgment interest, and

2    4.    Against all defendants for costs, disbursements and attorneys' fees.

3

4    DATED this 19 day of January, 1999.

5                              MARKOWITZ, HERBOLD, GLADE
                               & MEHLHAF, P.C.
6
7                                        /s/ Peter H. Glade

     By:_____
8                              Peter H. Glade, WSB #15681
                               Of Attorneys for Plaintiff
9
10                             **Trial Attorney:** Peter H. Glade

11

12   WARTGS\1017.DOC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page    8 -    COMMPLAINT                          MARKOWITZ, HERBOLD,
                                                   GLADE & MEHLHAF, P.C.
                                                   SUITE 3000 PACWEST CENTER
                                                   1211 SW FIFTH AVENUE
                                                   PORTLAND, OREGON 97204-3730
                                                   (503) 295-3085

## RESTATED AND AMENDED EMPLOYMENT AGREEMENT

THIS RESTATED AND AMENDED EMPLOYMENT AGREEMENT made as of this 1st day of September, 1995, by and between GST USA, INC. ("GUSA") and GST TELECOM INC. ("Telecom" and together with GUSA, the "Corporations"), each Delaware corporations with their principal offices at 4317 N.E. Thurston Way, Vancouver, Washington 98662, and JOHN WARTA, residing at 13513 N.E. 132nd Avenue, Brush Prairie, Washington 98606 (the "Executive").

### W I T N E S S E T H :

WHEREAS, Executive has heretofore been employed pursuant to an Employment Agreement dated as of March 1, 1994 between Telecom and Executive; and

WHEREAS, Telecom and Executive desire to restate and amend the terms of Executive's employment and to provide that Executive shall be jointly employed by GUSA and Telecom;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.   Employment of Executive.   The Corporations hereby employ Executive as their Chief Executive Officer, to perform the duties and responsibilities incident to such office, subject at all times to the control and direction of the Boards of Directors of the Corporations (the "Boards").

2.   Acceptance of Employment; Time and Attention. Executive hereby accepts such employment and agrees that throughout the period of his employment hereunder, except as hereinafter provided, he will devote substantially all his time, attention, knowledge and skills, faithfully, diligently and to the best of his

24359.3    3/6/96

EXHIBIT " A "
PAGE 1 of 19

ability, in furtherance of the business of the Corporations, their parent corporation, GST Telecommunications, Inc. ("GST") and their subsidiaries (collectively, the "GST Companies"), and will perform the duties assigned to him pursuant to Paragraph 1 hereof, subject, at all times, to the direction and control of the Boards. Executive shall be the principal executive officer of the GST Companies and shall in general manage and control all of the day-to-day operations of the GST Companies. Executive shall also perform such specific duties and shall exercise such specific authority related to the management of the day-to-day operations of the Corporations consistent with his position as Chief Executive Officer as may be assigned to Executive from time to time by the Boards. Executive shall at all times be subject to, observe and carry out such rules, regulations, policies, directions and restrictions as the GST Companies shall from time to time establish. During the period of his employment hereunder, Executive shall not, except as hereinafter provided, directly or indirectly, accept employment or compensation from, or perform services of any nature for, any business enterprise other than the GST Companies. The Corporations acknowledge that Executive (i) is a party to that certain Consulting Agreement dated December 29, 1993 with Tomen Telecom International, Inc. ("Tomen"), pursuant to which he has agreed to provide consulting services, (ii) will also provide marketing services to Tomen, (iii) will render services to the Hi-Rim Projects, as such term is defined in the Restated and Amended Agreement effective as of June 21, 1994, by and among GST, GUSA, Pacwest Network L.L.C., Executive, Clifford V. Sander and Telecom (the "Shareholder Agreement"), (iv) will continue to

EXHIBIT " A "
PAGE 2 of 19

conduct business through Green Arbor Development, Pacwest Telecom, Inc. and Pacwest Network Inc. and (iv) proposes to engage in charitable activities. Neither the performance of such services, nor such engagement, shall constitute a breach of this Agreement, provided that they do not interfere with the performance by Executive of his duties hereunder, and provided, further, that the services referred to in clauses (i), (ii), (iii) and (iv) hereof do not require the devotion of more than five percent of Executive's working hours in any year. Apart from any travel required to perform Executive's employment duties, Executive shall not be required to be regularly based at any office of the Corporation located outside the metropolitan areas of Portland, Oregon or Vancouver, Washington, without Executive's prior written consent (which may be withheld in Executive's discretion). Executive shall be elected or appointed to such offices·of the GST Companies other than the Corporations as shall be determined from time to time by the Board of Directors of GST (the "GST Board"). During the period of Executive's employment hereunder, he shall not be entitled to additional compensation for serving in any offices of the GST Companies other than the Corporations to which he is elected or appointed.

3.    Term. Except as otherwise provided herein, the term of Executive's employment hereunder shall commence as of the date hereof and shall continue to and including the 28th day of February, 1999.

4.    Compensation. As compensation for his services hereunder, the Corporations shall pay to Executive (i) a base salary at the rate of $200,000 per annum, payable in equal

24359.3    3/6/96                    -3-

installments no less frequently than semi-monthly and (ii) such incentive compensation and bonuses, if any, as the GST Board (or the Compensation Committee thereof) in its absolute discretion may determine to award Executive; provided that this Agreement shall in no event be construed to require the payment to Executive of incentive compensation or bonuses. At least annually, the GST Board or the Compensation Committee thereof shall review Executive's base salary and shall determine whether any adjustment thereof is warranted. If it is determined to adjust Executive's base salary, such adjustment shall be based upon (i) the nature, magnitude and quality of the services performed by Executive for the GST Companies, (ii) the condition (financial and other) and results of operations of the GST Companies and (iii) the compensation paid for positions of comparable responsibility and authority within the telecommunications industry, provided that no such adjustment shall reduce such base salary below $200,000 per annum. All compensation paid to Executive shall be subject to withholding and other employment taxes imposed by applicable law.

5.  Additional Benefits.  In addition to such base salary and any incentive compensation and bonuses awarded Executive, he (and his family) shall be entitled to participate, to the extent he is (and they are) eligible under the terms and conditions thereof, in any profit sharing, pension, retirement, hospitalization, insurance, disability, medical service, stock option, bonus or other employee benefit plan generally available to the executive officers of the Corporations that may be in effect from time to time during the period of Executive's employment hereunder. The Corporations shall be under no obligation to

EXHIBIT " _A_
PAGE _4 of 19_

institute or continue the existence of any such employee benefit plan.

6.  <u>Reimbursement of Expenses</u>.  The Corporations shall reimburse Executive in accordance with applicable policies of the GST Companies for all expenses reasonably incurred by him in connection with the performance of his duties hereunder and the business of the GST Companies, upon the submission to the Corporations of appropriate receipts or vouchers.

7.  <u>Facilities and Personnel</u>.  Executive shall be provided a private office, secretarial services and such other facilities, supplies, personnel and services as shall be required or reasonably requested for the performance of his duties hereunder.

8.  <u>Motor Vehicle Allowance</u>.  Executive shall be entitled to receive a non-accountable expense allowance of $400 per month to reimburse him for the cost and expense of operating and maintaining a motor vehicle in furtherance of the services rendered by him hereunder, which costs and expenses may include without limitation, vehicle loan and lease payments, insurance premiums, gasoline and repair expenditures and other similar charges.

9.  <u>Vacation</u>.  Executive shall be entitled to five weeks' paid vacation in respect of each 12-month period during the term of his employment hereunder, such vacation to be taken at times mutually agreeable to Executive and the Boards.  Vacation time shall not be cumulative from one 12-month period to the next, but Executive shall receive vacation pay at the then current salary rate for any vacation time not taken by him.

EXHIBIT " _A_ "
PAGE _5 of 19_

10.  D&O Insurance Coverage.  The Corporations shall use their best efforts to cause GST to obtain and maintain, at GST's cost and expense, directors' and officers' liability insurance coverage for the directors and officers of GST, including Executive.  Nothing herein shall be deemed to require GST to provide such coverage for Executive if it is not then providing such coverage generally to its directors and officers.

11.  Restrictive Covenant.  In consideration of his employment hereunder, Executive agrees that during the period of his employment hereunder and, in the event of termination of this Agreement (i) by Executive otherwise than for Employer Breach (as such term is defined herein) or (ii) by the Corporation for Cause (as such term is defined herein), for a further period ending on the earlier of two years after such termination or February 28, 2000, he will not (a) directly or indirectly own, manage, operate, join, control, participate in, invest in, or otherwise be connected with, in any manner, whether as an officer, director, employee, partner, investor or otherwise, any business entity that is engaged in the design, development, construction or operation of alternate access or other telecommunications networks, in providing long distance or other telecommunications services or in any other business in which the GST Companies, or any of them, are engaged during such period, within the United States of America (1) in all locations in which the GST Companies, or any of them, are doing business, and (2) in all locations in respect of which the GST Companies are actively planning for and/or pursuing a business opportunity, whether or not the GST Companies, or any of them, theretofore have submitted any bids, provided that if such planning

24359.3    3/6/96                    -6-

and/or pursuit relates to a business opportunity that is not a competitive access project (a "CAP") such planning and/or pursuit must have involved material efforts on the part of the GST Companies, or any of them, (b) for himself or on behalf of any other person, partnership, corporation or entity, call on any customer of the GST Companies for the purpose of soliciting, diverting or taking away any customer from the GST Companies (1) in all locations in which the GST Companies, or any of them, are doing business, and (2) in all locations in respect of which the GST Companies, or any of them, are actively planning for and/or pursuing a business opportunity, whether or not the GST Companies, or any of them, theretofore have submitted any bids, provided that if such planning and/or pursuit relates to a business opportunity that is not a CAP, such planning and/or pursuit must have involved material efforts on the part of the GST Companies, or any of them, or (c) induce, influence or seek to induce or influence any person engaged as an employee, representative, agent, independent contractor or otherwise by the GST Companies, or any of them, to terminate his or her relationship with the GST Companies, or any of them. Nothing herein contained shall be deemed to prohibit Executive from (x) investing his funds in securities of an issuer if the securities of such issuer are listed for trading on a national securities exchange or are traded in the over-the-counter market and Executive's holdings therein represent less than 2% of the total number of shares or principal amount of the securities of such issuer outstanding, (y) owning securities, regardless of amount, of GST or (z) holding an equity interest in Hi-Rim's Cuba

EXHIBIT " *A* "

PAGE 7 of 19

Project or in Hi-Rim's Honduras Cellular System, (y) holding up to 5,925 shares of Teletek and up to 1,700 shares of Intermedia.

Executive acknowledges that the provisions of this Paragraph 11 are reasonable and necessary for the protection of the GST Companies, and that each provision, and the period or periods of time, geographic areas and types and scope of restrictions on the activities specified herein are, and are intended to be, divisible. In the event that any provision of this Paragraph 11, including any sentence, clause or part hereof, shall be deemed contrary to law or invalid or unenforceable in any respect by a court of competent jurisdiction, the remaining provisions shall not be affected, but shall, subject to the discretion of such court, remain in full force and effect and any invalid and unenforceable provisions shall be deemed, without further action on the part of the parties hereto, modified, amended and limited to the extent necessary to render the same valid and enforceable.

12. _Confidential Information_. Executive shall hold in a fiduciary capacity for the benefit of the GST Companies all information, knowledge and data relating to or concerned with its operations, sales, business and affairs, and he shall not, at any time for a period of two years after termination of his employment hereunder, use, disclose or divulge any such information, knowledge or data to any person, firm or corporation (unless the GST Companies no longer treat such information as confidential) other than to the GST Companies or their designees and employees or except as may otherwise be required in connection with the business and affairs of the GST Companies; provided, however, that Executive may use, disclose or divulge such information, knowledge or data

EXHIBIT " A "
PAGE 8 of 19

that (i) was known to Executive at the commencement of his employment by Telecom; (ii) is or becomes generally available to the public through no wrongful act on Executive's part; or (iii) becomes available to Executive from a person or entity other than the GST Companies or their agents not bound by this or a similar agreement with the GST Companies; and provided, further, that the provisions of this Paragraph 12 shall not apply to Executive's know how to the extent utilized by him in subsequent employment so long as such employment is not in breach of this Agreement.

13. <u>Equitable Relief</u>. The parties hereto acknowledge that Executive's services are unique and that, in the event of a breach or a threatened breach by Executive of any of his obligations under this Agreement, the Corporations will not have an adequate remedy at law. Accordingly, in the event of any such breach or threatened breach by Executive, the Corporations shall be entitled to such equitable and injunctive relief as may be available to restrain Executive and any business, firm, partnership, individual, corporation or entity participating in such breach or threatened breach from the violation of the provisions hereof. Nothing herein shall be construed as prohibiting the Corporations from pursuing any other remedies available at law or in equity for such breach or threatened breach, including the recovery of damages and the immediate termination of the employment of Executive hereunder.

14. <u>Survival of Provisions; Death</u>. Neither the termination of this Agreement, nor of Executive's employment hereunder, shall terminate or affect in any manner any provision of

EXHIBIT " _A_ "
PAGE _9 of 19_

this Agreement that is intended by its terms to survive such termination.

In the event of termination of Executive's employment hereunder by reason of his death, the Corporations shall pay a benefit (the "Benefit Payment") to such person or persons as Executive shall, at his option, from time to time designate by written instrument delivered to the Corporations, each subsequent designation to revoke all prior designations, or if no such designation is made, to Executive's estate (the "Payment Beneficiary"). The Benefit Payment shall be in an amount equal to one and one-half times Executive's then current base salary, and shall be payable to the Payment Beneficiary in equal quarterly installments over a period of one and one-half years, provided that if the GST Companies, or any of them, then maintain a life insurance policy on the life of Executive under which they are the beneficiaries, the amount of the death benefit payable thereunder, to a maximum amount equal to the Benefit Payment, less installments of the Benefit Payment theretofore paid, shall be paid to the Payment Beneficiary on the Benefit Payment installment payment date next succeeding the date on which the GST Companies receive such death benefit proceeds, and the remainder of the Benefit Payment, if any, shall be paid in equal quarterly installments as provided above.

15. Disability. In the event that during the term of his employment by the Corporations Executive shall become Disabled (as such term is hereinafter defined) he shall continue to receive the full amount of the base salary to which he was theretofore entitled for a period of six months after he shall be deemed to

EXHIBIT " A

PAGE 10 of 19