have become Disabled (the "First Disability Payment Period"). If the First Disability Payment Period shall end prior to February 28, 1999, Executive thereafter shall be entitled to receive salary at an annual rate equal to one-half of his then current base salary for a further period ending on the earlier of (i) one year thereafter, or (ii) February 28, 1999 (the "Second Disability Payment Period"). Upon the expiration of the Second Disability Payment Period, Executive shall not be entitled to receive any further payments on account of his base salary until he shall cease to be Disabled and shall have resumed his duties hereunder and provided that the Corporations shall not have theretofore terminated this Agreement as hereinafter provided. The Corporations may terminate this Agreement and Executive's employment hereunder at any time after Executive is Disabled, upon at least 10 days' prior written notice. For the purposes of this Agreement, Executive shall be deemed to have become Disabled when (x) by reason of physical or mental incapacity, Executive is not able to perform a substantial portion of his duties hereunder for a period of 135 consecutive days or for 135 days in any consecutive 225-day period or (y) when Executive's physician or a physician designated by the Corporations shall have determined that Executive shall not be able, by reason of physical or mental incapacity, to perform a substantial portion of his duties hereunder. In the event that Executive shall dispute any determination of his Disability pursuant to clauses (x) or (y) above, the matter shall be resolved by the determination of three physicians qualified to practice medicine in the State of Washington, one to be selected by each of the Corporations and Executive and the third to be selected

24359.3    3/6/96                    -11-

by the designated physicians.  If Executive shall receive benefits under any disability policy maintained by the GST Companies, the Corporations shall be entitled to deduct the amount equal to the benefits so received from base salary that they otherwise would have been required to pay to Executive as provided above.

The foregoing provisions regarding disability shall be adjusted during the term hereof to match the most favorable disability benefits provided to any other senior executive of the Corporations.

16.  <u>Termination for Cause</u>.  The Corporations may at any time upon written notice to Executive terminate Executive's employment for Cause.  For purposes of this "Agreement, the following shall constitute Cause:  (i) the willful and repeated failure of Executive to perform any material duties hereunder or gross negligence of Executive in the performance of such duties, and if such failure or gross negligence is susceptible of cure by Executive, the failure to effect such cure within 20 days after written notice of such failure or gross negligence is given to Executive;  (ii) excessive use of alcohol or illegal drugs interfering with the performance of Executive's duties hereunder; (iii) theft, embezzlement, fraud, misappropriation of funds, other acts of dishonesty or the violation of any law or ethical rule relating to Executive's employment; (iv) the conviction of a felony or other crime involving moral turpitude by Executive; or (v) the breach by Executive of any other material provision of this Agreement, and if such breach is susceptible of cure by Executive, the failure to effect such cure within 20 days after written notice of such breach is given to Executive.  For purposes of this

24359.3    3/6/96                           -12-

EXHIBIT " A "
PAGE 12 of 19

Agreement, an action shall be considered "willful" if it is done intentionally, purposely or knowingly, distinguished from an act done carelessly, thoughtlessly or inadvertently.  In any such event, Executive shall be entitled to receive his base salary to and including the date of termination.  Should Executive in good faith dispute his termination for Cause, he shall give prompt written notice thereof to the Corporations, in which event such dispute shall be submitted to and determined by arbitration in Seattle, Washington before an arbitrator appointed pursuant to the rules of the American Arbitration Association (the "Arbitrator").  Such arbitration shall be conducted in accordance with such rules as shall be promulgated by the Arbitrator, which shall include a discovery period not to exceed 30 days in length and which may include any or all of the rules then obtaining of the American Arbitration Association.  Any award or decision of the Arbitration shall be conclusive in the absence of fraud and judgment thereon may be entered in any court having jurisdiction thereof.  The costs of such arbitration shall be borne by the party against whom any award or decision is rendered.  Executive shall not be entitled to receive any compensation for periods subsequent to his dismissal pursuant to this Paragraph 16.

    17.  <u>Termination for Employer Breach</u>.  Executive may upon written notice to the Corporations terminate this Agreement (a termination for "Employer Breach") in the event of the breach by the Corporations of (i) any material provision of this Agreement (and the occurrence of any of the events described in subparagraph (i) of Paragraph 18 hereof shall be deemed a breach by the Corporations of a material provision of this Agreement), and if

EXHIBIT " _A_ "
PAGE _13 of 19_

such breach relates to a provision of this Agreement other than Paragraph 18 and is susceptible of cure, the failure to effect such cure within 20 days after written notice of such breach is given to the Corporation; or (ii) any material provision of the Shareholder Agreement, after the expiration of any applicable cure or grace periods.

18.  Change of Control.

(i)  If prior to the termination of this Agreement, there is a Change of Control (as such term is defined herein) and thereafter any of the following occur: (a) Executive is placed in any position of lesser stature than that of a senior executive officer of the Corporations; is assigned duties inconsistent with a senior executive officer or duties which, if performed, would result in a significant change in the nature or scope of powers, authority, functions or duties inherent in such position on the date hereof; is assigned performance requirements or working conditions which are at variance with the performance requirements and working conditions in effect on the date hereof; or is accorded treatment on a general basis that is in derogation of his status as a senior executive officer; (b) Executive ceases to serve as a member of any of the GST Board or the Boards; (c) any breach of Paragraph 2 or Paragraphs 4 through 8, inclusive, of this Agreement; or (d) any requirement of the Corporations that the location at which Executive performs his principal duties for the Corporations be outside a radius of 50 miles from the location at which Executive performed such duties immediately prior to the Change of Control, then the Agreement shall be deemed to have been terminated by the Corporations otherwise than by reason of Cause

EXHIBIT " A "
PAGE 14 of 19

and the Corporations shall pay to Executive within five days after notice from Executive to such effect, as liquidated damages, a lump sum cash payment equal to 2.99 times the "base amount" of Executive's compensation. For purposes hereof, "base amount" shall have the meaning provided in Section 280G (b) (2) (A) of the Internal Revenue Code of 1986, as amended, and the Proposed Regulations thereunder.

(ii) For the purposes of this Agreement, a Change of Control means (i) the direct or indirect sale, lease, exchange or other transfer of all or substantially all (50% or more) of the assets of GST or the Corporations to any person or entity or group of persons or entities acting in concert as a partnership or other group (a "Group of Persons") excluding the GST Companies (ii) the merger, consolidation or other business combination of GST or the Corporations with or into another corporation with the effect that the shareholders of GST or the Corporations, as the case may be, immediately following the merger, consolidation or other business combination, hold 50% or less of the combined voting power of the then outstanding securities of the surviving corporation of such merger, consolidation or other business combination ordinarily (and apart from rights accruing under special circumstances) having the right to vote in the election of directors, (iii) the replacement of a majority of the GST Board or of any committee of the GST Board or of either of the Boards in any given year as compared to the directors who constituted the GST Board or such committee or either of the Boards at the beginning of such year, and such replacement shall not have been approved by the GST Board or the Boards, as the case may be, as constituted at the beginning of such year, (iv) a

24359.3    3/6/96    -15-

EXHIBIT " A "
PAGE 15 of 19

person or Group of Persons shall, as a result of a tender or exchange offer, open market purchases, privately negotiated purchases or otherwise, have become the beneficial owner (within the meaning of Rule 13d-3 under the Securities Exchange Act of 1934, as amended) of securities of GST or either of the Corporations representing 50% or more of the combined voting power of the then outstanding securities of such corporation ordinarily (and apart from rights accruing under special circumstances) having the right to vote in the election of directors.

19.  Insurance Policies.  The GST Companies shall have the right from time to time to purchase, increase, modify or terminate insurance policies on the life of Executive for the benefit of the GST Companies, in such amounts as the GST Companies shall determine in their sole discretion.  In connection therewith, Executive shall, at such place or places as the GST Companies may reasonably direct, submit himself to physical examinations on an annual basis (or more frequently) should an insurer or prospective insurer so require, and execute and deliver such documents as the GST Companies may deem necessary to obtain such insurance policies.

20.  Entire Agreement; Amendment.  This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and any prior agreement between the Corporations and Executive with respect to the subject matter hereof is hereby superseded and terminated effective immediately and shall be without further force or effect.  No amendment or modification himself shall be valid or binding unless made in writing and signed by the party against whom enforcement thereof is sought.

24359.1    3/6/96                    -16-

EXHIBIT " A "
PAGE 16 of 19

21.  Notices.  Any notice required, permitted or desired to be given pursuant to any of the provisions of this Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered in person or by responsible overnight delivery service or sent by certified mail, return receipt requested, postage and fees prepaid as follows:

> If to the Corporations, at their address set forth above, Attention: Chief Operating Officer, with a copy to:
>
> Olshan Grundman Frome & Rosenzweig LLP
> 505 Park Avenue
> New York, New York 10022
> Attention: Stephen Irwin
>
> If to Executive, at his address set forth above, with a copy to:
>
> Kennedy & Kennedy
> Pioneer Tower - Suite 1170
> 888 S.W. Fifth Avenue
> Portland, Oregon 97204

Any of the parties hereto may at any time and from time to time change the address to which notice shall be sent hereunder by notice to the other parties given under this Paragraph 21.  The date of the giving of any notice hand delivered or delivered by responsible overnight carrier shall be the date of its delivery and of any notice sent by mail shall be the date five days after the date of the posting of the mail.

22.  No Assignment; Binding Effect.  Neither this Agreement, nor the right to receive any payments hereunder, may be assigned by Executive or the Corporations without the prior consent of the other parties hereto.  This Agreement shall be binding upon Executive, his heirs, executors and administrators and upon the Corporations, their respective successors and permitted assigns.

24359.3    3/6/96                -17-

23. <u>Waivers</u>. No course of dealing nor any delay on the part of the Corporations in exercising any rights hereunder shall operate as a waiver of any such rights. No waiver of any default or breach of this Agreement shall be deemed a continuing waiver or a waiver of any other breach or default.

24. <u>Governing Law; Forum</u>. This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of Delaware, except that body of law relating to choice of laws. Except as otherwise provided in Paragraph 16 hereof, any action, suit or proceeding with respect to this Agreement and the respective rights, remedies, duties and liabilities of the parties hereunder shall be brought in the courts of the State of Washington located in Seattle, Washington or in the United States District Court for the district in which Seattle, Washington is located, and by execution and delivery of this Agreement, each party accepts for itself, generally and unconditionally, the jurisdiction of such courts. The parties hereto irrevocably waive any objection that they may now or hereafter have to the commencement of any such action, suit or proceeding in such courts.

25. <u>Invalidity</u>. If any clause, paragraph, section or part of this Agreement shall be held or declared to be void, invalid or illegal, for any reason, by any court of competent jurisdiction, such provision shall be ineffective but shall not in any way invalidate or affect any other clause, paragraph, section or part of this Agreement.

26. <u>Further Assurances</u>. Each of the parties shall execute such documents and take such other actions as may be

EXHIBIT " *A* "

PAGE 18 of 19

reasonably requested by the other party to carry out the provisions and purposes of this Agreement in accordance with its terms.

27. <u>Attorneys Fees</u>. If any action, suit or proceeding is filed by any party to enforce or rescind this Agreement or otherwise with respect to the subject matter of this Agreement, the party prevailing on an issue shall be entitled to recover with respect to such issue, in addition to costs, reasonable attorneys' fees incurred in preparation or in prosecution or defense of such action, suit or proceeding as fixed by the arbitrator or trial court, and if any appeal is taken from the decision of the trial court, reasonable attorneys' fees as fixed on appeal.

IN WITNESS WHEREOF, the parties hereto have caused this Employment Agreement to be duly executed as of the day and year first above written.

GST USA, INC.

By: _____
                                                    (Title)

GST TELECOM INC.

By: _____
                                                    (Title)

_____
                    JOHN WARTA

THE FOREGOING AGREEMENT IS
CONSENTED TO AND ACKNOWLEDGED:

GST TELECOMMUNICATIONS, INC.

By: _____
                                    (Title)

24359-1        3/6/95                    -19-

AMENDMENT TO RESTATED AND AMENDED EMPLOYMENT AGREEMENT

THIS AMENDMENT dated August 22, 1997, effective as of the 1st day of April, 1997, by and among GST USA, INC. ("GUSA") and GST TELECOM INC. ("Telecom" and, together with GUSA, the "Corporations"), each Delaware corporations with their principal offices at 4317 N.E. Thurston Way, Vancouver, Washington 98662, and JOHN WARTA, residing at 13513 N.E. 132nd Avenue, Brush Prairie, Washington 98606 (the "Executive") hereby amends that certain Restated and Amended Employment Agreement dated as of September 1, 1995, by and between the Corporations and the Executive (the "Agreement"). Capitalized terms used herein and not otherwise defined shall have the same meaning ascribed to them in the Agreement.

W I T N E S S E T H :

WHEREAS, the Corporations and Executive desire to amend the terms of Executive's employment;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.   Section 4 of the Agreement is hereby amended in its entirety to read as follows:

> 4.   Compensation.    As compensation for his services hereunder, the Corporations shall pay to Executive (i) a base salary at the rate of $275,000 per annum, payable in equal installments no less frequently than semi-monthly and (ii) incentive compensation, in such amount (not to exceed 60% of Executive's then current base salary) as is determined by the GST Board (or the Compensation Committee thereof) in its sole discretion, based upon the achievement by the GST Companies of the Performance Objectives (as hereinafter defined). For the purposes of this Agreement, Performance Objectives shall mean those objectives relating to the operations of the GST Companies mutually determined by Executive and the GST Board (or the Compensation Committee thereof). Executive and the GST Board (or the Compensation Committee thereof) shall use their best efforts and negotiate in good faith to determine the Performance Objectives. At least annually, the GST Board (or the Compensation Committee thereof) shall review Executive's base salary and shall determine whether any adjustment thereof is warranted. If it is determined to adjust Executive's base salary, such adjustment shall be based

EXHIBIT " B "

PAGE  1 of 2

upon (i) the nature, magnitude and quality of the services performed by Executive for the GST Companies, (ii) the condition (financial and other) and results of operations of the GST Companies and (iii) the compensation paid for positions of comparable responsibility and authority within the telecommunications industry, provided that no such adjustment shall reduce such base salary below $275,000 per annum. All compensation paid to Executive shall be subject to withholding and other employment taxes imposed by applicable law.

2.    The words "competitive access project" and the defined term "CAP" in Paragraph 11 of the Agreement are hereby deleted and replaced with the words "competitive local exchange carrier" and the defined term "CLEC," wherever they appear.

3.    Except as amended hereby, the Agreement shall remain in full force and effect in accordance with its terms.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed as of the day and year first above written.

GST USA, INC.

By: _____
Name: Clifford V. Sander
Title: Senior Vice President

GST TELECOM INC.

By: _____
Name: Clifford V. Sander
Title: Senior Vice President

_____
JOHN WARTA

THE FOREGOING AMENDMENT IS
CONSENTED TO AND ACKNOWLEDGED:

GST TELECOMMUNICATIONS, INC.

By: _____
Name: Clifford V. Sander
Title: Senior Vice President

EXHIBIT " B "
PAGE 2 of 2

# EXHIBIT 2

EXHIBIT

_Fenght_ **20**
5/13/03·PA

## INDEMNIFICATION AGREEMENT

THIS AGREEMENT made this 3rd day of April, 1996, between GST TELECOMMUNICATIONS, INC., a Canadian corporation ("GST"), and John Warta, residing at 13513 N.E. 132nd Avenue, Brush Prairie, Washington 98606 (hereinafter called the "Indemnified Party").

### W I T N E S S E T H:

DEPOSITION
EXHIBIT
23
Warta

THAT WHEREAS:

(a) The Indemnified Party:

(i) is or has been a director or officer of GST;

(ii) is or has been, at the request of GST, a director or officer of a corporation (an "Other Corporation") of which GST is or was a shareholder or creditor; or

(iii) is or has been, at the request of GST, a director or officer of or is acting or has acted in a similar capacity (and the Indemnified Party shall for purposes hereof be referred to as a director or officer in so acting or having acted) for a corporation, partnership, unincorporated association, unincorporated syndicate, unincorporated organization, joint venture or trust (each, an "Entity");

(GST, each Other Corporation and each Entity being herein individually called a "Corporation" and collectively called the "Corporations");

(b) GST acknowledges that the Indemnified Party, acting in the capacity of director or officer, is or has been required to make decisions and take actions in furtherance of the business and affairs of the Corporations that might have the result of attracting personal liability; and

(c) It is in the best interests of GST that it retain the continuing dedication of the Indemnified Party by acknowledging its undertaking to indemnify the Indemnified Party from all costs, charges and expenses incurred or sustained by the Indemnified Party acting in the capacity of director or officer of the Corporations;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and other good and valuable consideration (the receipt and

61954.4      2/13/96

sufficiency whereof is mutually acknowledged), the Indemnified Party and GST (hereinafter called the "Parties") covenant and agree as follows:

1.    Duty of Care.    In accordance with the provisions of the *Canada Business Corporations Act*, the Indemnified Party, in exercising his or her powers and discharging his or her duties as a director or officer of the Corporations, shall:

(a)    act honestly and in good faith with a view to the best interests of GST; and

(b)    exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

2.    Exculpation; Exceptions to Indemnification.

(a)    Except to the extent that such cost, charge or expense is incurred or sustained as a result of any failure of the Indemnified Party to act in accordance with Section 1 of this Agreement, the Indemnified Party shall not be liable for any cost, charge or expense, including an amount paid to settle an action or satisfy a judgment or fine, whatsoever incurred or sustained by a Corporation, including, without limitation, any cost, charge or expense incurred or sustained as a result of:

(i)    the acts, receipts, neglects or defaults of any other director, officer or employee of a Corporation;

(ii)    joining in any receipt or act for conformity;

(iii)    any loss, charge or expense happening to GST through the insufficiency or deficiency of title to any asset acquired by or on behalf of a Corporation;

(iv)    the insufficiency or deficiency of any security in or upon which any of the moneys of or belonging to a Corporation shall be placed out or invested;

(v)    any loss or damage arising from the bankruptcy, insolvency or tortious act of any person, firm or corporation, with whom or with which any moneys, securities or effects shall be lodged or deposited;

(vi)    any loss, conversion, misapplication or misappropriation of, or any damage resulting from any dealings with any

000061

moneys, securities or other assets belonging to a Corporation; or

(vii) any other loss, damage or misfortune whatsoever which may happen in the execution of the duties of his or her respective office or trust, or in relation thereto.

(b)    The Indemnified party shall not be entitled to indemnification under this Agreement on account of (i) amounts payable by the Indemnified Party to a Corporation in satisfaction of any judgment or settlement in the Corporation's favor, or any amount payable on account of profits realized by the Indemnified Party in the purchase or sale of securities of the Corporation within the meaning of Section 16(b) of the United States Securities Exchange Act of 1934, as amended, or similar provisions of state or provincial law; (ii) costs, charges or expenses in connection with which it is otherwise determined that the Indemnified Party is not entitled to indemnification as a matter of law or public policy; or (iii) costs, charges or expenses to the extent the Indemnified Party is indemnified by GST otherwise than pursuant to this Agreement, including any costs, charges or expenses for which payment is made to the Indemnified Party under an insurance policy.

3.    Indemnity.

(a)    Except in respect of an action by or on behalf of a Corporation to procure a judgment in its favor to which the Indemnified Party is made a party by reason of being or having been a director or officer of the Corporation, GST will indemnify and save harmless the Indemnified Party, his or her heirs and legal representatives against all costs, charges and expenses (including, without limitation, any legal, counsel and witness fees or expenses, and an amount paid to settle an action or satisfy a judgment or any fines levied), reasonably incurred by him or her in respect of any civil, criminal or administrative action or proceeding to which he or she is made a party by reason of being or having been a director or officer of the Corporation if:

(i)    the Indemnified Party acted honestly and in good faith with a view to the best interests of the Corporation; and

(ii)    in the case of a criminal or administrative action or proceeding that is enforced by a monetary penalty, the Indemnified Party had reasonable grounds for believing that his or her conduct was lawful.

(b)    In respect of an action by or on behalf of a Corporation to procure a judgment in its favor to which the Indemnified Party is made a party by reason of being or having been a director or officer of the Corporation, GST shall make application at its expense for and diligently pursue approval of the relevant court to indemnify and save harmless the Indemnified Party, his or her heirs and legal representatives against all costs, charges and expenses (including, without limitation, any legal, counsel and witness fees or expenses) reasonably incurred by him in connection with such action, if the Indemnified Party has fulfilled the conditions set out in Sections 3(a)(i) and (ii).

(c)    Notwithstanding any of the foregoing, GST shall indemnify and save harmless the Indemnified Party, his or her heirs and legal representatives against all costs, charges and expenses reasonably incurred by the Indemnified Party in connection with the defense of any civil, criminal or administrative action or proceeding to which he or she is made a party by reason of being or having been a director or officer of a Corporation, if:

(i)    he or she was substantially successful on the merits in his or her defense of the action or proceeding; and

(ii)    he or she fulfills the conditions set out in Sections 3(a)(i) and (ii).

(d)    For the purposes of this Agreement, the termination of any civil, criminal or administrative action or proceeding by judgment, order, settlement or conviction shall not, of itself, create a presumption either that the Indemnified Party did not act honestly and in good faith with a view to the best interests of the Corporation or that, in the case of a criminal or administrative action or proceeding that is enforced by a monetary penalty, the Indemnified Party did not have reasonable grounds for believing that his or her conduct was lawful.

(e)    Notwithstanding the generality of the foregoing, should the Indemnified Party be or become, directly or indirectly, a party to any civil,

criminal or administrative action or proceeding, by reason of being or having been a director or officer of a Corporation, and thereby incur or become liable for any costs, charges or expenses (including, without limitation, any legal, counsel and witness fees or expenses), then, except in respect of an action referred to in Section 3(b) and unless the Board of Directors of GST shall have made a determination based upon appropriate findings of fact communicated in writing to the Indemnified Party that the Indemnified Party has not satisfied the conditions specified in Sections 3(a)(i) and (ii), GST shall forthwith assume and pay, or reimburse the Indemnified Party for and indemnify the Indemnified Party from, any and all such costs, charges and expenses. Any such determination by the Board of Directors of GST shall be made within 90 days after the first demand by the Indemnified Party for payment or reimbursement of such costs, charges and expenses and shall be communicated in writing to the Indemnified party within 10 days after such determination. If, and only if, the outcome of such civil, criminal or administrative action or proceeding establishes that the Indemnified Party was not entitled to reimbursement of such costs, charges and expenses shall the Indemnified Party be liable to repay to GST all amounts paid by it under this Section 3(e), and the Indemnified Party shall make payment to GST of an amount equal to the amount of all costs, charges and expenses assumed and paid by GST under this Section 3(e).

4.    Insurance.  GST shall purchase and maintain, or cause to be purchased and maintained, while the Indemnified Party remains a director or officer of any Corporation and thereafter so long as the Indemnified Party shall be subject to any possible claim or threatened, pending or completed action or proceeding by reason of the Indemnified Party's service to a Corporation, directors' and officers' errors and omissions insurance for the benefit of the Indemnified Party and his or her heirs and legal representatives on terms no less favorable in terms of coverage and amounts, to the extent permitted by law and available on reasonable commercial terms, than such insurance maintained in effect by GST on the date hereof, provided that such insurance shall not apply to any liability incurred by the Indemnified Party relating to any failure by the Indemnified Party to act honestly and in good faith with a view to the best interests of GST; and provided, further, that GST shall not be required to maintain such insurance

000064

in effect if such insurance is not reasonably available or if, in the reasonable business judgment of the Board of Directors of GST, either (i) the premium cost for such insurance is substantially disproportionate to the amount of coverage or (ii) the coverage provided by such insurance is so limited by exclusions that there is insufficient benefit from such insurance.

5.    Income Tax.  Should any payment made pursuant to this Agreement be deemed by Revenue Canada, Taxation, the United States Internal Revenue Service or any other taxation authority of Canada or the United States of America or any political subdivision thereof to constitute a taxable benefit to the Indemnified Party or otherwise be or become subject to any tax or levy, then GST shall pay such greater amount as may be necessary to ensure that the amount received by or on behalf of the Indemnified Party, after the payment of or withholding for such tax is equal to the amount of the actual cost, charge and expense incurred by or on behalf of the Indemnified Party, such that this Indemnity shall serve to indemnify the Indemnified Party against liability for any and all such taxes.

6.    Assignment.  The duties and obligations of GST under this Agreement shall be binding upon, and enforceable by the Indemnified Party and the Indemnified Party's heirs and legal representatives, against GST and its successors and assigns, including any corporation with which GST is merged or amalgamated.  GST covenants and agrees that it shall not, without the consent of the Indemnified Party, transfer or dispose of all or substantially all of its assets or undertakings to any entity that does not agree to assume all of the obligations of GST under this Agreement.

7.    Effective Date.  Notwithstanding the date of execution of this Agreement, the terms and provisions hereof shall be effective, binding upon, and enforceable by the Parties as of and from the date  on which the Indemnified Party was first appointed or elected a director or officer of a Corporation.

8.    Indemnification Provision of By-Laws.  The indemnity provided by this Agreement is in addition to, and neither restricts nor is it restricted by, law, the indemnification provisions provided by By-Law No. 16 (or any other provision) of GST's By-Laws, vote of GST's shareholders or directors or otherwise.

9.    Defense of Claims.

(a)    The Indemnified Party covenants and agrees that, upon becoming aware of any facts or circumstances that may give rise to any potential liability for which GST would be required to indemnify the Indemnified Party pursuant to the provisions of this Agreement (a "Claim"), the Indemnified Party shall immediately deliver written notice to GST setting out in reasonable detail the nature of the facts relating to such Claim.    If any Claim is made or brought against the Indemnified Party in connection with any of the matters against which the Indemnified Party would be indemnified pursuant to this Agreement, upon receipt of the notice of the Claim, subject to the Board of Directors of GST determining that the Indemnified Party has satisfied the conditions specified in Sections 3(a)(i) and (ii) and, in respect of an action referred to in Section 3(b), the approval of the relevant Court, GST shall, at its expense and in a timely manner, contest and defend against any such Claim and take all such steps as may be necessary or proper to prevent the resolution thereof in a manner adverse to the Indemnified Party.    In such connection, GST shall not consent to the entry of any judgment or enter into any settlement that does not include as an unconditional term thereof the giving by the claimant or plaintiff to the Indemnified Party of a release from all liability with respect to any such Claim. The Indemnified Party shall fully cooperate with GST in taking all such steps, and hereby consents to the taking of such steps by GST.    If GST does not in a timely manner undertake the contestation or defense of the Claim, or if a conflict of interest shall exist between GST and the Indemnified Party with respect to a Claim, the Indemnified Party may contest and defend such Claim and, subject to the Board of Directors of GST determining that the Indemnified Party has satisfied the conditions specified in Sections 3(a)(i) and (ii) and, in respect of an action referred to in Section 3(b), the approval of the relevant Court, such contestation or defense shall be at the expense and risk of GST, provided that if the outcome of any civil, criminal or administrative action or proceeding establishes that the Indemnified Party was not entitled to contest or defend the Claims at the risk and expense of GST, the Indemnified Party shall be liable to repay to GST all amounts paid by GST in connection with such contestation or defense pursuant to this Section 9 and Section 3(e); and

000066

provided, further, that GST shall not be subject to any liability for any settlement made without its consent.

(b)    If GST is not entitled to, or does not elect to, assume the defense of a Claim, GST shall not be obligated to pay the fees and expenses of more than one counsel for the Indemnified Party and any other persons who are indemnified pursuant to similar indemnification agreements with respect to such Claim, unless a conflict of interest shall exist between the Indemnified Party and any such other persons, in which event GST shall be obligated to pay the fees and expenses of an additional counsel for the Indemnified Party and any such other person with whom a conflict of interest exists.

10.    <u>Obligations of GST Absolute</u>.  The obligations of GST under this Agreement are absolute and unconditional and shall not be released, discharged or reduced, and the rights of the Indemnified Party hereunder shall not be prejudiced or impaired, by any neglect, delay or forbearance in demanding, requiring or enforcing payment or performance by GST of any of its obligations hereunder or by granting any extensions of time for such performance or by waiving any performance (except as to any particular performance which has been waived), or by permitting or consenting to any assignment in bankruptcy, receivership, insolvency or any other creditor's proceedings of or against GST or by the winding-up or dissolution of GST or any other event or occurrence which would or might otherwise have the effect at law of terminating the obligations of GST under this Agreement.

11.    <u>Court Approval</u>.  GST shall use its best efforts to obtain any approval of a court required by law for the indemnification of the Indemnified Party in accordance with the terms and conditions of this Agreement.

12.    <u>Severability</u>.  If any part of this Agreement or the application of such part to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such part to any other person or circumstance, shall not be effected thereby and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  If the Indemnified Party is entitled under this Agreement or otherwise to indemnification by GST for some or a portion of the costs, charges and expenses actually and reasonably incurred by the Indemnified Party but not,

000067

however, for the total amount thereof, GST shall nevertheless indemnify the Indemnified Party for the portion of such costs, charges and expenses to which the Indemnified Party is entitled.

13.   <u>Choice of Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the Province of British Columbia, and the laws of Canada applicable therein.

14.   <u>Amendment</u>.  No amendment, modification, termination or cancellation of this Agreement shall be effective unless in writing signed by both GST and the Indemnified Party.

IN WITNESS WHEREOF, the Parties have executed this agreement on the date first above mentioned.

GST TELECOMMUNICATIONS, INC.

By: _____
Name:    R. Gordon Blankstein
Title    Chairman of the Board


_____
JOHN WARTA

000068

# EXHIBIT 3

## INDEMNITY AGREEMENT

This Agreement is by and between GST Telecommunications, Inc. ("GST"), John Warta ("Warta"), and Pacwest Network, Inc. ("PNI") dated _____ August, 1998.

### Recitals:

A.     PNI and Warta are the owners, directly or indirectly, of Magnacom Wireless L.L.C., PCS Plus, Inc., PCS Plus Holdings Corporation, PCS Plus Pacific, Inc., PCS Plus Northwest, Inc., PCS Plus Southwest, Inc., PCS Plus Arkansas, Inc. and PCS Plus Hawaii, Inc. (collectively, the "PCS Companies").

B.     GST acknowledges and agrees that Warta, individually, PNI, and Warta in his capacity as member of Magnacom Wireless L.L.C. and shareholder, director and officer of PNI (collectively, the "Indemnitees"), have acted for the benefit of GST since the organization or acquisition, as applicable, of the PCS Companies and that the Indemnitees have been acting for the benefit of GST with respect to all aspects of the PCS Companies, including, without limitation, the formation, operation and sale of the PCS Companies.

C.     Warta, individually, PNI, and Warta in his capacity as member of Magnacom L.L.C., and shareholder, director and officer of PNI, represent and agree that (1) they have acted for the benefit of GST since the organization or acquisition, as applicable, of the PCS Companies; (2) all assets or funds of the PCS Companies have been used exclusively for the benefit of the PCS Companies; and (3) no such funds or assets were used for or applied to the personal benefit of Warta or for the benefit of PNI except for the indirect benefit to them from the use of such assets and funds for the benefit of the PCS Companies.

### Agreement:

The parties agree as follows:

1.     In consideration for GST's granting this Indemnity Agreement to Warta, Warta agrees to execute the Agreement for Purchase and Sale of Assets by and between Cricket Holdings, Inc. and the PCS Companies in his individual capacity with respect to Section 7.3, Non-Competition. He further agrees to cause the PCS Companies to execute the Agreement for Purchase and Sale of Assets and to cause the PCS Companies to take such other actions as are reasonably required to cause the FCC licenses owned by the PCS Companies to be transferred to Cricket Holdings, Inc. and to provide for the management by Cricket Holdings, Inc. of the assets to be acquired under the Agreement for Purchase and Sale of Assets.

2.     GST will indemnify and hold harmless the Indemnitees for, and will pay to the Indemnitees the amount of, any loss, obligation, liability, claim, damage (including, without limitation, incidental and consequential damages), expense (including, without limitation,

EXHIBIT "_C_"
PAGE _1_ of _3_

costs of investigation and defense and reasonable attorneys' fees) (collectively, "Damages") arising, directly or indirectly, from or in connection with:

(a) the formation, acquisition, ownership, capital structure, management, control, operation, sale of the assets or stock or other disposition or liquidation of the PCS Companies;

(b) the acts or omissions of the Indemnitees as member, shareholder, controlling party, director, officer, representative or agent, as applicable, of a PCS Company;

(c) the acquisition, maintenance or sale of the FCC licenses held by the PCS Companies; or

(d) any other acts or omissions related to the PCS Companies;

provided, however, that the indemnification shall not apply to the repayment by Magnacom Wireless, L.L.C. of the loan from Pacwest Network, LLC ("PNLLC") in the principal amount of approximately $424,165.72 (the "Loan"), which Loan shall be repaid in accordance with Section 5.

3. GST releases, acquits and discharges each Indemnitee from any and all claims, obligations, liabilities, demands and causes of action whatsoever, upon any legal or equitable theory, whether state or federal, common law, statutory, contractual or otherwise, whether direct or indirect, and whether known, unknown, claimed or suspected, which GST ever had, now has, or will have against an Indemnitee, arising out of or based in whole or in part upon or related in any way to (i) the ownership, capital structure, management, control or operation of the PCS Companies, (ii) the sale of the assets or stock or other dissolution or liquidation of a PCS Company, (iii) any transaction between GST and a PCS Company; and (iv) any other transaction, act or omission involving, directly or indirectly, the PCS Companies; provided, however, the release shall not apply to Warta's obligations under Section 7.3 of the Agreement for Purchase and Sale of Assets.

4. This Agreement does not constitute and shall not be deemed as an admission of liability. This Agreement is not intended to and does not benefit any other individual or party other than the parties to this Agreement.

5. GST agrees that it will use its best efforts to cause the PCS Companies to treat PNLLC fairly (as compared to GST and other creditors of the PCS Companies) with respect to repayment of the Loan and shall use its best efforts to assure that PNLLC will receive as close to the full amount of the principal balance as possible. All parties agree to cooperate in good faith in pursuing an orderly liquidation of the PCS Companies in order to accomplish the objective of repaying as much of the outstanding principal balance of the Loan to PNLLC as possible.

Page 2 – INDEMNITY AGREEMENT

EXHIBIT "_C_"
PAGE _2_ of _3_

6.    This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns.

7.    This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

8.    Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, the parties shall confirm facsimile transmitted signature by signing an original document.

9.    If any arbitration, suit or action is instituted to interpret or enforce the provisions of this Agreement, to rescind this Agreement or otherwise with respect to the subject matter of this Agreement, the party prevailing on an issue shall be entitled to recover with respect to such issue, in addition to costs, reasonable attorneys' fees incurred in preparation or in prosecution or defense of such arbitration, suit or action as determined by the arbitrator or trial court, and if any appeal is taken from such decision, reasonable attorneys' fees as determined on appeal.

10.    This Agreement shall be governed by and construed in accordance with the laws of the State of Washington, without regard to conflicts of laws principles.

GST TELECOMMUNICATIONS, INC.        PACWEST NETWORK, INC.

By: _____        By: _____

Title: _____Chairman_____        Title: _____

_____
JOHN WARTA

Page 3 – INDEMNITY AGREEMENT

EXHIBIT "C"
PAGE 3 of 3