# EXHIBIT 33

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GST TELECOM INC., <u>et al.</u>, | ) Case No. 00-1982 (GMS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

_____

GST TELECOM INC., <u>et al.</u>,

    Counter-plaintiffs,

    v.

JOHN WARTA,

    Counter-defendant.

Adv. Proceeding No. _____

Response Deadline: March 15, 2004 at 4:00 p.m.
Hearing Date: TBD

*DOCKETED BY: SARAH MOHR*

## NOTICE OF OBJECTION

PLEASE TAKE NOTICE that on February 12, 2004, GST Telecom Inc. and the other above-captioned debtors and debtors-in-possession (the "Debtors") filed their **Objection of the Debtors to Amended Proofs of Claim Nos. 1211, 1212 and 1213 Filed by John Warta and Counterclaim for Recovery of Damages** (the "Objection") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that any responses to the Objection must be made in writing, filed with the Bankruptcy Court, 824 Market Street, 2nd Floor, Wilmington, DE 19801 and served upon, so as to actually be received by the undersigned counsel on or before **March 15, 2004 at 4:00 p.m.**



Becker
EXB ___151___
MOORE, HENDERSON,
ALLEN AND THOMAS

2736

PLEASE TAKE FURTHER NOTICE that if a response is properly filed in accordance with the above procedure, a hearing on the Objection will be scheduled before the Honorable Gregory M. Sleet. Only those responses made in writing, timely filed, and served in accordance with the above procedures will be considered at such hearing.

If no responses are timely filed in accordance with the above procedure, the Bankruptcy Court may enter an order approving the Objection without further notice or hearing.

Dated: February 12, 2004
      Wilmington, Delaware

            THE BAYARD FIRM

            Steven M. Yoder (No. 3885)
            Christopher A. Ward (No. 3877)
            222 Delaware Avenue, Suite 900
            P.O. Box 25130
            Wilmington, Delaware 19899
            Telephone: (302) 655-5000
            Fax: (302) 658-6395
            -and-
            David S. Heller
            Josef S. Athanas
            Lisa P. Conlon
            LATHAM & WATKINS
            Suite 5800 Sears Tower
            233 South Wacker Drive
            Chicago, Illinois 60606
            (312) 876-7700
            Attorneys For Debtors and
            Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GST TELECOM INC., et al., | ) | Case No. 00-1982 (GMS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| GST TELECOM INC., et al., | ) | |
| | ) | |
| Counter-plaintiffs, | ) | Adv. Proceeding No. _____ |
| | ) | |
| v. | ) | Response Deadline: March 15, 2004 at 4:00 p.m. |
| | ) | Hearing Date: TBD |
| JOHN WARTA, | ) | |
| | ) | |
| | ) | |
| Counter-defendant. | ) | |

**OBJECTION OF THE DEBTORS TO AMENDED
PROOFS OF CLAIM NOS. 1211, 1212 AND 1213 FILED BY
JOHN WARTA AND COUNTERCLAIM FOR RECOVERY OF DAMAGES**

GST Telecom Inc. and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Counter-plaintiffs"), hereby object to amended Proofs of Claim Nos. 1211, 1212 and 1213 filed by John Warta (the "Claimant" or "Warta") against GST USA, Inc., GST Telecom Inc. and GST Telecommunications, Inc., respectively, each in the amount of $15,600,000 (the "Claims"), pursuant to section 502 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), and Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In addition, pursuant to Bankruptcy Rule 7001(1) the Debtors hereby complain against Warta to recover damages for the Debtors' estates caused by Warta's fraud, breach of fiduciary duty, breach of contract and conversion. In support hereof, and based

on the Affidavit of Erick Steinman attached hereto as <u>Exhibit F</u>, the Debtors respectfully represent as follows:

## Introduction

1.     On May 17, 2000 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On May 25, 2000 the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") in these cases.  The Debtors are continuing in possession of their respective properties and are operating their respective businesses, as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     The statutory predicates for the relief requested herein are section 502 of the Bankruptcy Code and Bankruptcy Rules 3003, 3007 and 7001.

## Background

4.     Founded in 1994, GST was formed to develop, construct and operate telecommunications networks in the western United States.  Prior to selling substantially all of their assets to Time Warner Telecom Inc. ("TWTC"), the Debtors had more than 1,000 employees and approximately 38,000 customers in 49 cities and eight states.

5.     The Debtors' revenues grew from $18,681,000 in fiscal 1995 to $321,922,000 in fiscal 1999.  This rapid expansion, however, was funded primarily through the issuance of debt.  Accordingly, as the Debtors' businesses grew, so had their

debt service. Interest expense grew from $1,347,000 in fiscal 1995 to $115,481,000 in fiscal 1999, causing the Debtors' net loss to increase from $11,315,000 in fiscal 1995 to $182,569,000 in fiscal 1999.

6.    The result of the Debtors' heavy debt service and continuing losses was a decrease in the Debtors' liquidity. Prior to filing these cases, the Debtors pursued a range of options to address their liquidity concerns, including new financing, refinancing and the sale of certain or all of the Debtors' assets or businesses. The above-captioned cases were instituted to enable the Debtors to maximize the value of their assets.

7.    On September 21, 2000, the Court entered an order (the "Sale Order")[1] approving the sale of substantially all of the Debtors' assets (the "Sale") to TWTC. The Sale closed on January 10, 2001 (the "Closing Date"). On April 16, 2002, the Court confirmed the Debtors' plan of liquidation, which provides for the distribution of the proceeds of the Sale. The Debtors are resolving claims objections and pursuing avoidance actions to maximize the distribution of the Sale proceeds for legitimate creditors.

## Relief Requested

8.    By this Objection, the Debtors seek entry of an order, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007, (a) disallowing in full and expunging Claim No. 1211 as a duplicate claim, (b) disallowing in full and expunging Claim No. 1212 and (c) disallowing in full and expunging Claim No. 1213.

---

[1]Order Under 11 U.S.C. §§105, 363, 365 and 1146(c) and Fed. R. Bankr. P. 6004 and 6006 (A) Approving Purchase Agreement with Time Warner Telecom, (B) Authorizing Sale of Assets and Assumption and Assignment of Assumed Contracts Free and Clear of Liens, Claims, Encumbrances and Interests and Exempt from Any Stamp, Transfer, Recording or Similar Tax, (C) Fixing Lease and Executory Contract Cure Amounts and (D) Granting Related Relief dated September 21, 2000.

## Objection to Duplicate Claims

9.      Claimant has filed three identical claims, each purporting to be against a different Debtor. Claim No. 1211 is against GST USA, Inc. ("GUSA"), Claim No. 1212 is against GST Telecom Inc. ("Telecom") and Claim No. 1213 is against GST Telecommunications, Inc. ("GST").

10.     Claim No. 1211 is a duplicate of Claim No. 1212, in the same amount and for the same liability. On April 16, 2003, this Court confirmed the First Amended Joint Plan of Liquidation of GST Telecom Inc., et al. (the "Plan"), which provided for the substantive consolidation of all monies owed by the Debtors, except for GST. Thus, pursuant to the Plan, a claim filed against GUSA is ultimately considered to be a claim against Telecom. Accordingly, Claim No. 1211 should be disallowed in full and expunged as a duplicate of Claim No. 1212.

11.     Claimant has attached the same narrative to each of his Claims, allegedly explaining the basis of his claims. The narrative, however, fails to articulate what portion of Claimant's $15,600,000 claim is asserted against Telecom, GST and GUSA, respectively. Claimant alleges Telecom, GST and GUSA are liable for the (a) employment agreement claims, (b) indemnity claims and (c) detrimental reliance/bad faith claims.[2] Claimant's employment agreement was with GUSA and Telecom, while Claimant's indemnification agreement is with GST.

12.     The Debtors assert that Claim No. 1212 filed against Telecom should include $2,078,100, which amount represents the employment agreement portion of the claim, but should not include any claims with respect to the indemnification agreement.

---

[2] The Debtors presume that Claimant did not file three identical claims with the intention of receiving a triple recovery since such a recovery would be inequitable and would be to the detriment of other legitimate creditors. If, however, Claimant is seeking to receive a double or triple recovery, the Debtors object.

4

13.    In addition, Claim No. 1213 filed against GST should include $586,300, which amount represents the indemnification agreements portion of the claim, but should not include any claims with respect to the employment agreement.

14.    Claimant has also asserted claims for detrimental reliance/bad faith in Claim Nos. 1211, 1212 and 1213 each in the amount of approximately $13 million.  The Debtors object to the detrimental reliance/bad faith portion of the Claims because it lacks a sufficient factual predicate to enable the Debtors to ascertain which GST entity said claim is properly asserted against.  In any event, the Debtors object to the detrimental reliance/bad faith portion of the claim as filed because on its face, Claimant requests a triple recovery.

## Objection to all Claims

### *Employment Agreement Claim*

15.    Claimant seeks to be compensated for the Debtors' alleged breach of his employment agreement (as amended, the "Employment Agreement"), attached hereto as Exhibit A, for wrongful termination in June of 1998.  The Debtors contend in the Defendants' Second Amended Consolidated Answer, Affirmative Defenses and Counterclaims filed in Warta v. GST USA, Inc., et al., No. 99-2-02287-4SEA, County of King, Superior Court of the State of Washington (the "Counterclaim"), attached hereto as Exhibit B and incorporated herein by reference, that the Claimant was not terminated by the Debtors, but resigned voluntarily.  Counterclaim ¶ 38.  In addition, on June 15, 1998 Claimant sent a letter of resignation to the Debtors, attached hereto as Exhibit C, which letter conclusively proves that Claimant was not terminated by the Debtors.  The Debtors assert that the Claimant is not entitled to receive additional compensation as a result of

his voluntary termination of employment with the Debtors. Accordingly, the portion of Claim No. 1212 alleging breach of the Employment Agreement should be disallowed in full and expunged. In addition, the remainder of Claim No.1212 should be disallowed in full and expunged for the reasons listed below.

16.     The Debtors submit that the letter of resignation sent by Claimant to the Debtors conclusively proves that the Claimant resigned. In the alternative, if the Court determines that Claimant was terminated, Claim No. 1212 should still be disallowed in full and expunged because the Debtors terminated Claimant for cause.

*Indemnity Agreement Claim*

17.     Claimant seeks to be reimbursed for expenses and attorneys fees to which he is allegedly entitled under several indemnity agreements. The Debtors contend that the Claimant's indemnification claim is barred because he acted outside the scope of his responsibilities and obligations to the Debtors as an officer and director by, among other things, breaching his fiduciary duty and taking advantage of the Debtors' opportunities for his own benefit and, consequently, is not entitled to recover under any indemnity relationship with the Debtors. Counterclaim ¶¶ 55, 56, 58, 68 and 69.

18.     In addition, the Indemnity Agreement dated August, 1998 among GST, Claimant and Pacwest Network, Inc., a company wholly owned by Claimant (the "1998 Indemnity"), attached hereto as Exhibit D, required Claimant to perform certain actions as consideration for GST indemnifying Claimant. Contrary to Claimant's assertions, the Debtors contend that Claimant neither performed the conditions precedent to payment nor fulfilled his obligations under the 1998 Indemnity.

19.    Claimant did not act in good faith and in the best interests of the Debtors and, thus, should not receive the benefit of any indemnification agreement. Accordingly, the portion of Claim No. 1213 alleging a right of indemnity should be disallowed in full and expunged. In addition, the remainder of Claim No.1213 should be disallowed in full and expunged for the reasons described above regarding the employment agreement portion of the claim and for the reasons listed below.

*Detrimental Reliance/Bad Faith*

20.    The general rule is that tort damages are unavailable for alleged breaches of contract. Claimant alleges that he is entitled to damages under a detrimental reliance/bad faith theory stemming from the Debtors' obligations under the Employment Agreement and the indemnity agreements. Neither Washington nor Delaware recognize such a claim in the employment context. Statutory law in Washington provides for a cause of action for bad faith breach of an *insurance* contract. See RCW 48.01.030; see also American Mfrs. Mut. Ins. Co. v. Osborn, 17 P.3d 1229, 1233-34 (Wash. Ct. App. 2001). There is no similar statute, however, that relates to employment contracts. Although it is not clear from the face of Claim No. 1213, Claimant may be arguing that an employment contract is analogous to an insurance contract, giving rise to a claim for detrimental reliance/bad faith. The Delaware Supreme Court, however, expressly *rejected* the argument that the employment contract is a "special relationship" analogous to the insurance context, giving rise to potential punitive damages. See E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436, 446 (Del. 1996). Indeed, even in the context of "bad faith" insurance actions, the Delaware Supreme Court has specifically adopted a "contract basis" for determining permissible damages in such cases. See

7

<u>Tackett v. State Farm Fire and Cas. Ins. Co.</u>, 653 A.2d 254, 265 (Del. 1995). Given that approach, damages that are not "reasonably foreseeable at the time the contract is made" may not be obtained. <u>Id.</u> For that reason, the <u>Tackett</u> Court expressly held that damages for "emotional distress" — the same damages that Claimant currently seeks in the amount of $1 million — are not available. For the same reasons, Claimant's allegation of damages for loss of "business reputation" in the amount of $12 million are equally unavailable.

21.    Notwithstanding Claimant's attempt to identify a tort of "bad faith" that might be applicable to the facts of his relationship with the Debtors, no such tort exists. Accordingly, the portion of Claim No. 1213 alleging damages for detrimental reliance/bad faith should be disallowed in full and expunged.

22.    In the alternative, if the Court finds that a detrimental reliance/bad faith claim exists, Claim No. 1213 should be disallowed in full and expunged because the Debtors are not liable under such theory. Claimant argues that he should recover damages under a detrimental reliance/bad faith theory because of (a) amounts owed to Claimant under the Employment Agreement, (b) the Debtors' litigation against Claimant and (c) the Debtors' settlement in the <u>Ford v. GST</u> action.

A.    <u>Employment Agreement</u>

23.    After Claimant's resignation, Claimant and the Debtors participated in negotiations regarding the amount Claimant should receive as unpaid compensation. During those negotiations, Claimant argued that he was entitled to additional monies pursuant to the "Change in Control" provision in Paragraph 18 of the Employment Agreement. The Debtors did not agree and the negotiations broke down. Subsequently, Claimant sued the Debtors in <u>Warta v. GST USA, Inc., et al.</u>, No. 99-2-02287-4SEA,

County of King, Superior Court of the State of Washington. The Debtors filed the Counterclaim and both actions were stayed when the Debtors filed for bankruptcy. At all times the Debtors acted in good faith with respect to Claimant.

### B.    Debtors' Litigation Against Claimant

24.    At the time the Debtors filed for bankruptcy protection, the Debtors had two lawsuits outstanding against Claimant. One lawsuit was in the form of the Counterclaim as described above in paragraph 13. The other action was originally filed against the Debtors in British Columbia and titled <u>Global Light Telecommunications Inc.</u> <u>v. GST Telecommunications, Inc.</u>, Case No. C990449, Supreme Court of British Columbia. The Debtors filed a counterclaim in that action, asserting claims against the plaintiffs and, among others, Claimant (the "BC Counterclaim"). A copy of the BC Counterclaim is attached hereto as <u>Exhibit E</u> and incorporated herein by reference. In the BC Counterclaim, the Debtors alleged that, to their detriment, Claimant and his co-defendants had misappropriated corporate opportunities and redirected those opportunities to Global Light Telecommunications Inc. ("Global Light"), a company in which Claimant had a substantial interest. In the fall of 1999, the Debtors entered into a settlement with a number of the Claimant's co-defendants, which disposed of all issues among those parties. Pursuant to that settlement, GST received a payment of $30 million. Claimant elected not to participate in that settlement.[3] Indisputably, having received settlement proceeds totaling over $30 million proves that the Debtors did not exercise bad faith when filing the BC Counterclaim.

---

[3] Three other co-defendants did not participate in the settlement. Two of those defendants filed claims in the Debtors' bankruptcy and the Debtors settled all claims with them including the Debtors' claims in the BC Counterclaim, which settlements were approved by this Court. The third remaining defendant, Stephen Irwin, settled related litigation in 2000 in a confidential agreement that, among other things, included claims against him included in the BC Counterclaim.

### C.    Ford Settlement

25.    Finally, Claimant argues that the Debtors acted in bad faith when they *secretly* settled with Corey Ford in 2001. GST, Telecom and Claimant, among others, were each named parties in the Ford lawsuit. Although the Debtors disputed Mr. Ford's claims, the Debtors settled with Mr. Ford without any admission of liability on their part *because it was in the best interest of the Debtors' estates*. Moreover, the Debtors filed a motion to have the Ford settlement agreement approved and all creditors, including Claimant, had the opportunity to object to the settlement at that time. No objections were filed and the Ford settlement was approved by this Court. It is unclear to the Debtors (a) how a publicly filed settlement agreement can be deemed a secret or (b) settling a claim filed by a creditor could be considered in bad faith toward Claimant. Accordingly, the portion of Claim No. 1213 alleging damages for detrimental reliance/bad faith should be disallowed in full and expunged.

### Reservation of Rights

26.    The Debtors reserve their rights to make additional objections to the Claims objected to herein on any grounds not stated herein. In addition, the Debtors reserve their rights to object to all other claims filed in their chapter 11 cases, including, without limitation, any other claims asserted by the Claimant.

### COUNTERCLAIM

27.    The Debtors or Counter-plaintiffs, as and for their Counterclaim against Counter-defendant Warta, allege as follows:

## Nature of the Action

28.    This action arises out of Warta's fraud, breach of fiduciary duty of loyalty and care, conversion and breach of his employment agreement.

29.    The Debtors seek to hold Warta liable for his fraud relating to the transfer of the Debtors' assets to companies he owned and controlled.

30.    The Debtors further seek to hold Warta liable for the conversion of $415,000 of GST's money to a company he owned and controlled.

31.    The Debtors further seek to hold Warta liable for his gross and flagrant abuses of his corporate offices held with the Debtors.  Oblivious to his duties as a fiduciary as a director and officer of the Debtors, Warta used his position for self-enrichment through the transfer of the Debtors' assets to companies he owned and controlled.  In addition, Warta used the special knowledge he gained from being a director and officer of the Debtors for self-enrichment through the purchase of units and stock in a company partially owned by the Debtors.

32.    The Debtors further seek to hold Warta liable for the breach of his employment agreement for failing to disclose, although under a duty to do so, the transfers of the Debtors' assets to Magnacom Wireless LLC ("Magnacom") and PCS Plus Pacific, Inc.

33.    By reason of the foregoing, the Debtors seek compensatory and punitive damages, and such other relief as the Court deems appropriate.

## The Parties

34.    GST is a federally chartered Canadian corporation with its principal place of business in Vancouver, Washington. GST is a holding company that operates through its various subsidiaries.

35.    Telecom is a Delaware corporation with its principal place of business in Vancouver, Washington. Telecom is a wholly owned subsidiary of GUSA.

36.    GUSA is a Delaware corporation with its principal place of business in Vancouver, Washington. GUSA is a wholly owned subsidiary of GST.

37.    Upon information and belief, Warta is a natural person and resident of the State of Washington.

## Jurisdiction and Venue

38.    The Debtors bring this adversary proceeding pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 3007 and 7001(1).

39.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

40.    Venue of this case is proper in this district pursuant to 28 U.S.C. § 1408. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

41.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (E) and this Court may enter a final adjudication on the merits of this adversary proceeding.

## Background Facts

42.    From March 1, 1994 through June 15, 1998, Warta was employed by Telecom as its Chief Executive Officer. From September 1, 1995 through June 15, 1998, Warta was also employed as the Chief Executive Officer of GUSA.

43.    On or about September 1, 1995, Telecom, GUSA and Warta entered into the Employment Agreement. The Employment Agreement was thereafter amended on August 22, 1997, in part, to increase Warta's compensation.

44.    Under the terms of the Employment Agreement, Warta was to preside as Chief Executive Officer of Telecom and GUSA.

45.    Pursuant to Paragraph 2 of the Employment Agreement, Warta agreed to devote "substantially all [of] his time, attention, knowledge and skills, faithfully, diligently and to the best of his ability, in furtherance of the business of the Corporations [Telecom and GUSA] their parent corporation, GST Telecommunications, Inc. ("GST") and their subsidiaries . . ."

46.    From June, 1994 through June 15, 1998, Warta also served as a member of the Telecom and GUSA Boards of Directors. In addition, from June, 1994 through September 15, 1998 Warta served as a member of the GST Board of Directors (together with the Telecom and GUSA Boards of Directors, collectively, the "Boards").

47.    Magnacom, a Delaware limited liability company, was owned and operated by Warta directly and through Pacwest Network, Inc. ("Pacwest"), a company wholly owned by Warta.

48.    In or about July of 1996, and prior to any knowledge or approval by any of the Boards, Warta caused GST to advance approximately $5.9 million to Magnacom.