49. Magnacom used the $5.9 million advanced to it by GST as a deposit to acquire licenses for C Block Broadband Personal Communications Services ("PCS Licenses"). Ownership of the PCS Licenses would have enabled Magnacom to provide cellular service to customers in the areas covered by the licenses. Warta, as the owner of Magnacom through Pacwest, suffered from conflicts of interest that prevented him from protecting GST's interests in any dealings with Magnacom.

50. Thereafter, Warta knowingly caused further advances by GST to Magnacom. In January of 1997, Stephen Irwin ("Irwin"), GST's Vice Chairman, reported to GST's Board that $14.4 million in total had been advanced to Magnacom to enable Magnacom to acquire the PCS Licenses. Although the first $5.9 million had been advanced by GST to Magnacom in July of 1996, the GST Board still had not been provided an explanation as to how GST's advances to Magnacom would be repaid if the PCS networks were never built or if Magnacom forfeited to the FCC either the PCS Licenses or the funds Magnacom had paid the FCC for the PCS Licenses.

51. In further violation of his fiduciary duty to GST, Warta then caused GST to enter into a "Reseller Agreement" with Magnacom, pursuant to which GST's cash advances to Magnacom were characterized as a prepayment for airtime. The Reseller Agreement was prepared by Irwin, with Warta's approval, and contained no provisions for, among other things, repayment by Magnacom to GST if Magnacom forfeited the PCS Licenses and/or the funds advanced to the FCC, or failed to construct the PCS networks. The Reseller Agreement was executed by Irwin ostensibly for GST – *after* GST had advanced $14.4 million to Magnacom.

52. Warta's fraudulent diversion of GST's resources to Magnacom is similar to his conduct with respect to another company owned by him, formerly known as Guam Net, Inc. and now known as PCS Plus Pacific, Inc. (Guam Net is hereafter referred to as "PCS Pacific"). In 1996, Warta negotiated for the purchase of A Block PCS licenses (the "A Block license") from Poka Lambro Telephone Cooperative, Inc. for the market consisting of Guam and the Northern Marianas Islands. For the benefit of himself and his marital community, Warta caused GST to advance $415,000 to PCS Pacific – his own personal company – without taking adequate, or any, steps to recognize or protect GST's interest in the payment for the investment. As a result, GST has yet to receive any consideration for the investment, even though the licenses were purchased in February 1997. GST has effectively no recourse against PCS Pacific and has been damaged in an amount not less than $415,000.

53. In late 1995, W. Gordon Blankstein ("Blankstein"), a director of GST, proposed that GST consider acquiring control of a publicly-listed shell company to use as a vehicle through which to pursue international business opportunities.

54. Due to certain of GST's applicable covenants under indentures relating to certain debt instruments issued by GST and GUSA in December of 1995 (the "Indentures"), GST's participation in any international business was to be through either a wholly owned subsidiary of GST or a company that GST would nominate and over which GST would exercise control. Under the Indentures, a company could only become a Subsidiary (as defined in the Indentures) if GST owned more than 50% of the voting power of the outstanding voting stock of such company.

55. In or around the beginning of 1996, Grupo Varo, a Mexican investment group, through Occidental de Telecomunicacion, S.A. de C.V. ("Odetel") and its wholly-owned subsidiary, Bestel S.A. de C.V. ("Bestel"), was granted, by the Mexican telecommunication authority, one of seven concessions to build a network (the "Network") consisting of three high-density polyethylene conduits in which fiber optic cable would be installed, linking 28 Mexican cities.

56. Grupo Varo was interested in identifying another company or companies to invest in Bestel, including subscribing for 49% of the shares of Bestel (the "Bestel Opportunity"). Through the Bestel Opportunity, the chosen company would acquire, either directly or indirectly, a 49% interest in the Network and participate in the revenues from the business.

57. In or around April of 1996, GUSA, on behalf of GST, executed a Letter of Intent with Grupo Varo, in which the parties agreed to negotiate in good faith and enter into a final agreement regarding the Network.

58. In May of 1996, GST appointed a three person committee (the "Committee"), which included Warta and Irwin as two of its members, and authorized the Committee to enter into negotiations with Grupo Varo as to the terms of the investment by GST in Bestel.

59. In June of 1996, pursuant to a recommendation by Blankstein, GST purchased 2.1 million common shares of stock in a company controlled by Blankstein, formerly known as Canadian Programming Concepts, Ltd. and later renamed Global Light, at a price of $423,750, representing approximately 60% of outstanding and issued

capital of Global Light (the "Global Acquisition"). The Global Acquisition gave GST control of the company.

60. In June of 1996, GST Mextel, Inc. ("Mextel") was incorporated as a Delaware corporation at the instance of GST, for the purpose of acquiring the 49% interest in the Bestel Opportunity. GST intended that Mextel would be wholly-owned by a company that was either a wholly-owned subsidiary of GST or, alternatively, a company over which GST had control.

61. Warta and Irwin, purporting to act on GST's behalf, caused themselves to be appointed two of the three directors of Mextel, but, in breach of their duties to GST, failed to take any steps to cause the shares of Mextel to be issued to either an appropriate, wholly-owned subsidiary of GST or a company over which GST exercised control.

62. In July of 1996, Blankstein, in concert with Warta and in violation of their fiduciary duties to GST, caused Global Light to grant stock options to, among others, Warta. Warta, in violation of his fiduciary duty to GST, accepted 65,000 shares at $1.66 per share. In addition, Warta, among others, using the special knowledge which he possessed in his capacity as a director and officer of GST concerning Global Light's possible future participation in the Bestel Opportunity and otherwise by virtue of his office as a director and officer of GST purchased 67,000 units of Global Light through a private placement opportunity (the "Units"). Each Unit consisted of one share and one-share-purchase warrant exercisable at Canadian $2.00 for a one year period.

63. The total of the options granted and the purchase of Units, diluted GST's interest in Global Light to approximately 40% of Global Light's issued and outstanding shares. As a fiduciary of GST, Warta knew or should have known that the dilution of

GST's interest in Global Light would cause GST to violate its debt covenants because GST would no longer control Global Light. In addition, from July, 1996 to March, 1997, Warta considerably increased his holdings of Global Light stock, further diluting GST's interest in Global Light.

64. Warta's holdings of Global Light stock, options and Units were not fully disclosed to the GST Board or its shareholders.

65. In August of 1996, Mextel entered into a subscription agreement, whereby Mextel agreed, among other things, to subscribe to 49% of the outstanding capital stock of Bestel S.A. de C.V. (the company holding the Bestel Opportunity) for $3.92 million.

66. At the same time, Warta, among others, in violation of his fiduciary duty to GST, participated in a plan to insert Global Light into the Bestel Opportunity by, among other things, taking steps to ensure that Global Light became the parent of Mextel and thus the company acquiring indirectly a 49% interest in the Bestel Opportunity.

67. At a meeting of the GST Board in September, 1996, in violation of his fiduciary duty to GST, Warta, among others, caused the GST Board to transfer its rights under the Letter of Intent to Global Light in exchange for shares of Global Light. Although Warta did not vote on this matter, he failed to disclose to the GST Board all material facts with respect to Global Light and the Bestel Opportunity, including, without limitation, the following:

    a.    it was in GST's best interest to secure control of Global Light prior to any transfer of the Bestel Opportunity to Global Light;

    b.    as a result of Warta's failure to act in GST's best interests, GST had lost control of Global Light following the issuance of additional Global Light shares, including those issued and purchased by Warta;

    c.    the interests of Warta, as a shareholder of Global Light, conflicted with his duties to GST to ensure that if the Bestel Opportunity was transferred to Global Light, GST received maximum value; and

    d.    the shares of Global Light owned by Warta were worth substantially more than he had paid to acquire such shares or to exercise such options and it was in his personal interest to ensure that Global Light be substituted in the Bestel Opportunity and that GST's compensation from Global Light for the Bestel Opportunity be minimized.

68. After the September, 1996 GST Board meeting, Warta was appointed to the Global Light Board of Directors. As a member of both the GST Board and the Global Light Board, Warta was in a position of conflict between his duties of loyalty to GST and Global Light.

69. In October, 1996, Warta, without the proper authorization of the GST Board, and in violation of his fiduciary duty to GST, permitted the issuance of Mextel shares to Global Light, which resulted in Mextel becoming a wholly-owned subsidiary of Global Light and thus, Global Light became the indirect holder of the 49% interest in the Bestel Opportunity.

70. Warta knew, or should have known, that the issuance of Mextel shares to Global Light was not in the best interests of GST and that his personal interest in ensuring that Global Light received the Bestel Opportunity conflicted with his fiduciary duties to GST.

71. At a GST Board meeting in January of 1997, Warta, among others, voted in favor of a resolution that authorized the transfer its rights under the Letter of Intent to Global Light in exchange for a minimum of 3,000,000 and a maximum of 5,000,000 shares of Global Light capital stock. Although Warta had an interest in the matter by

virtue of his ownership of Global Light shares, options and Units, Warta did not abstain from voting.

72. Warta knew that GST had no basis to make an independent informed business judgment on the question of whether 3,000,000 or 5,000,000 Global Light shares would properly compensate GST for the Bestel Opportunity. As of May, 1998, the Bestel Opportunity was valued at $460 million, and a 49% interest in the Bestel Opportunity was worth approximately $225 million. Ultimately, the Debtors settled their claims against Global Light, Mextel, W. Gordon Blankstein, Ian Watson and Peter Legault for $30 million and seek the remainder of their losses against Warta.

73. As a direct and proximate cause of Warta's breach of fiduciary duties, GST has been damaged in an amount not less than $15 million.

## Count I—Fraud

74. GST realleges and incorporates by reference paragraphs 1 through 73 as if fully set forth herein.

75. Warta knowingly made numerous misrepresentations to, and concealed facts from, GST, despite his duties to disclose his conflict of interest, and abstain from taking actions to GST's detriment.

76. In particular, Warta, among other things, failed to disclose, although under a duty to do so as director and officer of GST, that he caused GST to transfer funds to Magnacom for the purchase of PCS Licenses without GST's Board approval, and deliberately failed to protect GST's interest prior to the transfer of such funds. Warta also caused GST to transfer funds to PCS Pacific under similar circumstances and with a

similar deliberate failure to protect GST's interests and to secure adequate protection for GST prior to the transfer of such funds.

77. Warta could never have transferred GST funds to Magnacom or PCS Pacific but for his abuse of corporate position, false representations to GST's Board regarding the advisability of making such advances and his failure to disclose the personal benefit that he sought to derive for himself from the Magnacom and PCS Pacific transfers.

78. In addition, Warta, among other things:

    a. permitted GST to transfer the Bestel Opportunity to Global Light pursuant to fraudulent representations and to GST's detriment,

    b. failed to disclose, although under a duty to do so as director and officer of GST, his total interests in Global Light, and

    c. deliberately failed to protect GST's interest prior to the transfer the Bestel Opportunity to Global Light.

79. Warta could never have permitted GST to transfer the Bestel Opportunity but for his abuse of corporate position, false representations to GST's Board regarding the advisability of making such a transfer and his failure to disclose the personal benefit that he sought to derive for himself from the transfer of the Bestel Opportunity.

80. As a result of Warta's fraudulent transfer of GST assets to Magnacom and PCS Pacific, and Warta's fraudulent representations to the GST Board regarding the Bestel Opportunity, GST has been damaged in an amount to be determined at trial.

### Count II—Breach of Fiduciary Duty of Loyalty and Care

81. GST realleges and incorporates by reference paragraphs 1 through 80 above as if fully set forth herein.

82. As a director and officer of GST, Warta owed a fiduciary duty to GST to act honestly, in good faith and in a manner reasonably believed to be in the best interest of GST.

83. Warta also owed a duty to GST to refrain from using his power as director and officer of GST for his own personal benefit and to make full and timely disclosures to GST's Board of all material facts relating to business carried out on behalf of GST.

84. Warta breached his fiduciary duty by, among other things, causing GST to transfer funds to his own company, Magnacom, for the purchase of PCS Licenses without GST's Board approval and without adequate consideration of GST's best interest. Warta also breached his fiduciary duties by, among other things, failing to secure any protection or recourse for GST prior to the transfer of such funds. Warta further breached his fiduciary duties to GST by, among other things, failing to disclose, although under a duty to do so, the transfers of GST assets to Magnacom.

85. Warta further breached his fiduciary duty by, among other things, causing GST to transfer funds to his own company, PCS Pacific, for the purchase of the A Block licenses without GST's Board approval and without adequate consideration of GST's best interest. Warta also breached his fiduciary duties by, among other things, failing to secure any protection or recourse for GST prior to the transfer of such funds. Warta further breached his fiduciary duties to GST by, among other things, failing to disclose, although under a duty to do so, the transfers of GST assets to PCS Pacific.

86. Warta further breached his fiduciary duty by, among other things, allowing GST's Board to transfer the Bestel Opportunity to Global Light without disclosing all the material facts to the GST Board, namely that (a) transferring the Bestel

Opportunity to Global Light without securing control of Global Light was not in GST's best interest and (b) Warta had a substantial interest in Global Light that caused a conflict with his fiduciary duty to GST.

87. As a result of Warta's breach of his fiduciary duties, GST has been damaged in an amount to be determined at trial.

### Count III—Conversion

88. GST realleges and incorporates by reference paragraphs 1 through 87 above as if fully set forth herein.

89. In or about February 1997, Warta converted $415,000 of GST's money for his own use in order to purchase the A Block license for his personal company, PCS Pacific. Warta willfully took said funds without lawful justification and he has deprived GST of the use thereof.

90. In or about July of 1996 through December of 1997, Warta converted approximately $15,000,000 of GST's money for his own use in order to purchase the PCS Licenses for his personal company, Magnacom. Warta willfully took said funds without lawful justification and he has deprived GST of the use thereof.

91. In or about June of 1996 through June of 1998, Warta, among others, caused the conversion of the Bestel Opportunity for his own use in order to personally gain from the increase in his interests in Global Light. Warta willfully took the Bestel Opportunity without lawful justification and he has deprived GST of the use thereof.

92. Warta's conversion was willful and has caused GST damages in an amount to be determined at trial.

## Count IV—Breach of Employment Agreement

93. GST realleges and incorporates by reference paragraphs 1 through 92 above as if fully set forth herein.

94. Warta has an obligation pursuant to his Employment Agreement to perform all duties and responsibilities incident to his position as Chief Executive Officer of Telecom and GUSA, "subject at all times to the control and direction" of the Boards.

95. Warta breached his Employment Agreement when he, among other things, diverted GST's assets for his own benefit, made false representations regarding the advisability of advancing funds to Magnacom and failed to disclose the transfers of GST assets to Magnacom and PCS Pacific.

96. As a direct and proximate result of Warta's breach of his Employment Agreement, GST has been damaged in an amount exceeding $15 million dollars and continues to incur damages, including but not limited to attorneys' fees, expenses and costs.

97. Telecom and GUSA have performed their obligations required under the Employment Agreement.

## Prayer for Relief

WHEREFORE, GST respectfully requests that the Court enter an order in favor of the Debtors and against John Warta:

A. For compensatory and punitive damages in an amount to be determined at trial, together with interest thereon running from the date they were incurred;

B. For any and all additional damages the Debtors have incurred, together with interest thereon running from the date they were incurred;

C.  For the Debtor's attorneys' fees and other reasonable and necessary expenses incurred in connection with this action;

D.  For accrued interest on the amount of the judgment as provided by law; and

E.  For such other and further legal, equitable or other relief as this Court deems just and proper.

## Notice

98.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases. Copies of this Objection and all exhibits hereto will be served on the United States Trustee, counsel to the Creditors Committee and the Claimant. Notice of the hearing on this Objection will be served on all remaining parties on the Limited Service List established by the Court. The Debtors submit that no further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) disallowing and expunging Claim No. 1211 as a duplicate claim, (b) disallowing in full and expunging Claim No. 1212, (c) disallowing in full and expunging Claim No. 1213 and (d) granting such other and further relief as the Court deems just and proper.

Dated: February 12, 2004
      Wilmington, Delaware

                      THE BAYARD FIRM

                      /s/ [signature]

                      Steven M. Yoder (No. 3885)
                      Christopher A. Ward (No. 3877)
                      222 Delaware Avenue, Suite 900
                      P.O. Box 25130
                      Wilmington, Delaware 19899
                      Telephone: (302) 655-5000
                      Fax: (302) 658-6395
                      -and-
                      David S. Heller
                      Josef S. Athanas
                      Lisa P. Conlon
                      LATHAM & WATKINS
                      Suite 5800 Sears Tower
                      233 South Wacker Drive
                      Chicago, Illinois 60606
                      (312) 876-7700
                      Attorneys For Debtors and
                      Debtors-in-Possession

## Exhibit B

**Defendants' Second Amended and Consolidated Answer, Affirmative Defense and Counterclaims in <u>Warta v. GST USA, Inc., et al.</u>, No. 99-2-02287-4SEA, County of King, Superior Court of the State of Washington**

CERTIFICATE OF SERVICE
I certify under penalty of perjury under the laws of the State of Washington that on this day I caused to be delivered via U.S. Mail, Postage prepaid, a copy of this document to plaintiff's counsel of record.

Dated: August 24, 1999 at Seattle, Washington.

THE HONORABLE GLENNA S. HALL

RECEIVED
AUG 26 1999
MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.

No. 97603
DOCKETED
DATES 9/10

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| JOHN WARTA,<br><br>Plaintiff,<br><br>v.<br><br>GST USA, INC., a Delaware corporation; GST TELECOM, INC., a Delaware corporation and GST TELECOMMUNICATIONS, INC., a Canadian corporation,<br><br>Defendants.<br><br>GST USA, INC., a Delaware corporation; GST TELECOM, INC., a Delaware corporation and GST TELECOMMUNICATIONS, INC., a Canadian corporation,<br><br>Counterclaim Plaintiffs,<br><br>JOHN WARTA and his MARITAL COMMUNITY and CLIFFORD SANDER and his MARITAL COMMUNITY<br><br>Counterclaim Defendants. | No. 99-2-02287-4SEA<br><br>No. 99-2-00573-6SEA<br><br>DEFENDANTS' SECOND AMENDED CONSOLIDATED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS |

Defendants GST USA, Inc., GST Telecom, Inc., and GST Telecommunications, Inc. (collectively, the "GST Companies") for their Second Amended Answer to the Complaint of Plaintiff John Warta, admit, deny and allege as follows:

Page 1 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

1.

Answering paragraph 1, the GST Companies admit that Warta's action is for a purported breach of an employment contract and related claims.

2.

Answering paragraph 2, the GST Companies admit the allegations of Paragraph 2 of the Complaint.

3.

Answering paragraph 3, the GST Companies admit the allegations of Paragraph 3 of the Complaint.

4.

Answering Paragraph 4, the GST Companies admit that an employment agreement was entered into between GUSA, Telecom and Warta on September 1, 1995, and amended on August 22, 1997. The GST Companies further admit that the contract provides that "any action, suit or proceeding with respect to the Agreement . . . shall be brought in the courts of the State of Washington located in Seattle, Washington or in the United States District Court for the district in which Seattle is located . . . ." Except as so admitted, the GST Companies deny each and every remaining allegation contained in Paragraph 4 of the Complaint.

5.

Answering Paragraph 5, the GST Companies admit that Warta controlled a company known as Pacwest Network L.L.C. ("Pacwest"), and that Pacwest was in the telecommunications industry. Defendants also admit that Greenstar Telecommunications, Inc. ("Greenstar") became GST. Except as so admitted, the GST Companies are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, and on that basis, deny each and every remaining allegation contained therein.

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue

6.

Answering Paragraph 6, the GST Companies admit that a Shareholder Agreement was entered into on or about June 21, 1994. Except as so admitted, the GST Companies are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, and on that basis, deny each and every remaining allegation contained therein.

7.

Answering Paragraph 7, the GST Companies are without sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, and on that basis, deny each and every allegation contained therein.

8.

Answering Paragraph 8, the GST Companies admit that Warta entered into an employment agreement with Telecom on March 1, 1994. The GST Companies also admit that this employment agreement was amended to include GUSA on September 1, 1995, and further amended on August 22, 1997. Except as so admitted, the GST Companies deny each and every remaining allegation contained in Paragraph 8 of the Complaint.

9.

Answering Paragraph 9, the GST Companies admit that Warta presided as chief executive officer of Telecom and its subsidiaries, and was a member of the board of directors of these Companies, from on or about June 1994 through June 15, 1998. The GST Companies further admit that Warta was appointed as chief executive officer of GST. Except as so admitted, the GST Companies deny each and every remaining allegation contained in Paragraph 9 of the Complaint.

AS TO THE FIRST CLAIM

10.

Answering Paragraph 10, the GST Companies deny each and every allegation

Page 3 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation

contained in Paragraph 10 of the Complaint.

11.

Answering Paragraph 11, the GST Companies admit that Warta resigned from the GST Board of Directors on or about September 15, 1998. Except as so admitted, the GST Companies deny each and every remaining allegation contained in Paragraph 11 of the Complaint.

12.

Answering Paragraph 12, the GST Companies admit to past and present payment of fees and provision of benefits to Warta equal to those under his previous employment agreement with GST, with such payments and provisions to terminate on February 28, 1999, and without prejudice to the parties in the present litigation. Except as so admitted, the GST Companies deny each and every remaining allegation contained in Paragraph 12 of the Complaint.

13.

Answering Paragraph 13, the GST Companies deny each and every allegation contained in Paragraph 13 of the Complaint.

14.

Answering Paragraph 14, the GST Companies deny each and every allegation contained in Paragraph 14 of the Complaint.

15.

Answering Paragraph 15, the GST Companies deny each and every allegation contained in Paragraph 15 of the Complaint.

16.

Answering Paragraph 16, the GST Companies deny each and every allegation contained in Paragraph 16 of the Complaint.

17.

Answering Paragraph 17, the GST Companies deny each and every allegation contained in Paragraph 17 of the Complaint.

18.

Answering Paragraph 18, the GST Companies deny each and every allegation contained in Paragraph 18 of the Complaint.

## AS TO THE SECOND CLAIM

19.

Answering Paragraph 19, the GST Companies repeat and reallege the admissions and denials contained in paragraphs 1 through 18 above.

20.

Answering Paragraph 20, the GST Companies deny each and every allegation contained in Paragraph 20 of the Complaint.

21.

Answering Paragraph 21, the GST Companies deny each and every allegation contained in Paragraph 21 of the Complaint.

22.

Answering Paragraph 22, the GST Companies deny each and every allegation contained in Paragraph 22 of the Complaint.

## AS TO THE THIRD CLAIM

23.

Answering Paragraph 23, the GST Companies repeat and reallege the admissions and denials contained in paragraphs 1 through 22 above.

24.

Answering Paragraph 24, the GST Companies deny each and every allegation contained in Paragraph 24 of the Complaint.