1    25.

2    Answering Paragraph 25, the GST Companies deny each and every allegation

3    contained in Paragraph 25 of the Complaint.

4    26.

5    Answering Paragraph 26, the GST Companies deny each and every allegation

6    contained in Paragraph 26 of the Complaint.

7    AS TO THE FOURTH CLAIM

8    27.

9    Answering Paragraph 27, the GST Companies repeat and reallege the admissions and

10   denials contained in paragraphs 1 through 26 above.

11   28.

12   Answering Paragraph 28, the GST Companies admit that Warta, GST and Pacwest

13   entered into an indemnity agreement (the "Indemnity Agreement") in August 1998.

14   29.

15   Answering Paragraph 29, the GST Companies admit that Section 2 of the Indemnity

16   Agreement includes provisions for damages. Except as so admitted, the GST Companies

17   deny each and every remaining allegation contained in Paragraph 29 of the Complaint.

18   30.

19   Answering Paragraph 30, the GST Companies deny each and every allegation

20   contained in Paragraph 30 of the Complaint.

21   31.

22   Answering Paragraph 31, the GST Companies deny each and every allegation

23   contained in Paragraph 31 of the Complaint.

24   32.

25   Answering Paragraph 32, the GST Companies deny each and every allegation

26   contained in Paragraph 32 of the Complaint.

BULLIVANT HOUSER BAILEY
A Professional Corporation

33.

Except as expressly admitted above, the GST Companies deny each and every allegation contained in the Warta's Complaint, and the whole thereof.

FOR A FIRST AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

34.

(Estoppel, Waiver or Forfeiture)

Warta's claims are barred, in whole or in part, by the doctrines of estoppel, waiver and forfeiture by reason of Warta's conduct, actions and communications with the GST Companies and/or their agents or employees.

FOR A SECOND AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

35.

(Claims Barred By Contract)

Warta's claims are barred, in whole or in part, by the express written contractual terms concerning his employment and employment benefits and by Warta's violation of those contractual terms.

FOR A THIRD AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

36.

(Good Faith and Fair Dealing)

Warta's claims are barred because the GST Companies acted at all times fairly and in good faith and abided by, honored and acted in accordance with the lawful agreements, policies, practices and procedures which governed the relationship between them.

FOR A FOURTH AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

37.

(Failure of Conditions Precedent)

Warta's claim for breach of employment agreement is barred because conditions precedent to the GST Companies' alleged performance did not occur.

FOR A FIFTH AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

38.

(Plaintiff At Fault)

Warta's claims are barred because Warta resigned voluntarily.

FOR A SIXTH AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

39.

(Novation)

Warta's claim for breach of employment agreement is barred by the doctrine of novation.

FOR A SEVENTH AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

40.

(Unclean Hands)

Warta's claims are barred, in whole or in part, based on the doctrine of unclean hands.

FOR AN EIGHTH AFFIRMATIVE DEFENSE, the GST Companies allege as follows:

41.

(Failure to State a Claim)

Warta's claims are barred, in whole or in part, because he has failed to state a claim under Washington law.

FOR A NINTH AFFIRMATIVE DEFENSE, the GST Companies allege as

BULLIVANT HOUSER BAILEY
A Professional Corporation

1   follows:

2                      42.

3                (Set-Off)

4       Any potentially compensable damages alleged in Warta's complaint are less than

5   Counterclaim Plaintiffs' damages as set forth below and, therefore, would be compensable

6   only as a set-off against Counterclaim Plaintiffs' damages.

7       **FOR A TENTH AFFIRMATIVE DEFENSE**, the GST Companies allege as

8   follows:

9                      43.

10            (Statute of Limitations)

11       Each of the claims alleged in Warta's complaint is barred by the applicable statute of

12   limitations.

13       **FOR A FURTHER ANSWER, AND AS COUNTERCLAIMS**, the GST

14   Companies allege as follows:

15                **INTRODUCTION**

16                   44.

17       The termination of Warta's employment may only be placed in proper perspective

18   through the facts and circumstances of Warta's actions as a GST fiduciary. By this

19   Counterclaim, the GST Companies, as Counterclaim Plaintiffs, seek to hold Warta

20   accountable for his reckless breach of duties regarding Magnacom Wireless L.L.C., a

21   Delaware Limited Liability Company ("Magnacom"), and other entities controlled by him,

22   breaches that have cost GST more than $15 million.

23                   45.

24       Yet Warta did not act alone.  Counterclaim Defendant Clifford Sander ("Sander")

25   was, among other things, Treasurer and Chief Accounting Officer of GST, a long-time

26   business associate of John Warta, and, on information and belief, an indirect owner of

Page 9 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
      COUNTERCLAIMS

1  Magnacom.  Through Sander's abdication of his fiduciary responsibilities to the GST

2  Companies, Warta was able to divert millions of dollars of GST funds to companies he

3  controlled.

## JURISDICTION AND VENUE

### 46.

6  This Court has jurisdiction over all causes of action in this Counterclaim pursuant to

7  RCW §2.08.010 and RCW §4.28.185 because jurisdiction has not been vested exclusively in

8  any other court, because Counterclaim Plaintiffs are residents of Washington, and submit to

9  the jurisdiction of this court, and because many of the events giving rise to this complaint

10  occurred in Washington.

### 47.

12  Venue is proper in King County, Washington because it arises as a compulsory

13  counterclaim to the lawsuit filed by Warta in this Court, pursuant to CR 13(h) and CR 19(a)

14  and because the employment agreements pursuant to which Warta and Sander were

15  employed by the Counterclaim Plaintiffs – the employment agreements that they breached by

16  failing to act faithfully, diligently and to the best of their abilities in furtherance of the

17  business of the Counterclaim Plaintiffs — specify that claims against them be brought here.

## THE PARTIES

### 48.

20  Plaintiff and Counterclaim Defendant John Warta is a resident of Clark County,

21  Washington, and is, or was during the course of events described below, President and Chief

22  Executive Officer of GST, Chairman of the GST Board of Directors, a member of the GUSA

23  Board of Directors, a member of the Telecom Board of Directors, a member of the GST

24  Executive Committee, the owner of Guam Net/PCS Plus Pacific, Inc., and, through Pacwest

25  Network, Inc., the owner of Magnacom. Warta committed all acts alleged herein for his

26  benefit and for the benefit of the marital community of himself and his wife.  Said marital

1 | community is thus fully liable for all claims alleged against Warta.

2 |                                   49.

3 | Counterclaim Plaintiff GUSA is a Delaware Corporation with its principal place of

4 | business in Vancouver, Washington. GUSA is a wholly owned subsidiary of GST.

5 |                                   50.

6 | Counterclaim Plaintiff Telecom is a Delaware Corporation with its principal place of

7 | business in Vancouver, Washington. Telecom is a wholly owned subsidiary of GST.

8 |                                   51.

9 | Counterclaim Plaintiff GST is a federally chartered Canadian Corporation with its

10 | principal place of business in Vancouver, Washington. GST is a holding company that

11 | operates through its various subsidiaries. Although GST is legally domiciled in Canada,

12 | neither GST nor any of its subsidiaries has any business, operations, offices, or employees in

13 | Canada or earn any revenue from operations in Canada. Instead, GST, through its

14 | subsidiaries, is a leading facilities-based provider of advanced telecommunications products

15 | and services to customers principally located in the western United States. The common

16 | stock of GST is traded on the NASDAQ.

17 |                                   52.

18 | Counterclaim Defendant Clifford Sander is a resident of the State of Washington and

19 | Clark County, and is, or was during the course of events described below, a Senior Vice-

20 | President, Treasurer and Chief Accounting Officer of GST, a director of Telecom and

21 | GUSA, and an ex-officio member of the GST Finance Committee. Sander is a former

22 | accountant in private practice who has a long relationship with John Warta, the former

23 | President of GST. In addition, on information and belief, Sander is an indirect owner of an

24 | interest in Magnacom. Sander is married and all of the acts alleged herein were done for the

25 | benefit of his marital community. Said marital community is thus liable for all claims

26 | alleged against Sander.

Page 11 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS

1

### 53.

2   On information and belief, Sander and Warta conspired with, participated with, and

3   acted in concert with, each other in the activities hereinafter alleged, and, at all times herein

4   mentioned, Sander and Warta were the agents of and authorized to act for and was acting for

5   and on behalf of and with the knowledge and consent of each other.

6

### THE FACTS

7

### 54.

8   Magnacom, a Delaware Limited Liability Company, is owned, in whole or in part, by

9   Warta through Pacwest Network, Inc. Magnacom's principal place of business is in Clark

10  County Washington, and Magnacom's bankruptcy proceedings are currently pending in

11  Vancouver, Washington.

12

### 55.

13  On information and belief, in or about July 1996, and prior to any Board approval,

14  Warta, who was then President and CEO of GST, with the assistance of Sander, caused GST

15  to advance approximately $5.9 million to Magnacom, a company that was owned, directly or

16  indirectly, by Warta. Magnacom used the $5.9 million advanced to it by GST as a deposit to

17  acquire licenses for C Block Broadband Personal Communications Services ("Broadband

18  PCS"). In his application for the licenses to the Federal Communications Commission,

19  Warta certified, under penalty of perjury, that Magnacom was applying for the licenses on its

20  own behalf and that no one other than Magnacom had any interest in the licenses. Warta and

21  Sander both suffered from debilitating conflicts of interest that prevented them from

22  protecting GST's interests in its dealings with Magnacom. It was the intention of Warta

23  through the use of GST money to secure a huge personal financial advantage.

24

### 56.

25  Warta and Sander knowingly permitted and caused further advances by GST to

26  Magnacom. By January of 1997, at least $14.4 million of GST funds had been advanced to

Page 12 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
      COUNTERCLAIMS

1   Magnacom for the PCS licenses. Although the first $5.9 million had been advanced by GST
2   to Magnacom in July of the previous year, GST still had not been provided even a term sheet
3   explaining how GST's advances to Magnacom would be repaid if the PCS networks were
4   never built or if Magnacom forfeited to the FCC either the licenses or the funds Magnacom
5   had paid the FCC for the licenses. After the $14.4 million had already been advanced, Warta
6   caused GST to enter into a "Reseller Agreement" with Magnacom, under which GST's cash
7   advances to Magnacom are characterized as a prepayment for airtime. This agreement
8   contains no provisions for repayment by Magnacom to GST if Magnacom forfeits the
9   licenses and funds advanced to the FCC or fails to construct the networks.

10                                          57.

11          In addition to the advances respecting the licenses, Sander also approved in excess of
12   one million dollars ($1,000,000) in advances to Magnacom for such things as the payment of
13   Magnacom legal fees, computer software and hardware, office supplies, and more. Such
14   advances were either unauthorized and undisclosed or were made without adequate
15   consideration and without adequate measures having been taken to insure that GST would be
16   repaid.

17

18                                          58.

18          Not satisfied with having wasted approximately $15 million of GST's money, Warta
19   then set out to engineer a "reorganization" of Magnacom in which he personally would be
20   gifted significant equity in Magnacom based on the money he had diverted from GST. This
21   is in spite of Warta's frequent, albeit false, claims that he was acting solely on behalf of GST
22   with respect to his conduct in regards to Magnacom. In part because of Warta's demands for
23   personal financial advantage, Magnacom did not reorganize in any manner and subsequently
24   ran out of money.

25

26                                          59.

26          Warta specifically had the opportunity to recoup some of the massive loss he had

1    caused GST through the Magnacom diversions by causing Magnacom to enter into a funding

2    transaction with Qualcomm, Inc. a large San Diego communications company. However, in

3    order to pursue his own personal advantage against GST, Warta deliberately destroyed any

4    possibility of Qualcomm providing such funding. Indeed, on September 21, 1998, Doug

5    Hutchinson of Qualcomm wrote in exasperation to GST's new Chairman, Robert Ferchat, as

6    follows:

7         It is unfortunate but in light of both John [Warta]'s communications and efforts to
          date it is difficult to risk our business on the basis that this transaction is going to
8         occur.... I have ask [sic] John to do two things before we dedicate any further effort.
          First, he must engage and behave as if he is in control of Magnacom.... Second, he
9         must try to make us believe that he is concerned that this transaction occurs. We
          cannot continue to struggle each step of the way due to the selling party's
10        unwillingness to be an active participant. *He has convinced me on both accounts at
          this point that his personal agenda takes far more precedence than his fiduciary role.*

11

12                                        *        *        *

13        I am both disappointed and concerned that we have reached this point, and I do not
          believe GST has been at all responsible for this result.

14   (Emphasis added.)

15                                        60.

16        Magnacom has now filed for bankruptcy. As a direct and proximate result of Warta

17   and Sander's breach of fiduciary duty, GST has effectively no recourse against Magnacom

18   and has been damaged in an amount not less than $15 million.

19                                        61.

20        Warta's fraudulent diversion of GST's resources to Magnacom is similar to his

21   conduct with respect to another Warta company formerly known as Guam Net, Inc. and now

22   known as PCS Plus Pacific, Inc. (Guam Net is hereafter referred to as "PCS Pacific"). In

23   1996, Warta negotiated for the purchase of A Block PCS licenses (the "A Block licenses")

24   from Poka Lambro Telephone Cooperative, Inc. for the market consisting of Guam and the

25   Northern Marianas Islands. For the benefit of himself and his marital community, Warta

26   caused GST to advance $415,000 to PCS Pacific — his own personal company — without

Page 14 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
         COUNTERCLAIMS

BULLIVANT HOUSER BAILEY

1    taking adequate -- or any -- steps to recognize or protect GST's interest in the payment for
2    the investment. As a result, GST has yet to receive any consideration for the investment,
3    even though the licenses were purchased in February 1997. As with Magnacom, GST has
4    effectively no recourse against PCS Pacific and has been damaged in an amount not less than
5    $415,000.

6

7                                    62.
         In or about March 1999, GST learned that a third party was interested in purchasing
8    the A Block licenses. Although GST and not Warta had advanced the funds for the purchase
9    of the PCS licenses, the licenses were nonetheless held in the name of Warta's company,
10   PCS Pacific. GST therefore contacted Warta and requested that he agree to sell the licenses
11   to the prospective purchasers so that GST could be repaid its advances. Warta refused. As a
12   result, GST was unable to consummate the sale with the prospective purchaser and thus
13   unable to recoup its advances.

14
                              **FIRST COUNTERCLAIM**
15                        (Fraud – Magnacom/PCS Pacific)
                                 (Against Warta)
16

17                                   63.
         Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through
18   62 above as if fully set forth herein.

19

20                                   64.
         Warta used his position as a director and officer of GST to facilitate his fraudulent
21   scheme to divert GST's resources for his own use and benefit. Warta caused GST to transfer
22   funds to Magnacom for the purchase of PCS licenses without board approval, and
23   deliberately failed to protect GST's interests prior to the transfer of such funds. Warta also
24   caused GST to transfer funds to PCS Pacific under similar circumstances and with a similar
25   deliberate failure to protect GST's interests and to secure adequate protection for GST prior
26   to the transfer of such funds.

Page 15 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
         COUNTERCLAIMS

1

65.

2    But for Warta's abuse of his corporate position, false representations to the GST

3    Board of Directors regarding the advisability of advancing funds to Magnacom, and his

4    failure to disclose the personal benefit that he sought to derive for himself and his marital

5    community from both the Magnacom and PCS Pacific transfers, Warta could never have

6    transferred GST funds to these two companies he owned.

7

66.

8    As a result of Warta's fraudulent transfer of GST assets to Magnacom and PCS

9    Pacific, Warta and his marital community have benefited and GST has been damaged in an

10   amount exceeding $15 million.

11

SECOND COUNTERCLAIM

12   (Breach of Fiduciary Duty of Loyalty and Care -- Magnacom/PCS Pacific)
     (Against Warta and Sander)

13

14

67.

     Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through

15   66 above as if fully set forth herein.

16

17

68.

18   As directors and officers of GST, Warta and Sander owed a fiduciary duty to GST to

19   act honestly, in good faith, and in a manner reasonably believed to be in the best interests of

     GST. Counterclaim Defendants also owed a duty to GST to refrain from using their power

20   as directors and officers of GST for their own personal benefit, and to uphold their duty of

21   loyalty to GST by refraining from accepting obligations to other parties that might interfere

22   with their duty to GST.

23

24

69.

     Counterclaim Defendants Warta and Sander breached their fiduciary duty to GST by

25   causing GST to transfer funds to Magnacom for the purchase of PCS licenses without board

26   approval and without adequate consideration of GST's best interests, and by failing to secure

1  any protection or recourse for GST prior to the transfer of such funds. Warta further

2  breached his fiduciary duty to GST by causing GST to transfer funds to PCS Pacific under

3  similar circumstances and with a similar failure to consider GST's best interests and to

4  secure adequate protection for GST prior to the transfer of such funds. Warta funneled

5  money to Magnacom and PCS Pacific for his own personal enrichment as part of an

6  ultimately unsuccessful scheme to reorganize the ownership of the Magnacom and PCS

7  Pacific licenses for his own financial advantage. In addition, Sander approved hundreds of

8  thousands of dollars in cash advances to Magnacom and other Warta entities, which

9  advances were unauthorized, unsecured, never repaid and constitute a waste of corporate

10  assets.

11                                    70.

12      But for Counterclaim Defendants Warta and Sander's breach of their fiduciary duty

13  and the misuse of their positions as directors and officers of GST, GST would not have

14  transferred any funds to Magnacom or PCS Pacific.

15                                    71.

16      As a result of Counterclaim Defendants Warta and Sander's breach of their fiduciary

17  duty, GST has been damaged in an amount exceeding $15 million.

18                          **THIRD COUNTERCLAIM**
19                              (Breach of Contract)
                                (Against Warta)
20

21                                    72.

22      Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through

23  71 above as if fully set forth herein.

24                                    73.

25      Pursuant to Warta's employment agreement, dated as of September 1, 1995, between

26  himself, GUSA and Telecom, Warta agreed to:

Page 17 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
           COUNTERCLAIMS

1  Devote substantially all his time, attention, knowledge and skills, faithfully,
   diligently and to the best of his ability, in furtherance of the business of the
2  Corporations [GUSA and Telecom], their parent corporation, GST
   Telecommunications, Inc. and their subsidiaries . . .

3

4                                      74.

5       The agreement further provides, in relevant part, that "any action, suit or proceeding

6  with respect to this Agreement and the respective rights, remedies, duties and liabilities of

7  the parties hereunder shall be brought in the courts of the State of Washington located in

8  Seattle, Washington . . ." The agreement further provides for attorneys fees to the prevailing

9  party in any lawsuit between them.  GST was a third-party beneficiary of that agreement.

10                                     75.

11      By reason of his conduct aforesaid with respect to Magnacom, and PCS Pacific, as

12  well as with regard to other matters in which Warta put his personal interest in conflict with

13  the GST Companies, Warta, without justification, breached his duty of good faith and fair

14  dealing, and failed to act faithfully, diligently, or to the best of his ability, to further the

15  business of the GST companies.  To the contrary, he deliberately acted against the interests

16  of GST companies for his own personal enrichment.  He has thus breached his employment

17  agreement and is liable to GST, GUSA and Telecom for damages therefor in an amount to be

18  proven at trial.

19

20                           **FOURTH COUNTERCLAIM**
                                   (Conversion)
21                               (Against Warta)

22                                     76.

23      Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through

24  75 above as if fully set forth herein.

25                                     77.

26      In or about February 1997, Warta converted $415,000 of GST's money for his own

Page 18 – DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
         COUNTERCLAIMS

BULLIVANT HOUSER BAILEY
A Professional Corporation
1601 Fifth Avenue, Suite 2400

1  use in order to purchase A Block PCS for his personal company, PCS Pacific. Warta took

2  said funds without lawful justification and he has deprived GST of the use thereof. Warta's

3  conversion was willful and has caused GST damages in the amount of $415,000 plus interest.

4

### FIFTH COUNTERCLAIM
(Breach of Contract)
(Against Sander)

5

6

7  **78.**

8  Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through
77 above as if fully set forth herein.

9

10  **79.**

11  On or about March 1, 1994, GST and Sander entered into an Employment Agreement.
On or about September 1, 1995, GST and Sander entered into an Amended and Restated

12  Employment Agreement ("Sander's Employment Agreement").

13

14  **80.**

15  Pursuant to Sander's Employment Agreement, Sander agreed to:

16  Devote substantially all his time, attention, knowledge and skills, faithfully,
diligently and to the best of his ability, in furtherance of the business of the

17  Corporations [GUSA and Telecom], their parent corporation, GST
Telecommunications, Inc.. and their subsidiaries . . .

18  **81.**

19  The agreement further provides, in relevant part, that "any action, suit or proceeding

20  with respect to this Agreement and the respective rights, remedies, duties and liabilities of

21  the parties hereunder shall be brought in the courts of the State of Washington located in

22  Seattle, Washington . . ." The agreement further provides for attorneys fees to the prevailing

23  party in any lawsuit between them. GST was a third-party beneficiary of that agreement.

24  **82.**

25  By reason of his conduct aforesaid with respect to Magnacom, and other Warta

26

Page 19 - DEFENDANTS' SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS

1  controlled entities, Sander, without justification, breached his duty of good faith and fair

2  dealing, and failed to act faithfully, diligently, or to the best of his ability, to further the

3  business of the GST companies.  To the contrary, he deliberately acted against the interests

4  of GST companies.  He has thus breached his employment agreement and is liable to GST,

5  GUSA and Telecom for damages therefor in an amount to be proven at trial.

6

7                              **SIXTH COUNTERCLAIM**
                                   (Declaratory Judgment)
8                              (Against Warta and Sander)

9                                        83.

10        Counterclaim Plaintiffs repeat and reallege the allegations of paragraphs 44 through

11 82 above as if fully set forth herein.

12                                        84.

13        Certain third parties have now claimed that GST is directly liable for the debts and

14 obligations of Magnacom.  GST denies that it has any liability for such debts and obligations.

15                                        85.

16        In the event that GST is adjudged liable for the debts and obligations of Magnacom,

17 such liability is wholly the responsibility of Warta and Sander and persons and entities other

18 than the GST Companies.  Warta and Sander dispute their liability for Magnacom's debts

19 and obligations.  Accordingly, there is an actual controversy between GST and Warta and

20 Sander.

21        WHEREFORE, Counterclaim Plaintiffs seek judgment as follows:

22        a.      For an award of compensatory damages against Counterclaim Defendants in

23                an amount to be proven at trial;

24        b.      Declaring that the Counterclaim Defendants must indemnify GST to the extent

25                that GST is held liable for the debts and obligations of Magnacom;

26

BULLIVANT HOUSER BAILEY
A Professional Corporation

1    c.    For Counterclaim Plaintiffs' costs of suit, including reasonable attorneys' fees;

2          and;

3    d.    Such other and further relief as the Court may deem just and proper.

4          DATED this 24th day of August, 1999.

5

6                              BULLIVANT HOUSER BAILEY
                               A Professional Corporation

7

8                              By _____

9                                   Thomas D. Adams
                                    WSBA No. 18470
                                    Richard G. Matson
10                                  WSBA No. 19641

11                             WILSON SONSINI GOODRICH & ROSATI
                               Professional Corporation
                               David S. Steuer (Pro Hac Vice)
12                             Jared L. Kopel (Pro Hac Vice)
                               Douglas J. Clark (Pro Hac Vice)
13                             Steven Guggenheim (Pro Hac Vice)
                               650 Page Mill Road
14                             Palo Alto, CA 94304-1050
                               Telephone: (650) 493-9300
15                             Facsimile: (650) 565-5100

16                             Attorneys for Defendants and Counterclaim Plaintiffs,
                               GST USA, INC., GST TELECOM, INC., and GST
17                             TELECOMMUNICATIONS, INC.

18   F:\CLIENTS\12368\11\PLDGS\SECOND AMENDED ANSWER.DOC

19

20

21

22

23

24

25

26

BULLIVANT HOUSER BAILEY
A Professional Corporation