# EXHIBIT 34

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GST TELECOM INC., et al., | ) | Case No. 00-1982 (GMS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| GST TELECOM INC., et al., | ) | |
| | ) | |
| Counterplaintiffs, | ) | Adv. Pro. No. |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WARTA, | ) | |
| | ) | |
| Counterdefendant. | ) | |

## AMENDED COUNTERCLAIM

Counterplaintiffs GST Telecom Inc., *et al.* (the "Debtors"), by their attorneys and as and for their Amended Counterclaim against Counterdefendant John Warta ("Warta"), allege as follows:

### NATURE OF THE ACTION

1. This action arises out of Warta's fraud, breach of fiduciary duty of loyalty and care, conversion and breach of his employment agreement.

2. The Debtors seek to hold Warta liable for his fraud relating to the transfer of certain of the Debtors' assets to a company he owned and controlled, without adequate consideration and without approval of the GST Board of Directors.

558915v1

CH\711779.3

3. The Debtors further seek to hold Warta liable for his gross and flagrant abuses of his corporate offices held with the Debtors. Oblivious to his duties as a fiduciary as a director and officer of the Debtors, Warta used his position for self-enrichment through the transfer of certain of Debtors' assets to a company owned and controlled by him.

4. The Debtors further seek to hold Warta liable for breach of his employment agreement for deliberately acting for his own enrichment and against the interests of the Debtors by transferring certain of Debtors' assets to Magnacom Wireless LLC ("Magnacom") and PCS Plus Pacific, Inc.

5. By reason of the foregoing, the Debtors seek compensatory and punitive damages, and such other relief as the Court deems appropriate.

### The Parties

6. GST Telecommunications, Inc. ("GST") is a federally chartered Canadian corporation with its principal place of business in Vancouver, Washington. GST is a holding company that operates through its various subsidiaries.

7. GST USA, Inc. ("GUSA") is a Delaware corporation with its principal place of business in Vancouver, Washington. GUSA is a wholly owned subsidiary of GST.

8. GST Telecom Inc. ("Telecom") is a Delaware corporation with its principal place of business in Vancouver, Washington. Telecom is a wholly owned subsidiary of GUSA.

9. Upon information and belief, Warta is a natural person and resident of the State of Washington.

### Jurisdiction and Venue

10. The Debtors bring this adversary proceeding pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 3007 and 7001(1).

11. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

12. Venue of this case is proper in this district pursuant to 28 U.S.C. § 1408. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

13. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (E) and this Court may enter a final adjudication on the merits of this adversary proceeding.

### Background Facts

14. From March 1, 1994 through June 15, 1998, Warta was employed by Telecom as its Chief Executive Officer. From September 1, 1995 through June 15, 1998, Warta was also employed as the Chief Executive Officer of GUSA.

15. On or about September 1, 1995, Telecom, GUSA and Warta entered into the Employment Agreement. The Employment Agreement was thereafter amended on August 22, 1997, in part, to increase Warta's compensation.

16. Under the terms of the Employment Agreement, Warta was to preside as Chief Executive Officer of Telecom and GUSA.

17. Pursuant to Paragraph 2 of the Employment Agreement, Warta agreed to devote "his time, attention, knowledge and skills, faithfully, diligently and to the best of his ability, in furtherance of the business of the Corporations [Telecom and GUSA] their parent corporation, GST Telecommunications, Inc. ("GST") and their subsidiaries . . ." and agreed not

to "directly or indirectly, accept employment or compensation from, or perform services of any nature for, any business enterprise other than the GST Companies," except as specifically provided in the Employment Agreement.

18. From June, 1994 through June 15, 1998, Warta also served as a member of the Telecom and GUSA Boards of Directors. In addition, from June, 1994 through September 15, 1998 Warta served as a member of the GST Board of Directors (together with the Telecom and GUSA Boards of Directors, collectively, the "Boards").

19. Magnacom, a Delaware limited liability company, was owned and operated by Warta directly and through Pacwest Network, Inc. ("Pacwest"), a company wholly owned by Warta.

20. In or about July of 1996, and prior to any knowledge or approval by any of the Boards, Warta caused GST to advance approximately $5.4 million to Magnacom.

21. Magnacom used the $5.4 million advanced to it by GST as a deposit to acquire licenses for C Block Broadband Personal Communications Services ("PCS Licenses"). Ownership of the PCS Licenses would have enabled Magnacom to provide cellular service to customers in the areas covered by the licenses. Warta, as the owner of Magnacom, suffered from conflicts of interest that prevented him from protecting GST's interests in any dealings with Magnacom.

22. Thereafter, Warta knowingly caused further advances by GST to Magnacom.

23. After learning of the initial transfer, GST was faced with the decision of either losing the $5.4 million already advanced or agreeing to further advances of $9 million so

as to preserve the possibility of receiving some value for the monies advanced, including the $5.4 million already transferred to Magnacom without prior approval.

24. After the initial $5.4 million had been advanced by GST to Magnacom in July of 1996 and an additional request for $5.5 million was presented to the Finance Committee, Warta represented to the Finance Committee that the consideration for these advances would be a management and operations agreement between GST and Magnacom.

25. After the absence of any benefit provided to GST through the prospective and speculative management and operations agreement became apparent, at the September 17, 1996 meeting of the GST Board, Warta, with the concurrence of other directors, substituted the original agreement with an agreement to acquire future speculative minutes of capacity from Magnacom in consideration for amounts remitted (the "Reseller Agreement"). Warta failed, however, to provide an explanation as to how GST's advances to Magnacom would be repaid if the PCS networks were never built or if Magnacom forfeited to the FCC either the PCS Licenses or the funds Magnacom had paid the FCC for the PCS Licenses.

26. In January of 1997, Stephen Irwin ("Irwin"), GST's Vice Chairman, reported to GST's Board that $14.4 million in total had been advanced to Magnacom to enable Magnacom to acquire the PCS Licenses. At this meeting, it was noted that the Reseller Agreement was still being prepared.

27. Warta caused GST to enter into the Reseller Agreement with Magnacom, pursuant to which GST's cash advances to Magnacom were characterized as a prepayment for airtime. The Reseller Agreement was prepared by Irwin, with Warta's approval, and contained no provisions for, among other things, repayment by Magnacom to GST if Magnacom forfeited either the PCS Licenses and/or the funds advanced to the FCC, or failed to construct the PCS

networks. The Reseller Agreement was executed by Irwin ostensibly on behalf of GST – *after* GST had advanced $14.4 million to Magnacom.

28. The Reseller Agreement provided only a speculative benefit to GST and was inadequate consideration for the transfer of $14.4 million to Magnacom.

29. As a direct and proximate cause of Warta's actions, the Debtors have been damaged in an amount not less than $14.4 million.

### Count I—Fraud

30. The Debtors reallege and incorporate by reference paragraphs 1 through 29 as if fully set forth herein.

31. Warta knowingly made misrepresentations to, and concealed facts from, GST, despite his duties to disclose his conflict of interest, and abstain from taking actions to GST's detriment.

32. In particular, Warta, among other things, caused GST to transfer funds to Magnacom for the purchase of PCS Licenses without prior approval from or knowledge of GST's Board, and deliberately failed to protect GST's interest prior to the transfer of such funds.

33. Warta could never have transferred GST funds to Magnacom but for his abuse of corporate position, false representations to GST's Board regarding the advisability of making such advances and his failure to disclose the personal benefit that he sought to derive for himself from the Magnacom transfers.

34. As a result of Warta's fraudulent transfer of GST assets to Magnacom, the Debtors have been damaged in the amount not less than $14.4 million.

### Count II—Breach of Fiduciary Duty of Loyalty and Care

35. The Debtors reallege and incorporate by reference paragraphs 1 through 34 above as if fully set forth herein.

36. As a director and officer of GST, Warta owed a fiduciary duty to GST to act honestly, in good faith and in a manner reasonably believed to be in the best interest of GST.

37. Warta also owed a duty to GST to refrain from using his power as director and officer of GST for his own personal benefit and to make full and timely disclosures to GST's Board of all material facts relating to business carried out on behalf of GST.

38. Warta breached his fiduciary duty by, among other things, causing GST to transfer funds to his own company, Magnacom, for the purchase of PCS Licenses without GST's Board approval and without adequate consideration of GST's best interest. Warta also breached his fiduciary duties by, among other things, failing to secure any protection or recourse for GST prior to the transfer of such funds. Warta further breached his fiduciary duties to GST by, among other things, failing to disclose, although under a duty to do so, the transfers of GST assets to Magnacom.

39. As a result of Warta's breach of his fiduciary duties, the Debtors have been damaged in an amount to be determined at trial.

### Count III—Conversion

40. The Debtors reallege and incorporate by reference paragraphs 1 through 39 above as if fully set forth herein.

41. In or about July of 1996 through December of 1997, Warta converted approximately $14.4 million of GST's money for his own use in order to purchase the PCS

Licenses for his personal company, Magnacom. Warta willfully took said funds without lawful justification and has deprived GST of the use thereof.

42. Warta's conversion was willful and has caused the Debtors damages in an amount to be determined at trial.

### Count IV—Breach of Employment Agreement

43. The Debtors reallege and incorporate by reference paragraphs 1 through 42 above as if fully set forth herein.

44. Warta's Employment Agreement contains an implied covenant of good faith and fair dealing.

45. Warta breached his Employment Agreement when he, among other things, diverted GST's assets for his own benefit, made false representations regarding the advisability of advancing funds to Magnacom and failed to disclose the transfers of GST assets to Magnacom.

46. As a direct and proximate result of Warta's breach of his Employment Agreement, GST has been damaged in an amount not less than $14.4 million dollars and continues to incur damages, including but not limited to attorneys' fees, expenses and costs.

47. Telecom and GUSA have performed their obligations required under the Employment Agreement.

### Count V—Equitable Subordination

48. The Debtors reallege and incorporate by reference paragraphs 1 through 47 above as if fully set forth herein.

49. Warta breached his fiduciary duty by, among other things, causing GST to transfer funds to Magnacom for the purchase of PCS Licenses without GST's Board approval,

without adequate consideration of GST's best interest and without securing any protection or recourse for GST prior to the transfer of such funds.

50. As a result of Warta's conduct, the Debtors have damages in an amount not less than $14 million.

51. As a result of Warta's breaches, any claims advanced by him should be subordinated to the claims of all creditors.

52. Pursuant to section 510(c)(1) of the Bankruptcy Code, equitable subordination is appropriate in this case.

### Prayer for Relief

WHEREFORE, the Debtors respectfully request that the Court enter an order in favor of the Debtors and against John Warta:

A. For compensatory and punitive damages in an amount to be determined at trial, but not less than $14.4 million together with interest thereon running from the date the damages were incurred;

B. For any and all additional damages the Debtors have incurred, together with interest thereon running from the date they were incurred;

C. For the Debtor's attorneys' fees and other reasonable and necessary expenses incurred in connection with this action;

D. For accrued interest on the amount of the judgment as provided by law; and for such other and further legal, equitable or other relief as this Court deems just and proper.

Dated: October 7, 2004
      Wilmington, Delaware

                                              /s/ *(signature)*

Steven M. Yoder (No. 3885)
Christopher A. Ward (No. 3877)
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

-and-

David S. Heller
William J. Gibbons
Josef S. Athanas
Michael J. Faris
Danielle S. Kemp
LATHAM & WATKINS LLP
Suite 5800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700

Attorneys for Debtors and
Counterplaintiffs GST Telecom Inc., *et al.*