## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>GST TELECOM INC., et al.,<br><br>Debtors.<br>―――――――――――――――――<br><br>GST TELECOM INC., et al.,<br><br>Counterplaintiffs,<br><br>v.<br><br>JOHN WARTA,<br><br>Counterdefendant. | Chapter 11<br><br>Case No. 00-1982 (GMS)<br><br>Jointly Administered<br><br><br><br>Adv. Pro. No. 04-55890 (GMS)<br><br>Civil Action No.: 04-CV-1380 |

## REPLY BRIEF IN SUPPORT OF JOHN WARTA'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COUNTS I-IV OF GST'S AMENDED COUNTERCLAIM

ASHBY & GEDDES
Philip Trainer, Jr. (#2788)
Ricardo Palacio (#3765)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, Delaware 19801
(Tel.): 302-654-1888
(Fax): 302-654-2067

-and-

KENNEDY, WATTS, ARELLANO
 & RICKS LLP
Joseph C. Arellano, pro hac vice
Daniel L. Keppler, pro hac vice
1211 SW 5th Ave., Suite 2850
Portland, OR 97204
503-228-6191
*Attorneys for Counterdefendant*
*John Warta*

Dated: April 19, 2005

# TABLE OF CONTENTS

I.     Introduction ........................................................................................................... 1

II.    Procedural Background ...................................................................................... 3

III.   Argument ............................................................................................................. 5

    A.    The Statute of Limitations Began to Run by January 1997 ...................... 5

        1.    Under Delaware Law, the Statute of Limitations Begins to Run From
              the Date of the Alleged Wrongful Conduct. ............................................ 5

        2.    GST's Unalleged Facts From 1998 Are Irrelevant to the
              Statute of Limitations. .......................................................................... 8

    B.    GST's Reinstatement of Claims Pending in a Washington State Court does
        not Revive its Time-Barred Counterclaim Here. .................................... 11

    C.    Section 108 Does Not Extend the Statute of Limitations. ....................... 14

    D.    Judicial Estoppel Does Not Extend the Statute of Limitations. .............. 16

    E.    GST's Claims Are Not Exempt From the Statute of Limitations. ............. 19

IV.   Conclusion ........................................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*Acierno v. Goldstein,* 2004 Del. Ch. LEXIS 82 (Del. Ch. June 25, 2004) ............................... 9, 10

*Bokat v. Getty Oil Co,* 262 A.2d 246 (Del. 1970) .......................................................... 19, 20, 21

*Bovay v. H.M. Byllesby & Co,* 38 A.2d 808 (De. 1944) ................................................. 19, 20, 21

*Brown v. Dolese,* 154 A.2d 233 (Del. Ch. 1959) .................................................................. 19, 21

*Burtch v. Wendel,* 259 F. Supp.2d 824 (2001) ............................................................................ 20

*Dofflemeyer v. W.F. Hall Printing,* 558 F. Supp. 372 (D. Del. 1983) ......................................... 10

*Halpern v. D.H. Barran,* 313 A.2d 139 (Del. Ch. 1973) ...................................................... 19, 21

*In re GNK Enters,* 197 B.R. 444 (Bankr. S.D.N.Y. 1996) ................................................... 12, 13

*In re CGE Shattuck LLC,* 272 B.R. 514 (Bankr. D.N.H. 2001) .................................................. 15

*In the Matter of Rexene Corp.,* 176 B.R. 732 (Bankr. D. Del. 1995). ......................................... 18

*Kahn v. Seaboard Corp.,* 625 A.2d 269 (Del. Ch. 1993) ..................................................... *passim*

*Kaufman v. Albin,* 447 A.2d 761 (Del. Ch. 1982). .................................................................. 9, 10

*Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1991). ............ 3, 11, 15

*Marvel Entertainment Group, Inc. v. Mafco Holdings, Inc.,*
273 B.R. 58 (D. Del. 2002) ............................................................................................. 5, 6, 7, 9

*Monrouzeau v. Asociacion del Maestro,* 354 F. Supp. 2d 115 (2005) ........................................ 13

*Motley v. New Jersey State Police,* 196 F.3d 160 (3d Cir. 1999) ............................................... 17

*Rayo v. State of New York,* 882 F. Supp. 37 (N.D.N.Y. 1995) ................................................... 13

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3rd Cir. 1996) ......... 16

*Price v. Wilmington Trust Co.,* 1995 Del. Ch. LEXIS 65 (Del. Ch. 1995) .................................... 7

*Schreiber v. Bryan,* 396 A.2d 512 (Del. Ch. 1978)) ...................................................................... 5

*Siedel v. Lee,* 954 F. Supp. 810 (D. Del. 1996) ......................................................................... 20

**Statutes**

11 U.S.C. § 108 ................................................................................................ 14, 15, 16

10 Del. C. § 8106 ................................................................................................ 5, 20

**Rules**

Fed.R.Civ.P. 9(b) ...................................................................................................... 7

Fed.R.Civ.P. 15(a) ................................................................................................... 15

Fed.R.Civ.P. 15(c) ........................................................................................ 12, 14, 15

**Other Authorities**

*Moore's Federal Practice -- Civil § 15.19[1] (3rd ed. 1997)* ........................................ 13

Folk, Earnest L. III, *Folk on Delaware General Corporation Law § 327.3 (4th ed.)* ................... 6

I.    **Introduction**

The Court should enter summary judgment in favor of Warta on Counts I-IV of GST's amended counterclaim because those claims are time-barred under Delaware's three-year statute of limitations.  There is no genuine dispute of material fact that the applicable statute of limitations for GST's allegations of fraud, breach of fiduciary duty, conversion, and breach of contract began to run by January 1997 and had long expired by February 2004, when GST filed its counterclaim in this adversary proceeding.  Every allegation of fact contained in GST's amended counterclaim concerns events that had occurred by January 1997, including approval of the Magnacom transactions by GST directors.  All of GST's claimed damages flow from transactions involving Magnacom that occurred before January 1997.

GST attempts to dodge this obvious statute of limitations problem by pointing to irrelevant events in 1998 that were not alleged in its counterclaim.  This Court should reject GST's attempt to bootstrap its untimely counterclaim with irrelevant facts that do not extend the applicable statute of limitations.  Under Delaware law, the statute of limitations begins to run at the time of the alleged misconduct or breach, regardless of when the full extent of alleged harm or damages is incurred.

GST itself alleges that in 1996 Warta made an improper decision for GST to enter into transactions with Magnacom.  According to GST, the board continued to approve expenditures in Magnacom in order to recoup its initial investment.  All of the transactions and the board's approval of the $14.4 million in expenditures occurred by January 1997, along with the board's explicit acknowledgment of Warta's interest in Magnacom.  The statute of limitations for GST's claims started to run by that point.  It makes no difference for statute of limitations purposes that some supposed harm or damages flowing from those transactions may have occurred later.

The remainder of GST's response consists of convoluted procedural arguments that its untimely counterclaim should relate back to time periods during which GST had the opportunity to assert or remove its counterclaim into this case but declined to do so.  Without any support, GST argues that the existence of pending claims in a Washington state court render timely its untimely counterclaim in this court.  GST also contends that Section 108 of the Bankruptcy Code somehow preserves claims that were already time-barred when it filed for bankruptcy.  GST's relation back theories rest on fundamental misconceptions about how statutes of limitation operate.

GST then claims Warta should be judicially estopped from asserting the statute of limitations.  GST complains over and over that it was "sandbagged" – as if Warta somehow tricked it into violating the statute of limitations.  GST obsesses over the notion that, because Warta amended his claim, GST's counterclaim should be exempt from the statute of limitations.  GST seems bent on discrediting and disparaging Warta rather than articulating a principled response to Warta's motion.

Warta played by the rules in this case.  He obtained leave to amend his claims over GST's objections.  By its own admission, GST had many opportunities to file its counterclaim at an earlier time or to remove its claims pending in the Washington state court.  Instead, GST chose to sit idly on those claims for years.  It then scrambled to assert its counterclaim in this action only after Warta amended his claim.  It is GST, not Warta, that is playing fast and loose with the litigation process by attempting to litigate the same claims in two far flung jurisdictions.  GST is bound by its own calculated decisions.  There is no legal basis to permit GST to pursue an untimely counterclaim here.

## II.    Procedural Background

The undisputed facts supporting summary judgment are outlined in Warta's opening brief.  However, in considering GST's position, it is important for the Court to understand the somewhat complicated procedural history of GST's claims involving Magnacom.

GST asserted the Magnacom claims against Warta in state court in Oregon in 1999, all of which were withdrawn without Warta paying to settle them.  Ex. D. [1]  GST also asserted the Magnacom claims as a counterclaim against Warta in litigation in Washington in King County Superior Court in 1999.  Ex. E.

GST filed for bankruptcy on May 17, 2000.  Bankr. D.I. 1; Ex. G, p. 6.  Warta timely filed his proofs of claim in January 2001.  Ex. 28.  In December 2001, GST filed objections to Warta's claim but did not assert a counterclaim or commence an adversary proceeding seeking affirmative relief against Warta.  Ex. 29.  Also, GST did not continue to actively litigate the Washington counterclaim.  GST assumed that the bankruptcy stay applied to its claims filed in Washington, even though it is well established that the stay does not apply to claims by the debtor.  Ex. A, pp.27-28.  *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir.1991). GST made no effort to remove the Washington counterclaims to the bankruptcy proceeding, although it extended the time period to do so.  Ex. 30.  Instead, GST made a calculated decision to allow the removal deadline to expire.  GST Brief, p.8.

Meanwhile, in December of 2000, the Washington state court dismissed GST's pending counterclaims based on GST's failure to prosecute them.  Ex. G, p. 4.  GST had apparently not

---

[1]  Letter exhibits refer to exhibits to the Affidavit of Daniel L. Keppler in Support of John Warta's Motion for Partial Summary Judgment, District Court D.I. 41.  Unless otherwise noted, numbered exhibits refer to exhibits to the Declaration of Danielle S. Kemp in Support of Debtors' Response Memorandum, District Court, D.I. 44.

been monitoring the case because it took GST nearly four years to learn that the case had been administratively dismissed.  In October 2004, after learning of the dismissal, GST successfully obtained reinstatement of the Washington case on grounds that its local counsel had not received notice of the dismissal, which occurred automatically pursuant to a local court rule. *See* Ex. G, pp. 1-4; Ex. H, pp. 1-2.

In September 2003, Warta sought leave of this Court to amend his proofs of claim in the bankruptcy case to allege additional damages.  Bankr. D.I. 2703.  The nature of the claims themselves did not change.  However, GST strenuously opposed the amendment, which this Court allowed after briefing and argument on the issue.  Bankr. D.I. 2708, 2723.  GST's opposition to Warta's amended pleading did not raise the issues GST now raises concerning the removal deadline and the impact of the statute of limitations.  Bankr. D.I. 2708.

With this Court's permission, Warta amended his proofs of claim in January 2004.  Ex. 32.  In February 2004, without leave of the Court, GST commenced this adversary proceeding and filed amended objections and counterclaims against Warta.  Ex. 33. GST's counterclaims at that time arose from the 1996 transactions involving Magnacom and other transactions involving Bestel.  Counterclaim, ¶¶ 47-73; Ex. 33.  GST then amended its counterclaim against Warta in October 2004 to assert claims arising from Magnacom exclusively and seeking equitable subordination.  Amended Counterclaim, ¶¶ 19-29.  Warta filed replies to both counterclaims setting forth Warta's intent to defend based on the running of the statute of limitations.  District Court D.I. 6; Bankr. D.I. 2743.

## III.    Argument

### A.    The Statute of Limitations Began to Run by January 1997.

There is no genuine dispute of material fact that the three-year statute of limitations for GST's counterclaim (counts I-IV) began to run by January 1997. Every single allegation of wrongdoing contained in GST's counterclaim occurred before the end of January 1997— more than seven years before it filed its counterclaim and more than three years before GST filed for bankruptcy. GST's claims for fraud, breach of fiduciary duty, conversion and breach of employment agreement are time-barred by Delaware's three-year statute of limitations. 10 Del. C. § 8106.

GST reaches a contrary conclusion by disregarding settled Delaware law that the statute of limitations begins to run from the date of the alleged misconduct or breach – not at the conclusion of the alleged harm. Thus, GST attempts to extend the statute of limitations by pointing to a few events in 1998 that are irrelevant to the statute of limitations and are completely absent from the allegations of wrongdoing asserted in GST's counterclaim.

### 1.    Under Delaware Law, the Statute of Limitations Begins to Run From the Date of the Alleged Wrongful Conduct.

Delaware's three-year statute of limitations for GST's tort claims begins to run "when the specific acts of alleged wrongdoing occur, and *not when their effect is felt*." *Marvel Entertainment Group, Inc. v. Mafco Holdings, Inc.*, 273 B.R. 58, 73 (D. Del. 2002) (quoting *Schreiber v. Bryan*, 396 A.2d 512, 516 (Del. Ch. 1978)) (emphasis added). Similarly, under Delaware law, "the statute of limitations for breach of contract claims begins to run *when the contract is breached*." *Marvel Entertainment*, 273 B.R. at 80. In *Marvel Entertainment*, this Court (Judge McKelvie) granted summary judgment under similar facts where the debtor in

bankruptcy asserted untimely claims for breach of fiduciary duty arising from an allegedly unfair contract. *Id.* at 73. The Court explained that "Delaware law supports finding that where the claimed breach of fiduciary duty is an allegedly unfair contract, the limitations period begins to run when the contract is formed." *Id.* (citing *Kahn v. Seaboard Corp.*, 625 A.2d 269, 274 (Del. Ch. 1993)). The Court reasoned: "This finding is consonant with the principle that in discerning when a cause of action accrues, '*the determinative issue is when the specific acts of alleged wrongdoing occurred, and not when their effect is felt.*'" *Marvel Entertainment*, 273 B.R. at 74 (quoting Ernest L. Folk, III, et al., *Folk on Delaware General Corporation Law* § 327.3 (4th ed.)) (emphasis added).

Applying these principles to GST's own counterclaim allegations, all of which involve supposed misconduct occurring in or before January 1997, the counterclaims were clearly time barred even before GST filed for bankruptcy. The overarching theory of GST's claims is that once Warta had allegedly caused GST to invest the first $5.4 into Magnacom in July 1996, the board had no choice but to invest another $9 million in order to recoup the initial investment. Amended Counterclaim, ¶ 23; GST's Brief, pp. 4-5. Specifically, GST alleges that in July of 1996, "Warta caused GST to advance approximately $5.4 million to Magnacom." Amended Counterclaim, ¶ 20. GST further alleges that in July 1996, the finance committee approved the first advance plus an additional $5.5 million advance at Warta's request. Amended Counterclaim, ¶ 24. GST's counterclaim allegations describe a board meeting on September 17, 1996 in which Warta substituted the original agreement with Magnacom with the Reseller Agreement. Amended Counterclaim, ¶ 25. GST also alleges that the Reseller Agreement was inadequate consideration for the Magnacom transfers. Amended Complaint, ¶¶ 27-28. The Reseller Agreement is dated October 30, 1996. Ex. F. GST further alleges that in *January*

*1997*, Steven Irwin, GST's Vice Chairman, reported to GST's Board that $14.4 million in total had been advanced to Magnacom. Amended Counterclaim, ¶ 26. By January 1997, Warta's ownership interest in Magnacom had been fully disclosed to the board in the meetings approving the transactions. Ex. 5, p. 2; Ex. 7, p. 3; Ex. C. p. 4.[2] GST alleges nevertheless that all of the above events constitute wrongful conduct by Warta and that "as a direct and proximate cause of Warta's actions" GST has been "damaged in an amount not less than $14.4 million." Amended Counterclaim, ¶ 29.

GST claims the fully-disclosed and board-approved transactions between GST and Magnacom constitute fraud, breach of fiduciary duty, conversion and a breach of Warta's employment agreement with GST. Amended Counterclaim, ¶¶ 32-34, 38, 41, 45. Under *Marvel Entertainment*, the statute of limitations began to run when those purportedly unfair transactions occurred, not when GST allegedly felt the harm caused by them.

GST's own allegations should end the inquiry for purposes of determining the start date for the statute of limitations. GST is bound by the allegations in its pleading, especially because fraud must be alleged with specificity under Fed.R.Civ.P. 9(b). *See Price v. Wilmington Trust Co.*, 1995 Del. Ch. LEXIS 65, *10-11 (Del. Ch. No. 12476, May 19, 995) (claim barred where facts alleged in complaint occurred more than three years before filing). There can be no dispute of material fact that the three-year statute of limitations for the Magnacom transactions started to run no later than January 1997. It expired by January 2000, before GST filed for bankruptcy and four years before GST commenced this adversary proceeding and filed its counterclaim.

---

[2] These numbered exhibits are exhibits to the Affidavit of Daniel L. Keppler filed concurrently with the summary judgment motion. District Ct. D.I. 41.

2.    **GST's Unalleged Facts From 1998 Are Irrelevant to the Statute of Limitations.**

GST attempts to raise bogus issues of fact regarding the statute of limitations by referring to a number of extraneous and irrelevant events that occurred in 1998, *none* of which are mentioned in GST's counterclaim. Many of these 1998 events involve the so-called "Bestel opportunity," for which GST filed a baseless lawsuit against Warta in California that was dismissed on jurisdictional grounds. *See* GST Brief, p.7. The Bestel opportunity is no longer part of GST's counterclaim, and GST's recitation of those events is simply an attempt to confuse the issues and to sully Warta's reputation in the eyes of the Court.[3]

GST's brief goes on to point out several other events in 1998 that superficially relate to Magnacom in an attempt to extend the start date for the statute of limitations. GST Brief, p. 11. GST argues that in June 1998, shortly before Warta's forced resignation, the board transferred an additional $200,000 to Magnacom to give it sufficient operating capital to enter into a transaction with Qualcomm, Inc. GST also argues that, after Warta's termination, he did not fully cooperate in helping GST to negotiate the transaction with Qualcomm in supposed violation of the Indemnity Agreement. GST points out that Magnacom filed for bankruptcy in October 1998.

GST's argument completely ignores the allegations in its own pleading. For example, GST's breach of contract claim alleges a breach of the Employment Agreement, not the Indemnity Agreement. In fact, GST did not deem a single one of those 1998 events significant

---

[3] GST's counsel acknowledged in the October 7, 2004 conference with the Court that its claims arising from the Bestel opportunity are not before the Court:

> So the only thing that will remain in our counterclaim are facts related to the substantive issue that Mr. Kent raised earlier, that is, the issue regarding the transfer of 14.4 million dollars to Magnacom.

Ex. A, p. 34.

enough to allege them in its counterclaim. *See* Counterclaim, ¶¶ 47-51; Amended Counterclaim, ¶¶ 19-29. GST has not claimed the $200,000 as damages.

Furthermore, none of the 1998 events delay the running of statute of limitations triggered by the alleged events and transactions prior to January 1997. As explained above, the statute begins to run from the date of the conduct complained of, not when the harm is felt. *Marvel Entertainment*, 273 B.R. at 74. At best, GST's unalleged facts in 1998 constitute additional damages, i.e., GST feeling the additional harm of the purportedly nefarious Magnacom transactions in 1996. Indeed, because GST's overarching theory is that the board's hands were tied by the initial $5.4 million transaction with Magnacom, which supposedly caused the board to approve the additional advances, GST's limitations period would have started to run from July 1996, the date of the first Magnacom transaction.

GST misconstrues Delaware law by suggesting that Delaware would apply some sort of continuing wrongs theory for purposes of the statute of limitations. GST makes no attempt to reconcile its theory with the principles articulated in *Marvel Entertainment*, *Kahn*, and similar cases. To support its position, GST cites two cases without any discussion of their application to the facts of this case: *Acierno v. Goldstein*, 2004 Del. Ch. LEXIS 82 (Del. Ch. No. 20056, June 25, 2004) and *Kaufman v. Albin*, 447 A.2d 761, 764 (Del. Ch. 1982). Neither case supports GST's distorted view of how the relevant Delaware statute of limitations operates.

*Acierno* is an unpublished decision of the Delaware Court of Chancery construing the statute of limitations for trespass to real property in connection with a claim for adverse possession. The court acknowledged that under Delaware law, "a cause of action generally accrues at the moment of the wrongful act." *Id.* at *10. The court found that "under the unique circumstances of this case" where the record was undeveloped, it would be inappropriate to grant

a motion for judgment on the pleadings where the pleadings themselves alleged repeated wrongful acts by the trespasser, some of which fell within the statute of limitations. *Id.* at *11-12. *Acierno* does not support GST's theory that the commencement of the statute of limitations for transactions occurring before January 1997 may be extended into 1998 based on events that GST has not alleged.

Similarly, *Kaufman* does not help GST's cause. *Kaufman* held that the statute of limitations applicable to an allegedly improper transaction by directors did not commence until the transaction was actually consummated. *Kaufman,* 447 A.2d at 765. Before that, the plaintiffs could not have sued based on the transaction because the transaction had not yet occurred. *Id. See also Dofflemeyer v. W.F. Hall Printing,* 558 F. Supp. 372, 379 (D. Del. 1983) (discussing *Kaufman*). Here, unlike *Kaufman,* GST certainly could sue Warta for the Magnacom transactions completed by January 1997 and, in fact, GST has asserted its counterclaim without reference to a single event in 1998. Thus, nothing in *Kaufman* or *Acierno* supports the continuing wrongs theory that GST is attempting to apply in contravention of established Delaware principles.

Since *Kaufman*, the Delaware Court of Chancery in *Kahn* specifically rejected the continuing wrongs argument in claims against corporate officers arising from a transaction that was initiated more than three years before the plaintiffs filed suit. *Kahn,* 625 A.2d at 271. The *Kahn* court applied the statute of limitations to the claims even though some of the damages and alleged harm to the corporation occurred later. *Id.* The court reasoned that the decision to enter into the transactions, not the consequences of them, started the running of the statute of limitations. *Id.* Under *Kahn,* GST cannot use a continuing wrongs theory to extend the statute of limitations for its counterclaim in this case.

**B.    GST's Reinstatement of Claims Pending in a Washington State Court does not Revive its Time-Barred Counterclaim Here.**

GST next argues that the filing of its counterclaim as an adversary proceeding in 2004 relates back to counterclaims it filed in a Washington State Superior Court in 1999. GST offers no authority whatsoever that a claim timely filed in one jurisdiction tolls the statute of limitation for any subsequent action filed anew in a different jurisdiction. Such a rule makes no sense where GST had the ability to remove the Washington state court claims to this Court but declined to do so.

At the time it filed for bankruptcy, GST apparently failed to recognize that the stay applicable to Warta's claims in the Washington state court did not apply to its counterclaims. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (automatic stay applies only to claims *against* the debtor, not to the debtor's counterclaims within the same action). When GST failed to actively pursue its counterclaims, the Washington court dismissed them in December of 2000 pursuant to local court procedures. Ex. G, p. 4. GST managed to reinstate the claims in Washington nearly four years later in October 2004 on grounds that GST's local counsel did not receive notice of the automatic dismissal, which occurred pursuant to local court procedures. Ex. G, pp. 1-4; Ex. H, pp. 1-2. Warta respectfully submits that whether GST's reinstatement was proper and relates back to its original state court filing is for the Washington courts to decide.

However, even assuming for purposes of argument that GST has a timely filed case in Washington, that does not render timely GST's untimely counterclaim filed *in this Court*. GST readily admits it had the opportunity to remove the Washington claims and had previously obtained extensions of the deadline for removal. GST's Brief, p. 8. GST made a conscious decision to allow the removal deadline to expire in June 2002, even though Warta had brought

11

his original claims against GST in this Court by that time. *Id.*   The very existence of a removal device for preserving timely filed claims presupposes that, without removal, a newly filed claim will not relate back to the filing date in another jurisdiction.  GST cannot now receive the benefit of a removal procedure that it intentionally allowed to lapse.  But that is precisely what GST is asking for when it argues that claims asserted in this adversary proceeding should relate back to its 1999 Washington state court filing.

GST did not cite any authority to support its position that initiating this adversary proceeding in February 2004 somehow relates back to its counterclaims filed in a Washington state court in 1999.  Ironically, GST scolds Warta for citing only one case for the rather obvious proposition that a timely filing of a claim in one court does not render timely a late filing in a different court.  GST's proposed rule would allow litigants to undermine the statutes of limitations of any state by initially filing a lawsuit in the state with the most favorable statute of limitation then later refiling the same case in a state where the claims would otherwise be time-barred.

Moreover, the lone case cited in Warta's opening brief is directly on point.  *In re GNK Enters.*, 197 B.R. 444, 448-49 (Bankr. S.D.N.Y. 1996).  GST's attempt to distinguish *GNK* is pure obfuscation.  *See* GST's Brief, pp. 12-13.  The *GNK* case involved a debtor seeking to assert untimely claims in a bankruptcy adversary proceeding which had previously been filed by the debtor in U.S. District Court.  *GNK*, 197 B.R. at 446.  The debtor argued (as GST does here) that the adversary proceeding related back under Fed.R.Civ.P. 15(c) to its earlier counterclaim in the District Court case.  *GNK*, 197 B.R. at 448.  Neither the debtor nor the court could find any authority to support a relation back theory between different courts.  *Id.*  The *GNK* court

reasoned that an untimely filed adversary proceeding does not relate back to a pending but stayed lawsuit in another court:

> Rule 15(c) applies only to the initial proceeding, not to another, untimely, proceeding * * *.
> Here, there are two different actions, in two different courts, with the defendant in this adversary proceeding as plaintiff in the District Court Litigation. Under these circumstances the relation-back provisions of Fed.R.Civ.P. 15(c) are inapplicable.

*GNK*, 197 B.R. at 449.

Contrary to GST's suggestion, *GNK* is not the only authority stating that an untimely claim filed in one jurisdiction does not relate back to a pending lawsuit elsewhere. *See Monrouzeau v. Asociacion del Maestro*, 354 F. Supp. 2d 115, 118-19 (2005) ("[T]he fact that prior proceedings instituted by plaintiffs within the two-year period in another jurisdiction are ongoing is of no consequence * * *.") (citing 3 *Moore's Federal Practice -- Civil* § 15.19[1] (3rd ed. 1997); *Rayo v. State of New York*, 882 F. Supp. 37, 40 (N.D.N.Y. 1995) (pleading amendment does not relate back "to any prior proceeding which is not part of the action in question.")

GST engages in a puzzling effort to distinguish *GNK* by quoting from a completely different section of the opinion that has nothing to do with relation back of a state-law claim for statute of limitations purposes. GST Brief, pp. 12-13. That part of the *GNK* opinion deals with the preclusive effect of previous litigation upon a claim for equitable subordination for purpose of res judicata. *See GNK*, 197 B.R. at 449-450. Warta is not contending in his motion that GST's claims are barred by res judicata. It makes no difference for statute of limitations purposes that the Washington case was dismissed without prejudice before GST reinstated it four years later. Moreover, Warta has not moved for summary judgment against GST's claim for equitable subordination in Count V of its counterclaim.

13

The principle articulated in *GNK* and the other cases cited above is that a party cannot rely on a timely filed claim in one court to render timely an otherwise time-barred claim in a different court. At the time GST asserted its counterclaim and initiated its adversary proceeding in this Court, that counterclaim was untimely regardless of whether GST had a timely claim filed in some other far flung jurisdiction.

### C.     Section 108 Does Not Extend the Statute of Limitations.

GST cobbles together another relation back argument involving a curious application of Section 108 of the Bankruptcy Code in tandem with GST's overly expansive view of the relation back provisions of Fed.R.Civ.P. 15(c). Regardless of the merits of this perplexing argument, it rests entirely on GST's unsupportable assumption that the statute of limitations applicable to the 1996 Magnacom transactions did not begin to run until October 1998.

According to GST's mistaken assumption, the statute of limitations had not yet expired when it filed bankruptcy and obtained an order for relief on May 17, 2000. From that, GST contends that because its objections to Warta's claim attached its answer in the Washington state case, it had "reserved the right" in December 2001 to file an adversary proceeding and assert counterclaims during the suspension period of 11 U.S.C. § 108(a). [4] GST argues that the filing of this adversary proceeding and assertion of its counterclaims then relates back under Rule 15(c) to the date of its original objections to Warta's claim.

GST offers no authority to support the proposition that it may unilaterally reserve its rights to file an adversary proceeding *after* the expiration of the period of Section 108 by

---

[4] 11 U.S.C. §108 (a) provides :
If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
  (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
  (2) two years after the order for relief.

*declining* to file a counterclaim. GST Brief, p.14. Section 108 imposes a limitation upon when a trustee is permitted to commence action for affirmative relief on the debtor's behalf. *In re CGE Shattuck LLC*, 272 B.R. 514, 518 (Bankr. D.N.H. 2001) ([S]ection 108 "***proscribes the time frame in which the Debtor must act*** post-petition in order to preserve its rights.") (emphasis added). The language of the section provides that, if the statute of limitations "fixes a period within which a debtor may commence an action, and such period has not expired before the date of filing of the petition, the trustee ***may commence*** such action ***only*** before the later of (1) the end of such period * * *; or (2) two years after the order for relief." 11 U.S.C. § 108 (emphasis added). The term "commence such action" means bringing a lawsuit in court, which includes the filing of an adversary proceeding. *CGE Shattuck*, 272 B.R. at 518.

Here, GST commenced this action for affirmative relief as an adversary proceeding in February 2004, more than two years *after* the May 2000 order of relief. By commencing the adversary proceeding in February 2004, GST has done precisely what Section 108 (a) says a debtor may not do. Section 108 does not help GST to avoid the statute of limitations.

GST also offers no authority that Fed.R.Civ.P.15(c) operates in contravention of Section 108 to relate back an adversary proceeding to claim objections that did not seek affirmative relief. Under most circumstances, Fed.R.Civ.P. 15(a) requires a party amending its pleading to obtain leave from the court to do so. GST did not obtain such leave when it unilaterally filed its counterclaim and commenced this adversary proceeding in February 2004. The February 2004 filing cannot relate back to the date of GST's objections in 2001. To allow relation back would undermine the exclusive language in Section 108(a) governing when the trustee for a debtor can commence and action seeking affirmative relief. GST provides no authority for its proposition that the more general rule in Fed.R.Civ.P. 15(c) overrides the specific statutory restrictions in

15

Section 108(a). Contrary to GST's argument, Section 108 did not extend the time period for GST to file its counterclaim.

In any event, GST's entire relation back argument is a house of cards supported only by its unsupportable premise that the statute of limitations did not begin to run until October 1998. As outlined above, the statute of limitations began to run by January 1997 when the Magnacom transactions allegedly occurred. Because the statute of limitations expired by January 2000 *before GST filed for bankruptcy,* Section 108(a) manifestly does not apply and cannot form a basis for relation back of GST's counterclaims.

### D.    Judicial Estoppel Does Not Extend the Statute of Limitations.

Under the rubric of judicial estoppel, GST argues that its claims should be exempt from the statute of limitations. GST misconstrues the doctrine of judicial estoppel. Instead, GST uses the occasion to disparage Warta. This Court should reject GST's hyperbole and enforce the statute of limitations. GST should have considered whether its claims would be subject to a statute of limitations when it decided not to remove them and not to actively pursue them in Washington. GST's decision to reassert the claims in 2004 only after Warta expanded his counterclaim speaks volumes about the purpose behind asserting them.

The Third Circuit has described the doctrine of judicial estoppel as follows:

> Judicial estoppel, sometimes called the "doctrine against the assertion of inconsistent positions," is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts.

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

While application of judicial estoppel is discretionary and based the "particular facts and circumstances," of the case before it, a court must affirmatively answer two threshold questions before it may exercise its discretion: "(1) is the [party's] present position inconsistent with a position formerly asserted; and (2) if so, were either or both of the inconsistent positions asserted [by the party] in bad faith with the intent to play fast and loose with the court." *Motley v. New Jersey State Police*, 196 F.3d 160, 164 (3d Cir. 1999). (internal quotations and citation omitted).

GST invokes judicial estoppel with no reference whatsoever to these threshold determinations. With respect to the first question, GST has not identified a single inconsistent position that Warta has taken in this or any other litigation. Warta has steadfastly maintained that GST's claims against him involving Magnacom were baseless and filed in bad faith in various jurisdictions. As soon as GST filed its counterclaims in the form of this adversary proceeding, Warta consistently maintained they were time-barred. Even if GST's hyperbolic contentions about Warta were true, none of them amount to taking inconsistent positions in litigation. The first prong of the threshold test for judicial estoppel cannot be satisfied here.

Unable to identify any inconsistent position taken by Warta, GST focuses solely on the "fast and loose" component of judicial estoppel, claiming that Warta somehow tricked GST's sophisticated legal team into allowing the statute of limitations to expire. According to GST, it should be allowed to assert an untimely counterclaim because Warta had the opportunity to increase the size of his claims, albeit with this Court's leave and over GST's objections. Ex. A, pp. 28-29. In those objections, GST did not raise the issue of its counterclaim as a basis to oppose Warta's amendment to his claims. Bankr. D.I. 2807. Warta played by the rules. He filed

17

his proofs of claim on time and duly obtained leave of the Court to amend those claims. He was not required to seek relief from the automatic stay as GST insinuates.[5]

GST had every opportunity to remove the Washington counterclaims to this Court but made a calculated decision to allow the removal deadline to expire. GST Brief, p. 8. Only when Warta increased the amount of damages for his claims did GST commence this adversary proceeding and assert its counterclaim. GST's counsel stated to the Court in the October conference that GST did not believe the Magnacom claims were worth pursuing until Warta "ratcheted up" the size of his claims. Ex. A., pp. 28-29. GST should not be heard to complain that its Magnacom claims are time-barred after having waited in the weeds for years to assert them.

Indeed, if GST had moved forward with the claims in Washington instead of allowing those claims to languish, they would have been determined by now. The truth of the matter is GST recognizes the infirmity of its claims regarding Magnacom. If GST had any hope of recovering from Warta, it would have actively pursued those claims in Washington or by removal to this Court.

Instead, GST is attempting to resurrect the Magnacom claims solely as a means of obtaining leverage against Warta in response to Warta's amended claims for damages. GST's desire to counter Warta's claims does not exempt it from the applicable statute of limitations. If GST seriously intended to recover from Warta, it would not have allowed the Washington case to be administratively dismissed for four years or allowed the removal deadline in this Court to lapse. It is GST, not Warta, that is playing fast and loose with the judicial system. The statute of

---

[5] Warta was no more obligated to seek relief from the automatic stay than was GST. Moreover, in order for Warta to share in any potential distribution to creditors in GST's bankruptcy, Warta was required to file a proof of claim in this Court. *See In the Matter of Rexene Corp.*, 176 B.R. 732 (Bankr. D. Del. 1995).

limitations is designed to prevent precisely the kind of calculated delay that GST has engaged in. GST should not be rewarded with an exemption from the statute of limitations by judicial fiat.

### E.    GST's Claims Are Not Exempt From the Statute of Limitations.

GST's final argument is that the statute of limitations simply does not apply to claims alleging fraud against a corporate officer or director.  To support this proposition, GST cites two cases, both of which predate all of the recent Delaware jurisprudence regarding statutes of limitations:  *Bovay v. H.M. Byllesby & Co.*, 38 A.2d 808 (De. 1944) and *Brown v. Dolese*, 154 A.2d 233 (Del. Ch. 1959).  In those cases, courts of equity denied officers and directors the benefit of a statute of limitations defense under particularly egregious allegations of fraud. Although those decisions have not been explicitly overruled, neither case has been subsequently relied upon by the Delaware courts to support GST's proposition that the statute of limitations does not apply to a fraud claim against a corporate officer or director.  *See Halpern v. D.H. Barran*, 313 A.2d 139, 142 (Del. Ch. 1973) ("The only other case in which the *Bovay* rule was applied to suspend the statute was *Brown v. Dolese* * * *.")

Instead, Delaware equity courts have consistently refused to apply the *Bovay* exception to avoid the statutes of limitations for claims in which the relief sought is damages, as opposed to equitable relief:

> When the relief sought in Chancery is legal in nature, it is clear that Chancery will apply the statute of limitations rather than the equitable doctrine of laches.  This being so, the statute bars the claims * * *.

*Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del. 1970) (citations omitted).  *Accord Kahn v. Seaboard Corp.* 625 A.2d 269 (1993) ("[W]henever plaintiff seeks money in a derivative suit, her claim is subject to the statute of limitations."); *Halpern*, 313 A.2d at 141 ("It is by now firmly established

that the three-year statute of limitations, 10 Del.C. § 8106, applies to shareholder derivative actions which seek recovery of damages or other essentially legal relief.").

In *Bokat*, the Delaware Supreme Court applied the statute of limitations to shareholder claims against a corporate officer. *Bokat*, 262 A.2d at 251. The court explicitly rejected the *Bovay* exception on grounds that the plaintiffs had knowledge of the acts giving rise to the claims and therefore the statute of limitations should have commenced at least from the date of discovery. *Id.*

Relying on *Bokat*, the court in *Kahn* further limited the application of *Bovay* exception to circumstances in which there is affirmative concealment or total ignorance by outsider plaintiffs of the facts giving rise to a fraud claim. *Kahn*, 625 A.2d at 276-77. Even under particularly egregious circumstances, the court applied the statute of limitations, but deferred it until the plaintiff had the opportunity to discover the facts giving rise to inquiry notice:

> A close reading of *Bokat* demonstrates the soundness of the principle that ***the statute of limitations applies***, but is tolled in derivative actions charging actionable self-dealing, until the shareholders knew or had reason to know of the facts constituting the alleged wrong.

*Kahn*, 625 Ad.2d at 277. This is an extraordinary exception to Delaware's rule that the statute begins to run when the wrongful conduct occurs, even if the plaintiff is ignorant of the facts. *Id.* See also *Siedel v. Lee*, 954 F. Supp. 810, 816 (D. Del. 1996). The exception applies to claims by outsiders, such as shareholders, who would not be in a position to know of ongoing corporate dealings. *Kahn*, 625 Ad.2d at 277; *Burtch v. Wendel*, 259 F. Supp.2d 824 (2001).

GST has understandably not advocated for application of this discovery exception to its claims. Its claims are not brought by ignorant shareholders but by the plan administrator – a GST insider who has access to all of GST's corporate records. Indeed, the very transfers of

funds to Magnacom, the foundation of GST's counterclaim, were approved by the board and recorded in the minutes by January 1997. Ex. 5, p. 2; Ex. 7, p. 3; Ex. C. p. 4.[6] Those same minutes acknowledge Magnacom's ownership by Warta and the potential conflict of interest. *Id.* Even if the discovery exception somehow applied, the statute of limitations would have started to run by January 1997.

Again, GST's argument is not that a discovery exception applies to the statute of limitations, but that the *Bovay* and *Brown* decisions prevent *any* enforcement of the statute of limitations when fraud by a corporate officer is alleged. Subsequent decisions such as *Kahn*, *Bokat*, and *Halpern* have made it clear that GST's reading of *Bovay* and *Brown* is invalid. No subsequent Delaware decision has applied *Bovay* and *Brown* to exempt a claim from the statute of limitations. This Court should not do so either.

## IV.     Conclusion

There is no dispute of material fact that the applicable three-year statute of limitations began to run by January 1997, after all of the relevant Magnacom transactions had occurred and were approved by the board. GST's own counterclaim alleges no facts concerning Magnacom after that date. GST's claims were time-barred before it filed for bankruptcy in 2000 and certainly before it filed this adversary proceeding in 2004.

The Court should reject GST's attempt to skirt a clear application of the statute of limitations with various procedural arguments. GST had every opportunity to litigate these counterclaims at an earlier time, either in the Washington State Superior Court or by removal to

---

[6] These numbered exhibits are exhibits to the Affidavit of Daniel L. Keppler filed concurrently with the summary judgment motion. District Ct. D.I. 41.

this Court. Having made a conscious decision to delay, GST should not be heard to complain that its claims are barred by the statute of limitations.

DATED: April 19, 2005

> KENNEDY, WATTS, ARELLANO
> & RICKS LLP
> Joseph C. Arellano
> Daniel L. Keppler
> 1211 SW 5th Ave., Suite 2850
> Portland, OR 97204
> 503-228-6191

> -and-

> ASHBY & GEDDES

> Philip Trainer, Jr. (I.D. #2788)
> Ricardo Palacio (I.D. #3765)
> 222 Delaware Avenue, 17th Floor
> PO Box 1150
> Wilmington, DE 19899-1150
> (302) 654-1888

> *Counsel for John Warta*

156098.1

22

## CERTIFICATE OF SERVICE

I, Ricardo Palacio, hereby certify that, on April 17, 2005, I caused one copy of the foregoing *Reply Brief in Support of John Warta's Motion for Partial Summary Judgment Regarding Counts I-IV of GST's Amended Counterclaim* to be served upon the persons listed below by first class United States Mail, postage prepaid, or in the manner so indicated.

| **HAND DELIVERY** | **U.S. MAIL & FACSIMILE** |
|---|---|
| Steven M. Yoder, Esq. | William J. Gibbons, Esq. |
| Christopher A. Ward, Esq. | Danielle S. Kemp, Esq. |
| The Bayard Firm | Latham & Watkins |
| 222 Delaware Avenue, Suite 900 | Suite 5800 Sears Tower |
| Wilmington, DE 19801 | 233 South Wacker Drive |
|  | Chicago, Illinois 60606 |
|  | Facsimile: 312-993-9767 |

Ricardo Palacio (I.D. #3765)

156100v1