# Exhibit 1

```
                IN THE UNITED STATES BANKRUPTCY COURT

                   FOR THE DISTRICT OF DELAWARE

                             --oOo--

 In re:  GST TELECOM INC.,  )
 et al.,                    )         ORIGINAL
                            )
          Debtors,          )
                            )
 _____)   Case No. 00-1982 (GMS)
 GST TELECOM, INC., et al., )
                            )
          Counterplaintiffs,)
                            )
              vs.           )
                            )
 JOHN WARTA,                )
                            )
          Counderdefendant. )




                    DEPOSITION OF JOHN WARTA

                 Volume II, Pages 197 to 397

              Taken in Behalf of Counterplaintiffs

                   Friday, February 20, 2004




 Reported By:
 Janis Brown, CSR, RPR
```

JANIS BROWN COURT REPORTING
(503) 682-3152

1    Q.   But in order -- you've described a stark
2  difference in proposals, correct?
3    A.   The proposals were not that radically
4  different. I think the proposals, though, in my opinion
5  violated the spirit and direction of the high yield that
6  we had just completed, but also were different in terms
7  of the overall direction of the company, what I felt was
8  necessary to grow and move the company forward.
9    Q.   Okay. So the difference in strategy being
10 advocated by Fog, Ferchat and McGary was different and
11 more conservative, but not dramatically different from
12 what you would advocate, correct?
13   A.   Well, I think the result was dramatic. And I
14 think -- we weren't changing the business we were in, for
15 example.
16   Q.   Right.
17   A.   We weren't changing markets that we were in.
18 We weren't changing specific development of products and
19 services that we were in. But their direction was to
20 basically stop the growth of the company.
21   Q.   Stop acquisitions, for example?
22   A.   Stop acquisitions, which obviously has led to
23 the demise of the company because they failed -- the
24 strategy they did pursue obviously failed and they failed
25 to manage and maintain and take care of the 800 million

1  dollars that they had in capital at that point in time.
2      Q.   Right.
3      A.   I'm glad you agree.  Thank you.
4      Q.   Right, I understand that's your position,
5  because you said it yesterday also.
6           What I was going to say, however, Mr. Warta, is
7  although you might have an opinion, there's no way of
8  knowing what the direction that you were advocating would
9  have resulted in.
10     MR. KENT:  Is that a question?  Do you want him to
11 offer his opinion about --
12     MR. GIBBONS:  Maybe I could have finished.
13     MR. KENT:  I thought you had.
14     MR. GIBBONS:  I was going to say right --
15     THE WITNESS:  Sorry, we saw you breathing so we
16 thought you were done talking.
17     MR. GIBBONS:  It was a comma.
18     THE WITNESS:  I appreciate that.
19          Let me answer it this way, because I do want to
20 answer that question.  There wasn't a single person at
21 GST who knew any more about the business, or what we were
22 doing, or the direction we were heading than me.  There
23 wasn't a single person at that board who knew more about
24 that business at that point in time than me.  And there
25 wasn't a person who succeeded me who ever learned as much

1  about that business to that point in time as I did.  So
2  if anybody could have saved that company and used that
3  money correctly and properly, it was me.
4      MR. GIBBONS:  Q.  Assuming your judgment was
5  correct?
6      A.  And history has proven that I've had pretty
7  darned good judgment about a lot of things except for
8  lawyers after the fact questioning things they know
9  nothing about.
10     Q.  I believe you testified earlier that towards
11 the end of the June board meeting thoughts of your
12 departing the company had changed, or excuse me, had
13 surfaced again?
14     A.  Yes, there was a point in time where I was --
15 as I said to you earlier, I was upset going into the
16 meeting, I had lost a good friend.  I had just been
17 accused of a crime.  I had had this dispute with Joe Fog
18 and it manifested itself at that meeting.  I called -- I
19 excluded Joe Basil from a discussion, but I had a
20 discussion and dialogue with members of the board without
21 Basil, without Irwin, and I had told them, I said that if
22 this is the direction and focus of the company that I
23 probably would not want to continue on beyond the
24 February of '99 time frame.
25     Q.  Was this at the board meeting or after the